No. 26-1389

# In the United States Court of Appeals for the Third Circuit

IN RE: CLARENCE WILLIAM LEWIS, JR.

CLARENCE WILLIAM LEWIS, JR.
*Appellant,*

v.

THE MONEY SOURCE, INC.
*Appellee.*

On Appeal from the United States District Court
for the Middle District of Pennsylvania
in Case No. 3:24-cv-00387-JKM

## BRIEF OF APPELLANT

Carlo Sabatini
SABATINI LAW FIRM, LLC
216 N. Blakely St.
Dunmore, PA 18512
(570) 341-9000

*Attorney for
Clarence William Lewis, Jr.*

July 13, 2026

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................1

II. STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION.........................................................................................2

    A. Bankruptcy Court.................................................................................2

    B. District Court.......................................................................................3

    C. Court of Appeals .................................................................................3

    D. Finality and Timeliness.......................................................................3

III. STATEMENT OF THE ISSUES PRESENTED...........................................4

IV. STATEMENT OF RELATED CASES AND PROCEEDINGS...................6

V. CONCISE STATEMENT OF THE CASE .....................................................7

    A. Facts and Relevant Procedural History...............................................7

    B. The Rulings Presented for Review.....................................................10

VI. SUMMARY OF THE ARGUMENT ..................................................11

VII. STANDARD OF REVIEW ........................................................14

VIII. ARGUMENT ...........................................................................15

    A. The bankruptcy court abused its discretion by sua sponte reducing the
fee on grounds that The Money Source never raised. ........................15

        1. A court may not reduce a fee on a ground the opposing party never
raised. ..........................................................................................16

        2. The Money Source never objected to the briefing time, yet the court
reduced it by $15,520. .................................................................18

            a. The $8,520 reduction to the two fee-petition briefs was sua
sponte.......................................................................................20

            b. The $7,000 cut to the two motion-to-compel briefs rested on
complaints that The Money Source raised in negotiation but then
never pursued in court. ............................................................21

i

3. The District Court's contrary conclusion fails on de novo review, and its own authorities confirm the rule. ........................................23

4. The bankruptcy court recited the governing standard, then departed from it. ..............................................................................26

5. The error has an identifiable source: the court applied the independent-review model that governs fees paid from a bankruptcy estate instead of the adversarial model that governs contested fee-shifting. .................................................................................27

6. The remedy is to reinstate the disallowed time, not to remand. .................29

B. The bankruptcy court could not disregard the parties' stipulation that certain itemized entries were reasonable, because The Money Source reserved only the right to contest overall entitlement, not the reasonableness of those identified entries. ..........................................30

1. The meaning of the stipulation is a legal question reviewed de novo. ...................................................................................31

2. Paragraph 7 resolved reasonableness, leaving only entitlement for the court. ..................................................................................32

3. Paragraph 9's 'notwithstanding' clause reserved only the all-or-nothing entitlement defense, not a right to relitigate reasonableness. ...........33

4. The Money Source bound itself by stipulation and could be released only by a motion it never filed. ..................................................37

C. The bankruptcy court's reductions to communication time were arbitrary and unexplained. ................................................................39

1. The $3,050.25 communication reduction was clearly erroneous and arbitrary. ..............................................................................39

2. The reductions to the four briefs were equally unexplained. ...................42

3. Neither the percentage cut nor the District Court's affirmance can be reconciled with the findings the law requires. ..........................44

D. Even if The Money Source had specifically objected to the briefing time, the reductions were an abuse of discretion, because they cut those

briefs to a fraction of the time this Court, and the District Court's own authorities, recognize as reasonable. ...............................................45

    1. Courts in this Circuit measure reasonable briefing time in hours per page, drawing from Maldonado a benchmark of roughly three. ...................46

    2. Measured against that benchmark, the reductions are not close. ..............47

    3. The District Court's own authorities condemn the result. ........................48

    4. The two content rationales the District Court offered do not rescue the cuts. .....................................................................................................49

**IX. CONCLUSION** ...............................................................................**51**

**X. CERTIFICATIONS** ...........................................................................**54**

    A. CERTIFICATION OF BAR MEMBERSHIP ................................................54

    B. CERTIFICATE OF COMPLIANCE ...........................................................54

    C. CERTIFICATE OF SERVICE ..................................................................54

    D. CERTIFICATE THAT TEXT OF E-BRIEF AND HARD COPIES ARE IDENTICAL ...................................................................................55

    E. CERTIFICATE THAT E-BRIEF HAS BEEN VIRUS CHECKED .............55

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*,
  877 F.3d 136 (3d Cir. 2017) .................................................................. 14

*Beattie v. Colvin*,
  240 F. Supp. 3d 294 (D.N.J. 2017) ....................................................... 46

*Bell v. United Princeton Props., Inc.*,
  884 F.2d 713 (3d Cir. 1989) .......................................................... Passim

*Bilak v. Colvin*,
  73 F. Supp. 3d 481 (D.N.J. 2014) ......................................................... 47

*Cisneros v. Alpine Ridge Grp.*,
  508 U.S. 10 (1993) ................................................................................ 34

*City of Riverside v. Rivera*,
  477 U.S. 561 (1986) .............................................................................. 51

*Glick v. White Motor Co.*,
  458 F.2d 1287 (3d Cir. 1972) ............................................................... 37

*Goldshteyn v. Healthcare Revenue Recovery Grp., LLC*,
  No. CV 16-5049, 2018 WL 11486886 (E.D. Pa. Sept. 24, 2018) ....... 46

*Gonzalez v. Colvin*,
  146 F. Supp. 3d 661 (E.D. Pa. 2015) ................................................... 47

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000) ..................................................... 41, 43, 45

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .............................................................................. 50

*In re Badyrka*,
  No. 5:20-03618-MJC, 2022 WL 4656034
  (Bankr. M.D. Pa. Sept. 30, 2022) ..................................... 27, 28, 39, 42

*In re Busy Beaver Bldg. Ctrs., Inc.*,
   19 F.3d 833 (3d Cir. 1994)......................................................... 27, 28, 29

*In re Odyssey Contracting Corp.*,
   944 F.3d 483 (3d Cir. 2019)................................................................. 31

*In re Pro. Ins. Mgmt.*,
   285 F.3d 268 (3d Cir. 2002)................................................................. 14

*In re S.S. Body Armor I, Inc.*,
   961 F.3d 216 (3d Cir. 2020)........................................................... 17, 29

*In re Tower Air, Inc.*,
   397 F.3d 191 (3d Cir. 2005)................................................................. 14

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
   426 F.3d 694 (3d Cir. 2005)........................................................... 17, 44

*Koon v. United States*,
   518 U.S. 81 (1996) ............................................................................. 15

*Maldonado v. Houstoun*,
   256 F.3d 181 (3d Cir. 2001)........................................... 6, 25, 46, 47, 48

*McKenna v. City of Philadelphia*,
   582 F.3d 447 (3d Cir. 2009)........................................................... 24, 25

*Migliori v. Lehigh Cnty. Bd. of Elections*,
   No. 22-CV-397, 2025 WL 2493843 (E.D. Pa. May 19, 2025)...................... 48, 49

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008)............................................................... 41

*Moyer v. Colvin*,
   No. 1:23-CV-2137, 2025 WL 221802 (M.D. Pa. Jan. 16, 2025) ...................... 46

*NLRB v. SW General, Inc.*,
   580 U.S. 288 (2017) ............................................................................. 34

*Pacor, Inc. v. Higgins*,
   743 F.2d 984 (3d Cir. 1984)................................................................... 2

*Parilla v. IAP Worldwide Servs., VI, Inc.*,
   368 F.3d 269 (3d Cir. 2004)............................................................... 37

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
   478 U.S. 546 (1986)......................................................................... 29

*Pub. Interest Rsch. Grp. of N.J. v. Windall*,
   51 F.3d 1179 (3d Cir. 1995)............................................................. 15

*Rode v. Dellarciprete*,
   892 F.2d 1177 (3d Cir. 1990).............................................. 17, 20, 26, 43

*Silberman v. Bogle*,
   683 F.2d 62 (3d Cir. 1982).................................................... 15, 42

*Styers v. Pennsylvania*,
   621 F. Supp. 2d 239 (M.D. Pa. 2008) .................................................. 49

*Things Remembered, Inc. v. Petrarca*,
   516 U.S. 124 (1995) .......................................................................... 2

*Thompson v. City of Atl. City*,
   921 A.2d 427 (N.J. 2007)................................................................. 25

*United States ex rel. Palmer v. C&D Technologies, Inc.*,
   897 F.3d 128 (3d Cir. 2018)....................................... 16, 20, 26, 27, 28

*USX Corp. v. Penn Cent. Corp.*,
   130 F.3d 562 (3d Cir. 1997)............................................................. 31

*Waldorf v. Shuta*,
   142 F.3d 601 (3d Cir. 1998)................................................... Passim

*Walton v. Massanari*,
   177 F. Supp. 2d 359 (E.D. Pa. 2001) ............................................ 46, 48

STATUTES

11 U.S.C. § 330............................................................... 12, 27, 28

11 U.S.C. § 1322(b)(5)........................................................... 7

vi

12 U.S.C. § 2601 ...................................................................................... 7

15 U.S.C. § 1601 ...................................................................................... 7

28 U.S.C. § 157 ........................................................................................ 2

28 U.S.C. § 158 ........................................................................................ 3

28 U.S.C. § 1334(b) ................................................................................. 2


RULES

Fed. R. App. P. 4 ...................................................................................... 3

Fed. R. App. P. 6(b)(1)(A) ....................................................................... 3

Fed. R. Bankr. P. 3002.1 ...................................................................... 7, 8

3d Cir. L.A.R. Misc. 108.0 .................................................................... 53

## I.    <u>INTRODUCTION</u>

Congress made the fee award the engine of private enforcement under the Truth in Lending Act and the Real Estate Settlement Procedures Act. The amounts at stake in a consumer case like this one are small — here, the merits were resolved for $6,000 — so without a reliable recovery of reasonable fees, no competent lawyer can afford to vindicate the rights these statutes confer. The fee is not a windfall to counsel; it is what makes the statutes enforceable at all. When a court reduces a reasonable fee without a sound basis, the loss is not counsel's alone — it falls on every consumer for whom these claims will no longer be possible to bring.

These statutes also guard against a particular abuse. The borrower is contractually bound to pay certain mortgage servicer's attorney's fees; his principal check is the statutory right to demand that the charge be substantiated. When Lewis invoked that right, The Money Source did not defend the $900 that it had charged him. Instead, it withdrew the charge and refused to explain it. A servicer free to bill aggressively, collect in every case but the rare one where it is asked to justify the charge, and then shed the duty to respond by withdrawing once pressed, faces no real constraint on overbilling at all. Vindicating that right is precisely the work these fee-shifting provisions exist to pay for.

This appeal presents the question of the reasonableness of the time that counsel spent. It does not ask the Court to second-guess the size of a discretionary

1

reduction; it seeks correction of the legal and procedural errors in how the reduction was made. Deference to the fee-setting court does not extend to the use of the wrong legal standard.

## II. STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

### A. BANKRUPTCY COURT

28 U.S.C. § 1334(b) grants the district court original jurisdiction of all civil proceedings that are related to cases under Title 11. By orders of the district court entered on July 26, 1984 (Misc No. 84-0203) and September 11, 2000 (Standing Order No. 00-3), all proceedings that are "related to" a case under Title 11 were referred to the bankruptcy court pursuant to 28 U.S.C. § 157.

A proceeding is "related to" a case under Title 11 if its outcome could conceivably affect the bankruptcy case. See *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), overruled in part by *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995). Here, Appellant is a debtor in a Chapter 13 bankruptcy case. His confirmed Chapter 13 plan provided that all assets he acquired after the filing of the bankruptcy case would remain property of the bankruptcy estate until entry of his discharge. The claims asserted herein were post-bankruptcy assets and therefore property of the estate. The liquidation of the estate's property could affect the bankruptcy and is thus "related to" the bankruptcy case.

2

B.  DISTRICT COURT

Lewis appealed to the District Court for the Middle District of Pennsylvania, No. 3:24-cv-00387-JKM, which had appellate jurisdiction under 28 U.S.C. § 158(a)(1). The District Court (Munley, J.) affirmed by memorandum and order entered January 23, 2026 (Dist. Dkt. 16–17, Appx3, Appx22).

C.  COURT OF APPEALS

This Court has jurisdiction under 28 U.S.C. § 158(d)(1) over the District Court's final order.

D.  FINALITY AND TIMELINESS

The merits were resolved through an accepted Rule 68 offer of judgment, leaving open only the reasonable attorney's fee and costs. (Appx101.) The bankruptcy court's February 22, 2024 order fixing that fee (Bankr. Dkt. 136, Appx37) disposed of the last matter before it — a final order. The District Court's January 23, 2026 order affirming and closing the case is likewise a final, appealable order.

Lewis's appeal here is timely. Fed. R. App. P. 6(b)(1)(A), which incorporates Fed. R. App. P. 4, governs a notice of appeal from a district court exercising appellate jurisdiction. Under Rule 4(a)(1)(A), Lewis had 30 days from the January 23, 2026 entry of the District Court's order to appeal. Lewis filed his notice of appeal on February 21, 2026 (Dist. Dkt. 18, Appx56), within that period.

3

### III.   <u>STATEMENT OF THE ISSUES PRESENTED</u>

**1.** Under this Court's precedent, a district court may not sua sponte reduce a fee award as excessive absent a sufficiently specific objection. The Money Source opposed the fee petition on the generalized ground that counsel's time spent was "wholly unreasonable"; it presented no objection to the time counsel spent on any of the four briefs, and it expressly told the court it was not asking for line-by-line review. The court nonetheless cut $15,520 from those four briefs "based upon a review of the case docket, the Court's experience and a thorough review of the invoices submitted." Did the court err in making that reduction?

> (Reviewed de novo as a question of law. *Bankruptcy court — raised:* Pl.'s Reply ISO Fee Pet. § 2, Bankr. Dkt. 131, Appx173; the sua sponte reduction itself first appeared in the court's opinion; *ruled upon:* Bankr. Op. 11–14, Appx33–36. *District court — raised:* Appellant's D. Ct. Br., Dkt. 10 at 22, and D. Ct. Reply § I.E, Appx318; *ruled upon:* Dist. Op. 10–12, Appx12–14.)

**2.** A filed stipulation is a binding judicial admission, construed by its plain language; it binds the parties unless enforcing it would work a manifest injustice. The parties stipulated that, if the court found a fee award appropriate, The Money Source would not challenge the reasonableness of certain specified entries. The court did find a fee appropriate, yet reduced at least eighty-six of those entries—

without either party seeking relief from the stipulation and without any finding of injustice. Did the court err in disregarding the stipulation?

(Construction of a stipulation is reviewed de novo. *Bankruptcy court —* *raised:* the court disregarded the stipulation only in its ruling; *ruled upon:* *sub silentio*, Bankr. Op. 13, Appx35. *District court — raised:* Appellant's D. Ct. Br., Dkt. 10, at 10; D. Ct. Reply § I.B, Appx313; *ruled upon:* Dist. Op. 14 & n.4, Appx16.)

3.     A court may not reduce a fee arbitrarily or indiscriminately, and it must make findings specific enough to support the reduction. The bankruptcy court applied a flat 75% cut to an entire category of communication entries and struck round, unexplained blocks of hours from four briefs, labeling the time only as "excessive." It identified no specific entry or task it found improper and never explained how it arrived at the amounts removed. Were the reductions arbitrary and unsupported by the required findings?

(The reduction is reviewed for abuse of discretion; the procedure applied is reviewed de novo, and factual findings for clear error. *Bankruptcy court —* *raised*: Pl.'s Reply ISO Fee Pet. § 2, Appx173–174; the absence of the required findings first appeared in the court's opinion; *ruled upon*: Bankr. Op. 13–14, Appx35–36. *District court — raised*: Appellant's D. Ct. Br., Dkt. 10, at 18 & 25; *ruled upon*: Dist. Op. 13–18, Appx15–20.)

5

**4.** A discretionary ruling that no reasonable person would adopt is an abuse of discretion. The court measured counsel's briefing time against the briefs' page length and made reductions that left counsel between 0.23 and 0.46 hours per page—a fraction of the roughly three hours per page this Court allowed in *Maldonado v. Houstoun*, and well below every comparator the District Court cited while affirming. Even if the briefing time had been properly challenged, did cutting it so deeply exceed the bounds of the court's discretion?

> (Reviewed for abuse of discretion; factual findings for clear error. *Bankruptcy court — raised*: Pl.'s Br. ISO Fee Pet. 7–9, Bankr. Dkt. 129, Appx134–136; the depth of the cuts could be challenged only once made; *ruled upon*: Bankr. Op. 13–14, Appx35–36. *District court — raised*: Appellant's D. Ct. Br., Dkt. 10, at 28–30; *ruled upon*: Dist. Op. 14–17, Appx16–19.)

## IV.  <u>STATEMENT OF RELATED CASES AND PROCEEDINGS</u>

This case has not previously been before this Court, and counsel is aware of no other appeal arising from the same proceeding. However, there is one related proceeding: *Lewis v. The Money Source, Inc.*, Adv. No. 5:23-ap-00007-MJC (Bankr. M.D. Pa.) ("*Lewis II*"), a separate, now-resolved adversary proceeding between the same parties.

In *Lewis II*, Lewis alleged that The Money Source continued to collect from him the same $900 in fees that The Money Source had disclaimed and that were the subject of the requests for information underlying this action. *Lewis II* was resolved by a court-approved settlement and closed on July 30, 2024.

## V.    CONCISE STATEMENT OF THE CASE

### A.  FACTS AND RELEVANT PROCEDURAL HISTORY

Clarence Lewis fell behind on his mortgage with The Money Source, Inc., and the servicer initiated foreclosure proceedings. (Bankr. Op. 2, Appx24.) He filed a Chapter 13 bankruptcy petition on April 30, 2019, and proposed a plan to cure the arrears.[1] (*Id*.) The Money Source's counsel reviewed the plan, filed a proof of claim, and then filed a notice under Bankruptcy Rule 3002.1 stating that it would seek to recover from Lewis the $900 it had paid its lawyer for that work. (*Id.*) The Money Source asserted those fees as recoverable against Lewis's mortgage. (Bankr. Op. 1, Appx23; see Fed. R. Bankr. P. 3002.1(c).)

The $900 charge seemed large relative to the work performed, so Lewis's counsel sought to use the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*, to obtain

---

[1] Chapter 13 lets a homeowner stop a foreclosure by curing the mortgage arrears through a court-supervised payment plan, typically over three to five years, while keeping up the regular monthly payments. *See* 11 U.S.C. § 1322(b)(5).

information about it.[2] (Sabatini Aff. & Ex., Appx191; Compl. ¶ 1, Appx57.) In response, The Money Source withdrew the Rule 3002.1 fee notice and disclaimed any entitlement to the fees it had charged. (Dist. Op. 2, Appx4.) It then refused to provide the requested information, later arguing that Lewis no longer needed it. (Compl. ¶ 58, Appx64; Def.'s Opp. to Fee Pet. 12, Appx152.) Neither statute, however, allows a servicer to refuse to respond based on its unilateral determination that a consumer has no "need" for the information.

Lewis sued The Money Source in bankruptcy court, seeking statutory damages under both statutes, together with costs and attorney's fees. (Compl. ¶ 1, Appx57.) Both counts survived The Money Source's motion to dismiss. (MTD Op. 13, Appx78.) A little over three years after the action started, the parties finally resolved the merits through a Rule 68 offer of judgment that provided "$6,000.00, plus an additional amount for costs and reasonable attorney's fees." (Offer of J.,

---

[2] Before sending the request, Lewis's counsel asked The Money Source's bankruptcy counsel, by email on July 29, 2019, whether counsel was "authorized to receive" the RESPA request "for your client," or whether it should instead be "sen[t] directly to The Money Source, Inc." Counsel answered the next morning: "Sorry, we cannot accept service." (Sabatini Aff. & Ex., Appx191) The Money Source thus directed Lewis to deal with it directly; any later suggestion that the request reflected improper direct contact or a "manufactured" claim (Doc. 130 at 2 and 15, Appx142 and 155) is answered by its own counsel's instruction.

Appx103.) Unlike The Money Source's two earlier offers, the accepted offer placed no temporal limit on the recoverable fees. (Bankr. Op. 10 n.5, Appx32.)[3]

The parties then turned to fees and costs. A mediation narrowed their differences, (Bankr. Op. 4, Appx26), and they filed a stipulation resolving certain aspects of the dispute. (Stip., Bankr. Dkt. 117, Appx79–80.) They agreed on the hourly rates, *id.* ¶ 4; they agreed that Defendant would not challenge the reasonableness of the time entries marked in green on Lewis's bill, Exhibit A1, "if the Court determine[d] that an award of fees is appropriate," *id.* ¶ 7; they identified the entries that remained in dispute, *id.* ¶ 8; and, "[n]otwithstanding any contrary language in th[e] stipulation, Defendant further retain[ed] the right to argue that **no** award of fees is appropriate, and that therefore no fee at all should be awarded," *id.* ¶ 9 (emphasis in original).

Lewis then filed a fee petition seeking $66,678.68. (Pet., Bankr. Dkt. 128, Appx104.) At the hearing on the petition, he requested an additional $15,000 for the time spent from the filing of the fee petition through the hearing, (Tr. 66:4–10, Appx262; Pl.'s Ex. 15, Appx274 (supplemental bill, Dec. 11, 2022–Jan. 31, 2023,

---

[3] The $6,000 judgment was entered "in satisfaction of all claims," (Offer of J., Appx103), and was three times the $2,000 The Money Source itself had estimated as the most Lewis could recover. The Money Source's early negotiating position was that a maximum award "under both statutes" would be "$1,000 under each", $2,000 in all, and that it saw "no way" Lewis would recover even that. (Sabatini Aff. Ex. 2, Appx194.)

admitted Tr. 12:10–12, Appx208)), bringing the total request to $81,678.68 in fees, plus $164.61 in costs.[4] (Bankr. Op. 10 & n.6, Appx32.)

On February 22, 2024, the bankruptcy court granted the petition in part and denied it in part. It held that Lewis was entitled to fees under the plain terms of the Rule 68 offer. (Bankr. Op. 10, Appx32.) It then reduced the requested fees by $18,570.25 and awarded $63,108.43 in fees and $164.61 in costs. (Bankr. Op. 14, Appx36.) The reductions fell entirely on the time spent on four briefs and on a group of communication entries.[5] (Bankr. Op. 13–14, Appx35–36.) The court left the stipulated hourly rates undisturbed and did not reduce the award on any other ground. (*Id.*)

B.  THE RULINGS PRESENTED FOR REVIEW

This is a second-tier bankruptcy appeal. The order under review is the bankruptcy court's opinion and order of February 22, 2024, granting in part and denying in part Lewis's petition for attorney's fees and costs. (Bankr. Op., Bankr.

---

[4] The District Court's opinion lists the costs as "$164.41." (Dist. Op. 3, Appx5.) That is a typographical error; the petition sought, and the bankruptcy court awarded, $164.61 in costs. (Bankr. Op. 14, Appx36.)

[5] The bankruptcy court treated the ninety-eight entries of .1 hours as a single category of "communication[s]." (Bankr. Op. 13, Appx35.) The label is imprecise: the group also includes entries for reviewing docket filings, legal research, and drafting (e.g., Appx82), though most of the entries are indeed emails, calls, or conferences. Because nothing in this appeal turns on the classification, this brief adopts the court's shorthand and calls the group the "communication entries."

Dkt. 135, Appx23; Order, Bankr. Dkt. 136, Appx37.) The District Court (Hon. Julia K. Munley) affirmed on January 23, 2026. (Dist. Op., Dist. Dkt. 16, Appx3; Order, Dist. Dkt. 17, Appx22.) Lewis appeals. (Notice of Appeal, Dist. Dkt. 18, Appx1.) The Money Source did not cross-appeal.[6]

## VI.   SUMMARY OF THE ARGUMENT

The Bankruptcy Court awarded $63,108.43 of the $81,678.68 Lewis requested. The $18,570.25 it cut fell on two categories alone: $15,520 from the time spent on four briefs, and $3,050.25 from communication entries. Each reduction is independently defective, and the defects are principally ones of law and procedure, not matters of degree on which a fee court's discretion commands deference.

First, the briefing cuts were imposed sua sponte. The Money Source's written opposition disputed *entitlement* — arguing that no fee was owed and that any award should be capped at the $6,000 merits figure — and otherwise attacked counsel's hours only in the aggregate, as "wholly unreasonable." It never mentioned any of the four briefs. Indeed, it expressly disclaimed line-by-line

---

[6] While this appeal was pending in the District Court, The Money Source tendered payment of the undisputed amounts the bankruptcy court had awarded, pursuant to a stipulated order providing that acceptance "shall not be deemed a waiver of any argument" and that the court would "retain jurisdiction." (Dist. Dkt. 6, Appx276.) Lewis's challenge to the disallowed portion of the fee remains live.

review, in writing and on the record, and the bankruptcy court found — in a finding never contested — that The Money Source "did not identify any specific time entries that were excessive."

A court may not reduce a fee on a ground the adverse party never raised; its discretion operates on the objections actually made, and extends no further. The bankruptcy court recited that rule, then departed from it, cutting time from the four briefs based on its own review of the docket and the invoices. The error has a source: the court imported the independent-review model that governs bankruptcy estate-paid fee applications under 11 U.S.C. § 330, where the court examines fees on its own because parties-in-interest may lack the economic incentive to object. That model has no place in an adversarial fee-shifting dispute. There, the party responsible for payment is present, motivated, and charged with making specific objections—and when it makes none, there is no gap for the court to fill.

Second, the 75% reduction of the communication entries fell almost entirely on time The Money Source had stipulated was reasonable. In the parties' stipulation, The Money Source identified the specific entries on counsel's bill that it would not challenge, agreeing that those entries were reasonable "if the Court determines that an award of fees is appropriate" — a condition satisfied when the court held that the Rule 68 offer entitled Lewis to a reasonable fee. Yet of the $3,050.25 cut, all but $124.50 came from time that was either covered by that

12

concession or already written off and never billed. The District Court's holding that the stipulation was "effectively withdrawn" when The Money Source opposed the petition conflates the reserved all-or-nothing entitlement defense with a right to relitigate reasonableness, and excuses The Money Source from the motion — and the showing of manifest injustice — that is required before a party is relieved of a binding stipulation.

Third, the reductions were arbitrary and unexplained. The court cut the ninety-eight communication entries — entries that The Money Source never even identified — by a flat 75%, without finding any particular communication unnecessary and without explaining how it selected 75% rather than any other figure. It made these cuts even though only $124.50 of that time was both billed and genuinely in dispute. And it justified each briefing cut with little more than the label "excessive," striking round blocks of hours while identifying no task that should have taken less time. A reduction made without the specific findings the law requires is an abuse of discretion.

Fourth, the per-brief reductions fail even on the court's own metric. The court measured the briefing time against page length — the only measure it invoked — yet counsel had billed under 1.3 hours per page on every brief at issue. That conservative billing was already below each comparator in this Circuit, where courts have drawn a working benchmark of roughly two to three hours per page.

The reductions the court imposed left counsel between 0.23 and 0.46 hours per page: a fraction of the benchmark, and well below every authority the District Court cited in affirming.

Because the disallowed time was unchallenged, stipulated to be reasonable, or fully supported, the presumption of reasonableness attaching to a supported fee request stands unrebutted, and nothing remains to be decided below. The Court should reverse and direct an award of the full requested fee; remand is warranted only if the Court concludes that some issue remains.

## VII.   <u>STANDARD OF REVIEW</u>

This appeal comes to this Court from an order of the District Court that, sitting as an appellate tribunal, affirmed an order of the Bankruptcy Court. This Court does not defer to the District Court; instead, it reviews "the Bankruptcy Court's legal determinations *de novo*, its factual findings for clear error, and its exercises of discretion for abuse thereof." *In re Tower Air, Inc.*, 397 F.3d 191, 195 (3d Cir. 2005) (internal quotation marks omitted).[7] The District Court's determinations are subject to plenary review. *In re Pro. Ins. Mgmt.*, 285 F.3d 268,

---

[7] Both parties litigated the fee petition exclusively under federal fee-shifting jurisprudence, and the Bankruptcy Court decided it under that law. (Bankr. Op. 10–12, Appx32–34.) Any contention that state law supplies a different measure was never presented to the Bankruptcy Court and is forfeited. *See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 148 (3d Cir. 2017).

282 (3d Cir. 2002). The question presented is therefore whether the *Bankruptcy Court* erred, not whether the District Court's reasons for affirming were sound.

Because a fee award is committed to the Bankruptcy Court's discretion, the amount awarded is reviewed for abuse of discretion — but that discretion has limits. The court abuses it unless it "employs correct standards and procedures and makes findings of fact not clearly erroneous," *Pub. Interest Rsch. Grp. of N.J. v. Windall*, 51 F.3d 1179, 1184 (3d Cir. 1995) (internal quotation marks omitted), or where it reaches a result that no reasonable person would adopt, *Silberman v. Bogle*, 683 F.2d 62, 65 (3d Cir. 1982). The legal standards the court was required to apply are themselves questions of law subject to plenary review. *Windall*, 51 F.3d at 1184.[8]

## VIII. <u>ARGUMENT</u>

### A. <u>THE BANKRUPTCY COURT ABUSED ITS DISCRETION BY SUA SPONTE REDUCING THE FEE ON GROUNDS THAT THE MONEY SOURCE NEVER RAISED.</u>

A court fixing a fee award may not reduce it on a ground the opposing party never put in issue. The rule is settled in this Circuit, and the bankruptcy court's own findings show it was not followed here. The Money Source opposed Lewis's fee petition on the generalized ground that counsel's hours were, as a whole,

---

[8] Even a ruling committed to discretion is reviewed without deference to the extent it rests on an error of law. *Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law.")

"wholly unreasonable." (Bankr. Op. 11–12, Appx33–34.) It never identified, challenged, or even mentioned the time Lewis's counsel spent on any of the four briefs that the court singled out for reduction. The court reduced the fee by $15,520 on those four briefs anyway, after conducting its own review of the docket and the invoices. (Bankr. Op. 12–14, Appx34–36.) That was a *sua sponte* reduction; it departed from the procedure the law requires, and it was therefore an abuse of discretion.[9]

### 1. *A court may not reduce a fee on a ground the opposing party never raised.*

The burden in a fee dispute rests on the party opposing the fee to challenge it with sufficient specificity, and "[o]nce the challenging party does so, the district court has a great deal of discretion to adjust the fee award in light of those objections." *United States ex rel. Palmer v. C&D Technologies, Inc.*, 897 F.3d 128, 139 (3d Cir. 2018) (internal quotation marks omitted). The discretion runs to the objections actually made, and no further. What a court may not do is "decrease a

---

[9] This first argument concerns only the $15,520 the bankruptcy court disallowed from four briefs. The court separately reduced ninety-eight communication entries by $3,050.25 – the one reduction it tied to any passage of The Money Source's opposition. (*See* Bankr. Op. 13, Appx35; Bankr. Dkt. 130 at 18, Appx158.) Whether that passage was an objection specific enough to satisfy *Bell v. United Princeton Props., Inc.*, 884 F.2d 713 (3d Cir. 1989) need not be decided, because those entries were stipulated as reasonable, and the cut was arbitrary in any event. (See Arguments B and C, *infra*.) The communication cut is not part of the sua sponte reduction challenged in this first argument.

16

fee award based on factors not raised at all by the adverse party." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing *Bell*, 884 F.2d at 720). The objection must be "specific and clear enough that the fee applicants have a fair chance to respond and defend their request." *Bell*, 884 F.2d at 720. This Court has put the prohibition plainly: "The court may not reduce an award *sua sponte*; rather, it can only do so in response to specific objections made by the opposing party." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005), *as amended* (Nov. 10, 2005) (citing *Bell*). That is the same decision the District Court invoked for its requirement that a court must review the billing records "line, by line, by line." (Dist. Op. 13, Appx15.) A reduction made without the required objection is a failure to follow proper procedure, and such a failure is an abuse of discretion. *In re S.S. Body Armor I, Inc.*, 961 F.3d 216, 225 (3d Cir. 2020); *see* Standard of Review, *supra*.

A generalized complaint that the overall fee is too large is not such an objection. This Court has been explicit that an opponent's "submissions cannot merely allege in general terms that the time spent was excessive"; the objector must "generally identify the type of work being challenged" and "specifically state … [its] grounds" as to that work. *Bell*, 884 F.2d at 720.

17

## 2. *The Money Source never objected to the briefing time, yet the court reduced it by $15,520.*

What The Money Source argued below is not in dispute, because the bankruptcy court described it. The Money Source "lodged very few objections to specific time entries. Its objection was more generalized and was based on a blanket statement that the professional fees were wholly unreasonable … ." (Bankr. Op. 11–12, Appx33–34, footnote omitted.) The court found that The Money Source "did not identify any specific time entries that were excessive," (*id.* at 12 n.9), and it expressly "limit[ed] its review of the time entries to that ground," the generalized excessiveness of the time spent. (*Id.* at 12.)

The Money Source did not merely *fail* to make specific objections; it *disclaimed* them — in writing and on the record. Its opposition asked the court to "decline to review Sabatini's time entries on a line by line basis because neither the Court nor [The Money Source] can identify whether most individual time entries are, standing by themselves, reasonable or not." (Doc. 130 at 19, Appx159.) At the hearing, its counsel repeated the point: reviewing the invoices "on a line-by-line basis is a bit of an exercise in futility" (Tr. 46:17–19, Appx242), and he was "certainly not asking the Court to go through on a line-by-line basis" (Tr. 73:18–19, Appx269). When the court put the question directly — "You paint with a broad brush, but you don't get into the nitty gritty. And I'm wondering if you're expecting the Court to do that for you" — counsel answered: "I am not, Your

18

Honor." (Tr. 72:17–20, Appx268; quoted in part, Bankr. Op. 12 n.8, Appx34.) The court also noted Plaintiff's counsel's point that "$36,758 has not been challenged by" The Money Source; The Money Source's counsel disagreed with the characterization but identified no specific entries he had in fact challenged. (Tr. 72:1–74:6, Appx268–270.)

None of what The Money Source argued to the bankruptcy court had anything to do with the briefs. The four briefing reductions fell on time that the court found "excessive" only after *its own review* of "the case docket" and "the invoices submitted":

| Brief | Hours billed | Hours disallowed | Reduction |
|---|---|---|---|
| Motion to Compel – supporting brief (Dkt. 66) | 18.9 | 12 | $4,200 |
| Motion to Compel – reply brief (Dkt. 77) | 11.5 | 8 | $2,800 |
| Fee Petition – supporting brief (Dkt. 129) | 8.3 | 6 | $2,295 |
| Fee Petition – reply brief (Dkt. 131) | 23.3 | 15 | $6,225 |
| **Total disallowed** | | | **$15,520** |

(Bankr. Op. 12–14, Appx34–36.)

The Money Source's opposition addressed: (1) whether Plaintiff was entitled to recover any fee at all, and (2) the global reasonableness of the "over 183 hours" spent on the merits. It did not mention any of these four briefs. It asked only that

the entire fee be capped at the $6,000 figure in the Rule 68 offer, a request for which, the court observed, it "offered no case law in support." (Bankr. Op. 12, Appx34.) Because The Money Source did not object to the briefing time, there was no objection "in light of" which the court could exercise its discretion. *See C&D Technologies*, 897 F.3d at 139 (citing *Rode*, 892 F.2d at 1183). The $15,520 reduction was imposed *sua sponte*.

> a. <u>The $8,520 reduction to the two fee-petition briefs was sua sponte.</u>

The court disallowed $6,225 of the time counsel spent on the reply brief in support of the fee petition. (Bankr. Op. 14, Appx36.) That brief was filed on January 23, 2023, two weeks after The Money Source filed its opposition on January 9, 2023. (Bankr. Dkt. Nos. 130, 131, Appx51.) The Money Source could not have objected to the reply in its opposition papers, because the reply did not yet exist. And, The Money Source also failed to object at the subsequent fee petition hearing, even though the court itself squarely put the reply time at issue. At the hearing, the court steered Lewis's counsel to the post-opposition billing and confirmed that the reply reflected "[r]oughly" thirty hours of work (Tr. 64:11–65:15, Appx260–261). The Money Source, given rebuttal time afterward (Tr. 66:13–74:6, Appx262), did not object to it. A fee applicant cannot answer an objection that the opposing party never made.

20

The $2,295 cut to the fee-petition supporting brief stands on the same footing. The time for that brief was billed in November 2022 and appears on Exhibit B to the petition. (Appx126–127.) Thus, the time was spent after the period covered by the parties' stipulation and its negotiated schedules. Lewis's opening brief expressly flagged the point: The Money Source "has not yet had an opportunity to challenge the time entries from October 28, 2022 through the present." (Pl.'s Br. ISO Fee Pet. 6, Appx133.) When its opportunity came, The Money Source challenged none of that time — neither in its opposition, nor at the hearing. The reduction of the fee-petition briefing was, from first to last, the court's own initiative.

    b. <u>The $7,000 cut to the two motion-to-compel briefs rested on complaints that The Money Source raised in negotiation but then never pursued in court.</u>

The remaining $7,000 cut was for the motion-to-compel briefing: $4,200 for the supporting brief and $2,800 for the reply. Both briefs predated The Money Source's written opposition, so The Money Source had every opportunity to object to that time. It did not. Its opposition raised only the generalized "wholly unreasonable" ground that the court described, and identified no specific entry. (Bankr. Op. 11–12 & n.9, Appx33–34.)

The Money Source may answer that it raised complaints about the briefing time during the parties' negotiations, and that Lewis addressed them in his

supporting brief. That does not save the cuts. The filed stipulation records what that negotiation produced. The motion-to-compel briefing time appears, undiscounted, on the schedule of entries that the parties still disputed. (Stip. ¶ 8, Appx80; Ex. A2 (entries of May 28–Aug. 2, 2021), Appx123–124.) But when The Money Source filed its opposition, it did not reassert those positions; it should, as Lewis argued below, "be considered to have forfeited" them. (Pl.'s Reply ISO Fee Pet. 9, Appx177.) The filed opposition, not a position floated and then abandoned, is what frames the grounds on which the court may act.

Nor can The Money Source find the missing objection in Lewis's own briefs. Lewis's opening brief described briefing time as the largest category out of the concerns that The Money Source had raised, and preemptively defended that time — because Lewis "expect[ed] … that Defendant would raise with the Court the same specific objections that it had raised during negotiations. After all, that was the whole point of the agreement to narrow the issues." (Pl.'s Br. ISO Fee Pet. 7–9, Appx134–136; Pl.'s Reply ISO Fee Pet. 9, Appx177.) The expectation was not met: the opposition that The Money Source actually filed made a different strategic choice, seeking a $6,000 cap on entitlement and proportionality grounds while expressly declining to engage line by line. A fee applicant's anticipatory defense of his own time is not an adversary's objection to it. Under *Bell*, the objections that frame the court's discretion are those the adverse party raises in its "submissions"

22

to the court, 884 F.2d at 720 — not positions once taken in negotiation and then withheld from the court, and not the applicant's guess about which objections might be coming.

      3.   *The District Court's contrary conclusion fails on de novo review, and its own authorities confirm the rule.*

The District Court held that the bankruptcy court "did not act *sua sponte*" because, "[b]ased on Appellant's [sic] objections, the bankruptcy court decided to review the case docket and thoroughly examine the invoices submitted." (Dist. Op. 12, Appx14.) The sentence refutes its own holding. Everything after its opening clause describes independent review: the *court*—not the objector—decided to examine the docket and invoices, and the *court*—not the objector—selected the four briefs as its target. The Money Source's generalized objection identified no entry, no task, and no brief, and it expressly disclaimed line-by-line review. An objection that is specific in nothing cannot make the court's self-directed search anything other than *sua sponte*; it occasioned the review, but it supplied none of the grounds.

From that false premise, the district court then concluded that "the bankruptcy court did not abuse its discretion in revisiting all the time entries of Appellant's professionals." (Dist. Op. 14, Appx16.) The premise does not support the conclusion, and the authorities the District Court cited cut the other way.

First, the District Court read *Bell* for half of what it holds. It quoted *Bell*'s observation that it "would be nearly impossible, or at least extraordinarily burdensome," for an objector "to point to all the entries" it believes unreasonable, and concluded that an objector "need not point to each individual excessive entry." (Dist. Op. 11–12, Appx13–14, quoting *Bell*, 884 F.2d at 720.) That passage relieves a party from making a comprehensive list identifying every single entry; it does not relieve the party of the obligation to object in the first place. The same opinion holds that the challenge must still be "specific and clear enough that the fee applicants have a fair chance to respond," *Bell*, 884 F.2d at 720, and that a court may not "decrease a fee award based on factors not raised at all by the adverse party," *id.* at 720.

Those two holdings work together. An objector is excused from cataloging every entry only once it has already made an objection specific enough to answer. The District Court quoted the excuse and ignored its precondition. The Money Source's generalized attack on 183 hours of merits time was not an *under*-itemized objection to the briefs; it was *no* objection to the briefs at all.

Second, *McKenna v. City of Philadelphia*, 582 F.3d 447 (3d Cir. 2009), is not authority for the reduction; it is authority against it. *McKenna* affirmed fee reductions precisely because the objections there gave specific notice: "defendants' objections were sufficiently specific to provide [counsel] with notice that he should

24

be prepared to defend the hours billed for preparation of the complaint, the jury instructions, and the fee petition, which were the three filings for which the Court deducted hours." *Id.* at 459. And *McKenna* reaffirmed *Bell*'s rule: "A district court should not 'decrease a fee award based on factors not raised at all by the adverse party.'" *Id.* at 459 (quoting *Bell*, 884 F.2d at 720). Here, The Money Source gave no notice as to the briefs, so *McKenna*'s own rule forbids the cut. The *McKenna* footnote the District Court relied upon, *id.* at 459 n.13 (Dist. Op. 13, Appx15), rests on a single authority describing a settlement that was "so infected with conflicts of interest that it [was] void," *Thompson v. City of Atl. City*, 921 A.2d 427, 430 (N.J. 2007). Refusing to approve a conflict-infested and void settlement is a long way from acting sua sponte to reduce attorney time that no party objected to.

*Third, Maldonado v. Houstoun* does not authorize a roving reduction either. The District Court cited it for the proposition that a fee court has "'an active and affirmative function in the fee-fixing process,' extending beyond a passive acceptance of submitted requests." (Dist. Op. 13, Appx15, *quoting Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).)[10] So it does. In *Maldonado*, the defendant did not merely brand the fee unreasonable; it lodged category-specific objections to the briefing hours (*Maldonado*, 256 F.3d at 183), the hourly rates (*id.*

---

[10] The memorandum uses the phrase "an active and affirmative function." *Maldonado*'s language is "positive and affirmative." 256 F.3d at 184. The difference does not affect the analysis.

at 188), and argued for a reduction based on lack of success (*id*.). It also supplied its own line-by-line lodestar, which this Court ultimately awarded. (*Id*.) The Court's "positive and affirmative function" was exercised on the specific objections the objector actually raised, not as a commission to revisit time no one had questioned.

*Finally,* the District Court's conclusion that the bankruptcy court could "revisit[] all the time entries" rested in part on its view that The Money Source's stipulation to the reasonableness of the agreed "entries was effectively withdrawn when [it] opposed the fee petition." (Dist. Op. 14, Appx16.) That premise is mistaken (see Argument B, *infra*), and it does nothing to supply the missing objection: withdrawing a concession is not the same as objecting. Even setting the stipulation aside, The Money Source still never challenged the briefing time, so the reduction of that time remained *sua sponte*.

> ### 4. *The bankruptcy court recited the governing standard, then departed from it.*

The court stated the rule correctly and then failed to apply it. Citing *C&D Technologies*, *Bell*, and *Rode*, the court recognized that "[a] party opposing a fee request has the burden to challenge the reasonableness of the fees with sufficient specificity," and that only once it does so does the court acquire "a great deal of discretion to adjust the fee award in light of those objections." (Bankr. Op. 11, Appx33.) Having found that The Money Source had done no such thing, (Bankr.

Op. 11–12, Appx33–34), the court cut the four briefs anyway – not on any objection, but "based upon a review of the case docket, the Court's experience and a thorough review of the invoices submitted." (*Id.* at 12–13, Appx34–35.) That is the very discretion *C&D Technologies* withholds until a specific objection is made, *C&D Technologies*, 897 F.3d at 139, and it should not have been exercised absent such an objection.

> 5. *The error has an identifiable source: the court applied the independent-review model that governs fees paid from a bankruptcy estate instead of the adversarial model that governs contested fee-shifting.*

The departure from the rule has a traceable source. Guided throughout by the analogy to its own decision in *In re Badyrka*, No. 5:20-03618-MJC, 2022 WL 4656034 (Bankr. M.D. Pa. Sept. 30, 2022), the court reduced the briefing time by the same docket-and-experience review quoted above. (Bankr. Op. 12–13, Appx34–35.) That is the method the law prescribes for a *different* kind of fee proceeding. When a professional is to be paid from a debtor's bankruptcy estate under 11 U.S.C. § 330, the bankruptcy court has an independent duty to review the fee application even if no party objects – a duty that "derives from the court's inherent obligation to monitor the debtor's estate and to serve the public interest." *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3d Cir. 1994).

*Busy Beaver* explained why that duty must fall on the court: in the ordinary bankruptcy fee proceeding no adversary can be relied on to police the request, so

"the task of reviewing fee applications falls by default onto the bankruptcy courts." *Id.* at 843. *Badyrka* was exactly that kind of case: a Chapter 13 debtor's counsel's § 330 application, reviewed on the court's own initiative, with no adversary bearing any burden of objection. *Badyrka*, 2022 WL 4656034, at *8.

A contested fee-shifting petition is the opposite case — and *Busy Beaver* itself said so. The Third Circuit was emphatic that the sua sponte duty described in *Busy Beaver* does not extend to fee-shifting litigation, because the structural feature that makes independent judicial review necessary in bankruptcy is absent there:

> Bankruptcy cases do not … share a common bond with "statutory fee" cases. In that genre of cases, the adversarial nature of the proceedings, the result of the losing parties' obligation to bear the burden of the fees awarded, guarantees that someone other than the court will closely review the fee request and will bring to the court's attention potential deficiencies, hence ensuring a more precise fee award.

*Busy Beaver*, 19 F.3d at 842. This is such a case. The fee is not paid by an estate the court must protect; it comes from an adversary fully able to protect itself and obligated to bear whatever is awarded. The burden of specific objection therefore rests on that adversary. *C&D Technologies*, 897 F.3d at 139.

Lewis drew precisely this distinction for the bankruptcy court (Pl.'s Reply ISO Fee Pet. 5–6, Appx173–174), and the court did not dispute it. Yet the court proceeded in the *Badyrka* mode anyway — deploying the § 330 supervisory

28

method that *Busy Beaver* reserves for estate cases in a dispute *Busy Beaver* itself classifies as adversarial. Which of the two models governs is a question of law, reviewed de novo; conducting an adversarial fee dispute under the supervisory model is a failure to follow the required procedure and therefore an abuse of discretion. *In re S.S. Body Armor I, Inc.*, 961 F.3d at 225.

### 6. *The remedy is to reinstate the disallowed time, not to remand.*

Because the $15,520 was disallowed *sua sponte*, the proper relief is to reinstate it. An adequately supported fee request carries a presumption of reasonableness. "[W]hen … the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is *presumed* to be the reasonable fee to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986), *supplemented,* 483 U.S. 711 (1987) (emphasis in original, internal quotation marks omitted). The Money Source never rebutted that presumption as to the briefing time, because it never asserted a sufficient objection to it. The presumption therefore stands, the lodestar for that time is established, and nothing is left for the bankruptcy court to determine on remand.

This Court should reverse and direct that the $15,520 be awarded, or, at the least, remand with instructions to award it. *Bell* tolerates a reduction that does not mirror the objection only where the applicant had "sufficient notice to present his

29

or her contentions with respect to the reduction that the [trial] court ultimately makes." *Bell*, 884 F.2d at 722. Where there was no notice and no objection at all, there is no contention that the applicant failed to present, only time the court reduced on its own initiative.

B. THE BANKRUPTCY COURT COULD NOT DISREGARD THE PARTIES' STIPULATION THAT CERTAIN ITEMIZED ENTRIES WERE REASONABLE, BECAUSE THE MONEY SOURCE RESERVED ONLY THE RIGHT TO CONTEST OVERALL ENTITLEMENT, NOT THE REASONABLENESS OF THOSE IDENTIFIED ENTRIES.

After the fee mediation failed, the parties did what stipulations are meant to do: they narrowed the issues. (Stip. ¶ 3, Appx79.) The Money Source made two concessions and two reservations, and the line between them decides this issue. It conceded that the professionals' hourly rates were reasonable (Stip. ¶ 4, Appx79), and it conceded that, "if the Court determines that an award of fees is appropriate," it "will not challenge the reasonableness of the entries on Exhibit A that are annotated with green underlining" (Stip. ¶ 7, Appx80). It reserved its disagreement over the entries that were neither discounted nor marked in green (Stip. ¶ 8, Appx80), and it reserved a single threshold defense: the right "to argue that **no** award of fees is appropriate, and that therefore no fee at all should be awarded" (Stip. ¶ 9, Appx80) (emphasis in original). What it never reserved was any right to contest the reasonableness of the green entries once a fee was owed.

30

The bankruptcy court honored the rate stipulation. (Bankr. Op. 10 n.7, Appx32.) But it disregarded the ¶ 7 concession. It applied a flat 75% cut to ninety-eight communication entries — at least eighty-six of which, and on the objection's own figures likely every one (see *infra* n.13), were green-underlined entries that The Money Source had agreed not to challenge — and subtracted $3,050.25 from the award. (Bankr. Op. 13, Appx35.) Of the twelve entries in the group that were not green-underlined, nine had already been written off and were never billed; the three that were billed total $124.50 (see *infra* n.12). Therefore, every dollar of the reduction beyond $124.50 fell on time that was either stipulated to be reasonable or never charged at all. The District Court compounded the error, holding that the stipulation was "effectively withdrawn" the moment The Money Source opposed the petition. (Dist. Op. 14, Appx16.) Both courts misread the stipulation.

    *1. The meaning of the stipulation is a legal question reviewed de novo.*

What ¶ 7 means, and whether it bound The Money Source once the court found that a fee was owed, are questions of stipulation interpretation. In construing a stipulation, a court considers its plain language. *Waldorf v. Shuta*, 142 F.3d 601, 612 (3d Cir. 1998). The trial court's construction of a stipulation is reviewed de novo. *In re Odyssey Contracting Corp.*, 944 F.3d 483, 487 & n.2 (3d Cir. 2019). A stipulation is interpreted like any contract, "according to the general principles of contract construction." *USX Corp. v. Penn Cent. Corp.*, 130 F.3d 562, 566 (3d Cir.

31

1997) (internal quotation marks omitted). The District Court did not interpret ¶ 7 at all. It read ¶ 9 to erase ¶ 7. Whether the text permits that reading is a legal question, and the answer is no.

### 2. Paragraph 7 resolved reasonableness, leaving only entitlement for the court.

The plain language of ¶ 7 settled the reasonableness of the green-underlined entries. The Money Source agreed in the stipulation itself that those entries were reasonable. The clause "if the Court determines that an award of fees is appropriate" did not defer that agreement or reserve any ability to contest reasonableness later; it simply distinguished the one question The Money Source left open – the question of *entitlement*, i.e., whether any fee was owed at all – from the question it had already resolved. On reasonableness, ¶ 7 reserved nothing. The bankruptcy court answered the entitlement question by finding that "the March 16, 2022 Rule 68 Offer contractually provided for an award of reasonable attorney's fees and costs." (Bankr. Op. 14, Appx36.) With entitlement established, ¶ 7's agreement as to reasonableness governs the green-underlined entries by its own terms. Those entries were no trivial slice of the bill; they amounted to $36,758. (See discussion, *supra* at 19.) Lewis said as much to the bankruptcy court: those "entries all appear on the A1 Bill … Defendant has already agreed that these particular entries are reasonable, provided that the Court decides that an award of

32

fees is appropriate." (Pl.'s Reply ISO Fee Pet. 8, Appx176 (citing Stip. ¶ 7, Appx80).)

The structure of the stipulation confirms the reading: agreed rates in ¶ 4, an agreed reasonableness concession for the green entries in ¶ 7, a preserved disagreement over the remaining time entries in ¶ 8, and a single reserved defense in ¶ 9. A document that so carefully separated the conceded from the contested cannot be read to have silently surrendered the very concession the parties had just spelled out.[11]

> 3. *Paragraph 9's "notwithstanding" clause reserved only the all-or-nothing entitlement defense, not a right to relitigate reasonableness.*

The Money Source's entire position rests on five words. It quotes the opening of ¶ 9, "Notwithstanding any contrary language in this stipulation," and argues that it "withdrew any such stipulations upon the filing of the Petition." (Appellee's D. Ct. Br. 13 n.3, Appx293.) Not so. A "notwithstanding" clause "signals the drafter's intention that the provisions of the 'notwithstanding' section

---

[11] By its terms, Exhibit A to the stipulation is the "statement of Plaintiff's fees through March 24, 2022." (Stip. ¶ 5, Appx79.) The time that the bankruptcy court reduced for the fee-petition briefing was spent during or after November 2022 (Bankr. Op. 13–14, Appx35–36) and thus falls outside Exhibit A, and the motion-to-compel briefing appears on the disputed schedule, Exhibit A2 (Bankr. Dkt. 128–2, Appx123–124). Neither category is advanced here as a stipulation violation; the reductions to the briefing are addressed in Arguments A and D. The ¶ 7 violation addressed in this section is confined to the communication entries, at least eighty-six of the ninety-eight of which (see *infra*, n.13) are green-underlined entries on Exhibit A1.

override conflicting provisions of any other section." *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) (construing a contract); *accord NLRB v. SW General, Inc.*, 580 U.S. 288, 301 (2017) (construing a statute; "the word 'shows which provision prevails in the event of a clash'") (internal quotation marks omitted). The clause *resolves conflicts* in favor of what follows it; it is not itself *a grant* of anything. Whatever The Money Source retained was through ¶ 9's operative words — "the right to argue that **no** award of fees is appropriate." A subordinate "notwithstanding" phrase cannot expand that right beyond the words that define it. *See SW General*, 580 U.S. at 302 (a "notwithstanding" clause "confirms rather than constrains breadth"; "it just shows which … provision[] prevails in the event of a conflict.").

Here, the "notwithstanding" preamble does not stand alone; it introduces, and is limited by, the specific right that follows it: the right "to argue that **no** award of fees is appropriate, and that therefore no fee at all should be awarded." (Stip. ¶ 9, Appx80) (emphasis in original). That is an all-or-nothing entitlement defense, the argument that Lewis recovers nothing. It says nothing about the reasonableness of the green entries, and it cannot be stretched to cover that subject without rewriting the paragraph. The preamble does one job: it keeps the act of stipulating to rates and to the green entries' reasonableness from being read as a concession that some fee must be paid. The Money Source exercised precisely the right ¶ 9

34

reserved, invoking the American Rule to contend that no fee was recoverable and that counsel's fee should instead come out of Lewis's $6,000 recovery. (Doc. 130 at 7–8, Appx147–148; *see also id.* at 23.) What it did not do, and could not do under ¶ 9, was reopen the reasonableness concession that ¶ 7 expressly made.

Reading ¶ 9 as The Money Source does would render ¶¶ 4 and 7 illusory. If "notwithstanding any contrary language" let it relitigate everything it had just agreed to, the rate stipulation (¶ 4) and the green-entry concession (¶ 7) would evaporate the instant The Money Source filed an opposition. On that logic, Lewis's own fee waivers (¶ 6) would spring back to life as well. A stipulation is not construed to cannibalize itself: "where a stipulation has more than one material part, one such portion may not be deleted and the remainder of the stipulation enforced." *Waldorf*, 142 F.3d at 619 (internal quotation marks and brackets omitted). Paragraph 9 reserved a defense. It did not delete ¶ 7.

The District Court's contrary holding does not survive de novo review. It held that "any prior stipulation by [The Money Source] as to the reasonableness of particular time entries was effectively withdrawn when [The Money Source] opposed the fee petition," and that the bankruptcy court therefore "did not abuse its discretion in revisiting all the time entries." (Dist. Op. 14, Appx16.) The court's own footnote exposes the flaw: the only stipulation language it identified was ¶ 9's reservation of the right to argue that Lewis was not entitled to fees at all. (Dist. Op.

14 n.4, Appx16.) The court thus treated ¶ 9 – a reservation of the entitlement defense – as though it were instead a reservation of the right to relitigate the reasonableness of the fee requested. The two are not the same, and the court never considered ¶ 7, which forecloses the conflation.

Recall what ¶ 7 promised: The Money Source would not challenge the green entries' reasonableness, but only "if the Court determine[d] that an award of fees [was] appropriate." On the District Court's reading, that condition could be triggered only when the court awarded a fee over The Money Source's objection — and opposing the petition would be precisely such an objection. So the very act that triggered ¶ 7 would also withdraw it: the stipulation would dissolve the moment its condition was met and could never bind The Money Source at all. A promise that self-destructs the instant it comes due is no promise, and that is not what the parties wrote. For the same reason, on that reading ¶ 7 would not even be "contrary language" for the preamble to override: it would yield to the entitlement question by its own terms, the two paragraphs would never clash, and "notwithstanding" would have no work to do.

Nor can The Money Source rescue the holding with the gloss it offered below. In a footnote to its opposition, it asserted that it had stipulated "subject to objections raised following the filing of the instant Petition," and that it "maintained this same approach in stipulating to all fees." (Def.'s Opp. to Fee Pet.

36

9 n.4, Appx149.) No such carve-out appears in the stipulation; once entitlement is found, ¶ 7's promise is unconditional. A party cannot rewrite a binding stipulation by describing it differently in a later brief.

4. *The Money Source bound itself by stipulation and could be released only by a motion it never filed.*

Even if ¶ 7 were ambiguous, and it is not, The Money Source would lose, because it bound itself to the stipulation and never sought relief from it in any proper way.

The stipulation binds because The Money Source's concession in ¶ 7 is a binding judicial admission. "Judicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them." *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) (internal quotation marks omitted). Such admissions "are binding for the purpose of the case in which the admissions are made[,] including appeals." *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972). The Money Source's ¶ 7 concession was unequivocal and factual – the green entries are reasonable if a fee is owed – and it bound The Money Source through judgment.

Having bound itself, The Money Source could be released only by moving for that relief and justifying it. *Waldorf*, 142 F.3d at 618 (a party seeking relief from a stipulation "had the obligation to provide the district court with competent evidence of the manifest injustice to it from binding it to the stipulation."). Relief

37

is available "[i]n exceptional circumstances … to prevent a manifest injustice." *Id.* at 617. In considering whether to grant a motion to withdraw, courts consider: the stipulation's effects on the parties, any intervening events, and whether the evidence contrary to the stipulation is substantial. *Id.* at 617–618. The Money Source sought no such relief. It filed no motion to be relieved of the stipulation, offered no evidence of manifest injustice, and the bankruptcy court considered none of the *Waldorf* factors. The Money Source simply opposed the petition and assumed the stipulation had evaporated. That is the unilateral abandonment *Waldorf* forbids.

Equity confirms the result. Lewis performed his side of the bargain. He capped his hourly rates and waived every red-lined entry. (Stip. ¶ 6, Appx79). Having taken the benefit of that narrowing – a shorter fight over a focused bill – The Money Source cannot now disown the burden. "[A] party may not be freed of the burdens of a stipulation while maintaining its benefits." *Waldorf*, 142 F.3d at 618–619.

The reduction should be reversed and the fees awarded. All but $124.50 of the $3,050.25 fell on entries that The Money Source had agreed were reasonable (or that were never billed), and the reduction of the remaining $124.50 cannot survive the arbitrariness analysis set out in Argument C.

C. THE BANKRUPTCY COURT'S REDUCTIONS TO COMMUNICATION TIME WERE ARBITRARY AND UNEXPLAINED.

Apart from the absence of any objection (Argument A) and the parties' stipulation (Argument B), the reductions to communication time cannot stand on their own terms. The bankruptcy court slashed $3,050.25 from a category of communication time, of which only $124.50 was genuinely in dispute, and it lopped off fixed blocks of hours from four briefs with nothing more than a one-word label of "excessive." The cuts were clearly erroneous and made without the specific findings required by law. (See Standard of Review, *supra.*)

*1. The $3,050.25 communication reduction was clearly erroneous and arbitrary.*

"[The Money Source] objects to 98 entries of .1 hours totaling $4,067," the bankruptcy court wrote. (Bankr. Op. 13, Appx35.) It then "reduce[d] these entries by 75% or $3,050.25," reasoning that, "[l]ike in *Badyrka*," counsel's "entries for almost every conceivable communication, no matter how minor," reflected a lack of billing judgment. (*Id.*) It made no finding that any particular communication was unnecessary, duplicative, or excessive, and it applied a single flat percentage to all 98 entries at once. (*Id.*)

But only a sliver of that time was actually in dispute. The Money Source never identified the ninety-eight entries. (Doc. 130 at 18, Appx158.) But the disputed portion of the bill contained only twelve .1-hour entries through April 2,

39

2020, which is the period that the Money Source was addressing. Three of those entries were actually billed, totaling $124.50, or eighteen minutes. The other nine had already been written off.[12] At least eighty-six of the ninety-eight were, therefore, entries that The Money Source had stipulated were reasonable. (Stip. ¶ 7, Appx80; Stipulation Ex. A1, Appx81.)[13] The court nonetheless cut $3,050.25, roughly twenty-four times the disputed amount, by applying a flat 75% to the entries' full, undiscounted value. A reduction that bears no relationship to the time actually in dispute is, by definition, arbitrary.[14]

And the court made none of the findings that could have justified the cut. A court setting a lodestar "may not reduce an award by a particular percentage or

---

[12] The three billed .1-hour communication entries through April 2, 2020 are those of October 3, 2019, March 12, 2020, and March 16, 2020, each at counsel's $415 rate ($41.50), totaling $124.50. The other nine disputed .1-hour entries in that period carry a full discount and were not charged. (A2 Bill, Appx122–125.)

[13] The more likely analysis is that The Money Source counted only stipulated entries from the A1 bill. Ninety-eight entries totaling $4,067 works out to $41.50 apiece — a tenth of an hour at Mr. Sabatini's stipulated $415 rate — and Exhibit A1 contains exactly ninety-eight green-underlined .1-hour entries at that rate through April 2, 2020, totaling exactly $4,067. (Appx81–87.) However, because The Money Source never listed the entries it was counting, Lewis relies on the conservative floor of eighty-six.

[14] The Money Source's only other communication-related complaint — that in December 2019 "eighteen (18) separate entries related to communications" were excessive (Doc. 130 at 18, Appx158) — fared no better: all the December 2019 entries contain green underlining as part of the stipulated time, and counsel had already discounted four of them. (Pl.'s Reply ISO Fee Pet. 8, Appx176.)

amount (albeit for justifiable reasons) in an arbitrary or indiscriminate fashion"; if a reduction is warranted, the court "*must analyze the circumstances requiring the reduction and its relation to the fee, and it must make specific findings to support its action*." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 196 (3d Cir. 2000) (emphasis in the original) (internal quotation marks omitted). The bankruptcy court did the opposite: it identified no specific entry as improper, analyzed no particular communication, and explained neither why 75% (rather than some other figure) was the right reduction nor how that percentage related to the time in question. Nor could it have. The Money Source never identified the ninety-eight entries it was referring to (Doc. 130 at 18, Appx158), so there was no list of entries against which findings could be made; the court cut 75% from a set of entries neither it nor the objector ever enumerated. An unparticularized objection cannot supply the entry-specific analysis *Gunter* demands, and a reduction built on one is unreviewable on its face.

A trial court may take a modest, unexplained trim, but a deep cut demands a stated rationale. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("the district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation"). A 75% reduction is not a haircut, and the silence that might excuse a 10% trim cannot excuse this one.

41

The court's stated reason was that the entries reflected a lack of "billing judgment," drawn by analogy to its own opinion in *In re Badyrka*. (Bankr. Op. 13, Appx35.) But a finding that the billing as a whole lacked judgment is not a finding that any particular entry was improper, and the analogy tied nothing to the $124.50 of communication time actually in dispute. Substituting a label borrowed from another case for findings about this one is not a proper exercise of discretion: an abuse of discretion occurs where "the trial court uses improper standards or procedures in determining fees, or … does not properly identify the criteria used for such determination." *Silberman*, 683 F.2d at 65. That was the case here, wholly apart from Arguments A and B.

### 2. *The reductions to the four briefs were equally unexplained.*

The four briefing reductions fare no better, and they fail even if, contrary to Argument A, the court had been free to make them. For each brief, the court recited the hours billed, pronounced the time "excessive," and removed a round block of hours: twelve hours from the motion-to-compel brief, eight from its reply, six from the fee-petition brief, and fifteen from the fee-petition reply. (Bankr. Op. 13–14, Appx35–36.) What the court never supplied was a reason. It did not identify a single task within any brief that should have taken less time, did not explain how it arrived at twelve hours rather than six or sixteen, and did not tie any reduction to the length or difficulty of the brief in question.

42

This Court requires more. "We need more reasoning than 'they are excessive' to review the district court's decision. The district court should explain why it concludes that hours expended on a task are excessive." *Rode*, 892 F.2d at 1187. A fee court "must explain on the record the reasons for its decisions," *id.*, and must "make its reasoning and application of the fee-awards jurisprudence clear, so that we, as a reviewing court, have a sufficient basis to review for abuse of discretion," *Gunter*, 223 F.3d at 196. A bare label of "excessive," repeated four times, is not that explanation.

The findings are categorical, not record-based. The court found "the time expended relating to a motion to compel discovery to be excessive" (Bankr. Op. 13, Appx35) without engaging with anything particular to this motion: not the number of requests in dispute, not the nature of The Money Source's objections, not the work required to overcome them — work that succeeded, for the court granted the motion. A finding pitched at that level of generality is not an assessment of the hours these briefs required; it is a judgment that briefing a discovery dispute simply should not take this long.

That categorical view is not merely unexplained; it is at odds with the fee-shifting provisions of TILA and RESPA that made this fee available. Fee-shifting exists so that a consumer with a meritorious claim can retain counsel as capable as the defendant's, and it serves that end only if counsel can be paid for the hours the

43

case actually demands. Civil litigation is largely won or lost in discovery. If a well-resourced defendant may devote substantial attorney time to resisting discovery while plaintiff's counsel is told, as a categorical matter, that comparable time spent compelling it is "excessive," the very asymmetry those provisions were enacted to cure is reinstated. A court may scrutinize discovery time as it would any other; it may not declare, as a category, that the work of compelling discovery is worth less than the work of resisting it.

3. *Neither the percentage cut nor the District Court's affirmance can be reconciled with the findings the law requires.*

The District Court affirmed by invoking the very requirement the reductions flout. It quoted *Interfaith* for the rule that a fee court must "meticulously review" the billing records in a "line, by line, by line" examination (Dist. Op. 13, Appx15) – yet approved the bankruptcy court's categorical, brief-by-brief reductions and its across-the-board 75% communication cut. A flat percentage applied at once to ninety-eight entries the opposition never even listed, and round blocks of hours struck from four briefs labeled only "excessive," are the antithesis of line-by-line review. The standard the District Court recited is the standard the reductions violate.

On either ground – the clearly erroneous communication finding, or the unexplained, across-the-board character of every reduction – the cuts cannot stand. A court that reduces a fee "in an arbitrary or indiscriminate fashion" without

44

"specific findings to support its action" abuses its discretion. *Gunter*, 223 F.3d at 196. That is what happened here.

D. EVEN IF THE MONEY SOURCE HAD SPECIFICALLY OBJECTED TO THE BRIEFING TIME, THE REDUCTIONS WERE AN ABUSE OF DISCRETION, BECAUSE THEY CUT THOSE BRIEFS TO A FRACTION OF THE TIME THIS COURT, AND THE DISTRICT COURT'S OWN AUTHORITIES, RECOGNIZE AS REASONABLE.

Argument A shows that the bankruptcy court reduced the briefing time *sua sponte*, on grounds that The Money Source never specifically raised. This section is the alternative ground: even if the court had been free to reach the briefing time, the reductions cannot stand on their own terms, because they slashed the briefs far below any recognized measure of reasonable briefing time. The size of a fee reduction is reviewed for abuse of discretion, and the factual findings underlying it for clear error (see Standard of Review, *supra*); a reduction that cannot be reconciled with the governing benchmark is both.

The court's stated reason for cutting the time on the fee-petition brief narrows the inquiry. It did not find the brief poorly done, the issues simple, or the hours disproportionate to the work the brief reflected. It found the 8.3 hours "excessive for a ten-page brief." (Bankr. Op. 13, Appx35.) Length was the only metric it invoked. Judged on that metric, the allowed time collapses far below every recognized figure.

45

     1. *Courts in this Circuit measure reasonable briefing time in hours per page, drawing from* Maldonado *a benchmark of roughly three.*

In *Maldonado*, 256 F.3d at 185–86, this Court allowed 120 hours as a reasonable time to research and brief a 41-page appellate brief on a single issue that had already been briefed once below. The court set that figure over the State's objection that the work "reasonably should have required no more than 100 hours," (*id.* at 183–184), so it reflects the court's own judgment of reasonable briefing time, not a concession the panel merely ratified. That figure "calculates to approximately 3 hours per page." *Walton v. Massanari*, 177 F. Supp. 2d 359, 365 (E.D. Pa. 2001). *Walton* itself approved the requested "53.6 hours … for a 27 page brief, which is approximately 2 hours per page," *id.*, for a case that, "[w]hile … not complex … involved a detailed fact-specific record." *Id.* at 364. Three hours per page were allowed for an easy, already briefed appeal; the measurement serves as a yardstick, not a per se rule.

*Walton* is not an outlier. District courts throughout this Circuit have repeatedly drawn from *Maldonado* a per-page measure of reasonable briefing time, generally two to three hours per page, and applied it as a working benchmark.[15]

---

[15] *See, e.g.*, *Moyer v. Colvin*, No. 1:23-CV-2137, 2025 WL 221802, at *3 (M.D. Pa. Jan. 16, 2025) ("three hours of billed work per each page of a brief is a presumptively reasonable amount of time"); *Goldshteyn v. Healthcare Revenue Recovery Grp., LLC*, No. CV 16-5049, 2018 WL 11486886, at *1 (E.D. Pa. Sept. 24, 2018) (applying the *Maldonado* benchmark in an FDCPA action; ~1.25 hrs/page reasonable); *Beattie v. Colvin*, 240 F. Supp. 3d 294, 298 (D.N.J. 2017)

None of this makes three hours per page a rule; *Maldonado* fixed a reasonable time on the facts before it, and the Bankruptcy Court was free to allow less where the work warranted less. The benchmark matters as a yardstick the court's own reasoning invited: having found the time "excessive for a ten-page brief," the court measured by length — and on that measure it left counsel 0.23–0.46 hours per page. That amount ranges from a mere thirteenth to a sixth of *Maldonado's* figure and is below every comparator the District Court itself cited. The court offered nothing to bridge the gap.

　　2.　*Measured against that benchmark, the reductions are not close.*

Judge Conway cut each brief to a small fraction of the comparators. The following figures for "Pages," "Hours billed," and "Hours allowed" are his own or the District Court's (Bankr. Op. 13–14, Appx35–36; Dist. Op. 15–17, Appx17–19):

---

(courts in the district "have regularly applied the '3 hours per page' rule"); *Gonzalez v. Colvin*, 146 F. Supp. 3d 661, 666 (E.D. Pa. 2015) (Third Circuit "has endorsed billing for two to three hours of time per page"); *Bilak v. Colvin*, 73 F. Supp. 3d 481, 488 (D.N.J. 2014) (Equal Access to Justice Act; approving the requested 1.5 hours per page while citing *Maldonado* benchmark).

| Brief | Pages | Hours billed | Hours billed per page | Hours allowed | Hours allowed per page |
|---|---|---|---|---|---|
| Motion-to-compel support brief (Dkt. 66) | 16 | 18.9 | 1.18 | 6.9 | 0.43 |
| Motion-to-compel reply brief (Dkt. 77) | 12 | 11.5 | 0.96 | 3.5 | 0.29 |
| Fee-petition support brief (Dkt. 129) | 10 | 8.3 | 0.83 | 2.3 | 0.23 |
| Fee-petition reply brief (Dkt. 131) | 18 | 23.3 | 1.29 | 8.3 | 0.46[16] |

A reduction that leaves counsel a quarter-hour to a half-hour per page for researching, writing, and revising a brief is not a calibrated exercise of discretion; it is a figure unmoored from any standard the court purported to apply.

### 3. *The District Court's own authorities condemn the result.*

Affirming, the District Court acknowledged that *Maldonado*'s benchmark is "only a starting point" and that courts also weigh complexity, experience, and posture. (Dist. Op. 14, Appx16.) Fair enough. But the substitute authorities that the District Court marshaled prove the opposite of its conclusion. It invoked *Walton* (2 hours per page), *Migliori v. Lehigh Cnty. Bd. of Elections*, No. 22-CV-397, 2025 WL 2493843, at *4 (E.D. Pa. May 19, 2025), *report and recommendation adopted,* No. CV 22-397, 2025 WL 2493838 (E.D. Pa. July 31, 2025) (approving the

---

[16] Counsel recorded 30.1 hours on the reply but billed only 23.3 after a voluntary 6.8-hour write-off; the court then disallowed 15, leaving 8.3 hours. (Bankr. Op. 14, Appx36.)

requested 1.7 hours per page for a temporary-restraining-order brief), and *Styers v. Pennsylvania*, 621 F. Supp. 2d 239, 245 (M.D. Pa. 2008), which it read as approving 3.6 hours per page for a summary-judgment brief in a "fairly straightforward" case. (Dist. Op. 14–15, Appx16–17.) Every one of those rates is substantially more than what counsel sought here, and is a substantial multiple of what Judge Conway actually allowed. Even the lowest, *Migliori*'s 1.7 hours per page, is roughly four times the most generous rate the bankruptcy court permitted (0.46) and more than seven times the least (0.23). Authorities that a court cites to justify a reduction should support the reduction; here, they establish that the allowed rates fall below every comparator the District Court could find.

> 4. *The two content rationales the District Court offered do not rescue the cuts.*

First, the District Court reasoned that the motion-to-compel supporting brief "largely consists of the Appellant's discovery requests and [The Money Source]'s corresponding objections." (Dist. Op. 16, Appx18.) But setting out the contested requests and the opponent's objections is what a motion to compel requires; the court cannot rule on a discovery dispute it cannot see. Compiling those requests, matching them to the objections, and arguing why each objection fails is drafting work, not filler; that the work product reproduces the disputed items does not make 18.9 hours, much less the 6.9 the court allowed, unreasonable for a sixteen-page brief.

Second, the District Court found 8.3 hours excessive for the ten-page fee-petition support brief because "most issues had already been resolved by agreement" and counsel is experienced. (Dist. Op. 16, Appx18.) That reasoning is backward. The parties' agreement to narrow the issues is the reason the brief took only 8.3 hours, not a reason to cut it further; counsel does not bill for the issues the stipulation removed.[17] What remained still had to be briefed: entitlement, the disputed entries, and the governing fee standard. And experience makes counsel faster, not unpaid.

Third, the District Court faulted the fee-petition reply because four of its eighteen pages answered the question "'who is to blame for not settling.'" (Dist. Op. 17, Appx19.) But that section was not gratuitous history; it was a direct response to the centerpiece of The Money Source's opposition — the accusation that counsel had spurned adequate offers and was "already off to the races pumping up his fees." (Doc. 130 at 18, Appx158.) An applicant accused of bad-faith fee generation is entitled to answer the charge – and the answer worked – the

---

[17] A reduction that grows as counsel narrows the dispute inverts the lodestar inquiry. Counsel is expected to exercise "billing judgment" and to streamline a case—to settle what can be settled. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The bankruptcy court faulted counsel elsewhere for a supposed lack of billing judgment, yet here it treated the very exercise of that judgment—narrowing the dispute by stipulation so that only a handful of issues remained to brief—as a reason to pay counsel less for the briefing that remained. Rewarding efficiency with a fee cut penalizes the conduct the law asks of counsel and discourages the narrowing of disputes on which courts and litigants alike depend.

bankruptcy court rejected The Money Source's proposed cap at the Rule 68 amount as a "drastic cut" supported by "no case law" (Bankr. Op. 12, Appx34), and its conclusion drew on the reply's settlement history, observing that "from the outset" The Money Source "knew that Mr. Sabatini would incur substantial fees if this matter was litigated." (Bankr. Op. 14, Appx36 (citing Doc. 131 at 1).) A party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (internal quotation marks omitted). An opposition that invoked counsel's name sixty-five times cannot fairly complain that the reply spent four pages setting the settlement record straight.

The remedy follows the defect. Because the four briefing reductions ($15,520 in all) rest on per-page cuts that no recognized benchmark – and none of the District Court's own authorities – can support, those reductions should be reversed and the time awarded.

## IX.  CONCLUSION

This case is about a fee that the parties had nearly settled. They agreed on the hourly rates, agreed that $36,758 of the billed time was reasonable, and narrowed the remaining disputes to a thin set of disputed entries. Little was left for the bankruptcy court to decide. Yet the court cut $18,570.25 — and it did so only by reaching past the dispute the parties had framed for it.

51

Each cut broke a settled rule. The $15,520 taken from the four briefs was imposed *sua sponte*, on a ground The Money Source never raised — and a court may reduce a fee only in response to the objections actually before it. The $3,050.25 taken from the communication entries fell on time The Money Source had stipulated was reasonable, a concession it never properly withdrew. Neither cut was supported by the specific findings the law requires, and the briefing cuts left counsel a fraction of the time this Circuit recognizes as reasonable. A fee the parties had already pared to its essentials should not have been pared again on the court's own initiative.

Therefore, Lewis respectfully requests that this Court:

*First*, reverse the order of the District Court and the Bankruptcy Court's fee order to the extent it reduced the requested attorney's fee by $18,570.25;

*Second*, because the reduced time was unchallenged, stipulated, or supported, and nothing remains to be determined as to the fees already litigated below, direct entry of a fee award in the full requested amount of $81,678.68, together with the $164.61 in costs already awarded; and

*Third*, only if the Court concludes that any issue remains for determination, remand with instructions to award the improperly reduced time consistent with this Court's opinion.[18]

Respectfully submitted,

S/ Carlo Sabatini
Carlo Sabatini, PA 83831
Attorney for Plaintiff/Appellant

---

[18] If Lewis prevails on this appeal, then by separate application under 3d Cir. L.A.R. Misc. 108.0 he will seek his reasonable attorney's fees and costs incurred on the appeal under the fee-shifting provisions on which his fee award rests, and under the accepted Rule 68 offer.

## X.    CERTIFICATIONS

### A.  CERTIFICATION OF BAR MEMBERSHIP

I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

s/ Carlo Sabatini
Carlo Sabatini

### B.  CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,986 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in a proportionally spaced and serifed typeface using Microsoft Word in 14-point Times New Roman.

s/ Carlo Sabatini
Carlo Sabatini

### C.  CERTIFICATE OF SERVICE

On July 13, 2026, I caused the foregoing Brief of Appellant to be filed through the Court's CM/ECF system, which will serve all counsel of record, including counsel for Appellee.

s/ Carlo Sabatini
Carlo Sabatini

D.   <u>CERTIFICATE THAT TEXT OF E-BRIEF AND HARD COPIES ARE IDENTICAL</u>

The text of the electronic version of this brief is identical to the text of the paper copies filed with the Court.

<u>s/ Carlo Sabatini</u><br>
Carlo Sabatini

E.   <u>CERTIFICATE THAT E-BRIEF HAS BEEN VIRUS CHECKED</u>

A virus check was performed on the electronic version of this brief using Microsoft Defender Antivirus (version 4.18.26060.3008) and no virus was detected.

.

<u>s/ Carlo Sabatini</u><br>
Carlo Sabatini

No. 26-1389

# In the United States Court of Appeals
# for the Third Circuit

IN RE: CLARENCE WILLIAM LEWIS, JR.

CLARENCE WILLIAM LEWIS, JR.
*Appellant,*

v.

THE MONEY SOURCE, INC.
*Appellee.*

On Appeal from the United States District Court
for the Middle District of Pennsylvania
in Case No. 3:24-cv-00387-JKM

## JOINT APPENDIX
### Volume I of II (Appx1 – Appx37)

Carlo Sabatini
SABATINI LAW FIRM, LLC
216 N. Blakely St.
Dunmore, PA 18512
(570) 341-9000

*Attorney for
Clarence William Lewis, Jr.*

July 13, 2026

# TABLE OF CONTENTS OF JOINT APPENDIX

| Item | Document | Cite | Date | Page |
|------|----------|------|------|------|
| **VOLUME I (Appx1 – Appx37)** | | | | |
| 1 | Notice of Appeal to United States Court of Appeals for the Third Circuit | D. Ct. Dkt. 18 | Feb. 21, 2026 | Appx1 |
| 2 | District Court Memorandum | D. Ct. Dkt. 16 | Jan. 23, 2026 | Appx3 |
| 3 | District Court Order | D. Ct. Dkt. 17 | Jan. 23, 2026 | Appx22 |
| 4 | Bankruptcy Court Opinion | Bk. Dkt. 135 | Feb. 22, 2024 | Appx23 |
| 5 | Order Granting in Part and Denying in Part Plaintiff's Petition for Attorney's Fees and Costs [Bankruptcy Court] | Bk. Dkt. 136 | Feb. 22, 2024 | Appx37 |
| **VOLUME II (Appx38 – Appx337)** | | | | |
| 6 | Docket entries — Bankruptcy Court | Docket sheet | — | Appx38 |
| 7 | Docket entries — District Court | Docket sheet | — | Appx54 |
| 8 | Third Amended Complaint (operative pleading) | Bk. Dkt. 57 | Nov. 4, 2020 | Appx57 |
| 9 | Opinion [on Motion to Dismiss] (Opel, J.) | Bk. Dkt. 55 | Oct. 28, 2020 | Appx66 |
| 10 | Stipulation | Bk. Dkt. 117 | Oct. 26, 2022 | Appx79 |
| 11 | Exhibit A [to Stipulation — Statement of Fees] | Bk. Dkt. 117-1 | Oct. 26, 2022 | Appx81 |
| 12 | Notice of Acceptance of Offer of Judgment and Offer of Judgment | Bk. Dkt. 127, 127-1 | Dec. 5, 2022 | Appx101 |
| 13 | Plaintiff's Petition for Attorney's Fees and Costs | Bk. Dkt. 128 | Dec. 8, 2022 | Appx104 |
| 14 | Exhibit A1 — First Bill Agreed Portion | Bk. Dkt. 128-1 | Dec. 8, 2022 | Appx105 |
| 15 | Exhibit A2 — First Bill Disputed Portion | Bk. Dkt. 128-2 | Dec. 8, 2022 | Appx122 |
| 16 | Exhibit B [October 28, 2022 – December 8, 2022 Statement of Fees] | Bk. Dkt. 128-3 | Dec. 8, 2022 | Appx126 |
| 17 | Plaintiff's Brief in Support of His Petition for Attorney's Fees and Costs | Bk. Dkt. 129 | Dec. 8, 2022 | Appx128 |
| 18 | Defendant's Brief in Opposition to Plaintiff's Petition for Attorneys' Fees and Costs [without exhibits] | Bk. Dkt. 130 | Jan. 9, 2023 | Appx138 |

Case: 26-1389    Document: 18    Page: 66    Date Filed: 07/13/2026

| Item | Document | Cite | Date | Page |
|---|---|---|---|---|
| 19 | Plaintiff's Reply Brief in Support of Fee Application | Bk. Dkt. 131 | Jan. 23, 2023 | Appx164 |
| 20 | Sabatini Affidavit [with exhibits] | Bk. Dkt. 131-1 | Jan. 23, 2023 | Appx188 |
| 21 | Transcript of [Hearing re:] Application for Allowance of Compensation and Expenses Filed by Carlo Sabatini (Doc 128) Before Honorable Mark J. Conway United States Bankruptcy Court Judge | Bk. Dkt. 133 | Jan. 31, 2023 | Appx197 |
| 22 | Plaintiff's Hearing Exhibit 15 — Bill (12/11/2022 to 1/31/2023) | Hearing Tr. 12:12 (Bk. Dkt. 133) | Jan. 31, 2023 | Appx274 |
| 23 | Order [Approving stipulation to pay the fee that the bankruptcy court awarded] | D. Ct. Dkt. 6 | Apr. 18, 2024 | Appx276 |
| 24 | Brief of Appellee The Money Source, Inc. [District Court] | D. Ct. Dkt. 11 | June 26, 2024 | Appx277 |
| 25 | Reply Brief of Appellant Clarence Lewis [District Court, without exhibits] | D. Ct. Dkt. 14 | July 17, 2024 | Appx305 |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Clarence Lewis,<br>        Appellant<br><br>v.<br><br><br>The Money Source, Inc.,<br>        Appellee | Case No. 3:24-cv-00387-JKM<br><br>(District Judge Julia K. Munley) |

## <u>Notice of Appeal to United States Court of Appeals for the Third Circuit</u>

Clarence William Lewis, Jr., the appellant herein, appeals to the United States Court of Appeals for the Third Circuit from the final order of the United States District court for the Middle District of Pennsylvania entered in this case by the Honorable Julia Munley on January 23, 2026. The order, for the reasons set forth in the accompanying January 23, 2026 opinion, denied the appeal from the bankruptcy court filed by Clarence William Lewis, Jr. and closed the case.

The parties to the order appealed from and the names and addresses of their respective attorneys are as follows:

Clarence Lewis, Appellant:

Carlo Sabatini
Sabatini Law Firm, LLC
216 N. Blakely St.
Dunmore, PA 18512
Phone (570) 341-9000
Email: ecf@bankruptcypa.com

**Appx1**

The Money Source, Inc., Appellee:   Matthew Haar
Saul Ewing Arnstein & Lehr LLP
650 College Rd. East, Suite 4000
Princeton, NJ 08540
Phone (717) 257-7508
Email matt.haar@saul.com


United States Trustee:   Joseph P. Schalk
Acting Assistant United States Trustee
United States Department of Justice
Office of the United States Trustee
Middle District of Pennsylvania
1501 N. 6th Street, Box 302
Harrisburg, PA 17102
Tel. (717) 221-4533
joseph.schalk@usdoj.gov


Jack Zaharopoulous, Trustee:   Jack N. Zaharopoulos
Standing Chapter 13 Trustee
8125 Adams Drive, Suite A
Hummelstown, PA 17036
717-566-6097
jzaharopoulos@pamd13trustee.com

**Appx2**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:             :      No. 3:24cv387

CLARENCE WILLIAM LEWIS, JR.   :

Chapter 13 DEBTOR         :      (Judge Munley)

                                        :

CLARENCE WILLIAM LEWIS, JR.,   :

           Appellant          :

                                        :

       v.                  :

                                         :

The Money Source, Inc.,          :

           Appellee           :

## **MEMORANDUM**

Before the court for disposition is the bankruptcy appeal filed by Clarence William Lewis, Jr. (hereinafter "Appellant" or "Lewis"). Appellant challenges a February 23, 2024 decision of Bankruptcy Judge Mark J. Conway. Also pending is Appellant's request for oral argument. (Doc. 15). The parties have briefed their respective positions, and the matter is ripe for disposition.

## Background[1]

At issue is the determination of reasonable attorney's fees recoverable in connection with an offer of judgment under Rule 68 of the Federal Rules of Civil

---

[1] The court adopts the facts set forth in Judge Conway's opinion as they do not appear to be in dispute. (See Doc. 3-22, Bankr. Opinion at 1-4). Those facts are further confirmed by this court's independent review of the bankruptcy record.

Procedure. By way of brief background, Lewis filed a voluntary Chapter 13 petition on April 13, 2019. (Doc. 3-22, Bankr. Opinion at 2). His petition listed his residence in Taylor, Pennsylvania as subject to a secured claim held by the Money Source, Inc. (hereinafter "TMS") in the amount of $143,551.34. (Id.) Lewis's confirmed Chapter 13 plan provided for a cure of $13,344.05 in pre-petition arrears to TMS. (Id.)

On July 3, 2019, TMS filed a notice of postpetition mortgage fees, expenses, and charges ("Notice") pursuant to Bankruptcy Rule 3002.1 of the Federal Rules of Bankruptcy Procedure. (Id.) The Notice sought $900 in attorney's fees for reviewing the Chapter 13 plan and for preparing and filing its proof of claim. (Id.) Thereafter, Appellant's counsel, Carlo Sabatini, sent two letters to TMS requesting, among other things, additional information regarding the claimed attorney's fees ("Letters"). (Id.) In response, TMS withdrew the Notice and disclaimed any entitlement to the fees. (Id.)

Nonetheless, on November 26, 2019, Lewis initiated an adversary proceeding against TMS. (Id. at 3). After several amendments, Lewis filed a third amended complaint alleging that TMS violated the Real Estate Settlement Procedure Act ("RESPA"), 12 U.S.C. § 2601, et seq., and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq. by failing to respond to his request for information regarding the attorney's fees included in the Notice. (Id.)

2

During discovery, Lewis filed a contested motion to compel. The parties attempted to settle the dispute or at least narrow the issues through mediation. (Docs. 3-5 – 3-10). The mediation proved to be unsuccessful. (Doc. 3-22, Bankr. Opinion at 3). Later, Appellant accepted TMS's Rule 68 offer of judgment ("Rule 68 Offer") and the parties reported ongoing negotiations concerning attorney's fees and costs. (Bankr. Opinion at 3-4).

The parties were ultimately unable to resolve all fee and cost issues. (See Doc. 3-15). Nonetheless, they filed a stipulation identifying those amounts on which they agreed. (See Doc. 3-14). Appellant then filed a petition for attorney's fees seeking $81,678.68 in attorney's fees and $164.41 in costs. (Doc. 3-17). Following briefing and oral argument, the bankruptcy court concluded that the requested fees were excessive and awarded Lewis $63,108.43 in attorney's fees. (Doc. 3-22, Bankr. Opinion at 12-14). The bankruptcy court awarded Appellant the full amount of requested costs. (Id.)

Lewis now appeals, seeking reversal of the bankruptcy court's fee determination and an award of $81,678.68, as originally requested. (Doc. 10, Lewis Br. at 41).

3

Appx5

## Jurisdiction

This court has jurisdiction over the instant bankruptcy appeal pursuant to 28 U S C. § 158(a)(1), which provides that district courts have jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy courts.

## Legal Standard

This court reviews the bankruptcy court's conclusions of law "*de novo*, its factual findings for clear error[,] and its exercise of discretion for abuse thereof." *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005) (internal quotation marks omitted). The bankruptcy court's findings of fact will only be set aside if clearly erroneous. FED. R. BANKR. P. 8013 ("On appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.").

A factual finding by a bankruptcy court is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." In re CellNet Data Sys., Inc., 327 F.3d 242, 244 (3d Cir. 2003) (citing United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).

4

Appx6

A district court reviewing a mixed question of fact and law must disentangle the factual and legal issues and apply the appropriate standard of review to each. In re Montgomery Ward Holding Corp., 326 F.3d 383, 387 (3d Cir. 2003). A reviewing court must "apply a clearly erroneous standard to 'integral facts,' but exercise plenary review of the court's interpretation and application of those facts to legal precepts." In re Nortel Networks, Inc., 669 F.3d 128, 136–37 (3d Cir. 2011) (citation omitted).

**Analysis**

Appellant challenges the bankruptcy court's award of reasonable attorney's fees contending that the court improperly reduced those fees *sua sponte*. (Doc. 10, Lewis Br. at 2-3). TMS, by contrast, urges this court to affirm the award. (Doc. 11, TMS Br. at 22). The court will first set forth the governing legal framework before discussing attorney's fees determination.

### 1. Legal Framework

This bankruptcy appeal is highly contentious. To avoid confusion, a discussion of the legal principles guiding district courts in determining reasonable attorney's fees is warranted.

Under the "American Rule," a prevailing party is generally not entitled to attorney's fees from the losing party. Lackey v. Stinnie, 604 U.S. 192, 192-93 (2025) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 249

5

(1975). That said, each litigant pays his or her own attorney's fees regardless of the outcome. <u>Baker Botts L.L.P. v. ASARCO LLC</u>, 576 U.S. 121, 126 (2015). Like most rules, however, this one is subject to exceptions.  One such exception arises when a statute or contract provides for an award of attorney's fees to the prevailing party. <u>Id.</u> (citing <u>Hardt v. Reliance Standard Life Ins. Co.</u>, 560 U.S. 242, 252–53 (2010)).

A "prevailing party" or "successful party" is "one who has been awarded some relief by the court." <u>Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.</u>, 532 U.S. 598, 603 (2001).  "A party in whose favor a judgment is rendered, regardless of the amount of damages awarded" is a prevailing party for purposes of the various federal fee-shifting statutes. <u>Id.</u> Likewise, the fact that a party prevailed through a settlement rather than through litigation does not alter that result. <u>Maher v. Gagne</u>, 448 U.S. 122, 129 (1980).

As the bankruptcy court correctly pointed out, Appellant is a prevailing party here given that under the Rule 68 Offer, he was awarded a $6,000.00 judgment "in satisfaction of all claims." (Doc. 3-22, Bankr. Opinion at 8).  Lewis has thus succeeded on his TILA and RESPA claims.  Accordingly, the court turns to whether Appellant possesses contractual or statutory rights to recover attorney's fees.

6

*Contractual rights under Rule 68 Offer* – Starting with the contractual right, the Third Circuit has explained that a Rule 68 offer of judgment "is intended to promote the amicable resolution of cases." Lima v. Newark Police Dep't, 658 F.3d 324, 326 (3d Cir. 2011). A Rule 68 offer of judgment may provide that a judgment includes costs and attorney's fees. See Marek v. Chesny, 473 U.S. 1, 6 (1985). Generally, the text of an offer of judgment is interpreted according to basic contract principles. M3 USA Corp. v. Hart, No. CV 20-5736, 2021 WL 2917374, at *5 (E.D. Pa. July 9, 2021).

Under Pennsylvania law, issues of contract interpretation are questions of law. Id. The general rule of contract interpretation under Pennsylvania law is "the intent of the parties to a written contract is contained in the writing itself." Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 92 (3d Cir. 2001). If "the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence, instead, the meaning of a clear and unequivocal written contract must be determined by its contents alone." Id. On the other hand, "[a] contract is ambiguous if it may reasonably be construed in more than one way." M3 USA Corporation, 2021 WL 2917374 at *5. However, any ambiguity in a Rule 68 offer of judgment is resolved against the offeror. Id. (citing Lima, 658 F.3d at 330).

Here, the basis for awarding attorney's fees is the language of the Rule 68 Offer, which provides that: "[TMS] . . . hereby offers to allow a judgment to be

7

taken against it in satisfaction of all claims by . . . Lewis, in the amount of $6,000, **plus an additional amount for costs and reasonable attorney's fees**." (Doc. 3-16, Ex. A, Offer of Judgment). The bankruptcy court correctly concluded that the language of the Rule 68 Offer is clear and unambiguous, thereby entitling Appellant to recover attorney's fees.

*Statutory right for attorney's fees* – Judge Conway also noted that both TILA and RESPA allow an award of reasonable attorney's fees in case of any successful action. See 15 U.S.C. § 1640(a)(3) (TILA) and 12 U.S.C. §2605(f)(3) (RESPA).

*Prevailing source* – Although TILA and RESPA address attorney's fees, the bankruptcy court properly relied on the Rule 68 Offer's plain language in awarding attorney's fees to Appellant. That approach was appropriate because the principles governing statutory fee awards are not applicable when a Rule 68 offer of judgment explicitly provides for attorney's fees. See Miller v. City of Portland, 868 F.3d 846, 851 (9th Cir. 2017); see also M3 USA Corporation, 2021 WL 2917374, at *6. The bankruptcy court thus correctly concluded that Lewis was entitled to attorney's fees based on the plain language of the Rule 68 Offer.[2]

---

[2] Judge Conway properly declined TMS's argument based on the principles governing statutory fee awards. TMS argued before the bankruptcy court that under Marek, 473 U.S. at 8–9, a Rule 68 offer of judgment included attorney's fees only when the underlying statute defines "costs" to include attorney's fees. (Doc. 3-19 at 5-6). Judge Conway held that the underlying statutes involved here (TILA and RESPA) do not define attorney's fees as part of the costs and therefore, Lewis would not be entitled to attorney's fees under the "costs"

8

## 2.   Award of Attorney's Fees

Turning to the amount of attorney's fees awarded, Appellant contends that the bankruptcy court acted improperly when it reduced his attorney's fees *sua sponte*. (Doc. 10, Lewis Br. at 2-3). TMS disputes this contention. (Doc. 11, TMS Br. at 12-13). TMS asserts that the bankruptcy court did not act on its own initiative but instead ruled on TMS's objections. (Id. at 14-18).

### a. The bankruptcy court did not act *sua sponte*

Courts in the Third Circuit assess requests for attorney's fees by using the lodestar method. S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP, 927 F.3d 763, 773 (3d Cir. 2019); see also Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). Under this formula, a court determines the reasonable fee "by multiplying the number of hours . . . reasonably worked on a client's case by a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer." Id.

The party seeking attorney's fees bears the burden of proving the reasonableness of their request. Rode, 892 F.2d at 1183; see also Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). The failure to make a *prima facie*

---

provision of Rule 68 of the Federal Rules of Civil Procedure. (Doc. 3-22, Bankr. Opinion at 5 n. 3). Nevertheless, Judge Conway explained that Lewis is entitled to attorney's fees based on the plain language of the Rule 68 Offer, not based on principles governing statutory fee awards.

9

Appx11

showing that counsel's proposed rates and hours are reasonable provides courts with discretion to deny a motion for attorney's fees. See Martin v. Boeing Co., No. CV 20-5401, 2025 WL 1093802, at *4 (E.D. Pa. Apr. 11, 2025). However, "[w]hen the applicant for a fee has carried his burden of showing that the claimed rates and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled." Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001) (citation omitted).

In this matter, Lewis submitted counsel's billing records containing time entries in support of his petition for attorney's fees before Judge Conway. (Doc. 3-17). TMS lodged multiple objections to the Appellant's attorney's fees, arguing that Appellant's counsel, was "off to the races pumping up his fees[,]" that he and his colleagues billed excessive amounts, and that counsel "continued on his fishing expedition, racking up over $50,000.00 in additional fees before accepting TMS'[s] . . . Offer of Judgment." (Doc. 3-19 at 18). TMS further asserted that Appellant's counsel "manufactured affirmative claims under RESPA and TILA by requesting information on behalf of [Appellant] that was of no actual value to [him]." (Id. at 15).

A party opposing a fee request has the burden of challenging the reasonableness of the fees with sufficient specificity. United States ex rel. Palmer v. C&D Techs., Inc., 897 F.3d 128, 139 (3d Cir. 2018); Bell v. United Princeton

10

Props., Inc., 884 F.2d 713, 715 (3d Cir. 1989). "Once the challenging party does so, "the district court has a great deal of discretion to adjust the fee award in light of those objections." United States ex rel. Palmer, 897 F.3d at 139 (quoting Rode, 892 F.2d at 1183)).

Here, as Judge Conway determined, TMS's objections to the Appellant's fees were generalized and "based on a blanket statement that the professional fees were wholly unreasonable, citing over 183 hours of time spent on [Lewis's] claim that TMS allegedly failed to respond to the Letters." (Doc 3-22, Bankr. Opinion at 12; Doc. 4, Hearing Transcript at 72; Doc. 3-19 at 10). Although TMS contended that Appellant was not entitled to attorney's fees, TMS failed to state a specific amount by which the petition should be reduced. (See Doc. 3-19 at 7, 10).[3]

Nevertheless, TMS's objections are not without significance since "a party challenging a fee petition need not always challenge specific time entries and have the court find that some 'specific time entry was unreasonable or unnecessary' . . . in order to prevail." Bell v. United Princeton Props., Inc., 884 F.2d 713, 720 (3d Cir. 1989). As the Third Circuit has stated, "[i]t would be nearly impossible, or at least extraordinarily burdensome, for parties who wish to

---

[3] Judge Conway did explicitly express his frustration with TMS's general objections. (Doc. 3-22, Bankr. Opinion at 11-12).

11

contend that the time spent by a fee applicant was excessive . . . to point to all the entries that they believe to be unreasonable." Id. Thus, a party challenging a fee petition need not point to each individual excessive entry. Id.

Based on Appellant's objections, the bankruptcy court decided to review the case docket and thoroughly examine the invoices submitted. (Doc. 3-22, Bankr. Opinion at 12-13). Hence, the bankruptcy court did not act *sua sponte*.

### b. Reduction of attorney's fees was proper

Moving to the award of attorney's fees, two components must be examined: 1) the attorney's hourly rate; and 2) the number of hours.

With respect to the hourly rates, the parties stipulated to the reasonable rates to be charged by Appellant's professionals as follows: 1) $415.00 per hour for Carlo Sabatini, Esq.; 2) $350.00 per hour for Brett Freeman, Esq.; and 3) $150.00 per hour for Ashley Werner, paralegal. (Doc. 3-14, Stipulation ¶ 4). The bankruptcy court did not disturb the hourly rates. (Doc. 3-22, Bankr. Opinion at 10 n. 7). Neither will this court as TMS is not disputing them.

As for the number of hours worked, time entries must be sufficiently specific to enable the court to assess the reasonableness of the hours claimed for the work performed. Washington v. Philadelphia Cnty. Ct. of Common Pleas, 89 F.3d 1031, 1037 (3d Cir. 1996). District courts are obligated to exclude hours that were not reasonably expended, including those that are excessive,

12

redundant, or otherwise unnecessary. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The Third Circuit has emphasized the necessity for district courts to meticulously review billing records supporting a fee request, requiring a "line, by line, by line" examination. Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 713 (3d Cir. 2005), as amended (Nov. 10, 2005) (citation omitted).

Here, Judge Conway reduced Appellant's requested attorney's fees by $18,570.25, resulting in an attorney's fees award of $63,108.43. (Doc. 3-22, Bankr. Opinion at 13). Appellant argues before this court that Judge Conway disallowed time entries that TMS had agreed were reasonable or that his counsel had already discounted. (Doc. 10, Lewis Br. at 15). Per Appellant, the bankruptcy court abused its discretion. The court disagrees.

A court is not obligated to endorse an inappropriate order simply due to a lack of objection from a defaulting party. See McKenna v. City of Philadelphia, 582 F.3d 447, 459, n.13 (3d Cir. 2009). Instead, courts maintain "an active and affirmative function in the fee-fixing process," extending beyond a passive acceptance of submitted requests. Maldonado, 256 F.3d at 184. When a lawyer's time is not reasonably expended, a court may exclude such time from calculation of the lodestar. Hensley, 461 U.S. at 433. The Third Circuit does not "approve the wasteful use of highly skilled and highly priced talent for matters easily

13

delegable to non-professionals or less experienced associates." <u>Ursic v. Bethlehem Mines</u>, 719 F.2d 670, 677 (3d Cir. 1983).

Under the law, Judge Conway had an active and affirmative function in determining the award of attorney's fees. Further, any prior stipulation by TMS as to the reasonableness of particular time entries was effectively withdrawn when TMS opposed the fee petition.[4] Thus, the bankruptcy court did not abuse its discretion in revisiting all the time entries of Appellant's professionals.

The fees at issue on appeal relate to briefing and communications. The court will address each in turn.

With regard to briefing, the Third Circuit has determined that three hours per page was a reasonable amount of time to spend on preparation of an appellate brief, consisting of one uncomplicated issue which had been briefed by parties and discussed at length in a "well-written and thorough opinion" at the district court level. <u>Maldonado</u>, 256 F.3d at 185–87. However, this rule is only a starting point as courts also consider the complexity of the issues presented, the attorney's experience, and the procedural posture of the case. <u>See</u> <u>Walton v. Massanari</u>, 177 F. Supp. 2d 359, 365 (E.D. Pa. 2001) (holding that two hours per page was reasonable for an appellate brief in a case involving simple legal

---

[4] The stipulation Appellant is referring to grants TMS "the right to argue that no award of fees is appropriate, and that therefore no fee at all should be awarded." (Doc. 3-14, Stipulation ¶ 9).

14

issues but a detailed fact-specific record); Migliori v. Lehigh Cnty. Bd. of Elections, No. 22-CV-397, 2025 WL 2493843, at *4 (E.D. Pa. May 19, 2025), report and recommendation adopted, No. CV 22-397, 2025 WL 2493838 (E.D. Pa. July 31, 2025) (holding that a work rate of 1.7 hours per page was reasonable for a brief accompanying a petition for a temporary restraining order); Styers v. Pennsylvania, 621 F. Supp. 2d 239, 245 (M.D. Pa. 2008) (holding that 3.6 hours per page was reasonable for a brief opposing a motion for summary judgment in a fairly straightforward case presenting no particularly difficult or novel legal issues).

_Motion to compel, brief in support, and reply brief_ – Judge Conway explained that:

> During the discovery phase of this litigation, [Lewis] filed a Motion to Compel Discovery on June 29, 2021, Dkt. # 65, with a supporting brief filed on July 9, 2021, Dkt. # 66. [Lewis's] Counsel spent 3.2 hours researching and 15.7 hours drafting the brief. The Court finds the time expended relating to a motion to compel discovery to be excessive and will reduce the fees by twelve hours. The reduction equates to $4,200 ($350/hr. x 12). Plaintiff's Counsel expended 11.5 hours on discussing and drafting the reply brief, Dkt # 77. This too was excessive and the fees will be reduced by 8 hours, _i.e._, $2,800 ($350/hr. x 8).

(Doc. 3-22, Bankr. Opinion at 13).

Turning to the motion to compel, the motion itself spans four pages (excluding exhibits), while the supporting brief is sixteen pages long. (Docs. 3-5,

15

3-6). The supporting brief largely consists of the Appellant's discovery requests and TMS's corresponding objections. As for the reply brief, it spans twelve pages, excluding exhibits. (Doc. 3-9). Upon careful review of both briefs the court finds that the reduction in hours was appropriate and the bankruptcy court did not abuse its discretion in doing so.

*Brief in support of the fee petition* – Per Judge Conway:

> In November 2022, Plaintiff's Professionals spent a combined 8.3 hours to draft a brief in support of the Fee Petition. The Court finds that the time spent was excessive for a ten-page brief. The fees will be reduced by 3 hours for each attorney, *i.e.*, $2,295 (($415 x 3) + ($350 x 3)).

(Doc. 3-22, Bankr. Opinion at 13).

As for the brief in support of the fee petition, it consists of ten pages. (See Doc. 3-18). Attorney Sabatini billed 5.30 hours to "finish the brief." (Doc. 3-17 at ECF pp. 23-24). A total of 8.3 hours was excessive for a brief in support of a fee petition where, by the Appellant's counsel own admission, most issues had already been resolved by agreement. Additionally, the issue of attorney's fees is neither novel nor unusually complex. In light of Appellant's counsel's "significant experience relating to disputes over the reasonableness of attorney's fees[,]" the bankruptcy court's reduction was reasonable. (See Doc. 3-22, Bankr. Opinion at 13 n. 11).

16

*Reply brief in support of the fee petition* – According to the bankruptcy

court:

> Lastly, Plaintiff's Counsel billed 30.1 hours for the reply brief in support of the Fee Petition, Dkt. # 131. Counsel discounted this amount by 6.8 hours. The Court finds the time expended was still excessive and will reduce the fees by 15 hours, *i.e.*, $6,225 ($415/hr. x 15).

(Doc. 3-22, Bankr. Opinion at 14).

With respect to the reply brief in support of the fee petition, it spans eighteen pages, excluding exhibits. (Doc. 3-20).  For the same reasons discussed above, the hours expended on this brief were excessive.  Notably, four pages were devoted to a section entitled "who is to blame for not settling" which largely recites the procedural history.  Given the Appellant's counsel's familiarity with the issues and the procedural posture of the case, the expenditure of 30.1 hours on such a brief is out of proportion here.  Moreover, Appellant's counsel's discount of only 6.8 hours was negligible and a further reduction was warranted. Accordingly, the bankruptcy court's reduction was reasonable and appropriate.

*Time entries for .1 hours* – As for time entries regarding communication, Judge Conway also noted that:

> TMS objects to 98 entries of .1 hours totaling $4,067. TMS' Brief at 18. Like in Badyrka, the Court finds Mr. Sabatini's entries for almost every conceivable communication, no matter how minor, to lack billing judgment and will reduce these entries by 75% or $3,050.25. See In re Szymczak, 246 B.R. 774, 783 (Bankr. D. N.J. 2000) ("In reviewing

17

> Applicant's time records, it appears the Debtors were billed
> every time Applicant picked up the telephone, uttered the
> Debtors' name, or looked at the Debtors' case; even where
> nothing meaningful occurred.").

(Doc. 3-22, Bankr. Opinion at 13).

Upon careful examination of the foregoing time entries, the court agrees with the bankruptcy court and concludes that they reflect a lack of billing judgment. See In re Busy Beaver Bldg. Centers, Inc., 19 F.3d 833, 854 (3d Cir. 1994) ("a bankruptcy judge's experience with fee petitions and his or her expert judgment pertaining to appropriate billing practices, founded on an understanding of the legal profession, will be the *starting point* for any analysis."). These entries appear excessive and warrant reduction.

In sum, nothing in the bankruptcy court's decision indicates clear error in its factual findings or an abuse of discretion. Accordingly, this court will affirm Judge Conway's determination of Appellant's attorney's fees.

Regarding Appellant's request for oral argument, a district court may deny such request if it "determines that oral argument is unnecessary because . . . the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." FED. R. BANKR. P. 8019 (b)(3). Here, the court is satisfied that the parties' submissions and the record adequately present the relevant facts and legal arguments. Therefore, Appellant's request for oral argument will be denied.

18

**Appx20**

## Conclusion

For the reasons set forth above, Lewis's bankruptcy appeal and request for oral argument will be denied. An appropriate order follows.

Date: 1/23/26

_____
JUDGE JULIA K. MUNLEY
United States District Court

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                                          :       No. 3:24cv387
CLARENCE WILLIAM LEWIS, JR.        :
Chapter 13 DEBTOR                         :       (Judge Munley)
                                                       :

CLARENCE WILLIAM LEWIS, JR.,      :
                                 Appellant       :
                                                       :
          v.                                          :
                                                       :
The Money Source, Inc.,                     :
                                 Appellee        :

## ORDER

**AND NOW**, to wit, this 23rd day of January 2026, for the reasons set forth

in an accompanying memorandum, it is hereby **ORDERED** that:

1) The bankruptcy appeal filed by Clarence William Lewis, Jr. is hereby

    **DENIED**;

2) Clarence William Lewis, Jr.'s request for oral argument, (Doc. 15), is

    also **DENIED**; and

3) The Clerk of Court is directed **CLOSE** this case.

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

Appx22

**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | **Chapter 13** |
| | : | |
| **Clarence William Lewis, Jr.,** | : | **Case No. 5:19-01873-MJC** |
| | : | |
| Debtor. | : | |

| | | |
|---|---|---|
| **Clarence William Lewis, Jr.,** | : | |
| | : | |
| Plaintiff, | : | **Adversary Proceeding** |
| | : | **No. 5:19-00116-MJC** |
| v. | : | |
| | : | |
| **The Money Source, Inc.,** | : | |
| | : | |
| Defendant. | : | |

# O P I N I O N

## I.  INTRODUCTION

This adversary action relates to a lender's failure to timely respond to a debtor's request for information on post-petition attorney fees charged against the debtor's residential mortgage. The matter before the Court is Plaintiff's Petition for Attorney's Fees and Costs ("Fee Petition") seeking $81,678.68 in attorney's fees and $164.61 in costs, which was filed pursuant to a Rule 68 Offer of Judgment settling this adversary proceeding.  Defendant disputes the Fee Petition and asserts that no attorney's fees or costs at all should be awarded in connection with the Offer of Judgment.  Alternatively, Defendant argues for a total award of $6,000, inclusive of the judgment, attorney's fees, and costs be awarded.

For the reasons stated below, the Court determines that Defendant's Offer of Judgment by its terms agreed to pay attorney's fees and costs, and consequently, the Court will award Plaintiff reasonable attorney's fees and costs.

## II. PROCEDURAL HISTORY

### A.  The Bankruptcy Case

On April 30, 2019, the debtor Clarence William Lewis, Jr. ("Debtor" or "Plaintiff") filed his voluntary Chapter 13 bankruptcy petition.  On his Schedules filed with his bankruptcy petition, Debtor listed his residence in Taylor, Pennsylvania, with a secured claim in favor of The Money Source, Inc. ("TMS" or "Defendant") in the amount of $143,551.34.  *See* Schedule D, Bk. Dkt. # 1.[1]  On his Statement of Financial Affairs, Debtor disclosed that TMS instituted pre-petition mortgage foreclosure proceedings against Debtor's residence in the Pennsylvania Court of Common Pleas, Lackawanna County (Case No. 2019-01787).  Debtor's Chapter 13 Plan proposed a cure of $13,344.05 in pre-petition arrears to TMS.  Debtor confirmed his Chapter 13 Plan on July 24, 2019.  Bk. Dkt. # 38.  Debtor subsequently received his Chapter 13 discharge on June 1, 2023.  Bk. Dkt. # 67.

On July 3, 2019, TMS filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges ("Notice") pursuant to Federal Rule of Bankruptcy Procedure 3002.1.  The Notice included $900 of attorney's fees for review of Debtor's Chapter 13 plan and preparing and filing its proof of claim.  In August and September 2019, Debtor's Counsel, Mr. Carlo Sabatini ("Mr. Sabatini" or "Plaintiff's Counsel") sent two letters to TMS requesting, *inter alia*, information regarding the fees charged in connection with the bankruptcy case ("Letters").[2]  On October 7, 2019, TMS withdrew the Notice.  *See* Bk. Dkt. # 41.

---

[1]  Docket entries in the main bankruptcy case are noted as "Bk. Dkt." and all other docket entries refer to this Adversary Proceeding ("Dkt.").

[2]  Plaintiff's Counsel also requested a payoff statement and the name and address of the owner of the loan.

2

## B.  The Adversary Proceeding

On November 26, 2019, Plaintiff instituted this adversary proceeding by filing a complaint against Defendant TMS.  This proceeding proved to be contentious right from the outset with significant activity at the pleading stage.  After TMS filed its initial answer, Plaintiff filed an Amended Complaint.  *See* Dkt. # 8 & 9.  TMS responded with a motion to dismiss.  Dkt. # 13.  Plaintiff then sought to stay briefing on the motion to dismiss while he moved to amend the complaint again.  *See* Dkt. # 16 & 31.  The Court granted Plaintiff's motion to amend, Dkt. # 41, and Plaintiff filed his Second Amended Complaint on May 20, 2020, Dkt. # 42.  TMS again moved to dismiss.  *See* Dkt. # 44.  On October 28, 2020, the Court issued an Opinion and Judgment which granted in part and denied in part TMS' motion to dismiss and granted leave to amend.  *See* Dkt. # 55 & 56.  As a result, Plaintiff ended up filing his Third Amended Complaint on November 4, 2020.  Dkt. # 57.

The Third Amended Complaint alleged two counts – one under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §2601, *et seq.*, and one under the Truth in Lending Act ("TILA"), 15 U.S.C. §1601, *et seq.* – for failing to respond to Debtor's request for information regarding the attorney's fees Defendant included in the Notice.  Defendant filed an Answer on December 2, 2020.  Dkt. # 58.  The parties subsequently engaged in discovery which led to a joint motion for a protective order and a contested motion to compel that required Court intervention.  *See* Dkt. # 63 & 65.

The parties then attempted to settle this matter, or at a minimum, narrow the issues through mediation in late 2021 and into early 2022.  *See* Dkt. # 94 & 97.  The mediation proved to be unsuccessful.  S*ee* Dkt. # 100.  But, Plaintiff ultimately accepted an offer of judgment on March

3

24, 2022 ("Rule 68 Offer"), and the parties reported they were negotiating an amount for attorney's fees and costs. *See* Dkt. # 103.

After some negotiation, the parties requested another mediation session on the issue of attorney's fees. The matter was again referred to a mediator but the parties had difficulty scheduling a mutually agreeable time and Plaintiff filed a Motion to Compel Defendant to Show Cause for Failure to Schedule Mediation. Dkt. # 109. After a hearing, the Court ordered mediation to take place in September 2022. *See* Dkt. # 115. Ultimately, the parties were not able to resolve all of the attorney's fees and costs at issue, *see* Dkt. # 119 (Report of Mediator), however, the parties filed a stipulation ("Stipulation") that designated certain fees and costs on which they were able to agree, *see* Dkt. # 117.

On November 8, 2022, the Court held a conference to set deadlines for filing a fee application and briefing. Plaintiff's Counsel filed his petition for fees and costs ("Fee Petition") on December 8, 2022. Dkt. # 128. After briefing, the Court held argument on the disputed Fee Petition and took the matter under advisement. The Fee Petition is now ripe for disposition.

## III. THE PARTIES' POSITIONS

Plaintiff's position is fairly straightforward. Plaintiff brought this action asserting violations of TILA and RESPA after TMS failed to timely and adequately respond to Plaintiff's Counsel's Letters seeking certain information relating to attorney's fees being charged against Plaintiff's residential mortgage. Plaintiff accepted the Rule 68 Offer on March 24, 2022. Plaintiff's Counsel asserts that the acceptance of an offer of judgment is clearly a successful outcome entitling Plaintiff to a mandatory award of attorney's fees and costs. *See* Plaintiff's Brief at 2, Dkt. # 129.

According to Plaintiff's Counsel, both TILA and RESPA require an award of attorney's fees to a successful plaintiff. *See Id.* Plaintiff's Counsel further points out that the policy under these statutes is to award a disproportionate fee so that consumers can attract and retain competent counsel to represent them in bringing these consumer protection actions. *Id.* at 2-3. Plaintiff's Counsel argues that he attained the maximum statutory damages available to Plaintiff and accordingly, Counsel should be awarded the full fee requested. *Id.* at 4.

Not surprisingly, TMS has a different take on this litigation and the propriety of the Fee Petition. TMS argues that Mr. Sabatini's Letters in August and September 2019 regarding the Notice were all about generating fees for his firm. *See* TMS Brief at 3, Dkt. # 130. TMS posits that it had withdrawn the Notice in October 2019 and disclaimed any entitlement to the $900 in fees and therefore, Mr. Sabatini had no basis to later seek discovery as to those fees. *Id.* TMS claims it sought to settle this matter early on by sending offers of judgment on January 23, 2020 and April 2, 2020. *Id.* at 3-4. But, Mr. Sabatini rejected those offers, instead choosing to drag this matter out for years with little to no benefit to Plaintiff. *Id.* at 4.

TMS disputes Plaintiff's Counsel's contention that TILA and RESPA mandate the recovery of attorney's fees, citing the United States Supreme Court decision in *Marek v. Chesny*, 473 U.S. 1 (1985). *See* TMS Brief at 5-6. TMS argues that under *Marek,* 473 U.S. at 8-9, a Rule 68 Offer of Judgment includes attorney's fees only when the underlying statute defines "costs" to include attorney's fees. *Id.* Because neither statute defines costs as including attorney's fees, no attorney's fees can be awarded.[3] Further, TMS argues that attorney's fees are properly awarded

---

[3] The Court agrees that the underlying statutes involved here do not define attorney's fees as part of costs and therefore, Plaintiff is not entitled to attorney's fees under the "costs" provision of Rule 68. However, as explained below, Plaintiff is entitled to attorney's fees based on the plain language of the Rule 68 Offer. *See Miller v. City of Portland*, 868 F.3d 846, 851 (9th Cir. 2017) (holding that principles governing statutory fee awards are not applicable when Rule 68 Offer of Judgment explicitly provides for attorney's fees).

**Appx27**

under these statutes only upon a finding of a violation under the relevant provisions. *Id.* at 7-8. No finding has been made that TMS failed to comply with the statutes, and therefore, Plaintiff is not entitled to attorney's fees. *Id.*

Alternatively, TMS argues even if attorney's fees are properly awardable, the fees and costs Plaintiff has requested are unreasonable. *See Id.* at 9. TMS alleges that Plaintiff's Counsel manufactured affirmative claims under RESPA and TILA by requesting information that had no value to Plaintiff because he had no reasonable ability to payoff his loan. *See Id.* at 15. TMS suggests that it's very questionable whether Mr. Sabatini provided any real benefit to his client by litigating for two more years and going from a settlement of $7,000 inclusive to $6,000 plus fees and costs. [4] *Id.* at 4. TMS therefore argues that the fees and costs should be limited to no more than provided in the accepted Rule 68 Offer. *Id.* at 18-19. Furthermore, TMS points out that Mr. Sabatini did not exercise reasonable billing judgment or remove duplicate or vague billing entries, etc. and therefore, at the very least, the Fee Petition should be reduced to account for these time entries. *See Id.* at 19.

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 68, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7068, provides in part:

> (a) Making an Offer; Judgment on an Accepted Offer. At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party

---

[4] TMS argues that Mr. Sabatini "manufactur[ed] an adversary claim" on "what was more accurately described as a dispute about nothing" and that he was "ginning up" claims to "support his 'loss leader' bankruptcy practice by seeking wholly excessive attorneys' fees." *Id.* at 1. While it does appear as though the motive for requesting the information may be suspect especially after TMS formally agreed to waive the disputed fees, TMS did not offer any evidence to support whether Plaintiff had a good faith basis to request the information or whether Mr. Sabatini "manufactured" the claims which have now been settled in Plaintiff's favor.

6

an offer to allow judgment on specified terms, with the costs then accrued.  If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service.  The clerk must then enter judgment.

Rule 68 Offers are a widely utilized tool to achieve settlement of litigation.  The Third Circuit has cautioned litigants regarding the implementation of Rule 68 Offers:

> Rule 68 of the Federal Rules of Civil Procedure is intended to promote the amicable resolution of cases. Although it usually serves its intended purpose, Rule 68 presents a trap for the unwary. This trap manifests itself most frequently when a defendant erroneously believes that an accepted Rule 68 offer of judgment finally resolves a civil action, only to be assessed substantial attorney's fees and costs thereafter by the court.

*Lima v. Newark Police Dep't.,* 658 F.3d 324, 326 (3d Cir. 2011).

Once accepted, an offer of judgment becomes a settlement agreement. *Guerrero v. Cummings*, 70 F.3d 1111, 1113 (9th Cir. 1995). As such, "Rule 68 offers of judgment are governed by basic principles of contract law." *M3 USA Corp. v. Hart*, 2021 WL 2917374, at *5 (E.D. Pa. 2021); accord *Miller v. City of Portland*, 868 F.3d 846, 851 (9th Cir. 2017); *MCO & EA LLC v. Silver Globe Inc.*, 2023 WL 3478466, at *2 (D. N.J. 2023).  The general rule of contract interpretation under Pennsylvania law is "the intent of the parties to a written contract is contained in the writing itself. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence, instead, the meaning of a clear and unequivocal written contract must be determined by its contents alone." *Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 92 (3d Cir. 2001) (internal quotations and citations omitted).  Any ambiguity in a Rule 68 Offer of Judgment is resolved against the offeror. *M3 USA Corp.*, 2021 WL 2917374 at *5 (citing *Lima*, 658 F.3d at 330).  "A contract is ambiguous if it may reasonably be construed in more than one

way." *M3 USA Corp.*, 2021 WL 2917374 at *5. The bottom line is that "[p]laintiffs are entitled to rely on the plain language of the offer [they] accepted." *Miller,* 868 F.3d at 851 (quoting *Erdman v. Cochise Cty.,* 926 F.2d 877, 897 (9th Cir. 1991)).

## V. DISCUSSION

### A. Plaintiff is Entitled to an Award of Attorney's Fees

TMS correctly states in its brief that "[i]t is well-settled that a prevailing party is not entitled to attorneys' fees except under certain limited circumstances." TMS Brief at 4 (citing *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975) (referring to this principle as the "American Rule")). One of the exceptions to the American Rule is where there is a contract or statute granting a right to attorney's fees. *In re West Chestnut Realty of Haverford, Inc.*, 186 B.R. 612, 617 (Bankr. E.D. Pa. 1995) (citation omitted). Here, as set forth below, there is a clear and unambiguous contract right and the underlying statutes provide for Plaintiff to recover attorney's fees.

First, Defendant ignores the fact that the Rule 68 Offer is considered a "contract" and argues that TILA and RESPA do not mandate an award of attorney's fees because Lewis was not a "successful plaintiff." *See* TMS Brief at 5. However, both statutes allow an award of reasonable attorney's fees as determined by the court in the case of "any successful action." *See* 15 U.S.C. § 1640(a)(3) (TILA) and 12 U.S.C. §2605(f)(3) (RESPA). Our Supreme Court has determined that a "prevailing party" also termed a "successful party" is "one who been awarded some relief by the court." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001). The Court made clear that "[a] party in whose favor a judgment is rendered,

Appx30

regardless of the amount of damages awarded" is a "prevailing party" for purposes of the various federal fee-shifting statutes. *Id.* (quoting Black's Law Dictionary 1145 (7th ed. 1999)).

Here, under the Rule 68 Offer, Plaintiff was awarded a $6,000.00 judgment "in satisfaction of all claims." Clearly, he is a prevailing party or has achieved a "successful action" regarding his claims brought under TILA and RESPA. The fact that the judgment was obtained through a Rule 68 Offer or settlement versus through litigation, does not alter that result. *See Maher v. Gagne*, 448 U.S. 122, 129 (1980).

Second, TMS completely ignores that the Rule 68 Offer clearly provides for an award of attorney's fees. The Rule 68 Offer provided:

> Defendant, The Money Source, Inc., pursuant to Federal Rule of Civil Procedure 68, as incorporated by Federal Rule of Bankruptcy Procedure 7068, hereby offers to allow a judgment to be taken against it in satisfaction of all claims by Plaintiff, Clarence Lewis, in the amount of $6,000, **plus an additional amount for costs and reasonable attorney's fees**.

*See* Dkt. # 127, (emphasis added). The Rule 68 Offer also specifically provides that "[t]he parties will attempt to negotiate the amount for costs and attorney's fees" and if not resolved, "then Plaintiff shall file a petition" for the fees. This language leaves no doubt that the parties agreed to award attorney's fees to Plaintiff.

Upon acceptance, TMS' Rule 68 Offer became a settlement agreement. *See Guerrero*, 70 F.3d at 1113. In applying basic principles of contract law, as the Court is obligated to do in analyzing Rule 68 Offers, *see M3 USA Corp.*, 2021 WL 2917374, at *5, the parties' "contract" squarely and unambiguously answers the question of whether Plaintiff is entitled to attorney's fees. TMS' Rule 68 Offer included attorney's fees and Plaintiff accepted. TMS will be held to the terms

9

of the commitment.  Accordingly, TMS' argument that no fees should be awarded is without merit.[5]

### B. Plaintiff's Counsel is Entitled to Reasonable Attorney's Fees

Having found that Plaintiff's Counsel is entitled to attorney's fees under the terms of the Rule 68 Offer, the next issue is the amount of the fees to be awarded.  In total, the Fee Petition seeks $81,678.68 in attorney's fees and $164.61 in costs.[6]  The only parameters to which the parties specifically and contractually agreed in the Rule 68 Offer, was that they must be "reasonable."

In determining a reasonable fee, courts frequently employ the lodestar method.  In *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), the Supreme Court explained that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[7]  After calculating this "lodestar" amount, the court should then determine whether "other considerations" warrant

---

[5]  The Court notes that the accepted Rule 68 Offer did not include any temporal limitations, unlike the two prior Offers of Judgment which both limited the award of attorney's fees and costs to the date of the Offer. *See* Dkt. # 130-1 and 130-2.  Because there was no language limiting the attorney's fees, an award of fees for time spent after the Rule 68 Offer was accepted is appropriate. *See Holland v. Roeser*, 37 F.3d 501, 503 (9th Cir. 1994) (finding language of Rule 68 Offer of Judgment did not limit attorney's fee award to fees incurred prior to offer).  The Rule 68 Offer specifically provided for the parties to attempt to amicably agree to the fees and if unable, Plaintiff was to file a Fee Petition within 30 days.  Unfortunately, even though the Rule 68 Offer appears to provide for a simple resolution of the attorney's fees request, the award of fees has turned into a whole new litigation with motions, briefing, another mediation, and hearings.  Plaintiff's Counsel billed approximately $26,600 in litigating the attorney's fees.

[6]  This amount is comprised of:  $56,184.50 for the period August 30, 2019 through March 24, 2022; $5,732.50 for the period March 25, 2022 to October 27, 2022; $4,761.68 for the period of October 28, 2022 through December 8, 2022; and $15,000 for the period from December 9, 2022 through the date of the argument on January 31, 2023.

[7]  Here, TMS stipulated that the hourly rates of Plaintiff's professionals are reasonable.

10

increasing or decreasing the lodestar amount. *Id.* at 434. As explained in *Hensley,* these "other considerations" include the following twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 430 n. 3 (quoting *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

Also, the Court must exclude time that is not reasonably expended, which includes excessive, redundant, or otherwise unnecessary hours. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing *Hensley*, 461 U.S. at 434)). A party opposing a fee request has the burden to challenge the reasonableness of the fees with sufficient specificity. *M3 USA Corp.*, 2021 WL 2917374 at *6 (citing *United States ex rel. Palmer v. C&D Techs., Inc.*, 897 F.3d 128, 139 (3d Cir. 2018)); accord *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 715 (3d Cir. 1989). "Once the challenging party does so, the district court has a great deal of discretion to adjust the fee award in light of those objections." *C&D Techs., Inc.*, 897 F.3d at 139 (quoting *Rode*, 892 F.2d at 1183)) (internal quotation marks omitted).

TMS' approach to this Fee Petition has been vexing to say the least. Knowing full well its burden to object, TMS lodged very few objections to specific time entries.[8] Its objection was more

---

[8] The Court expressed its concerns regarding the objection at the hearing:

> It would be helpful to the Court if you did go through and tell me what's wrong with his fees. If you both -- you both seem like you've read the *Badyrka* opinion, and I think I made some effort to go through line-by-line, or pointing out line-by-line what I disagreed with,

generalized and was based on a blanket statement that the professional fees were wholly unreasonable, citing over 183 hours of time spent on Plaintiff's claim that TMS allegedly failed to respond to the Letters.[9]  TMS Brief at 10.  TMS cited to several portions of this Court's decision in *In re Badyrka*, 2022 WL 4656034 (Bankr. M.D. Pa. 2022), which reviewed Mr. Sabatini's fee application is an unrelated Chapter 13 case.  The main thrust of TMS' argument centered on what TMS characterized as Mr. Sabatini's opportunistic billing practices and "egregious overreach[ing]" and the lack of any benefit the requested information would have provided to Plaintiff.  *Id.* at 13.  TMS goes so far as to claim that Mr. Sabatini "manufactured affirmative claims under RESPA and TILA by requesting information on behalf of Lewis that was of no actual value to Lewis."[10]  *Id.* at 15.  TMS does not state a specific amount by which the Petition should be reduced but suggests that Plaintiff's Counsel be limited to no more than provided in the accepted Rule 68 Offer of $6,000.  TMS offered no case law in support of this drastic cut.

Because TMS' argument as to the reasonableness of the fees is basically limited to generalized statements regarding excessive time spent, the Court will limit its review of the time entries to that ground.  Without the benefit of being involved in the day-to-day litigation between the parties, it is difficult for the Court to determine if any of Mr. Sabatini's time was unnecessary or of no benefit to his client.  However, based upon a review of the case docket, the Court's

---

and why I thought they were improper. And I suppose I would have expected more from the Defendant to go after Mr. Sabatini based upon *Badyrka*, and I really don't see that in your papers. You paint with a broad brush, but you don't get into the nitty gritty. And I'm wondering if you're expecting the Court to do that for you.
1/31/23 Transcript at 72.

[9]  The Court tends to agree with TMS that 183 hours of time spent on this matter appears excessive, however, as set forth below, TMS did not identify any specific time entries that were excessive.

[10]  TMS references Mr. Sabatini's lack of "good faith" in "manufacturing" Plaintiff's claims but other than general allegations, TMS did not provide any factual basis to support such accusations.  The fact that this action was filed after TMS allegedly waived the fees is noted.

12

experience and a thorough review of the invoices submitted, several time entries appear to be excessive.

During the discovery phase of this litigation, Plaintiff filed a Motion to Compel Discovery on June 29, 2021, Dkt. # 65, with a supporting brief filed on July 9, 2021, Dkt. # 66.  Plaintiff's Counsel spent 3.2 hours researching and 15.7 hours drafting the brief.  The Court finds the time expended relating to a motion to compel discovery to be excessive and will reduce the fees by twelve hours.  The reduction equates to $4,200 ($350/hr. x 12).  Plaintiff's Counsel expended 11.5 hours on discussing and drafting the reply brief, Dkt # 77.  This too was excessive and the fees will be reduced by 8 hours, *i.e.*, $2,800 ($350/hr. x 8).

TMS objects to 98 entries of .1 hours totaling $4,067.  TMS' Brief at 18.  Like in *Badyrka*, the Court finds Mr. Sabatini's entries for almost every conceivable communication, no matter how minor, to lack billing judgment and will reduce these entries by 75% or $3,050.25. *See In re Szymczak*, 246 B.R.774, 783 (Bankr. D. N.J. 2000) ("In reviewing Applicant's time records, it appears the Debtors were billed every time Applicant picked up the telephone, uttered the Debtors' name, or looked at the Debtors' case; even where nothing meaningful occurred.").

In November 2022, Plaintiff's Professionals spent a combined 8.3 hours to draft a brief in support of the Fee Petition.  The Court finds that the time spent was excessive for a ten-page brief.[11] The fees will be reduced by 3 hours for each attorney, *i.e.*, $2,295 (($415 x 3) + ($350 x 3)).

---

[11] It is noted that Mr. Sabatini has significant experience relating to disputes over the reasonableness of attorney's fees.

13

Lastly, Plaintiff's Counsel billed 30.1 hours for the reply brief in support of the Fee Petition, Dkt. # 131. Counsel discounted this amount by 6.8 hours. The Court finds the time expended was still excessive and will reduce the fees by 15 hours, *i.e.*, $6,225 ($415/hr. x 15).

The above disallowed attorney's fees total $18,570.25. Consequently, the Court finds a reasonable attorney fee in this matter is $63,108.43. Because TMS had no opposition regarding the costs in the Fee Petition and the costs appear reasonable, the Court awards $164.61 in costs.

## VI. CONCLUSION

It appears from the outset that TMS knew that Mr. Sabatini would incur substantial fees if this matter was litigated. *See* Dkt. # 131 at 1 (quoting Mr. Riley's email dated January 22, 2020). However, the parties spent several years litigating and then settled via a Rule 68 Offer that contemplated an award of attorney's fees. For the reasons stated above, the Court finds that the March 16, 2022 Rule 68 Offer contractually provided for an award of reasonable attorney's fees and costs. Accordingly, the Court has determined a reasonable attorney fee of $63,108.43 and costs of $164.61 will be awarded.

An appropriate order will be entered.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: February 22, 2024

14

# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | **Chapter 13** |
| | : | |
| **Clarence William Lewis, Jr.,** | : | **Case No. 5:19-01873-MJC** |
| | : | |
| **Debtor.** | : | |

| | | |
|---|---|---|
| **Clarence William Lewis, Jr.,** | : | |
| | : | |
| **Plaintiff,** | : | **Adversary Proceeding** |
| | : | **No. 5:19-00116-MJC** |
| **v.** | : | |
| | : | |
| **The Money Source, Inc.,** | : | |
| | : | |
| **Defendant.** | : | |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S PETITION FOR ATTORNEY'S FEES AND COSTS

Upon consideration of Plaintiff's Petition for Attorney's Fees and Costs ("Fee Petition"), Dkt. # 128, the parties' memoranda of law in support of their respective positions, and for the reasons set forth in the accompanying Opinion,

It is hereby **ORDERED** that:

1. The Fee Petition is **GRANTED IN PART AND DENIED IN PART.**

2. Plaintiff is awarded the amount of $63,108.43 in attorney's fees and $164.61 of costs.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: February 22, 2024