No. 26-1389

# In the United States Court of Appeals for the Third Circuit

IN RE: CLARENCE WILLIAM LEWIS, JR.

CLARENCE WILLIAM LEWIS, JR.
*Appellant,*

v.

THE MONEY SOURCE, INC.
*Appellee.*

On Appeal from the United States District Court
for the Middle District of Pennsylvania
in Case No. 3:24-cv-00387-JKM

## JOINT APPENDIX
### Volume II of II (Appx38 – Appx337)

Carlo Sabatini
SABATINI LAW FIRM, LLC
216 N. Blakely St.
Dunmore, PA 18512
(570) 341-9000

*Attorney for
Clarence William Lewis, Jr.*

July 13, 2026

# TABLE OF CONTENTS OF JOINT APPENDIX

| Item | Document | Cite | Date | Page |
|------|----------|------|------|------|
| **VOLUME I (Appx1 – Appx37)** | | | | |
| 1 | Notice of Appeal to United States Court of Appeals for the Third Circuit | D. Ct. Dkt. 18 | Feb. 21, 2026 | Appx1 |
| 2 | District Court Memorandum | D. Ct. Dkt. 16 | Jan. 23, 2026 | Appx3 |
| 3 | District Court Order | D. Ct. Dkt. 17 | Jan. 23, 2026 | Appx22 |
| 4 | Bankruptcy Court Opinion | Bk. Dkt. 135 | Feb. 22, 2024 | Appx23 |
| 5 | Order Granting in Part and Denying in Part Plaintiff's Petition for Attorney's Fees and Costs [Bankruptcy Court] | Bk. Dkt. 136 | Feb. 22, 2024 | Appx37 |
| **VOLUME II (Appx38 – Appx337)** | | | | |
| 6 | Docket entries — Bankruptcy Court | Docket sheet | — | Appx38 |
| 7 | Docket entries — District Court | Docket sheet | — | Appx54 |
| 8 | Third Amended Complaint (operative pleading) | Bk. Dkt. 57 | Nov. 4, 2020 | Appx57 |
| 9 | Opinion [on Motion to Dismiss] (Opel, J.) | Bk. Dkt. 55 | Oct. 28, 2020 | Appx66 |
| 10 | Stipulation | Bk. Dkt. 117 | Oct. 26, 2022 | Appx79 |
| 11 | Exhibit A [to Stipulation — Statement of Fees] | Bk. Dkt. 117-1 | Oct. 26, 2022 | Appx81 |
| 12 | Notice of Acceptance of Offer of Judgment and Offer of Judgment | Bk. Dkt. 127, 127-1 | Dec. 5, 2022 | Appx101 |
| 13 | Plaintiff's Petition for Attorney's Fees and Costs | Bk. Dkt. 128 | Dec. 8, 2022 | Appx104 |
| 14 | Exhibit A1 — First Bill Agreed Portion | Bk. Dkt. 128-1 | Dec. 8, 2022 | Appx105 |
| 15 | Exhibit A2 — First Bill Disputed Portion | Bk. Dkt. 128-2 | Dec. 8, 2022 | Appx122 |
| 16 | Exhibit B [October 28, 2022 – December 8, 2022 Statement of Fees] | Bk. Dkt. 128-3 | Dec. 8, 2022 | Appx126 |
| 17 | Plaintiff's Brief in Support of His Petition for Attorney's Fees and Costs | Bk. Dkt. 129 | Dec. 8, 2022 | Appx128 |
| 18 | Defendant's Brief in Opposition to Plaintiff's Petition for Attorneys' Fees and Costs [without exhibits] | Bk. Dkt. 130 | Jan. 9, 2023 | Appx138 |

| Item | Document | Cite | Date | Page |
|------|----------|------|------|------|
| 19 | Plaintiff's Reply Brief in Support of Fee Application | Bk. Dkt. 131 | Jan. 23, 2023 | Appx164 |
| 20 | Sabatini Affidavit [with exhibits] | Bk. Dkt. 131-1 | Jan. 23, 2023 | Appx188 |
| 21 | Transcript of [Hearing re:] Application for Allowance of Compensation and Expenses Filed by Carlo Sabatini (Doc 128) Before Honorable Mark J. Conway United States Bankruptcy Court Judge | Bk. Dkt. 133 | Jan. 31, 2023 | Appx197 |
| 22 | Plaintiff's Hearing Exhibit 15 — Bill (12/11/2022 to 1/31/2023) | Hearing Tr. 12:12 (Bk. Dkt. 133) | Jan. 31, 2023 | Appx274 |
| 23 | Order [Approving stipulation to pay the fee that the bankruptcy court awarded] | D. Ct. Dkt. 6 | Apr. 18, 2024 | Appx276 |
| 24 | Brief of Appellee The Money Source, Inc. [District Court] | D. Ct. Dkt. 11 | June 26, 2024 | Appx277 |
| 25 | Reply Brief of Appellant Clarence Lewis [District Court, without exhibits] | D. Ct. Dkt. 14 | July 17, 2024 | Appx305 |

**AppealAP**

# U.S. Bankruptcy Court
## Middle District of Pennsylvania (Wilkes-Barre)
## Adversary Proceeding #: 5:19-ap-00116-MJC

*Assigned to:* Honorable Mark J Conway    *Date Filed:* 11/26/19
*Lead BK Case:* 19-01873
*Lead BK Title:* Clarence William Lewis, Jr.
*Lead BK Chapter:* 13
*Demand:*

*Nature[s] of Suit:*  02 Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy)

### Plaintiff
-----------------------
**Clarence William Lewis, Jr.**                    represented by **Brett Freeman**
312 Church St                                        Freeman Law
Taylor, PA 18517-1412                                606 Hamlin Highway
SSN / ITIN: xxx-xx-3741                              Suite 2
                                                     Lake Ariel, PA 18436
                                                     570-589-0010
                                                     Fax : 570-456-5955
                                                     Email: brett@freeman.law
                                                     *TERMINATED: 11/18/2022*

                                                     **Carlo Sabatini**
                                                     Sabatini Law Firm, LLC
                                                     216 N. Blakely St.
                                                     Dunmore, PA 18512
                                                     570-341-9000
                                                     Email: usbkct@bankruptcypa.com

V.

### Defendant
-----------------------
**The Money Source, Inc.**                          represented by **Matthew Myers Haar**
500 South Broad Street, Suite 100A                  Saul Ewing LLP
Meriden, CT 06450                                   Two N Second Street, 7th Floor
                                                    Harrisburg, PA 17101
                                                    717-257-7508
                                                    Fax : 717-257-7581
                                                    Email: matt.haar@saul.com

                                                    **Mario John Hanyon**
                                                    Phelan Hallinan & Schmieg
                                                    1617 JFK BLVD
                                                    Suite 1400

**Appx38**

Philadelphia, PA 19103
215-563-7000
Fax : 215-568-7616
Email: pamb@fedphe.com

**Kenneth Wesley Mishoe**
United States Attorney's Office
Sylvia H. Rambo United States
Courthouse
1501 N. 6th Street
Box 202
Harrisburg, PA 17102
717-614-4909
Email: wmishoe@tuckerlaw.com
*TERMINATED: 05/19/2020*

**John Paul Regan**
Saul Ewing Arnstein & Lehr LLP
One PPG Place
Ste 3010
Pittsburgh, PA 15222
412-209-2502
Fax : 412-209-2570
Email: jp.regan@saul.com

**Francis X. Riley, III**
Saul Ewing Arnstein & Lehr LLP
650 College Road East, Suite
4000
Princeton, NJ 08540-6603

| Filing Date | # | Docket Text |
|---|---|---|
| 11/26/2019 | 1<br>(10 pgs; 2 docs) | Adversary case 5:19-ap-00116. Complaint Filed by Carlo Sabatini on behalf of Clarence William Lewis Jr. against The Money Source, Inc.. Filing Fee due in the amount of $ 350.00. Certificate of Service of the Complaint and Summons is due by: 02/24/2020. (Attachments: # 1 Exhibit A - The Letters) 02 (Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy)) (Sabatini, Carlo) (Entered: 11/26/2019) |
| 11/27/2019 | 2 | Filing fee not required. (There is no image or paper document associated with this entry.)(RE: related document(s)1). (Davis, Karen) (Entered: 11/27/2019) |
| 11/27/2019 | 3<br>(2 pgs; 2 docs) | Summons setting answer dates, issued for plaintiff to serve.(RE: related document(s)1). Answers to Complaint/Summons are due on: 12/27/2019. Answers to Complaint/Summons by the United States or an office or agency thereof are due on: 1/1/2020. (Davis, Karen) (Entered: 11/27/2019) |
| 12/24/2019 | 4<br>(4 pgs) | Motion to Extend Time to Extend Answer Deadline to Plaintiff's Complaint. Filed by Mario John Hanyon of Phelan Hallinan & Schmieg on behalf of The Money Source, Inc. (RE: related document(s)1, 3). (Hanyon, Mario) (Entered: 12/24/2019) |

| | | |
|---|---|---|
| 12/27/2019 | 5<br>(2 pgs; 2 docs) | Order Granting Motion to Extend Time to File Answer. (RE: related document(s) 4). Answers are due on: 1/10/2020. (Davis, Karen) (Entered: 12/27/2019) |
| 01/09/2020 | 6<br>(4 pgs; 3 docs) | Second Motion to Extend Time to File An Answer. Filed by Mario John Hanyon of Phelan Hallinan & Schmieg on behalf of The Money Source, Inc. (RE: related document(s)3). (Attachments: # 1 Proposed Order # 2 Certificate of Service) (Hanyon, Mario) (Entered: 01/09/2020) |
| 01/14/2020 | 7<br>(2 pgs; 2 docs) | Order Granting Motion to Extend Time . (RE: related document(s) 6). Answers are due on: 1/17/2020. (Davis, Karen) (Entered: 01/14/2020) |
| 01/17/2020 | 8<br>(7 pgs) | Answer to Complaint *with Affirmative Defenses* Filed by Matthew Myers Haar of Saul Ewing LLP on behalf of The Money Source, Inc. (RE: related document(s)1). (Haar, Matthew) (Entered: 01/17/2020) |
| 01/23/2020 | 9<br>(12 pgs; 2 docs) | Amended Complaint Filed by Carlo Sabatini on behalf of Clarence William Lewis Jr. against The Money Source, Inc. (RE: related document(s)1). (Attachments: # 1 Exhibit A) (Sabatini, Carlo) (Entered: 01/23/2020) |
| 01/27/2020 | 10<br>(1 pg) | Order Directing Debtor/Plaintiff to file a redlined version of the Amended Complaint within 14 days of the date of this Order; Defendant shall file its answer or other responsive pleading within 28 days of the date of this Order (RE: related document(s)9). Clerks Office Follow-Up Due by 2/11/2020. (Irving, Beth) (Entered: 01/27/2020) |
| 01/27/2020 | 11<br>(13 pgs; 2 docs) | Exhibit (to Amended Complaint). Filed by Carlo Sabatini of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr. (RE: related document(s)9, 10). (Attachments: # 1 Exhibit Redline of the Amended Complaint that was filed at Docket Entry 9) (Sabatini, Carlo) (Entered: 01/27/2020) |
| 02/18/2020 | 12<br>(2 pgs) | Entry of Appearance of K. Wesley Mishoe, Esq. Filed by Kenneth Wesley Mishoe of Saul Ewing Arnstein & Lehr LLP on behalf of The Money Source, Inc.. (Mishoe, Kenneth) (Entered: 02/18/2020) |
| 02/24/2020 | 13<br>(6 pgs; 2 docs) | Motion to Dismiss Adversary Proceeding Filed by Kenneth Wesley Mishoe of Saul Ewing Arnstein & Lehr LLP on behalf of The Money Source, Inc. (RE: related document(s)9). (Attachments: # 1 Proposed Order) (Mishoe, Kenneth) (Entered: 02/24/2020) |
| 02/24/2020 | 14<br>(31 pgs; 3 docs) | Brief *in Support of Motion to Dismiss* Filed by Kenneth Wesley Mishoe of Saul Ewing Arnstein & Lehr LLP on behalf of The Money Source, Inc. (RE: related document(s)13). (Attachments: # 1 Exhibit A # 2 Exhibit B) (Mishoe, Kenneth) (Entered: 02/24/2020) |
| 02/25/2020 | 15<br>(1 pg) | Order that Plaintiff's brief in opposition to the Motion to Dismiss Adversary Proceeding shall be filed within 28 days of the date of this Order; hearing on the Motion to Dismiss Adversary Proceeding is scheduled for April 23, 2020, at 9:30 a.m. (RE: related document(s)13, 14). Reply Brief due on: 3/24/2020. Hearing scheduled for 4/23/2020 at 09:30 AM at US Courthouse/Max Rosenn, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (Irving, Beth) (Entered: 02/25/2020) |

7/2/26, 10:37 PM          Case: 26-1389   Document: 19   Page: 7  PAM - LIVE   Date Filed: 07/13/2026

| | | |
|---|---|---|
| 03/02/2020 | [16](25 pgs; 4 docs) | Motion To Stay Filed by Matthew Myers Haar of Saul Ewing LLP on behalf of The Money Source, Inc.. (Attachments: # 1 Proposed Order # 2 Exhibit A # 3 Exhibit B) (Haar, Matthew) (Entered: 03/02/2020) |
| 03/02/2020 | [17](36 pgs; 6 docs) | Brief *In Support of Motion to Stay Discovery* Filed by Matthew Myers Haar of Saul Ewing LLP on behalf of The Money Source, Inc. (RE: related document(s)16). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E) (Haar, Matthew) (Entered: 03/02/2020) |
| 03/05/2020 | [18](2 pgs; 2 docs) | Notice setting objection date and hearing. Request submitted to BNC for mailing. (RE: related document(s)16). Objections due by 3/26/2020. Hearing scheduled for 4/23/2020 at 09:30 AM at US Courthouse/Max Rosenn, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (Davis, Karen) (Entered: 03/05/2020) |
| 03/07/2020 | [19](2 pgs) | BNC Certificate of Notice (Notice of Objection Date and Hearing) (RE: related document(s)18). Notice Date 03/07/2020. (Admin.) (Entered: 03/08/2020) |
| 03/10/2020 | [20](6 pgs; 3 docs) | Motion to Appear pro hac vice Filed by Matthew Myers Haar of Saul Ewing LLP on behalf of The Money Source, Inc.. (Attachments: # 1 Affidavit # 2 Proposed Order) (Haar, Matthew) (Entered: 03/10/2020) |
| 03/11/2020 | [21](2 pgs; 2 docs) | Order Granting Motion To Appear pro hac vice of Francis X. Riley, III, Esquire for The Money Source, Inc. (RE: related document(s)20). (George, Deborah) (Entered: 03/11/2020) |
| 03/13/2020 | [22](2 pgs) | BNC Certificate of Notice (RE: related document(s)21). Notice Date 03/13/2020. (Admin.) (Entered: 03/14/2020) |
| 03/20/2020 | [23](3 pgs; 2 docs) | Stipulation *to Extend Deadlines* Filed by Carlo Sabatini of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr.. (Attachments: # 1 Proposed Order) (Sabatini, Carlo) (Entered: 03/20/2020) |
| 03/20/2020 | [24](2 pgs; 2 docs) | Order Continuing hearing originally set for April 23, 2020 at 9:30 AM and approving Stipulation to Extend Deadlines. (RE: related document(s)1, 13, 16, 23). Hearing scheduled for 5/20/2020 at 09:30 AM at US Courthouse/Max Rosenn, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (Davis, Karen) (Entered: 03/20/2020) |
| 03/22/2020 | [25](2 pgs) | BNC Certificate of Notice (RE: related document(s)24). Notice Date 03/22/2020. (Admin.) (Entered: 03/23/2020) |
| 04/01/2020 | [26](3 pgs; 2 docs) | Stipulation *to Extend Deadlines* Filed by Carlo Sabatini of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr.. (Attachments: # 1 Proposed Order) (Sabatini, Carlo) (Entered: 04/01/2020) |
| 04/02/2020 | [27](2 pgs; 2 docs) | Order Approving Stipulation to Extend Deadlines (RE: related document(s)26). (Davis, Karen) (Entered: 04/02/2020) |
| 04/04/2020 | [28](2 pgs) | BNC Certificate of Notice (RE: related document(s)27). Notice Date 04/04/2020. (Admin.) (Entered: 04/05/2020) |
| 04/07/2020 | 29 | Proceeding Memo re: Hearing of 05/20/2020 on (1) the Motion to Stay Discovery (#16); and (2) the Motion to Dismiss Adversary Proceeding |

https://ecf.pamb.uscourts.gov/cgi-bin/DktRpt.pl?263575270906572-L_1_0-1                                      **Appx41**

| | | |
|---|---|---|
| | | (#13) filed by the Defendant; canceled and rescheduled at request of party *Both matters are continued, sua sponte.* Appearances: N/A. Non-Appearances: N/A. (There is no image or paper document associated with this entry.) (RE: related document(s)13, 16, 24, 27). Hearing scheduled for 6/25/2020 at 09:30 AM at US Courthouse/Max Rosenn, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (Ratchford, Patricia) (Entered: 04/07/2020) |
| 04/13/2020 | 30<br>(1 pg) | Entry of Appearance of Brett M. Freeman Filed by Brett Freeman of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr.. (Freeman, Brett) (Entered: 04/13/2020) |
| 04/13/2020 | 31<br>(20 pgs; 4 docs) | Motion to File an Amended Pleading (Amended Complaint) Filed by Brett Freeman of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr. (RE: related document(s)9). (Attachments: # 1 Exhibit A- Proposed Amendment # 2 Exhibit B- Redline of Proposed Amendment # 3 Proposed Order) (Freeman, Brett) (Entered: 04/13/2020) |
| 04/13/2020 | 32<br>(8 pgs) | Brief *in Support of Plaintiff's Motion to Amend* Filed by Brett Freeman of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr. (RE: related document(s)31). (Freeman, Brett) (Entered: 04/13/2020) |
| 04/14/2020 | 33<br>(1 pg) | Order setting status conference (RE: related document(s)13, 16, 31). Status Conference to be held on 5/20/2020 at 09:30 AM at The hearing to be held telephonically - Wilkes-Barre cases. (Irving, Beth) (Entered: 04/14/2020) |
| 04/14/2020 | 34<br>(3 pgs; 2 docs) | Stipulation *To Stay Briefing Schedules* Filed by Brett Freeman of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr. (RE: related document(s)13, 16, 31, 33). (Attachments: # 1 Proposed Order) (Freeman, Brett) (Entered: 04/14/2020) |
| 04/15/2020 | 35<br>(2 pgs; 2 docs) | Order Approving Stipulation To Stay Briefing Schedules (RE: related document(s)34). (Davis, Karen) (Entered: 04/15/2020) |
| 04/17/2020 | 36<br>(2 pgs) | BNC Certificate of Notice (RE: related document(s)35). Notice Date 04/17/2020. (Admin.) (Entered: 04/18/2020) |
| 05/19/2020 | 37 | Notice is given that counsel intends to appear telephonically at the hearing. (There is no image or paper document associated with this entry.) Filed by Matthew Myers Haar of Saul Ewing LLP on behalf of The Money Source, Inc. (RE: related document(s)33). (Haar, Matthew) (Entered: 05/19/2020) |
| 05/19/2020 | 38<br>(2 pgs) | Withdrawal of Appearance of K. Wesley Mishoe Filed by Matthew Myers Haar of Saul Ewing LLP on behalf of The Money Source, Inc.. (Haar, Matthew) (Entered: 05/19/2020) |
| 05/19/2020 | 39 | Notice is given that counsel intends to appear telephonically at the hearing. (There is no image or paper document associated with this entry.) Filed by Carlo Sabatini of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr. (RE: related document(s)33). (Sabatini, Carlo) (Entered: 05/19/2020) |
| 05/20/2020 | 40 | **Proceeding Memo for hearing scheduled on: 05/20/2020** **MATTER:** Status Conference (#33) re: pending Motions to Stay Discovery, Dismiss Adversary and File an Amended Complaint **Appearances:** Carlo Sabatini, Esq., Matthew M. Haar, Esq., Francis X. Riley, Esq.(all appearances by courtcall) **Disposition:** Status Conference |

**Appx42**

| | | |
|---|---|---|
| | | held; Order to be entered Granting Plaintiff's Motion to Amend Complaint and dismissing as moot the Motion to Dismiss Adversary Proceeding. Record made. (There is no image or paper document associated with this entry) (vCal Hearing ID (478612)). (related documents 33 ) (PatriciaRatchford) (Entered: 05/20/2020) |
| 05/20/2020 | 41 (2 pgs; 2 docs) | Order Granting Motion to File an Amended Pleading (Amended Complaint); further Ordered that the Motion to Dismiss Adversary Proceeding is Dismissed; further Ordered that the Defendant is allowed fourteen (14) days from the date of filing the Amended Complaint within which to file any responsive pleading (RE: related document(s)31). (Davis, Karen) (Entered: 05/20/2020) |
| 05/20/2020 | 42 (13 pgs; 2 docs) | Second Amended Complaint Filed by Carlo Sabatini on behalf of Clarence William Lewis Jr. against The Money Source, Inc. (RE: related document(s)1). (Attachments: # 1 Exhibit A) (Sabatini, Carlo) (Entered: 05/20/2020) |
| 05/22/2020 | 43 (2 pgs) | BNC Certificate of Notice (RE: related document(s)41). Notice Date 05/22/2020. (Admin.) (Entered: 05/23/2020) |
| 06/03/2020 | 44 (6 pgs; 2 docs) | Motion to Dismiss Adversary Proceeding //MOTION TO DISMISS Filed by Matthew Myers Haar of Saul Ewing LLP on behalf of The Money Source, Inc. (RE: related document(s)42). (Attachments: # 1 Proposed Order) (Haar, Matthew) (Entered: 06/03/2020) |
| 06/03/2020 | 45 (15 pgs) | Brief IN SUPPORT OF MOTION TO DISMISS Filed by Matthew Myers Haar of Saul Ewing LLP on behalf of The Money Source, Inc. (RE: related document(s)44). (Haar, Matthew) (Entered: 06/03/2020) |
| 06/05/2020 | 46 (1 pg) | Order (RE: related document(s)44, 45). Reply brief due on: 7/3/2020. Hearing scheduled for 8/27/2020 at 09:30 AM at US Courthouse/Max Rosenn, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (Irving, Beth) (Entered: 06/05/2020) |
| 07/06/2020 | 47 (27 pgs; 2 docs) | Brief Opposing Defendant's Motion to Dismiss Filed by Brett Freeman of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr. (RE: related document(s)45). (Attachments: # 1 Exhibit A- Emails Between Counsel) (Freeman, Brett) (Entered: 07/06/2020) |
| 07/17/2020 | 48 (4 pgs; 2 docs) | Motion to Extend Time Reply Brief by 07.31.2020. Filed by Matthew Myers Haar of Saul Ewing LLP on behalf of The Money Source, Inc. (RE: related document(s)47). (Attachments: # 1 Proposed Order) (Haar, Matthew) (Entered: 07/17/2020) |
| 07/20/2020 | 49 (2 pgs; 2 docs) | Order Granting Motion to Extend Time to file Reply Brief. (RE: related document(s) 48). Reply Brief due by 7/31/2020. (Davis, Karen) (Entered: 07/20/2020) |
| 07/31/2020 | 50 (21 pgs; 3 docs) | Brief Reply Brief in Support of Motion to Dismiss Filed by Matthew Myers Haar of Saul Ewing LLP on behalf of The Money Source, Inc. (RE: related document(s)44). (Attachments: # 1 Exhibit Exhibit 1 # 2 Exhibit Exhibit 2) (Haar, Matthew) (Entered: 07/31/2020) |
| 08/26/2020 | 51 | Notice is given that counsel intends to appear telephonically at the hearing. (There is no image or paper document associated with this entry.) Filed by Carlo Sabatini of Sabatini Freeman, LLC on behalf of Clarence William |

| | | Lewis Jr. (RE: related document(s)44, 46). (Sabatini, Carlo) (Entered: 08/26/2020) |
|---|---|---|
| 08/26/2020 | 52 | Notice is given that counsel intends to appear telephonically at the hearing. (There is no image or paper document associated with this entry.) Filed by Matthew Myers Haar of Saul Ewing LLP on behalf of The Money Source, Inc. (RE: related document(s)46). (Haar, Matthew) (Entered: 08/26/2020) |
| 08/27/2020 | 53 | **Proceeding Memo for hearing scheduled on: 08/27/2020** **MATTER:** Motion to Dismiss Adversary Proceeding (#44) filed by the Defendant, The Money Source, Inc. **Appearances:** Carlo Sabatini, Esq., Matthew M. Haar, Esq.(by appearances by CourtCall) **Disposition:** Hearing held. The Court to Order the transcript of the hearing based on a thirty (30) day turnaround. Matter taken under advisement. Record made. (There is no image or paper document associated with this entry) (vCal Hearing ID (488201)). (related documents 44 )(PatriciaRatchford) (Entered: 08/27/2020) |
| 09/16/2020 | 54 (14 pgs) | Transcript of Testimony of Hearing Held 8/27/2020. Remote electronic access to the transcript is restricted until 12/15/2020. The transcript may be viewed at the Bankruptcy Court Clerk's Office. [To purchase a copy of the transcript, contact the ECRO in the Clerk's Office.]. Redaction Request Due By 10/7/2020. Redacted Transcript Submission Due By 10/17/2020. Transcript access will be restricted through 12/15/2020. (J&J Court Transcribers Inc.) (Entered: 09/16/2020) |
| 10/28/2020 | 55 (13 pgs) | Opinion of the Court (RE: related document(s)44, 45, 47, 50, 53 , 54). (Irving, Beth) (Entered: 10/28/2020) |
| 10/28/2020 | 56 (2 pgs) | Judgment that the Motion to Dismiss Adversary Proceeding is granted in part and denied in part; Debtor/Plaintiff is allowed 28 days from the date hereof to file a final amended complaint, to be accompanied by a redlined version of any final amended complaint pursuant to Local Bankruptcy Rule 7002-1, which makes District Court Rules 7.1 through 7.8 and 15.1 applicable in adversary proceedings; Defendant shall have 28 days after service to file a responsive pleading to any final amended complaint. (RE: related document(s)55). (Irving, Beth) (Entered: 10/28/2020) |
| 11/04/2020 | 57 (22 pgs; 3 docs) | Third Amended Complaint Filed by Brett Freeman on behalf of Clarence William Lewis Jr. against The Money Source, Inc. (RE: related document(s)1). (Attachments: # 1 Exhibit Exhibit A # 2 Redline) (Freeman, Brett) (Entered: 11/04/2020) |
| 12/02/2020 | 58 (9 pgs) | Answer to Amended Complaint *//DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S THIRD AMENDED COMPLAINT* Filed by Matthew Myers Haar of Saul Ewing LLP on behalf of The Money Source, Inc. (RE: related document(s)57). (Haar, Matthew) (Entered: 12/02/2020) |
| 03/04/2021 | 59 (2 pgs) | Scheduling Order (RE: related document(s)57, 58). Trial date set for 8/6/2021 at 10:00 AM at US Courthouse/Max Rosenn, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (Irving, Beth) (Entered: 03/04/2021) |
| 04/15/2021 | 60 (3 pgs; 2 docs) | Joint Motion to Extend Time Motion to Extend Deadlines. Filed by Brett Freeman of Sabatini Freeman, LLC on behalf of Clarence William Lewis |

| | | Jr. (RE: related document(s)59). (Attachments: # 1 Proposed Order) (Freeman, Brett) (Entered: 04/15/2021) |
|---|---|---|
| 04/16/2021 | 61 (2 pgs; 2 docs) | Order setting status conference and other deadlines. Status Conference to be held on 11/17/2021 at 09:30 AM at US Courthouse/Max Rosenn, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (Davis, Karen) (Entered: 04/16/2021) |
| 04/18/2021 | 62 (3 pgs) | BNC Certificate of Notice (RE: related document(s)61). Notice Date 04/18/2021. (Admin.) (Entered: 04/19/2021) |
| 05/24/2021 | 63 (12 pgs) | Joint Motion for Protective Order Filed by Brett Freeman of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr.. (Freeman, Brett) (Entered: 05/24/2021) |
| 06/08/2021 | 64 | Trial of 08/06/2021 canceled consistent with the Order entered on 04/16/2021 . (There is no image or paper document associated with this entry.) (RE: related document(s)1, 42, 58, 59, 60, 61). (Ratchford, Patricia) (Entered: 06/08/2021) |
| 06/29/2021 | 65 (52 pgs; 5 docs) | Motion to Compel Discovery. Notice of Self Scheduled Hearing with Objection Deadline served on 6/29/2021. Filed by Brett Freeman of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr.. Objections due by 07/13/2021. Hearing scheduled for 07/29/2021 at 09:30 AM - U.S. Courthouse, 197 S. Main St. Wilkes-Barre, PA. (Attachments: # 1 Exhibit A- Discovery Requests # 2 Exhibit B- Discovery Responses # 3 Notice # 4 Proposed Order) (Freeman, Brett) (Entered: 06/29/2021) |
| 07/09/2021 | 66 (16 pgs) | Brief *in Support of Plaintiff's Motion to Compel* Filed by Brett Freeman of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr. (RE: related document(s)65). (Freeman, Brett) (Entered: 07/09/2021) |
| 07/13/2021 | 67 (11 pgs; 2 docs) | Answer *//DEFENDANT'S OPPOSITION TO MOTION TO COMPEL* Filed by Matthew Myers Haar of Saul Ewing LLP on behalf of The Money Source, Inc. (RE: related document(s)65). (Attachments: # 1 Exhibit Letter Dated 3/4/2021) (Haar, Matthew) (Entered: 07/13/2021) |
| 07/23/2021 | 68 (12 pgs) | Brief *//DEFENDANT'S BRIEF IN OPPOSITION OF MOTION TO COMPEL DISCOVERY* Filed by Matthew Myers Haar of Saul Ewing LLP on behalf of The Money Source, Inc. (RE: related document(s)65). (Haar, Matthew) (Entered: 07/23/2021) |
| 07/27/2021 | 69 (2 pgs; 2 docs) | Order Continuing hearing originally set for 7/29/2021 at 9:30AM. (RE: related document(s)65, 67). Hearing scheduled for 8/12/2021 at 09:30 AM at US Courthouse/Max Rosenn, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (Davis, Karen) (Entered: 07/27/2021) |
| 07/29/2021 | 70 (3 pgs) | BNC Certificate of Notice (RE: related document(s)69). Notice Date 07/29/2021. (Admin.) (Entered: 07/30/2021) |
| 07/30/2021 | 71 | Order Reassigning Case effective 7/30/2021 to Judge Mark J Conway in the interests of judicial administration and economy /s/Henry W. Van Eck (There is no image or paper document associated with this entry.) . (Stefano, Carol) (Entered: 07/30/2021) |

| | | |
|---|---|---|
| 08/03/2021 | 72<br>(4 pgs; 2 docs) | Motion to Continue Filed by Matthew Myers Haar of Saul Ewing LLP on behalf of The Money Source, Inc. (RE: related document(s)65, 69, 71 ). (Attachments: # 1 Proposed Order) (Haar, Matthew) (Entered: 08/03/2021) |
| 08/05/2021 | 73<br>(2 pgs; 2 docs) | Order Granting Motion To Continue (RE: related document(s)65, 72). Hearing scheduled for 8/26/2021 at 09:30 AM at US Courthouse/Max Rosenn, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (Davis, Karen) (Entered: 08/05/2021) |
| 08/05/2021 | 74<br>(3 pgs; 2 docs) | Motion to Extend Time Unopposed Motion to Extend Briefing Deadline. Filed by Brett Freeman of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr. (RE: related document(s)65). (Attachments: # 1 Proposed Order) (Freeman, Brett) (Entered: 08/05/2021) |
| 08/07/2021 | 75<br>(3 pgs) | BNC Certificate of Notice (RE: related document(s)73). Notice Date 08/07/2021. (Admin.) (Entered: 08/08/2021) |
| 08/11/2021 | 76 | Order Rescheduling Status Conference originally set for November 17, 2021 at 9:30 a.m. due to a change in the Court's calendar. IT IS SO ORDERED on 8/11/2021. /s/Mark J. Conway (There is no image or paper document associated with this entry.) (RE: related document(s)16, 27, 29 , 44, 60, 61). Status Conference to be held on 11/16/2021 at 09:30 AM at US Courthouse/Max Rosenn, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (Ratchford, Patricia) (Entered: 08/11/2021) |
| 08/12/2021 | 77<br>(19 pgs; 4 docs) | Brief *Reply Brief in Support of Plaintiff's Motion to Compel* Filed by Brett Freeman of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr. (RE: related document(s)65). (Attachments: # 1 Exhibit A- Email String # 2 Exhibit B- September 25, 2020 Request for Information # 3 Exhibit C- September 30, 2020 Acknowledgment) (Freeman, Brett) (Entered: 08/12/2021) |
| 08/16/2021 | 78<br>(2 pgs; 2 docs) | Order Granting Motion to Extend Time Unopposed Motion to Extend Briefing Deadline. (RE: related document(s) 74). Briefs due by 8/23/2021. (Wilson, Tonia) (Entered: 08/16/2021) |
| 08/18/2021 | 79<br>(3 pgs) | BNC Certificate of Notice (RE: related document(s)78). Notice Date 08/18/2021. (Admin.) (Entered: 08/19/2021) |
| 08/24/2021 | 80 | Order setting telephonic status conference for 08/25/2021 at 2:00 p.m. The Court will initiate the status call to the attorney for the Plaintiff/Debtor and the attorney for the Defendant. IT IS SO ORDERED on 8/24/2021. /s/Mark J. Conway (There is no image or paper document associated with this entry.) (RE: related document(s)1, 65). (Ratchford, Patricia) (Entered: 08/24/2021) |
| 08/25/2021 | 81 | 08/26/2021 Hearing on the Motion to Compel Discovery (#65) canceled. Matter taken under advisement. (There is no image or paper document associated with this entry.) (RE: related document(s)65, 80 ). (Ratchford, Patricia) (Entered: 08/25/2021) |
| 09/08/2021 | 82<br>(4 pgs; 2 docs) | Order Granting in Part and Order Denying in Part the Motion to Compel Discovery (RE: related document(s)65). (Davis, Karen) (Entered: 09/08/2021) |

| | | |
|---|---|---|
| 09/10/2021 | [83](#)<br>(5 pgs) | BNC Certificate of Notice (RE: related document(s)[82](#)). Notice Date 09/10/2021. (Admin.) (Entered: 09/11/2021) |
| 10/27/2021 | [84](#)<br>(5 pgs; 2 docs) | Motion to Enlarge Deadlines (Case Management Deadlines) Filed by Brett Freeman of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr.. (Attachments: # [1](#) Proposed Order) (Freeman, Brett) (Entered: 10/27/2021) |
| 10/29/2021 | [85](#)<br>(6 pgs) | Brief *in Support of Plaintiff's Motion to Extend Deadlines* Filed by Brett Freeman of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr. (RE: related document(s)[84](#)). (Freeman, Brett) (Entered: 10/29/2021) |
| 11/03/2021 | [86](#)<br>(2 pgs; 2 docs) | Order Rescheduling *Status Conference* originally set for 11/16/2021 at 9:30AM and extending deadlines. (RE: related document(s)[1](#), [16](#), 76 , [84](#)). Status Conference to be held on 1/20/2022 at 10:00 AM at US Courthouse/Max Rosenn, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (Davis, Karen) *Modified on 11/4/2021 to edit text (Davis, Karen).* (Entered: 11/04/2021) |
| 11/06/2021 | [87](#)<br>(3 pgs) | BNC Certificate of Notice (RE: related document(s)[86](#)). Notice Date 11/06/2021. (Admin.) (Entered: 11/07/2021) |
| 11/19/2021 | [88](#)<br>(3 pgs) | Stipulation *Regarding Discovery* Filed by Brett Freeman of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr.. (Freeman, Brett) (Entered: 11/19/2021) |
| 11/22/2021 | [89](#)<br>(2 pgs; 2 docs) | Notice setting hearing. Request submitted to BNC for mailing. (RE: related document(s)[88](#)). Hearing scheduled for 12/1/2021 at 11:00 AM at US Courthouse/Max Rosenn, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (Davis, Karen) (Entered: 11/22/2021) |
| 11/22/2021 | [90](#)<br>(2 pgs; 2 docs) | Amended Notice setting hearing. Request submitted to BNC for mailing. (RE: related document(s)[88](#), [89](#)). Hearing scheduled for 12/7/2021 at 09:30 AM at US Courthouse/Max Rosenn, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (Davis, Karen) (Entered: 11/22/2021) |
| 11/24/2021 | [91](#)<br>(2 pgs) | BNC Certificate of Notice (Notice of Hearing) (RE: related document(s)[89](#)). Notice Date 11/24/2021. (Admin.) (Entered: 11/25/2021) |
| 11/24/2021 | [92](#)<br>(2 pgs) | BNC Certificate of Notice (Notice of Hearing) (RE: related document(s)[90](#)). Notice Date 11/24/2021. (Admin.) (Entered: 11/25/2021) |
| 12/07/2021 | 93 | **Proceeding Memo for hearing scheduled on: 12/07/2021 MATTER:** Stipulation re: discovery (#88) **Appearances:** Brett Freeman, Esq., Matthew M Haar, Esq. (both by remote appearance) **Disposition:** Hearing called. Matter is being referred to mediation. Order to be entered appointing a Mediator. Record made. (There is no image or paper document associated with this entry) (vCal Hearing ID (540306)). (related documents [88](#) )(PatriciaRatchford) (Entered: 12/07/2021) |
| 12/07/2021 | [94](#)<br>(3 pgs; 2 docs) | Order Appointing Mediator Myles Wren and assigning case to mediation (RE: related document(s)[1](#), [88](#), 93 ). (Davis, Karen) (Entered: 12/07/2021) |

| | | |
|---|---|---|
| 12/09/2021 | 95<br>(3 pgs) | BNC Certificate of Notice (RE: related document(s)94). Notice Date 12/09/2021. (Admin.) (Entered: 12/10/2021) |
| 01/05/2022 | 96<br>(5 pgs; 2 docs) | Consent to Mediation *//UNOPPOSED MOTION REGARDING MEDIATION* Filed by Matthew Myers Haar of Saul Ewing LLP on behalf of The Money Source, Inc. (RE: related document(s)94). (Attachments: # 1 Proposed Order) (Haar, Matthew) (Entered: 01/05/2022) |
| 01/07/2022 | 97<br>(2 pgs; 2 docs) | Order Regarding Mediation. The Motion is Granted; the mediation session shall proceed on 2/17/2022; the mediation session shall proceed entirely by Zoom; the mediator shall file a report on or before 3/21/2022; and the deadlines of the Court's Order of November 3, 2021 are vacated. (RE: related document(s)86, 94, 96). (Davis, Karen) (Entered: 01/10/2022) |
| 01/10/2022 | 98 | 01/20/2022 Status Conference canceled. Matter has bene referred to mediation. (There is no image or paper document associated with this entry.) (RE: related document(s)86, 97). (Ratchford, Patricia) (Entered: 01/10/2022) |
| 01/12/2022 | 99<br>(2 pgs) | BNC Certificate of Notice (RE: related document(s)97). Notice Date 01/12/2022. (Admin.) (Entered: 01/13/2022) |
| 03/02/2022 | 100<br>(2 pgs; 2 docs) | Report of Mediator Filed by Myles R. Wren of Cipriani & Werner, P.C. on behalf of Myles Wren (RE: related document(s)94, 97). (Attachments: # 1 Certificate of Service) (Wren, Myles) (Entered: 03/02/2022) |
| 03/10/2022 | 101<br>(2 pgs; 2 docs) | Order setting Status Conference. (RE: related document(s)1, 100). Status Conference to be held on 3/30/2022 at 02:00 PM at US Courthouse/Max Rosenn, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (Davis, Karen) (Entered: 03/10/2022) |
| 03/12/2022 | 102<br>(3 pgs) | BNC Certificate of Notice (RE: related document(s)101). Notice Date 03/12/2022. (Admin.) (Entered: 03/13/2022) |
| 03/25/2022 | 103<br>(4 pgs; 2 docs) | Joint Status Report Filed by Matthew Myers Haar of Saul Ewing LLP on behalf of The Money Source, Inc. (RE: related document(s)101). (Attachments: # 1 Proposed Order) (Haar, Matthew) (Entered: 03/25/2022) |
| 03/26/2022 | 104<br>(2 pgs; 2 docs) | Order canceling status conference set for March 30, 2022. (RE: related document(s)103). (Wilson, Tonia) (Entered: 03/28/2022) |
| 03/30/2022 | 105<br>(3 pgs) | BNC Certificate of Notice (RE: related document(s)104). Notice Date 03/30/2022. (Admin.) (Entered: 03/31/2022) |
| 04/15/2022 | 106<br>(3 pgs; 2 docs) | Joint Status Report Filed by Carlo Sabatini of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr. (RE: related document(s)104). (Attachments: # 1 Proposed Order) (Sabatini, Carlo) (Entered: 04/15/2022) |
| 06/01/2022 | 107<br>(2 pgs; 2 docs) | Order Re-Assigning Adversary Proceeding to Mediation (RE: related document(s)97, 106). (Davis, Karen) (Entered: 06/01/2022) |

**Appx48**

| 06/03/2022 | 108 (3 pgs) | BNC Certificate of Notice (RE: related document(s)107). Notice Date 06/03/2022. (Admin.) (Entered: 06/04/2022) |
|---|---|---|
| 06/23/2022 | 109 (8 pgs; 3 docs) | Motion *to Compel Defendant to Show Cause for Failure to Schedule Mediation* Filed by Carlo Sabatini of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr. (RE: related document(s)107). (Attachments: # 1 Exhibit A - Email String # 2 Proposed Order) (Sabatini, Carlo) (Entered: 06/23/2022) |
| 06/29/2022 | 110 (2 pgs; 2 docs) | Notice setting objection date and hearing. Request submitted to BNC for mailing. (RE: related document(s)109). Objections due by 7/13/2022. Hearing scheduled for 7/28/2022 at 02:00 PM at US Courthouse/Max Rosenn, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (Kovach, Christina) (Entered: 06/29/2022) |
| 07/01/2022 | 111 (3 pgs) | BNC Certificate of Notice (Notice of Objection Date and Hearing) (RE: related document(s)110). Notice Date 07/01/2022. (Admin.) (Entered: 07/02/2022) |
| 07/13/2022 | 112 (5 pgs; 2 docs) | Answer *//DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO SHOW CAUSE FOR FAILURE TO SCHEDULE MEDIATION* Filed by Matthew Myers Haar of Saul Ewing LLP on behalf of The Money Source, Inc. (RE: related document(s)109). (Attachments: # 1 Proposed Order) (Haar, Matthew) (Entered: 07/13/2022) |
| 07/13/2022 | 113 (2 pgs; 2 docs) | Answer */Response of Mediator to Motion of Plaintiff and Response of Defendant* Filed by Myles R. Wren of Cipriani & Werner, P.C. on behalf of Myles Wren (RE: related document(s)109, 112). (Attachments: # 1 Certificate of Service) (Wren, Myles) (Entered: 07/13/2022) |
| 07/28/2022 | 114 | **Proceeding Memo for hearing scheduled on: 07/28/2022 MATTER:** Motion to Compel Defendant to Show Cause for Failure to Schedule Mediation (#109); Answer filed on behalf of The Money Source, Inc. (#112); Answer of the Mediator filed by Myles Wren (#113) **Appearances:** Matthew Myers Haar, Esquire (by remote appearance) Carlo Sabatini, Esquire (In person) **Disposition:** Hearing held. Order to be entered. Record Made. (There is no image or paper document associated with this entry) (vCal Hearing ID (559749)). (related documents 109 )(LyndseyPrice) (Entered: 07/28/2022) |
| 07/28/2022 | 115 (2 pgs; 2 docs) | Ordered, that the Parties shall attend and participate in mediations to be held on Thursday, September *1*, 2022. (RE: related document(s)109). (Davis, Karen) *Modified on 7/29/2022 to updated entry (Davis, Karen).* (Entered: 07/28/2022) |
| 07/30/2022 | 116 (3 pgs) | BNC Certificate of Notice (RE: related document(s)115). Notice Date 07/30/2022. (Admin.) (Entered: 07/31/2022) |
| 10/26/2022 | 117 (22 pgs; 2 docs) | Stipulation Filed by Carlo Sabatini of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr.. (Attachments: # 1 Exhibit A - Statement of Fees) (Sabatini, Carlo) (Entered: 10/26/2022) |
| 10/26/2022 | 118 | *Entered in error. No order is required.* A proposed order in revisable PDF format was not filed with the court for the document at docket entry #117. Failure to file a proposed order in revisable PDF format on or before |

| | | October 29, 2022 will result in the denial of the Stipulation, without prejudice, and without further notice. IT IS SO ORDERED on 10/26/2022. /s/Mark J. Conway (There is no image or paper document associated with this entry.) (RE: related document(s)117). (Davis, Karen) Modified on 10/27/2022 (Davis, Karen). (Entered: 10/26/2022) |
|---|---|---|
| 10/27/2022 | 119 (2 pgs) | Report of Mediator Filed by Myles R. Wren of Cipriani & Werner, P.C. on behalf of Myles Wren (RE: related document(s)107, 115). (Wren, Myles) (Entered: 10/27/2022) |
| 10/27/2022 | 120 (2 pgs; 2 docs) | Order setting status conference (RE: related document(s)1, 119). Status Conference to be held on 11/8/2022 at 01:30 PM at US Courthouse/Max Rosenn, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (Davis, Karen) (Entered: 10/28/2022) |
| 10/30/2022 | 121 (3 pgs) | BNC Certificate of Notice (RE: related document(s)120). Notice Date 10/30/2022. (Admin.) (Entered: 10/31/2022) |
| 10/31/2022 | 122 (3 pgs) | Entry of Appearance of John Paul Regan Filed by John Paul Regan of Saul Ewing Arnstein & Lehr LLP on behalf of The Money Source, Inc.. (Regan, John) (Entered: 10/31/2022) |
| 11/08/2022 | 123 | **Proceeding Memo for hearing scheduled on: 11/08/2022 MATTER:** Status Conference (#120) **Appearances:** Carlo Sabatini, Esq. (in person) John Paul Regan, Esq. (by remote appearance) **Disposition:** Status Conference held and concluded. The Court to issue a scheduling order allowing for the filing of Briefs. Record made. (There is no image or paper document associated with this entry) (vCal Hearing ID (567991)). (related documents 1 )(PatriciaRatchford) (Entered: 11/08/2022) |
| 11/08/2022 | 124 (2 pgs; 2 docs) | Order setting Hearing/Argument. (RE: related document(s)1, 119). Hearing scheduled for 1/31/2023 at 02:00 PM at US Courthouse/Max Rosenn, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (Davis, Karen) (Entered: 11/09/2022) |
| 11/11/2022 | 125 (3 pgs) | BNC Certificate of Notice (RE: related document(s)124). Notice Date 11/11/2022. (Admin.) (Entered: 11/12/2022) |
| 11/17/2022 | 126 (1 pg) | Withdrawal of Appearance of Brett M. Freeman Filed by Brett Freeman of Sabatini Freeman, LLC on behalf of Clarence William Lewis Jr.. (Freeman, Brett) (Entered: 11/17/2022) |
| 12/05/2022 | 127 (3 pgs; 2 docs) | Offer of Judgment and Notice of Acceptance *with Certificate of Service* Filed by Carlo Sabatini of Sabatini Law Firm, LLC on behalf of Clarence William Lewis Jr. (RE: related document(s)57). (Attachments: # 1 Exhibit A - Offer of Judgment) (Sabatini, Carlo) (Entered: 12/05/2022) |
| 12/08/2022 | 128 (25 pgs; 5 docs) | Application for allowance of compensation & expenses . Notice served on 12/8/2022. Filed by Carlo Sabatini of Sabatini Law Firm, LLC on behalf of Clarence William Lewis Jr.. Objections due by 12/29/2022. (Attachments: # 1 Exhibit A1 - First Bill Agreed Portion # 2 Exhibit A2 - First Bill Disputed Portion # 3 Exhibit B - October 28, 2022 - December 8, 2022 # 4 Proposed Order) (Sabatini, Carlo) (Entered: 12/08/2022) |

| | | |
|---|---|---|
| 12/08/2022 | [129](#) (10 pgs) | Brief *in Support of Petition for Attorney's Fees and Costs* Filed by Carlo Sabatini of Sabatini Law Firm, LLC on behalf of Clarence William Lewis Jr. (RE: related document(s)[128](#)). (Sabatini, Carlo) (Entered: 12/08/2022) |
| 01/09/2023 | [130](#) (117 pgs; 7 docs) | Brief *//DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS* Filed by Matthew Myers Haar of Saul Ewing LLP on behalf of The Money Source, Inc. (RE: related document(s)[129](#)). (Attachments: # [1](#) Exhibit A # [2](#) Exhibit B # [3](#) Exhibit C # [4](#) Exhibit D # [5](#) Exhibit E # [6](#) Proposed Order) (Haar, Matthew) (Entered: 01/09/2023) |
| 01/23/2023 | [131](#) (35 pgs; 3 docs) | Brief - *Plaintiff's Reply Brief in Support of Fee Application* Filed by Carlo Sabatini of Sabatini Law Firm, LLC on behalf of Clarence William Lewis Jr. (RE: related document(s)[128](#)). (Attachments: # [1](#) Affidavit # [2](#) Exhibit B - Reed v. Hellers Gas, Inc.) (Sabatini, Carlo) (Entered: 01/23/2023) |
| 02/01/2023 | 132 | **Proceeding Memo for hearing scheduled on: 01/31/2023 MATTER:** Application for Allowance of compensation and expenses filed by Carlo Sabatini, Counsel to Plaintiff/Debtor (# [128](#) ) **APPEARANCES:** Carlo Sabatini, Esq., Matthew M. Haar, Esq. **DISPOSITION:** Evidentiary Hearing held. Exhibits admitted without objection. Matter taken under advisement. Record made. (Ratchford, Patricia) (Entered: 02/01/2023) |
| 02/22/2023 | [133](#) (77 pgs) | Transcript of Testimony of HEARING RE: APPLICATION FOR ALLOWANCE OF COMPENSATION AND EXPENSES FILED BY CARLO SABATINI (DOC 128) Held 1/31/2023. Remote electronic access to the transcript is restricted until 05/23/2023. The transcript may be viewed at the Bankruptcy Court Clerk's Office. [To purchase a copy of the transcript, contact the ECRO in the Clerk's Office.]. Redaction Request Due By 03/15/2023. Redacted Transcript Submission Due By 03/25/2023. Transcript access will be restricted through 05/23/2023. (Transcripts Plus) (Entered: 02/22/2023) |
| 03/28/2023 | [134](#) (2 pgs) | Affidavit *//LETTER TO HONORABLE MARK J. CONWAY* Filed by Matthew Myers Haar of Saul Ewing LLP on behalf of The Money Source, Inc. (RE: related document(s)[133](#)). (Haar, Matthew) (Entered: 03/28/2023) |
| 02/22/2024 | [135](#) (15 pgs; 2 docs) | Opinion of the Court (RE: related document(s)[128](#)). (Davis, Karen) (Entered: 02/23/2024) |
| 02/22/2024 | [136](#) (2 pgs; 2 docs) | Order of the Court Granting in Part and Denying in Part Plaintiff's Petition for Attorney's Fees and Costs (RE: related document(s)[128](#)). (Davis, Karen) (Entered: 02/23/2024) |
| 02/23/2024 | [137](#) (2 pgs; 2 docs) | Judgment by Offer of Judgment (RE: related document(s)[127](#), [135](#), [136](#)). (Davis, Karen) (Entered: 02/23/2024) |
| 02/25/2024 | [138](#) (16 pgs) | BNC Certificate of Notice (RE: related document(s)[135](#)). Notice Date 02/25/2024. (Admin.) (Entered: 02/26/2024) |
| 02/25/2024 | [139](#) (3 pgs) | BNC Certificate of Notice (RE: related document(s)[136](#)). Notice Date 02/25/2024. (Admin.) (Entered: 02/26/2024) |

| | | |
|---|---|---|
| 02/25/2024 | 140<br>(3 pgs) | BNC Certificate of Notice (RE: related document(s)137). Notice Date 02/25/2024. (Admin.) (Entered: 02/26/2024) |
| 03/04/2024 | 141<br>(3 pgs; 2 docs) | Notice of Appeal of Order dated 2/23/2024 and Statement of Election. Filing fee due in the amount of $ 298.00. Filed by Carlo Sabatini of Sabatini Law Firm, LLC on behalf of Clarence William Lewis Jr. (RE: related document(s)137). Transmission to District Court due by 04/8/2024. Appellant Designation due by 03/18/2024. (Attachments: # 1 Exhibit Judgment)(Sabatini, Carlo) (Entered: 03/04/2024) |
| 03/04/2024 | | Receipt of Notice of Appeal and Statement of Election( 5:19-ap-00116-MJC) [appeal,ntcapl] ( 298.00) filing fee. Receipt number A10985759, amount $ 298.00. (RE: related document(s)141). (U.S. Treasury) (Entered: 03/04/2024) |
| 03/05/2024 | 142<br>(3 pgs; 2 docs) | PDF document (Serving the Notice of Appeal) submitted to BNC for mailing. (RE: related document(s)141). (Davis, Karen) (Entered: 03/05/2024) |
| 03/05/2024 | 143 | Transmittal of Notice of Appeal to Civil Action Number: 3:24-cv-00387. (There is no image or paper document associated with this entry.) (RE: related document(s)141). (Davis, Karen) (Entered: 03/05/2024) |
| 03/07/2024 | 144<br>(4 pgs) | BNC Certificate of Notice (RE: related document(s)142). Notice Date 03/07/2024. (Admin.) (Entered: 03/08/2024) |
| 03/18/2024 | 145<br>(1 pg) | Certification of No Transcript Ordered re: Notice of Appeal Filed by Carlo Sabatini of Sabatini Law Firm, LLC on behalf of Clarence William Lewis Jr. (RE: related document(s)141). (Sabatini, Carlo) (Entered: 03/18/2024) |
| 03/18/2024 | 146<br>(1 pg) | *Plaintiff/Appellant Designation of Items in Record of Appeal and Statement of Issues on Appeal* Filed by Carlo Sabatini of Sabatini Law Firm, LLC on behalf of Clarence William Lewis Jr. (RE: related document(s)141). (Sabatini, Carlo) Modified to match PDF on 3/20/2024 (Edris, Christina). (Entered: 03/18/2024) |
| 04/05/2024 | 147 | Notice of Appeal in the above-referenced matter was filed on 3/4/2024 and transmitted to District Court on 3/5/2024. To date, the times set forth in Fed. R. Bank. P. 8009 and 8010 have passed and no further filings have been received in connection with the appeal. Accordingly, the record is being transmitted based on the submissions filed as of today's date. (There is no image or paper document associated with this entry.) (RE: related document(s)141). (Davis, Karen) (Entered: 04/05/2024) |
| 01/26/2026 | 148<br>(20 pgs; 2 docs) | Memorandum Opinion and Final Order By District Court Judge Munley, Re: Appeal. Civil Case Number 3:24-CV-00387, for the reasons set forth in an accompanying memorandum, it is hereby ORDERED that: The bankruptcy appeal filed by Clarence William Lewis, Jr. is hereby DENIED; Clarence William Lewis, Jr.'s request for oral argument is also DENIED. Filed by Clerks Office USDC (RE: related document(s)141). (Attachments: # 1 Order following Memo Opinion)(Williamson, Christine) (Entered: 01/26/2026) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/02/2026 22:37:39 | | | |
| **PACER Login:** | carlosab | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 5:19-ap-00116-MJC Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 14 | **Cost:** | 1.40 |

APPEAL,BKAPP,CLOSED

# United States District Court
## Middle District of Pennsylvania (Scranton)
## CIVIL DOCKET FOR CASE #: 3:24-cv-00387-JKM

| | |
|---|---|
| Lewis v. The Money Source, Inc. | Date Filed: 03/04/2024 |
| Assigned to: Honorable Julia K Munley | Date Terminated: 01/23/2026 |
| Case in other court: Third Circuit, 26-01389 | Jury Demand: None |
|                US Bankruptcy Court - Judge Mark J. Conway, | Nature of Suit: 422 Bankruptcy Appeal |
|                5-19-ap-00116 | (801) |
| Cause: 28:0158 Notice of Appeal re Bankruptcy Matter (BA | Jurisdiction: Federal Question |

**Appellant**

**Clarence William Lewis, Jr.**                represented by      **Carlo Sabatini**
                                                                    Sabatini Law Firm, LLC
                                                                    216 N. Blakely St.
                                                                    Dunmore, PA 18512
                                                                    570-341-9000
                                                                    Email: ecf@bankruptcypa.com
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

V.

**Appellee**

**The Money Source, Inc.**                represented by      **Matthew M. Haar**
                                                                    Saul Ewing, LLP
                                                                    2 North Second Street
                                                                    7th Floor
                                                                    Harrisburg, PA 17101
                                                                    717-257-7508
                                                                    Email: matt.haar@saul.com
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **John Paul Regan**
                                                                    Saul Ewing LLP
                                                                    One PPG Place
                                                                    Ste 3010
                                                                    Pittsburgh, PA 15222
                                                                    412-209-2502
                                                                    Fax: 412-209-2570
                                                                    Email: jp.regan@saul.com
                                                                    *TERMINATED: 06/24/2026*
                                                                    *ATTORNEY TO BE NOTICED*

**Trustee**

**Jack N. Zaharopoulos**                represented by      **Jack N. Zaharopoulos**
                                                                    Standing Chapter 13 Trustee
                                                                    8125 Adams Drive, Suite A

Hummelstown, PA 17036
717-566-6097
Email: jzaharopoulos@pamd13trustee.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Trustee**

**United States Trustee**                          represented by    **D. Troy Sellars**
U.S. Department of Justice
Office of the United States Trustee
228 Walnut St
Suite 1190
Harrisburg, PA 17101
717-221-4544
Email: D.Troy.Sellars@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/05/2024 | 1 | Notice of APPEAL FROM BANKRUPTCY COURT. Bankruptcy Court case number 5-19-ap-00116. Bankruptcy Judge Presiding Over Bankruptcy Case Mark J. Conway. File received (Attachments: # 1 Order being Appealed.)(kd) (Entered: 03/05/2024) |
| 03/05/2024 | | DOCKET ANNOTATION: This case has been assigned to Judge Munley. (ktt) (Entered: 03/12/2024) |
| 03/13/2024 | 2 | ORDER Re: Case Assignment and Procedures Signed by Honorable Julia K Munley on 3/13/24. (sm) (Main Document 2 replaced on 4/11/2024) (sm). (Entered: 03/13/2024) |
| 04/05/2024 | 3 | DESIGNATED RECORD (BANKRUPTCY) by Clarence William Lewis, Jr re 1 Bankruptcy Appeal Appellant Brief due by 5/6/2024. (Attachments: # 1 Opinion, # 2 Judgment, # 3 Third Amended Complaint, # 4 Answer to Amended Complaint, # 5 Motion to Compel Discovery, # 6 Brief in Support of Motion to Compel, # 7 Answer to Motion Compel, # 8 Brief In Opposition to Motion to Compel, # 9 Reply Brief In Support of Motion to Compel, # 10 Order, # 11 Joint Status Report, # 12 Motion to Compel, # 13 Order, # 14 Stipulation, # 15 Report of Mediator, # 16 Offer of Judgment and Notice of Acceptance, # 17 Application for Allowance of compensation and expenses, # 18 Brief in Support of Petition for Attorney Fees and Costs, # 19 Brief in Opposition to Petition for Attorney's Fees and Costs, # 20 Reply Brief in Support of Fee Application, # 21 Affidavit/Letter, # 22 Opinion of the Court, # 23 Order of the Court, # 24 Judgment, # 25 Notice of Appeal, # 26 Certification of No Transcript Ordered)(kd) (Entered: 04/05/2024) |
| 04/05/2024 | 4 | BANKRUPTCY COURT TRANSCRIPT of Proceedings held on January 31, 2023 (Public cannot view this document.) (kd) (Entered: 04/05/2024) |
| 04/05/2024 | | Notice of Appeal in the above-referenced matter was filed on March 4, 2024 and transmitted to District Court on March 5, 2024. To date, the times set forth in Fed. R. Bank. P. 8009 and 8010 have passed and no further filings have been received in connection with the appeal. Accordingly, the record is being transmitted based on the submissions filed as of today's date. (kd) (Entered: 04/05/2024) |
| 04/11/2024 | 5 | STIPULATION by Clarence William Lewis, Jr. (Attachments: # 1 Exhibit(s) A - Offer of Judgment, # 2 Proposed Stipulated Order)(Sabatini, Carlo) (Entered: 04/11/2024) |

| 04/18/2024 | 6 | ORDER approving re 5 Stipulation Signed by Honorable Julia K Munley on 4/18/24. (sm) (Entered: 04/18/2024) |
|---|---|---|
| 04/18/2024 | 7 | NOTICE of Appearance by John Paul Regan on behalf of The Money Source, Inc.. (Regan, John) (Entered: 04/18/2024) |
| 05/01/2024 | 8 | STIPULATION *to extend Appellant's deadline to file a brief* by Clarence William Lewis, Jr. (Sabatini, Carlo) (Entered: 05/01/2024) |
| 05/02/2024 | 9 | ORDER approving re 8 Stipulation extending appellant's deadline to file brief - due 5/27/24 Signed by Honorable Julia K Munley on 5/2/24. (sm) (Entered: 05/02/2024) |
| 05/27/2024 | 10 | Appellant's BRIEF by Clarence William Lewis, Jr. Appellee Brief due by 6/26/2024. (Attachments: # 1 Appendix)(Sabatini, Carlo) (Entered: 05/27/2024) |
| 06/26/2024 | 11 | Appellee's BRIEF by The Money Source, Inc.. (Attachments: # 1 Appendix A)(Regan, John) (Entered: 06/26/2024) |
| 07/08/2024 | 12 | STIPULATION *to Extend Time to File Reply Brief* by Clarence William Lewis, Jr. (Sabatini, Carlo) (Entered: 07/08/2024) |
| 07/09/2024 | 13 | ORDER approving re 12 Stipulation extending appellant's deadline to file a brief- due 7/17/24. Signed by Honorable Julia K Munley on 7/9/24. (sm) (Entered: 07/09/2024) |
| 07/17/2024 | 14 | Appellant's REPLY BRIEF by Clarence William Lewis, Jr. (Attachments: # 1 Exhibit(s)) (Sabatini, Carlo) (Entered: 07/17/2024) |
| 07/23/2024 | 15 | REQUEST for Oral Argument by Clarence William Lewis, Jr. (Sabatini, Carlo) (Entered: 07/23/2024) |
| 01/23/2026 | 16 | MEMORANDUM (Order to follow as separate docket entry) Signed by Honorable Julia K Munley on 1/23/26. (sm) (Entered: 01/23/2026) |
| 01/23/2026 | 17 | ORDER (memorandum filed previously as separate docket entry)- DISMISSING the bankruptcy appeal filed by Clarence William Lewis, JR; the request for oral argument is denied; Clerk of Court is directed to CLOSE this case. Signed by Honorable Julia K Munley on 1/23/26. (sm) (Entered: 01/23/2026) |
| 02/21/2026 | 18 | NOTICE OF APPEAL in NON-PRISONER Case as to 17 Order,, Order Dismissing Case (60 Day Settlement Order), by Clarence William Lewis, Jr. Filing Fee and Docket Fee PAID. Filing fee $ 605, receipt number APAMDC-7291410. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (Sabatini, Carlo) (Entered: 02/21/2026) |
| 06/24/2026 | 20 | WITHDRAWAL OF ATTORNEY APPEARANCE - Attorney John Paul Regan terminated on behalf of The Money Source, Inc.. (Regan, John) (Entered: 06/24/2026) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/02/2026 22:38:58 | | |
| **PACER Login:** carlosab | **Client Code:** | |
| **Description:** Docket Report | **Search Criteria:** | 3:24-cv-00387-JKM |
| **Billable Pages:** 3 | **Cost:** | 0.30 |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re Clarence William Lewis, Jr.,<br>　　　　　Debtor<br><br>Address:　　312 Church St.<br>　　　　　　Taylor, PA 18517<br><br>Last four digits of SSN: 3741<br><br>Clarence William Lewis, Jr.,<br>　　　　　Plaintiff<br>v.<br><br>The Money Source, Inc.,<br>　　　　　Defendant | Chapter 13<br><br>Case No. 5:19-bk-01873-RNO<br><br>Adversary No. 5:19-ap-116-RNO |

## THIRD AMENDED COMPLAINT

### I.　　INTRODUCTION

1.　　This is an action for damages brought by an individual consumer for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA") and the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"). RESPA and TILA permit a borrower to submit to a mortgage loan's servicer written requests for certain types of information. Here, Plaintiff sent such requests, partly to obtain information regarding $900.00 of attorney's fees that Defendant had included in a Notice of Postpetition Mortgage Fees, Expenses, and Charges. Though Defendant ultimately withdrew the notice, it did so only after causing Plaintiff to incur substantial attorney's fees. Furthermore, Defendant still has refused to respond to the RESPA and TILA requests. Plaintiff seeks statutory damages and attorney's fees for Defendant's failure to comply with these statutes.

## II.    JURISDICTION AND VENUE

2.    Plaintiff's claims are "related to" this bankruptcy case. His Chapter 13 plan was confirmed on July 24, 2019. (Doc. 38.) The plan provided that all of Debtor's post-petition assets vest upon entry of discharge. (Doc. 34, p. 6, ¶ 9.A.(2).) The claims asserted herein are post-petition assets because they arose when Defendant failed to respond to post-petition requests that Defendant received in August and September of 2019. The claims have been disclosed on Schedule A/B. (Doc. 45, p. 4.) Thus, the claims remain property of the estate. The liquidation of property of the estate could conceivably have an effect on the estate, and is thus "related to" the bankruptcy case.

3.    Plaintiff consents, pursuant to 28 U.S.C. § 157(c)(2), to the referral of this matter to this Court for the entry of an appropriate final order and judgment.

## III.    PARTIES

4.    Plaintiff is a natural person residing in a house located at 312 Church Street, Taylor, Pennsylvania, 18517. The property situated at this address shall hereinafter be referred to as "Residence."

5.    Defendant is a corporation engaged in the business of servicing federally related mortgage loans in this state and has designated that notices to it should be sent to 500 South Broad Street, Suite 100A, Meriden, CT 06450. (See Proof of Claim 7).

## IV.    FACTS

6.    In 2014, Plaintiff executed a loan agreement (hereinafter "the Loan") and a mortgage (hereinafter "Mortgage") in favor of Defendant, The Money Source, Inc. (hereinafter "Defendant").

7.    Defendant is the person to whom the Loan was initially payable.

2

8.      Defendant is responsible for receiving scheduled periodic payments with respect to the Loan.

9.      Defendant is responsible for making payments of principal and interest with respect to the amounts received from the borrower as may be required by the terms of the Loan.

10.      Defendant regularly extends consumer credit which is payable by in more than four installments.

11.      Defendant regularly extends credit for which the payment of a finance charge is required.

12.      Defendant has originated one or more mortgages through a mortgage broker. The allegation in this paragraph is likely to have evidentiary support after an opportunity for discovery.

13.      Defendant is a "creditor" as that term is defined in 15 U.S.C. § 1602(g).

14.      With respect to the Loan, Defendant is the "creditor" as that term is defined in 15 U.S.C. § 1602(g) .

15.      Defendant is responsible for "servicing" the Loan, as that term is defined in 12 U.S.C. § 2605(i)(3).

16.      With respect to the Loan, Defendant is the "servicer" as that term is defined in 12 U.S.C. § 2605(i)(2) .

17.      Plaintiff is a "person" as that term is defined in 15 U.S.C. § 1602(e).

18.      Plaintiff, through his attorney, sent Defendant a letter on August 6, 2019 ("the August Letter"), and then sent a second letter on September 27, 2019 ("the September Letter")(jointly referred to as "the Letters").

3

19. A copy of each of the Letters is attached as Exhibit A.

20. Defendant received the August Letter on August 9, 2019 and received the September Letter on September 30, 2019.

21. The September Letter seeks exactly the same information that was requested in the August Letter.

22. The September Letter would not have been sent if Defendant had provided the information that was requested in the August Letter.

23. The postage expense for the September Letter would not have been incurred but for Defendant's failure to respond to the August Letter.

24. Since the inception of the Loan, Defendant has been the entity responsible for receiving scheduled periodic payments from Plaintiff, pursuant to the terms of the Loan.

25. Each of the foregoing allegations is included in each of the following counts as though more fully set forth at length.

V.    CLAIMS

*Count 1 – RESPA 12 U.S.C. § 2605 and 12 C.F.R. § 1024.36*

26. Mortgage secures the repayment of the Loan and is a lien on Residence.

27. Residence is residential real property designed principally for the occupancy of one family.

28. The Loan was not a construction loan or other temporary financing.

29. On the date the Loan was originated, Defendant was regulated by an agency of the federal government.

30. The Loan is FHA insured.

31. On the date the Loan was originated, Defendant made or invested in

4

Appx60

residential real estate loans aggregating more than $1,000,000 per year. This allegation is likely to have evidentiary support after a reasonable opportunity for discovery.

32.    The Loan is a "federally related mortgage loan" as that term is defined in 12 U.S.C. § 2602(1).

33.    Each of the Letters was a written correspondence that was not written on a payment coupon or other payment medium supplied by the servicer.

34.    Each of the Letters included the name and account number of the borrower.

35.    Each of the Letters provided sufficient detail regarding information sought by the borrower.

36.    Therefore, each of the Letters was a Request for Information ("RFI"), as described in Regulation X, 12 C.F.R. § 1024.36(a).

37.    When a servicer of a federally related mortgage loan receives an RFI from a borrower's agent that states the information the borrower is requesting with respect to the borrower's mortgage, the servicer is required to provide a written response acknowledging receipt of the RFI within 5 business days.

38.    Defendant did not provide a written response acknowledging receipt of either of the Letters within the five business-day periods that followed the receipt of each of the Letters.

39.    Defendant failed to comply with 12 C.F.R. § 1024.36.

40.    Additionally, a servicer must respond within 10 business days to a request for the identity and address for the owner of a loan pursuant to 12 U.S.C. § 2605(k)(1)(D) and 12 C.F.R. § 1024.36(d)(1)(ii).

41.    Each of the Letters sought the name and address for the owner of the Loan.

5

42. During the period beginning on the date that Defendant received the August Letter, and continuing through the date that this adversary proceeding was filed, Defendant did not provide to Plaintiff the name and address for the owner of the Loan.

43. Additionally, the servicer must respond to other information requests within 30 business days pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(B).

44. Defendant failed to timely provide the other information that was requested in each of the Letters.

45. During the period beginning on the date that Defendant received the August Letter, and continuing through the date that this adversary proceeding was filed, Defendant did not provide Plaintiff with any of the information that was requested in the Letters.

46. During the period beginning on the date that Defendant received the August Letter, and continuing through the date that this adversary proceeding was filed, Defendant never provided a written notification that stated that Defendant had determined that the requested information was not available to it, or which provided the basis for its determination that the information was not available to it.

47. This is not the first time that Defendant has been accused of failing to properly provide information requested by borrowers or to otherwise comply with regulations issued by the Consumer Financial Protection Bureau.

48. At least two other consumers have submitted complaints to the CFPB alleging that Defendant has not provided information that they requested.

49. Additionally, at least one other consumer has submitted a complaint to the CFPB alleging that within 60 days after Defendant received a QWR regarding a disputed payment, Defendant reported negative credit information about that payment to a credit

6

Appx62

reporting agency. Such a report is prohibited by 12 U.S.C. § 2605(e)(3).

50.    Furthermore, at least one consumer has filed a federal lawsuit alleging that Defendant's failure to comply with the regulations resulted in his house being sold at a foreclosure sale.

51.    In the lawsuit referenced in the previous paragraph, the consumer alleged that he submitted a completed loan modification application to Defendant in December of 2019. However, he has not received a rejection letter denying the loss mitigation application and explaining that he was ineligible for any loss mitigation relief. As a result, the consumer submitted a QWR and a notice of error to the Defendant more than seven days before the March 3, 2020 foreclosure sale. The QWR/notice of error alleged that Defendant was proceeding with a foreclosure sale despite the pendency of a loan modification application. Defendant did not respond to this QWR/notice of error, nor did it stop the foreclosure sale. This conduct violated 12 C.F.R. § 1024.35(e)(3)(i)(B).

52.    And, three of Defendant's former employees have filed a lawsuit against Defendant alleging, *inter alia*, that Defendant does not comply with CFPB regulations regarding TILA-RESPA disclosure requirements.

53.    The conduct described in paragraphs 48-52 is likely to have evidentiary support after an opportunity for discovery.

54.    The conduct described in paragraphs 48-52 would violate 12 U.S.C. § 2605. The allegation in this paragraph is likely to have evidentiary support after an opportunity for discovery.

55.    Violations with respect to other borrowers may be used to establish a pattern or practice of non-compliance. *Toone v. Wells Fargo Bank, N.A.,* 716 F.3d 516 (10th

7

Cir. 2013); *Renfroe v. Nationstar Mortgage, LLC*, 822 F.3d 1241 (11th Cir. 2016).

56.    Defendant's conduct in willfully refusing to acknowledge receipt of the Letters or to provide the information requested in the Letters establishes a pattern or practice of noncompliance with the requirements of 12 U.S.C. § 2605 and 12 C.F.R. § 1024.36.

57.    Defendant's violations with respect to other borrowers establishes a pattern or practice of noncompliance with the requirements of 12 U.S.C. § 2605 and 12 C.F.R. § 1024.36. The allegation in this paragraph is likely to have evidentiary support after an opportunity for discovery.

58.    Defendant's refusal to provide the information requested in the August Letter necessitated the preparation and sending of the September letter, and has therefore caused Plaintiff to incur attorney's fees in attempting to obtain the information from the Defendant.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against the Defendant for actual damages, statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(B), costs and reasonable attorney's fees pursuant to 12 U.S.C. § 2605(f)(3), and such other and further relief as may be just and proper.

*Count 2 – TILA*

59.    At all relevant times, Defendant owned the mortgage servicing rights for the Loan.

60.    The Loan was a closed-end consumer credit transaction.

61.    Each of the Letters contained a request for a statement of the total outstanding balance that would be required to pay the consumer's obligation in full.

8

62.   Prior to the filing of this adversary proceeding, Defendant did not provide the payoff statement that was requested in each of the Letters.

63.   Pursuant to 15 U.S.C. § 1639g, Defendant was required to provide the requested statement within a reasonable time, but in no case more than seven business days after receiving the request.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against the Defendant for actual damages, statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A), costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1640(a)(3), and such other and further relief as may be just and proper.

s/ Brett Freeman
Brett Freeman, PA 308834
Sabatini Freeman, LLC
216 N. Blakely St.
Dunmore, PA 18512
Attorney for Plaintiff
Phone (570) 341-9000
Fax (570) 504-2769
Email: bfecf@bankruptcypa.com

9

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**IN RE:**

**CLARENCE W. LEWIS, JR.**

|  |  |
|---|---|
| **Debtor 1** | **Chapter:**      **13** |
| | **Case No.:**      **5-19-bk-01873 RNO** |
| **CLARENCE W. LEWIS, JR.** | **Adversary No.:**    **5-19-ap-00116 RNO** |
| **Plaintiff(s)** | **Document No.:**    **44** |
| **vs.** | |
| **THE MONEY SOURCE, INC.** | **Nature of** |
| | **Proceeding:**     **Motion to Dismiss Adversary** |
| **Defendant(s)** | **Proceeding** |

## OPINION[1]

A Motion to Dismiss the Debtor/Plaintiff's Second Amended Complaint was filed.

Count 1 of the Second Amended Complaint alleges that the Defendant violated the Real Estate

Settlement Procedures Act. Count 2 alleges it violated the Truth-in-Lending Act. The Motion to

Dismiss will be granted in part and denied in part.

## I.    JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157

and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## II.    FACTS AND PROCEDURAL HISTORY

Clarence William Lewis, Jr. filed a Chapter 13 Petition on April 30, 2019. The First

Amended Plan ("Plan") was confirmed on July 24, 2019. 5-19-bk-01873 RNO, Order

Confirming Plan, ECF No. 38. The Plan provides that all post-petition assets will vest in the

Debtor upon the entry of a Chapter 13 discharge. 5-19-bk-01873 RNO, Plan, ECF No. 34. This

---

[1]    Drafted with the assistance of Chelsea L. Hollenstein, Law Clerk.

1

Appx66

Adversary Proceeding was commenced on November 26, 2019. 5-19-ap-00116 RNO, ECF No. 1.

The original Complaint filed by Clarence William Lewis, Jr. ("Debtor") contains forty numbered paragraphs. It contains two counts and names a single Defendant, The Money Source, Inc. ("Defendant"). Count 1 of the original Complaint alleges the Defendant violated the Real Estate Settlement Procedures Act ("RESPA"). Count 2 alleges the Defendant violated the Truth-in-Lending Act ("TILA").

A First Amended Complaint was filed on January 23, 2020. 5-19-ap-00116 RNO, ECF No. 9. Thereafter, on May 20, 2020, on Motion, an Order was entered granting the Debtor leave to file a Second Amended Complaint. 5-19-ap-00116 RNO, ECF No. 41.

The Second Amended Complaint ("Complaint") was filed on May 20, 2020. On June 3, 2020, the Defendant filed a Motion to Dismiss ("Motion"). 5-19-ap-00116 RNO, ECF No. 44. The Motion has been briefed and oral argument was heard on August 27, 2020.

## III.    DISCUSSION

### A.    Federal Rule of Bankruptcy Procedure 7012(b)(6) Standard of Review

Federal Rule of Bankruptcy Procedure 7012(b) ("F.R.B.P.") makes Federal Rule of Civil Procedure 12(b)-(i) ("F.R.C.P.") applicable to bankruptcy adversary proceedings. F.R.C.P. 12(b)(6) requires dismissal of a complaint which fails to state a claim upon which relief can be granted. Generally, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2). However, the Supreme Court heightened this pleading standard by holding that for a complaint to withstand a motion to dismiss, a claim must be more than possible, it must be plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1973, 167 L.Ed.2d 929 (2007). Additionally, *Twombly* advises that while detailed factual allegations are not required in a complaint, "a plaintiff's obligation to provide the

2

Appx67

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555.

Two years later, the Supreme Court gave further guidance as to the meaning of "facial plausibility." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal citations and quotations omitted). The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id*.

At the motion to dismiss stage, only well pled facts are viewed in the light most favorable to the non-moving party, in this case, the Debtor. *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 291 (3d Cir. 1988). Alternatively, legal conclusions are not assumed to be correct at the motion to dismiss stage. In *Iqbal*, Justice Kennedy wrote:

> While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679.

The Third Circuit has also provided guidance on the differing standards regarding a complaint's alleged facts and legal conclusions at the motion to dismiss stage:

> The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such entitlement with its facts.

3

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (internal citations and quotations omitted).

When deciding a motion to dismiss, the court may consider the complaint as well as attached exhibits and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Additionally, the court may consider an indisputably authentic document which a defendant attaches as an exhibit to a motion to dismiss, if the plaintiff's claims are based on the document. *Levins v. Healthcare Revenue Recovery Group LLC*, 902 F.3d 274, 279 (3d Cir. 2018); *Miller v. Clinton Cty.*, 544 F.3d 542, 550 (3d Cir. 2008).

The Federal Rules of Evidence ("F.R.E.") apply to proceedings before United States Bankruptcy Judges. F.R.E. 1101(a); *In re Barnes*, 266 B.R. 397, 403 (8th Cir. BAP 2001). F.R.E. 201 allows a federal court to take judicial notice of facts that are not subject to reasonable dispute. A bankruptcy court may take judicial notice of the docket events in a case, contents of the bankruptcy schedules to determine the timing and status of case events, as well as other facts not reasonably in dispute. *In re Harmony Holdings, LLC*, 393 B.R. 409, 413 (Bankr. D.S.C. 2008); *In re Paolino*, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa., Jan. 11, 1991).

B.     **Count 1 and the Real Estate Settlement Procedures Act**

1.     **Request for information**

The Real Estate Settlement Procedures Act ("RESPA") is codified at 12 U.S.C. § 2601, et seq. RESPA prohibits the provision or acceptance of any fee or kickback for referrals related to settlement of a federally related mortgage loan. 12 U.S.C. § 2607(a). RESPA also prohibits fee splitting in connection with a federally related mortgage loan, other than for services actually performed. 12 U.S.C. § 2607(b). This subsection was intended to prohibit the receipt of value for the referral of covered real estate settlement business. *Welch v. Centex Home Equity Co., LLC*, 262 F.Supp.2d 1263, 1269 (D. Kan. 2003). A "federally related mortgage loan" is defined by the

4

terms of RESPA. 12 U.S.C. § 2602(1); *In re Knowles*, 442 B.R. 150, 157-58 (1st Cir. BAP 2011).

RESPA was also enacted to allow home buyers more access to information concerning their mortgages in order to protect them from fraudulent or deceptive practices by loan servicers. *Tichy v. Reinhart*, 2020 WL 3547518 at *4 (M.D. Pa., June 30, 2020); *Wotanis v. PNC Bank, N.A.*, 2019 WL 4054880 at *3 (M.D. Pa., Aug. 28, 2019).

The Complaint alleges that the Defendant, in 2014, originated a residential mortgage loan to the Debtor. 5-19-ap-00116 RNO, ECF No. 42, ¶ 6. The Complaint also alleges that the loan is "a federally related mortgage loan". 5-19-ap-00116 RNO, ECF No. 42, ¶ 32.

Central to both counts of the Complaint are two letters dated August 6, 2019 ("August 6 Letter") and September 27, 2019 ("September 27 Letter") (collectively, the "Letters"). The Letters were addressed to the Defendant by Debtor's attorney. The Complaint alleges that each letter constituted a "qualified written request" ("QWR") under RESPA. 5-19-ap-00116 RNO, ECF No. 42, ¶ 36. It is further alleged that each of the Letters constituted a "request for information" ("RFI") under Regulation X, the implementing regulations for RESPA. *In re Coppola*, 596 B.R. 140, 151-52 (Bankr. D.N.J. 2018).

Copies of the Letters are attached as Exhibit A to the Complaint. The August 6 Letter refers to a July 3, 2019, Notice of Postpetition Mortgage Fees, Expenses and Charges ("3002.1 Notice"). Judicial notice is taken that the 3002.1 Notice was filed to the Chapter 13 case claim register. The 3002.1 Notice is docketed to the Defendant's Proof of Claim Number 7-1. It is also noted that the 3002.1 Notice was withdrawn on October 7, 2019. The August 6 Letter characterizes certain fees in the 3002.1 Notice as "unreasonably large". The August 6 Letter requested details concerning the charges, such as when the work was performed, the names of any professional who performed the work, and the amount of time expended. The text of the Letters is essentially identical; the August 6 Letter does indicate that it was sent via certified

5

mail, return receipt requested. The September 27 Letter does not specify the manner in which it was sent. Generally, Count 1 of the Complaint alleges that the Defendant failed to timely respond to the Letters. 5-19-ap-00116 RNO, ECF No. 42, ¶ 44-45. Under RESPA, a servicer must, not later than thirty days after receipt of a QWR, take certain action. 12 U.S.C. § 2605(e)(2); *Benner v. Bank of America, N.A.*, 917 F.Supp.2d 338, 363 (E.D. Pa. 2013). First, the servicer may correct any errors in the borrower's account, providing written notice of the correction. 12 U.S.C. § 2605(e)(1)-(2). Second, the servicer may investigate the matter and provide the borrower with a written explanation or clarification of why the requested information is unavailable or cannot be obtained by the servicer. 12 U.S.C. § 2605(e)(2).

A QWR may be made by the borrower or his agent. 12 U.S.C. § 2605(e)(1)(A); *In re Payne*, 387 B.R. 614, 633 (Bankr. D. Kan. 2008); *In re Hopkins*, 372 B.R. 734, 746 (Bankr. E.D. Pa. 2007).

The Motion maintains that the Complaint fails to state a claim for relief under RESPA. 5-19-ap-00116 RNO, ECF No. 44, ¶ 16. More specifically, the Motion alleges that the Letters are not QWRs. It further alleges a failure to adequately plead a right to actual damages. The Motion also avers the lack of a sufficient basis for the award of statutory damages.

The Debtor, contrastingly, argues that the Letters are either QWRs, or RFIs. He also argues actual damages have been pled with adequate sufficiency, and a plausible pattern or practice has been alleged to support a claim for statutory damages under RESPA.

The Court finds that the Letters do not qualify as QWRs because they do not relate to the servicing of the subject loan. Regulation X defines "servicing" as:

> receiving any scheduled periodic payments from a borrower
> pursuant to the terms of any federally related mortgage loan,
> including amounts for escrow accounts under section 10 of RESPA
> (12 U.S.C. § 2609), and making the payments to the owner of the
> loan or other third parties of principal and interest and such other
> payments with respect to the amounts received from the borrower
> as may be required pursuant to the terms of the mortgage servicing
> loan documents or servicing contract. In the case of a home equity

6

> conversion mortgage or reverse mortgage as referenced in this
> section, servicing includes making payments to the borrower.

12 C.F.R. § 1024.2(b).

Neither of the Letters address loan or escrow payments. Decisions which have found a letter to constitute a QWR are based upon quite different facts. *See In re Julien*, 488 B.R. 502, 508 (Bankr. D. Mass. 2013) (letter made a detailed request for information, including the interest rate, scheduled payments, how payments are applied to the account, account balances, and additional expenses); *Herrera v. Central Loan Admin. & Reporting*, 2017 WL 4548268 at *2 (D.N.J., Oct. 12, 2017) (three-page letter stated account contained errors and requested servicing file, identity of several parties, the amount need to reinstate the loan, etc.). The Motion is granted as to this portion of the Complaint. More specifically, the Letters are not QWRs.

Leave to amend will be granted. Because of the stage of the proceedings, the lack of prejudice, and without an indication that any amendment would necessarily be futile, allowing a final amended complaint is appropriate. *See Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004); *Luciani v. City of Phila.*, 643 Fed. Appx. 109, 111 (3d Cir. 2016).

This does not complete our inquiry because the Complaint also alleges that the Letters are RFIs and, thus, still subject to RESPA. 5-19-ap-00116 RNO, ECF No. 42, ¶ 37. Regulation X addresses RFIs:

> (a) Information request. A servicer shall comply with the requirements of this section for any *written request for information* from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan. A request on a payment coupon or other payment form supplied by the servicer need not be treated by the servicer as a request for information. A request for a payoff balance need not be treated by the servicer as a request for information. A qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section, and a servicer must comply with all requirements applicable to a request for information with respect to such qualified written request.

7

12 C.F.R. § 1024.36 (emphasis added).

RFIs are not limited to requests which relate to loan servicing. *Tanasi v. CitiMortgage, Inc.*, 257 F.Supp.3d 232, 266 (D. Conn. 2017) (an RFI does not need to relate to "servicing"); *Pollack v. Seterus, Inc.*, 2017 WL 6343676 at *2-3 (S.D. Fla., Dec. 11, 2017) (a Regulation X request for information is not limited to a request concerning loan servicing).

The above leads to the conclusion that the Letters are RFIs covered by the provisions of Regulation X. The Debtor has pled a plausible claim in this regard. The Motion is denied as to this portion of Count 1.

### 2.    Actual damages

A number of decisions stress that damages for a RESPA information request violation must be for damages suffered after the request was sent to the servicer. *See Giordano v. MGC Mortg., Inc.*, 160 F.Supp.3d 778, 782 (D.N.J. 2016) (costs incurred in preparing an informational request are not actual damages since RESPA requires damages to have been suffered after a statutory violation); *Grembowiec v. Select Portfolio Servicing, Inc.*, 2019 WL 3183588 at *6 (D.N.J., July 16, 2019) (costs of plaintiff's actions before a RESPA violation will not be considered actual damages); *Vilkofsky v. Specialized Loan Servicing, LLC*, 2017 WL 2573874 at *3 (W.D. Pa., June 14, 2017) (actual damages under RESPA result from a failure to comply with the statute).

A general maxim is that damages need not be proved with mathematical certainty. *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 669 (3d Cir. 1998). Still, they should be proved with reasonable certainty. *Id*.

The Letters are dated August 6, 2019, and September 27, 2019. It is clear that more than thirty days elapsed between the Defendant's receipt of the August 6 Letter and the sending of the September 27 Letter by Debtor's counsel. The Complaint alleges that:

> Defendant's refusal to provide the information requested in the August Letter necessitated the preparation and sending of the September letter, and has therefore caused Plaintiff to incur attorney's fees in attempting to obtain the information from the Defendant.

5-19-ap-00116 RNO, ECF No. 42, ¶ 58.

At this stage, allegations are viewed in the light most favorable to the Debtor. The Complaint has effectively pled the Debtor suffered damages which were proximately caused by the Defendant's alleged RESPA violations. *See Block v. Seneca Mortg. Servicing*, 221 F.Supp.3d 559, 592 (D.N.J. 2016). The Defendant can surely test the extent of the Debtor's alleged damages through the discovery process.

A plausible claim for actual damages has been pled and the Motion is denied in this regard.

### 3.      Statutory damages

RESPA provides for statutory damages in limited circumstances. An individual borrower may recover damages beyond actual damages for:

> any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not greater than $2,000 for each member of the class, except that the total amount of damages under this subsection *in any class action . . .*

12 U.S.C. § 2605(f)(2)(B) (emphasis added).

On its face, this provision only applies to class actions. This Adversary Proceeding is clearly not a class action. However, the Motion does not address this aspect of the case.

The Complaint does allege that four other unnamed consumers have complained about the Defendant's failure to comply with informational requests made under RESPA. Also, a general reference is made to litigation, before an unnamed tribunal, in which former employees have alleged, ". . . that Defendant does not comply with CFPB regulations regarding TILA-RESPA disclosure requirements." 5-19-ap-00116 RNO, ECF No. 42, ¶ 52.

9

Appx74

At least two Courts of Appeals have found that "pattern or practice" in this context is not satisfied by multiple alleged violations which only concern the plaintiff. Rather, allegations that the Defendant also violated RESPA regarding loans to other borrowers are required. *Compare Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1247 (11th Cir. 2016), *and Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013), *with Kapsis v. American Home Mortg. Servicing Inc.*, 923 F.Supp.2d 430, 445 (E.D.N.Y. 2013) (two violations of RESPA insufficient to support a claim for statutory damages).

The Complaint contains enough specificity and context to advance the claim for statutory damages from the realm of the merely possible to the sphere of the plausible.

The Motion will be denied with respect to the claim for statutory damages.

### 4.    Harmonizing RESPA and F.R.B.P. 3002.1

The Letters sent to the Defendant largely question bankruptcy attorney fees claimed by the Defendant. The fees were asserted in the 3002.1 Notice filed by the Defendant.

The 3002.1 Notice implements F.R.B.P. 3002.1. This rule applies in Chapter 13 cases to claims that: 1) are secured by an interest in the debtor's principal residence; and, 2) the plan provides that the debtor or the trustee will make installment payments on the claim. Rule 3002.1 is an effort to ensure that a debtor is fully informed about the amounts he owes and is not surprised upon leaving bankruptcy. *In re Meyer*, 596 B.R. 172, 178 (Bankr. M.D. Pa. 2019); *In re Formosa*, 582 B.R. 423, 427 (Bankr. E.D. Mich. 2018).

The Defendant argues that allowing this action under RESPA, and outside of the bankruptcy proof of claim process, upsets the "delicate balance" created by the Bankruptcy Code. 5-19-ap-00116 RNO, ECF No. 45, p 13. The Defendant cites *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407 (2017) as support for this proposition.

In *Midland Funding*, the Supreme Court considered a creditor's filing of a proof of claim when, pre-petition, the statute of limitations for the claim had expired under applicable non-

10

Appx75

bankruptcy law. The debtor filed suit in district court alleging that Midland Funding violated the

Fair Debt Collection Practices Act by filing the "stale" proof of claim.

Justice Breyer authored the majority opinion in *Midland Funding*. This Court views

*Midland Funding* to be of limited application. The opinion includes:

> Like the majority of Courts of Appeals that have considered the
> matter, we conclude that Midland's filing of a proof of claim that
> on its face indicates that the limitations period has run does not fall
> within the scope of any of the five relevant words of the Fair Debt
> Collection Practices Act. We believe it reasonably clear that
> Midland's proof of claim was not "false, deceptive, or misleading."
> Midland's proof of claim falls within the Bankruptcy Code's
> definition of the term "claim." A "claim" is a "right to payment."
> 11 U.S.C. § 101(5)(A). State law usually determines whether a
> person has such a right. See *Travelers Casualty & Surety Co. of
> America v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450–451, 127
> S.Ct. 1199, 167 L.Ed.2d 178 (2007). The relevant state law is the
> law of Alabama. And Alabama's law, like the law of many States,
> provides that a creditor has the right to payment of a debt even
> after the limitations period has expired.

*Midland Funding*, 137 S. Ct. at 1411.

The Defendant has not cited any case applying the reasoning of *Midland Funding* to

matters brought under RESPA. There are significant factors which distinguish the cases

presented. *Midland Funding* addressed a pre-petition claim, which has historically been

governed by the proof of claim process. Here, the Defendant gave notice of a post-petition claim

for professional fees. In part, *Midland Funding* considered the meaning of "claim," a defined

term under 11 U.S.C. § 101(5) of the Bankruptcy Code.[2] In this case, the Court cannot find the

same conflicting overlap between allowing an action under RESPA and the 3002.1 Notice,

particularly since it has been withdrawn. The withdrawal is significant since there is no extent

filing in this Court which would allow the Debtor to question the asserted fees.

---

2    Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C.§ 101, et seq.,
as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119
Stat. 37 ("Bankruptcy Code").

11

Further, in part, both RESPA and Rule 3002.1 were designed to allow borrowers and debtors to obtain information concerning their mortgage loans. Thus, the statute and the Rule are easily harmonized. The Motion is denied in this regard.

### C.    Truth-in-Lending Act

Count 2 of the Complaint alleges that the Defendant violated the Truth-in-Lending Act ("TILA"). 15 U.S.C. § 1601. et seq. TILA provides that its purposes include, ". . . to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uniformed use of credit . . . ." 15 U.S.C. § 1601(a).

TILA's purpose ". . . is to assure credit customers a meaningful disclosure of credit terms . . . and thereby to avoid the uninformed use of credit." *Johnson v. McCrackin-Sturman Ford, Inc.*, 527 F.2d 257, 262 (3d Cir. 1975). *McCrackin* also found that TILA is a remedial statute that should be construed liberally to achieve its goals. *Id.* at 262; *see also In re Wolfe*, 2000 WL 36688916 at *1 (Bankr. D. Md., May 19, 2000).

The Complaint alleges that each of the Letters requested a payoff statement for the Debtor's loan, which the Defendant originated. 5-19-ap-00116 RNO, ECF No. 42, ¶ 61. The final paragraph of each of the Letters reads, "[p]lease also provide a payoff statement and the name and address of the owner of the loan." 5-19-ap-00116 RNO, ECF No. 42-1, Ex. A.

It is further alleged that the Defendant failed to provide a payoff statement. TILA provides:

> A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request from *or on behalf of* the borrower.

15 U.S.C. § 1639(g) (emphasis added).

The Defendant appears to argue that the Letters are not proper requests under TILA. It focuses on the fact that the request came from Debtor's counsel, rather than the Debtor himself.

12

However, as noted above, § 1639(g) includes a request "on behalf of the borrower." Counsel for the Debtor made the request on behalf of the Debtor. The facts, being viewed in the light most favorable to the Debtor, show his attorney made proper requests, which were never answered by the Defendant.

TILA creates a private cause of action, potentially, for actual and statutory damages. *Vallies v. Sky Bank*, 591 F.3d 152, 156 (3d Cir. 2009); *In re Regan*, 439 B.R. 522, 527 (D. Kan. 2010); *see also Williams v. Gelt Fin. Corp.*, 237 B.R. 590, 599-600 (E.D. Pa. 1999) (damages may be awarded under TILA both for a lender's loan disclosure and loan rescission violations).

Count 2 pleads a plausible claim for violations of TILA. The Motion will be denied as to Count 2.

## IV.    CONCLUSION

The Motion will be granted as to Count 1, only to the extent that the Letters do not constitute QWRs under RESPA. Otherwise, the Motion is denied as to Count 1. The Motion will be denied as to Count 2 of the Complaint. The Debtor will be granted leave to file a final amended complaint within twenty-eight days. The Defendant's response to any amended complaint will be due twenty-eight days after service.

Dated: October 28, 2020                    By the Court,

_Robert N. Opel II_

Robert N. Opel, II, Bankruptcy Judge (BI)

13

Appx78

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re Clarence Lewis | Bankruptcy No. 5:19-bk-01873-MJC |
| Clarence Lewis, <br>     Plaintiff | Chapter 13 |
| v. | Adversary No. 5:19-ap-00116-MJC |
| The Money Source Inc., <br>     Defendant | |

### **Stipulation**

1.  The parties have resolved the underlying claims pursuant to an offer of judgment, leaving open only the amount of the reasonable attorney's fee and costs to be awarded, if any.

2.  The offer of judgment provides for Plaintiff to file a fee application.

3.  Although the parties have not been able to reach an agreement on the total amount of fees to be awarded, they have agreed to narrow the issues that would need to be decided by the Court.

4.  The parties agree that the reasonable hourly rates to be charged by Plaintiff's professionals are as follows:

    a.  $415.00 per hour for Carlo Sabatini

    b.  $350.00 per hour for Brett Freeman

    c.  $150.00 per hour for Ashley Werner

5.  Attached as Exhibit A is an annotated statement of Plaintiff's fees through March 24, 2022.

6.  With respect to time entries on Exhibit A, Plaintiff agrees to waive fees for each entry that is either:

    a.  already marked as discounted in the right-most column, or

    b.  crossed out with a red strike-through annotation.

7. Defendant agrees that, if the Court determines that an award of fees is appropriate, then Defendant will not challenge the reasonableness of the entries on Exhibit A that are annotated with green underlining.

8. The parties disagree as to the reasonableness of all or part of each entry that is not described in paragraphs six or seven, above.

9. Notwithstanding any contrary language in this stipulation, Defendant further retains the right to argue that **no** award of fees is appropriate, and that therefore no fee at all should be awarded.

| | |
|---|---|
| s/ Carlo Sabatini | s/ Matthew Haar (with consent) |
| Carlo Sabatini, Bar Number PA 83831 | Matthew Haar, Bar Number PA 85688 |
| Attorney for Plaintiff | Attorney for Defendant |
| Sabatini Freeman, LLC | Saul Ewing Arnstein & Lehr LLP |
| 216 N. Blakely St. | 2 N. Second St., 7th Floor |
| Dunmore, PA 18512 | Harrisburg, PA 17101-1619 |
| Phone (570) 341-9000 | Phone (717) 257-7508 |
| Facsimile (570) 504-2769 | Facsimile (717) 238-4622 |
| Email ecf@bankruptcypa.com | Email matt.haar@saul.com |

Exhibit A

**Sabatini Freeman, LLC**

216 N. Blakely St.
Dunmore, PA 18512
Statement as of: 3/24/2022

**Clarence Lewis**
**312 Church St.**
**Taylor, PA 18517**

Our file number: 3250-002

## Rate Summary

| Professional | Gross | | | Discount | | Net |
|---|---|---|---|---|---|---|
| Brett Freeman | 86.20 hours at $350.00/hr | $30,170.00 | 2.10 hours | ($735.00) | | $29,435.00 |
| Carlo Sabatini | 77.10 hours at $415.00/hr | $31,996.50 | 7.00 hours | ($2,905.00) | | $29,091.50 |
| Ashley Werner | 7.70 hours at $150.00/hr | $1,155.00 | 3.40 hours | ($510.00) | | $645.00 |
| Total: | 171.00 hours (before discount) | $63,321.50 | 12.50 hours | ($4,150.00) | | $59,171.50 |

## Itemized Listing of Services

| Date | Description | Rate | Hours | Amount | Discount |
|---|---|---|---|---|---|
| 08/30/2019 | Review and edit request for information to mortgage company. | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 09/27/2019 | Review and sign letter to The Money Source Inc. requesting information | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 10/02/2019 | Receive and review voicemail from Andrew Spivack regarding information request. Email to Andrew regarding the same | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 10/02/2019 | Receive and review email from Spivack regarding calling me tomorrow | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 10/02/2019 | Email to Hanyon regarding second request for information sent last week. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 10/02/2019 | Receive and review email from Hanyon regarding availability for a call tomorrow. | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 10/02/2019 | Receive, review, and respond to email from Spivack regarding phone call availability. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 10/03/2019 | Prepare for phone call with Spivack | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 10/03/2019 | Call with Spivack & Hanyon regarding charges and fees. | CS 415.00 | 0.80 | 332.00 | 0.00 |
| 10/03/2019 | Receive and review phone message from Mario Hanyon. Return call to Hanyon regarding claims, fees, and response to Request for Information. | CS 415.00 | 0.80 | 332.00 | 0.00 |
| 10/04/2019 | Receive and review email from Spivack regarding 506 (b) analysis | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 10/07/2019 | Review 506 cases from Spivack | CS 415.00 | 1.30 | 539.50 | 0.00 |
| 10/09/2019 | Research to find authority that an undersecured creditor is not entitled to collect attorney's fees | CS 415.00 | 0.40 | 166.00 | 0.00 |
| 10/16/2019 | Call with Mario Hanyon regarding receipt and response to Request for Information. | CS 415.00 | 0.40 | 166.00 | 0.00 |

Case 5:19-ap-00116-MJC    Doc 117-1    Filed 10/26/22    Entered 10/26/22 10:38:11
Desc Exhibit A - Statement of Fees    Page 1 of 20

Appx81

| Date | Description | Atty | Rate | Hours | Amount | Adj |
|------|-------------|------|------|-------|--------|-----|
| 11/17/2019 | Draft RESPA complaint. | CS | 415.00 | 0.60 | 249.00 | 0.00 |
| ~~11/18/2019~~ | ~~Review RESPA complaint for accuracy~~ | ~~ASW~~ | ~~150.00~~ | ~~0.30~~ | ~~45.00~~ | ~~0.00~~ |
| ~~11/18/2019~~ | ~~Prepare RESPA Retainer Agreement~~ | ~~ASW~~ | ~~150.00~~ | ~~0.10~~ | ~~15.00~~ | ~~0.00~~ |
| 11/18/2019 | Conference with CS regarding TILA issue | BF | 350.00 | 0.40 | 140.00 | 0.00 |
| 11/18/2019 | Conference with CS regarding pattern of practice | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 11/18/2019 | Review retainer and amendment. Call to client. No answer, mailbox full. Email to client with retainer agreement | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 11/18/2019 | Research calculation of statutory damages. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 11/18/2019 | Research TILA violation including statutory damages for failure to provide a payoff statement upon request | CS | 415.00 | 0.60 | 249.00 | 0.00 |
| 11/18/2019 | Edit RESPA complaint | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 11/18/2019 | Conference with BF regarding TILA issue | CS | 415.00 | 0.40 | 166.00 | 0.00 |
| 11/18/2019 | Research amount of statutory damages | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 11/18/2019 | Conference with BF regarding pattern of practice. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 11/20/2019 | Receive and review phone message from client. Return call to client regarding his claims against The Money Source, Inc. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 11/22/2019 | Email to client with retainer agreement | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 11/23/2019 | Call to client regarding representation agreement | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 11/25/2019 | Email to client with retainer agreement. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 11/25/2019 | Work on complaint | CS | 415.00 | 0.60 | 249.00 | 0.00 |
| 11/25/2019 | Receive and review email from client concurring with representation agreement. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 11/26/2019 | Work on complaint. | CS | 415.00 | 2.10 | 871.50 | 0.00 |
| 11/27/2019 | Receive and review summons filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 11/27/2019 | Receive and review docket entry regarding filing fee not required | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 11/27/2019 | Review and sign letter to Defendant enclosing summons and complaint | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/06/2019 | Call from Mario Hanyon regarding confidential settlement communications. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/06/2019 | Email to Hanyon to confirm confidential settlement communications. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/06/2019 | Prepare settlement agreement | CS | 415.00 | 0.30 | 124.50 | 0.00 |
| 12/06/2019 | Receive and review email from Hanyon confirming the parties' agreement to keep confidential the dollar amount of all settlement offers and demands. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/06/2019 | Email to Hanyon with draft settlement agreement | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/09/2019 | Receive, review, and respond to email from Hanyon regarding changing the payment date in the agreement | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/09/2019 | Receive, review, and respond to email from Hanyon requesting 30 days to pay | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/09/2019 | Receive, review, and respond to email from Hanyon regarding edit to the agreement. | CS | 415.00 | 0.10 | 41.50 | 0.00 |

| Date | Description | | | | |
|------|-------------|---|---|---|---|
| 12/09/2019 | Receive, review, and respond to email from Hanyon attaching revised agreement | CS_415.00 | 0.10 | 41.50 | 0.00 |
| 12/11/2019 | Receive, review, and respond to email from Hanyon asking for concurrence with extension to respond. | CS_415.00 | 0.10 | 41.50 | 0.00 |
| 12/11/2019 | Receive, review, and respond to email from Hanyon regarding reason for extension request. | CS_415.00 | 0.10 | 41.50 | 0.00 |
| 12/12/2019 | Receive, review, and respond to email from Hanyon regarding settlement demand and agreement. | CS_415.00 | 0.10 | 41.50 | 0.00 |
| 12/12/2019 | Email to client with complaint and summons filed on the docket | CS_415.00 | 0.10 | 41.50 | 0.00 |
| 12/17/2019 | Email to Hanyon to follow up on settlement agreement. | CS_415.00 | 0.10 | 41.50 | 0.00 |
| 12/17/2019 | Receive, review, and respond to email from Hanyon regarding waiting to hear back from his client | CS_415.00 | 0.10 | 41.50 | -41.50 |
| 12/18/2019 | Receive, review, and respond to email from Hanyon regarding setting up a phone call. | CS_415.00 | 0.10 | 41.50 | -41.50 |
| 12/18/2019 | Receive, review, and respond to email from Hanyon regarding setting up a call for Friday | CS_415.00 | 0.10 | 41.50 | 0.00 |
| 12/18/2019 | Receive and review email from Hanyon regarding phone call. | CS_415.00 | 0.10 | 41.50 | -41.50 |
| 12/18/2019 | Receive, review, and respond to email from Hanyon asking whether I received the invite. | CS_415.00 | 0.10 | 41.50 | -41.50 |
| 12/20/2019 | Research for multiple statutory damages | CS_415.00 | 0.40 | 166.00 | 0.00 |
| 12/20/2019 | Call with Marion Hanyon and The Money Source regarding extension request, settlement demand, and settlement agreement. | CS_415.00 | 0.30 | 124.50 | 0.00 |
| 12/20/2019 | Receive and review motion to extend time filed on the docket | CS_415.00 | 0.10 | 41.50 | 0.00 |
| 12/27/2019 | Research the availability of multiple statutory damages and the meaning of "pattern and practice" for purposes of statutory damages | CS_415.00 | 1.10 | 456.50 | 0.00 |
| 12/27/2019 | Receive and review order granting motion to extend time to file answer filed on the docket | CS_415.00 | 0.10 | 41.50 | 0.00 |
| 12/27/2019 | Email to client with motion for extension of time filed on the docket. | CS_415.00 | 0.10 | 41.50 | 0.00 |
| 01/08/2020 | Receive, review, and respond to email from Hanyon requesting extension | CS_415.00 | 0.10 | 41.50 | 0.00 |
| 01/08/2020 | Receive, review, and respond to email from Hanyon regarding extension | CS_415.00 | 0.10 | 41.50 | 0.00 |
| 01/09/2020 | Receive, review and respond to email from Hanyon thanking me for extension and asking after conference. | CS_415.00 | 0.10 | 41.50 | -41.50 |
| 01/09/2020 | Receive and review email from Hanyon. | CS_415.00 | 0.10 | 41.50 | -41.50 |
| 01/09/2020 | Receive and review second motion for extension of time to file answer filed on the docket | CS_415.00 | 0.10 | 41.50 | 0.00 |
| 01/13/2020 | Receive and review email from Hanyon attaching revised settlement agreement | CS_415.00 | 0.20 | 83.00 | 0.00 |
| 01/13/2020 | Email to Hanyon regarding phone call to discuss changes to settlement agreement | CS_415.00 | 0.10 | 41.50 | -41.50 |

Case 5:19-ap-00116-MJC    Doc 117-1    Filed 10/26/22    Entered 10/26/22 1C ̇ ̇ ̇ ̇ ̇
Desc Exhibit A - Statement of Fees    Page 3 of 20

Appx83

| Date | Description | Code | Rate | Hours | Amount | |
|---|---|---|---|---|---|---|
| 01/14/2020 | Receive and review email from Hanyon regarding invite to conference call | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 01/14/2020 | Call with Mario and The Money Source to discuss proposed changes to settlement document. | CS | 415.00 | 0.50 | 207.50 | 0.00 |
| 01/14/2020 | Finish up edits to settlement agreement. Email to Hanyon with revised settlement agreement | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/15/2020 | Receive and review email from Hanyon confirming settlement agreement approved and requesting demand | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/15/2020 | Call with Hanyon regarding settlement., | CS | 415.00 | 0.60 | 249.00 | -41.50 |
| 01/17/2020 | Email to client with order regarding extension, second motion for extension, and order regarding second motion for extension filed on the docket. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/17/2020 | Receive and review answer filed on the docket | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 01/17/2020 | Email to Haar Requesting 26(f) | CS | 415.00 | 0.20 | 83.00 | -41.50 |
| 01/17/2020 | Research file regarding appropriate RFI address. | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 01/17/2020 | Work on discovery | CS | 415.00 | 1.20 | 498.00 | 0.00 |
| 01/17/2020 | Email to Haar with copy of discovery that was mailed out | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/20/2020 | Draft second discovery request | CS | 415.00 | 1.50 | 622.50 | 0.00 |
| 01/21/2020 | Review and sign letter to Haar enclosing first discovery request | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/21/2020 | Review second set of discovery | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/21/2020 | Email to Haar to follow up on 26(f) conference and attaching second set of discovery | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/21/2020 | Receive and review email from Haar regarding not scheduling 26(f) and asking after demand | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/21/2020 | Email to Haar regarding need for 26(f) conference and requesting response to demand | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 01/22/2020 | Conference with CS regarding email from Defendant's lawyer, motion for judgment on the pleadings, and motion to strike | BF | 350.00 | 0.80 | 280.00 | -280.00 |
| 01/22/2020 | Receive and review email from Francis Riley regarding my demand and my fees | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/22/2020 | Conference with BF regarding email from Defendant's lawyer, motion for judgment on the pleadings, and motion to strike | CS | 415.00 | 0.80 | 332.00 | 0.00 |
| 01/23/2020 | Review complaint and answer | BF | 350.00 | 0.40 | 140.00 | 0.00 |
| 01/23/2020 | Review applicable RESPA and TILA regulations. Research the same regarding proper statutory coverage of Defendant. | BF | 350.00 | 0.60 | 210.00 | 0.00 |
| 01/23/2020 | Draft amended complaint | BF | 350.00 | 1.20 | 420.00 | 0.00 |
| 01/23/2020 | Review and edit amended complaint. | CS | 415.00 | 1.00 | 415.00 | 0.00 |
| 01/23/2020 | File amended complaint | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/23/2020 | Initial draft of email to opposing counsel regarding their amended answer. | CS | 415.00 | 0.40 | 166.00 | 0.00 |
| 01/23/2020 | Edit email to opposing counsel and send to Francis Riley. | CS | 415.00 | 0.10 | 41.50 | 0.00 |

| Date | Description | Rate | Hours | Amount | Adj. |
|---|---|---|---|---|---|
| 01/23/2020 | Receive and review email from Haar attaching offer of judgment. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 01/23/2020 | Email to client with offer of judgment | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 01/23/2020 | Receive and review email from Riley regarding settlement discussions and reasonable fees. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 01/27/2020 | Conference with CS regarding offer of judgment. | BF 350.00 | 0.20 | 70.00 | 0.00 |
| 01/27/2020 | Review file. | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 01/27/2020 | Call to client to discuss offer of judgment. No answer, mailbox was full. Email to him regarding the same. | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 01/27/2020 | Receive and review order filed on the docket instructing Plaintiff to file redline of the amended complaint | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 01/27/2020 | Prepare redline of amended complaint per order filed on the docket | CS 415.00 | 0.50 | 207.50 | 0.00 |
| 01/27/2020 | Receive and review email from BF regarding OOJ | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 01/27/2020 | Work on redline complaint | CS 415.00 | 0.30 | 124.50 | -124.50 |
| 01/27/2020 | Conference with BF regarding offer of judgment. | CS 415.00 | 0.20 | 83.00 | 0.00 |
| 01/27/2020 | Call with client regarding offer from mortgage company. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 02/10/2020 | Email to client with motion for extension and proposed order filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 02/11/2020 | Review file regarding next steps. | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 02/18/2020 | Receive and review email from Mishoe with letter regarding discovery. Review file | CS 415.00 | 0.30 | 124.50 | 0.00 |
| 02/19/2020 | Draft letter to MIshoe regarding discovery | CS 415.00 | 0.30 | 124.50 | 0.00 |
| 02/19/2020 | Edit stipulation | CS 415.00 | 0.30 | 124.50 | 0.00 |
| 02/19/2020 | Email to Mishoe with letter, stipulation, and order | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 02/19/2020 | Receive, review, and respond to email from Mishoe regarding stipulations regarding discovery | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 02/24/2020 | Conference with CS regarding response to brief in support of motion to dismiss. | BF 350.00 | 0.50 | 175.00 | 0.00 |
| 02/24/2020 | Receive and review Motion to Dismiss filed on the docket | CS 415.00 | 0.20 | 83.00 | 0.00 |
| 02/24/2020 | Receive and review brief in support of motion to dismiss filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 02/24/2020 | Review brief filed on the docket in support of motion to dismiss | CS 415.00 | 0.20 | 83.00 | 0.00 |
| 02/24/2020 | Receive and review email from Mishoe with letter regarding discovery | CS 415.00 | 0.20 | 83.00 | 0.00 |
| 02/24/2020 | Conference with BF regarding response to brief in support of motion to dismiss. | CS 415.00 | 0.50 | 207.50 | 0.00 |
| 02/24/2020 | Email to client with Entry of Appearance filed on the docket | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 02/25/2020 | Conference with CS regarding whether Rule 11 motion for asserting that RESPA does not require them to provide the name of the owner of the loan. | BF 350.00 | 0.20 | 70.00 | 0.00 |

Case 5:19-ap-00116-MJC   Doc 117-1   Filed 10/26/22   Entered 10/26/22 10:00:11
Desc Exhibit A - Statement of Fees   Page 5 of 20

Appx85

| Date | Description | Rate | Hours | Amount | Adjustment |
|---|---|---|---|---|---|
| 02/25/2020 | Conference with BF regarding whether Rule 11 motion for asserting that RESPA does not require them to provide the name of the owner of the loan. | CS 415.00 | 0.20 | 83.00 | 0.00 |
| ~~02/26/2020~~ | ~~Receive and review email from BF regarding Rule 11 Motion.~~ | ~~CS 415.00~~ | ~~0.10~~ | ~~41.50~~ | ~~0.00~~ |
| 02/26/2020 | Research regarding motion to compel discovery | CS 415.00 | 0.50 | 207.50 | 0.00 |
| ~~02/26/2020~~ | ~~Email to BF regarding designated address for RFI~~ | ~~CS 415.00~~ | ~~0.10~~ | ~~41.50~~ | ~~0.00~~ |
| 02/27/2020 | Receive and review email from JMM with results of scheduling order analysis | CS 415.00 | 0.20 | 83.00 | -83.00 |
| 02/28/2020 | Review file regarding discovery response due date. | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 02/28/2020 | Draft letter to Haar regarding discovery | CS 415.00 | 0.80 | 332.00 | 0.00 |
| 02/28/2020 | Email to Haar with letter regarding discovery | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 02/28/2020 | Email to client with motion to dismiss, brief in support of motion to dismiss, and order filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 02/28/2020 | Email to client with copy of letter to Haar | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 03/02/2020 | Receive, review, and respond to email from Mishoe requesting concurrence with motion to stay discovery | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/02/2020 | Receive and review email from Mishoe with motion to stay discovery | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/02/2020 | Receive and review Motion to Stay filed on the docket | CS 415.00 | 0.20 | 83.00 | 0.00 |
| 03/02/2020 | Receive and review brief in support of motion to stay filed on the docket | CS 415.00 | 0.20 | 83.00 | 0.00 |
| ~~03/02/2020~~ | ~~Receive and review email from Mishoe attaching Motion to Stay Discovery and corresponding documents~~ | ~~CS 415.00~~ | ~~0.10~~ | ~~41.50~~ | ~~0.00~~ |
| 03/05/2020 | Receive and review notice setting objection date and hearing filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/10/2020 | Receive and review Motion to Appear Pro Hac Vice filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/10/2020 | Email to client with motion to stay discovery, supporting brief, and hearing notice filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/11/2020 | Begin drafting brief | BF 350.00 | 4.60 | 1,610.00 | 0.00 |
| 03/11/2020 | Receive and review order granting motion to appear pro hac vice filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/12/2020 | Continue drafting brief | BF 350.00 | 3.90 | 1,365.00 | 0.00 |
| 03/12/2020 | Receive, review, and respond to email from BF regarding damages | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 03/12/2020 | Receive and review email from BF regarding cases cited. Conference with BF regarding the same. | CS 415.00 | 0.40 | 166.00 | 0.00 |
| 03/12/2020 | Receive and review docket entry modifying Attorney Riley | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/12/2020 | Receive, review, and respond to email from BF regarding statutory damages under RESPA. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/13/2020 | Email to client with motion for admission and order granting motion filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/14/2020 | Receive and review BNC Certificate of Notice filed on the docket | CS 415.00 | 0.10 | 41.50 | -41.50 |

| 03/16/2020 | Receive and review email from BF regarding statutory damages. | CS 415.00 | 0.10 | 41.50 | 0.00 |
|---|---|---|---|---|---|
| 03/16/2020 | Edit second amended complaint | CS 415.00 | 0.30 | 124.50 | 0.00 |
| 03/19/2020 | Email to Riley, Haar, and Wesley requesting concurrence with motion to amend complaint. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/19/2020 | Receive, review, and respond to email from Riley regarding reviewing and discussing amendment with his client. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/19/2020 | Receive and review email from Riley confirming extension to file briefs | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/20/2020 | Draft stipulation and order | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/20/2020 | Email to Riley with stipulation and order. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/20/2020 | Receive and review email from Riley confirming I could file stipulation. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/20/2020 | Receive and review order continuing hearing filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/27/2020 | Email to client with stipulation and order filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/30/2020 | Email to Riley regarding amended complaint and extension | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/30/2020 | Receive and review email from Riley regarding opposition due and amending complaint | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/31/2020 | Email to Riley regarding extension | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/31/2020 | Receive and review email from Riley confirming three week extension from 03/31. | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 03/31/2020 | Receive and review email from Riley asking if I will draft consent order. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/31/2020 | Email to Riley attaching stipulation. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/31/2020 | Receive and review email from Riley confirming I could file stipulation. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 04/02/2020 | Receive and review email from Haar attaching offer of judgment | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 04/02/2020 | Receive and review order approving stipulation to extend deadlines filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 04/04/2020 | Conference with CS regarding offer of judgment. | BF 350.00 | 0.20 | 70.00 | 0.00 |
| 04/04/2020 | Email to client with stipulation, order, and settlement offer | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 04/04/2020 | Conference with BF regarding offer of judgment. | CS 415.00 | 0.20 | 83.00 | 0.00 |
| 04/06/2020 | Call with client regarding offer of judgment. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 04/07/2020 | Receive and review proceeding memo regarding hearing canceled and rescheduled. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 04/09/2020 | Conference with CS regarding TMS not consenting to amending complaint | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 04/09/2020 | Receive and review email from BF asking Riley if his client consents to amended complaint. | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 04/09/2020 | Receive and review email from Riley regarding TMS not consenting to complaint | CS 415.00 | 0.10 | 41.50 | 0.00 |

| 04/09/2020 | Receive and review email from BF with response to Riley regarding amending complaint. | CS  415.00 | 0.10 | 41.50 | -41.50 |
| 04/09/2020 | Conference with BF regarding TMS not consenting to amending complaint. | CS  415.00 | 0.10 | 41.50 | 0.00 |
| 04/09/2020 | Receive and review email from Riley regarding settlement. | CS  415.00 | 0.10 | 41.50 | 0.00 |
| 04/10/2020 | Edit brief regarding motion to amend | CS  415.00 | 0.40 | 166.00 | 0.00 |
| 04/13/2020 | Receive, review, and respond to email from Trip regarding the 7k offer of judgment, the Andrews decision, and the impact of Rule 68 on attorney's fees | BF  350.00 | 0.60 | 210.00 | 0.00 |
| 04/13/2020 | Receive and review email from Riley regarding OOJ | CS  415.00 | 0.10 | 41.50 | 0.00 |
| 04/14/2020 | Receive and review entry of appearance of BF filed on the docket | ASW  150.00 | 0.10 | 15.00 | -15.00 |
| 04/14/2020 | Email to Riley regarding motion to amend and pending motions | BF  350.00 | 0.10 | 35.00 | 0.00 |
| 04/14/2020 | Receive and review email from Riley regarding getting back to me on staying pending motions | BF  350.00 | 0.10 | 35.00 | 0.00 |
| 04/14/2020 | Receive, review, and respond to email from Riley regarding pending motions | BF  350.00 | 0.10 | 35.00 | 0.00 |
| 04/14/2020 | Receive, review, and respond to email from Riley asking for clarification on staying pending motions. | BF  350.00 | 0.10 | 35.00 | 0.00 |
| 04/14/2020 | Receive and review email from Riley confirming that he agrees to postponing briefing schedules. | BF  350.00 | 0.10 | 35.00 | 0.00 |
| 04/14/2020 | Receive and review order setting status conference filed on the docket | CS  415.00 | 0.10 | 41.50 | 0.00 |
| 04/14/2020 | Receive and review email from BF to Riley regarding motion to amend and pending motions | CS  415.00 | 0.10 | 41.50 | -41.50 |
| 04/14/2020 | Receive and review email from Riley regarding getting back to BF on staying pending motions | CS  415.00 | 0.10 | 41.50 | 0.00 |
| 04/14/2020 | Receive and review email from Riley to BF regarding pending motions | CS  415.00 | 0.10 | 41.50 | 0.00 |
| 04/14/2020 | Receive and review email from BF to Riley regarding how to proceed with pending motions | CS  415.00 | 0.10 | 41.50 | -41.50 |
| 04/14/2020 | Receive and review email from Riley to BF asking for clarification on staying pending motions. | CS  415.00 | 0.10 | 41.50 | 0.00 |
| 04/14/2020 | Receive and review email from BF to Riley regarding filing stipulation concerning postponing briefing schedules in pending motions | CS  415.00 | 0.10 | 41.50 | -41.50 |
| 04/14/2020 | Receive and review email from Riley to BF confirming that he agrees to postponing briefing schedules won pending motions until after 05/20 conference | CS  415.00 | 0.10 | 41.50 | 0.00 |
| 04/14/2020 | Receive and review email from Riley with edit to stipulation | CS  415.00 | 0.10 | 41.50 | 0.00 |
| 04/14/2020 | Receive and review email from Riley confirming his consent to file stipulation. | CS  415.00 | 0.10 | 41.50 | 0.00 |
| 04/15/2020 | Receive and review order approving stipulation filed on the docket | CS  415.00 | 0.10 | 41.50 | 0.00 |

| Date | Description | Rate | Hours | Amount | Adjust |
|------|-------------|------|-------|--------|--------|
| 04/17/2020 | Email to client entry of appearance, motion to amend complaint, brief in support, order, stipulation for stay, and order approving stipulation filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 04/18/2020 | Receive and review BNC certificate of notice filed on the docket | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 04/21/2020 | Receive and review BNC certificate of notice. | ASW 150.00 | 0.10 | 15.00 | -15.00 |
| 05/19/2020 | Receive and review Matthew Haar's entry of appearance | ASW 150.00 | 0.10 | 15.00 | 0.00 |
| 05/19/2020 | Receive and review withdrawal of appearance of K. Wesley Mishoe filed on the docket | ASW 150.00 | 0.10 | 15.00 | -15.00 |
| 05/19/2020 | File CS entry of appearance for hearing | ASW 150.00 | 0.10 | 15.00 | 0.00 |
| 05/19/2020 | Receive and review withdrawal of appearance of Wesley Mishoe filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 05/19/2020 | Prepare for tomorrow's hearing | CS 415.00 | 1.00 | 415.00 | 0.00 |
| 05/20/2020 | Redact exhibits and file amended complaint | ASW 150.00 | 0.10 | 15.00 | 0.00 |
| 05/20/2020 | Attend hearing | CS 415.00 | 2.10 | 871.50 | 0.00 |
| 05/20/2020 | Receive and review order granting motion to file amended pleading, dismissing motion to dismiss, and staying discovery | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 05/20/2020 | Receive and review proceeding memo regarding hearing filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 05/24/2020 | Email to client with withdrawal of appearance, order, and second amended complaint filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 06/03/2020 | Review motion to dismiss and brief in support. Read part of Bernstein. Email to BF with theories. | CS 415.00 | 0.40 | 166.00 | 0.00 |
| 06/04/2020 | Conference with CS regarding arguments for brief. | BF 350.00 | 0.30 | 105.00 | 0.00 |
| 06/04/2020 | Conference with BF regarding arguments for brief. | CS 415.00 | 0.30 | 124.50 | 0.00 |
| 06/04/2020 | Edits to brief opposing MTD. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 06/05/2020 | Receive and review Order regarding brief due | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 06/05/2020 | Edit brief | CS 415.00 | 1.00 | 415.00 | 0.00 |
| 07/02/2020 | Receive and review phone message from client regarding update on his case. Call to client. No answer, email to client regarding the same | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 07/16/2020 | Receive, review, and respond to email from Haar requesting extension | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 07/16/2020 | Receive and review email from Haar saying he will get proposed documents to me in the morning | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 07/17/2020 | Receive, review, and respond to email from Haar attaching proposed motion | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 07/17/2020 | Receive and review email from Haar confirming proposed order was acceptable and filing the same | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 07/17/2020 | Receive and review motion to extend time to file reply brief filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 07/20/2020 | Receive and review order granting motion to extend time to file reply brief filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 07/31/2020 | Receive and review brief in support of motion to dismiss filed on the docket. | CS 415.00 | 0.20 | 83.00 | 0.00 |
| 08/02/2020 | Email to client with brief filed in his case. | CS 415.00 | 0.10 | 41.50 | 0.00 |

| Date | Description | Atty | Rate | Hours | Amount | |
|------|-------------|------|------|-------|--------|---|
| 08/26/2020 | File notice of telephonic appearance on the docket | ASW | 150.00 | 0.10 | 15.00 | 0.00 |
| 08/26/2020 | Receive and review notice of appearance of Matthew Haar filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 08/27/2020 | Attend hearing | CS | 415.00 | 3.00 | 1,245.00 | 0.00 |
| 08/27/2020 | Receive and review proceeding memo for hearing on motion to dismiss filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 08/29/2020 | Email to counsel regarding Request for Information | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 08/31/2020 | Receive and review email from Haar regarding what information I am looking for | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 08/31/2020 | Receive and review email from Hanyon regarding not being able to accept RFI's | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 08/31/2020 | Email to Haar & Hanyon regarding preserving my client's rights under Regulation X and an address for an RFI | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/01/2020 | Review file. Call to client. Could not leave message. Text to client | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 09/01/2020 | Call from client. Gave him an update regarding oral argument and when we might expect an opinion. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/01/2020 | Receive and review email from Haar regarding address for RFI | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/01/2020 | Email to Haar regarding address for RFI | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/01/2020 | Receive and review email from Haar regarding address for RFI. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/02/2020 | Email to Haar regarding confirmation that address in previous email is address to be used for Regulation X | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/02/2020 | Receive and review email from Haar confirming address for RFI and requesting a copy | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/03/2020 | Email copy of RFI to Haar and Riley | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/08/2020 | Receive and review email from Haar attaching letter concerning my RFI of September 3 | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/10/2020 | Receive and review email from Bonial & Associates, P.C. advising that they cannot accept an RFI | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/15/2020 | Receive and review email from Haar attaching letter and payoff statement | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/16/2020 | Email to Haar regarding payoff statement and regarding future requests | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/16/2020 | Receive and review email from Haar regarding future requests and outstanding information | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/24/2020 | Prepare QWR to the Money Source | CS | 415.00 | 0.80 | 332.00 | 0.00 |
| 09/24/2020 | Receive and review email from Riley regarding harassment | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/24/2020 | Email to Riley regarding his previous email and reasoning for multiple RFI's. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/24/2020 | Receive and review email from Riley regarding explanation of multiple RFI letters | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/24/2020 | Email to Haar regarding sending letter tomorrow | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/25/2020 | Travel time to post office. In post office. Travel back from post office | ASW | 150.00 | 0.40 | 60.00 | 0.00 |

| Date | Description | | | | |
|---|---|---|---|---|---|
| 09/26/2020 | Email to Riley & Haar with second RFI | CS  415.00 | 0.10 | 41.50 | 0.00 |
| 09/30/2020 | Receive and review email from Haar acknowledging RFI letter of 9/25 | CS  415.00 | 0.10 | 41.50 | 0.00 |
| 09/30/2020 | Receive and review email from Riley acknowledging Haar's previous email with acknowledgement letter. | CS  415.00 | 0.10 | 41.50 | 0.00 |
| 10/26/2020 | Receive and review email from Haar attaching letter in response to 9/25 letter | CS  415.00 | 0.10 | 41.50 | 0.00 |
| 10/28/2020 | Receive and review opinion of the court filed on the docket | CS  415.00 | 0.20 | 83.00 | 0.00 |
| 11/12/2020 | Email to client with opinion, judgment, and third amended complaint filed in his case | CS  415.00 | 0.10 | 41.50 | 0.00 |
| 11/13/2020 | Phone call with Haar. They are going to be filing an answer. Discussed outstanding discovery | BF  350.00 | 0.10 | 35.00 | 0.00 |
| 12/04/2020 | Email to client with Defendant's Answer to third amended complaint | CS  415.00 | 0.10 | 41.50 | 0.00 |
| 12/15/2020 | Review discovery responses | BF  350.00 | 0.30 | 105.00 | 0.00 |
| 12/22/2020 | Email to Haar regarding discovery conference | BF  350.00 | 0.10 | 35.00 | 0.00 |
| 12/22/2020 | Receive and review email from BF to Haar regarding discovery conference | CS  415.00 | 0.10 | 41.50 | 0.00 |
| 01/04/2021 | Review discovery in advance of tomorrow's discovery conference | BF  350.00 | 1.00 | 350.00 | 0.00 |
| 01/05/2021 | Prep for today's discovery conference | BF  350.00 | 0.50 | 175.00 | 0.00 |
| 01/05/2021 | Discovery conference with opposing counsel. | BF  350.00 | 0.60 | 210.00 | 0.00 |
| 01/05/2021 | Draft discovery letter | BF  350.00 | 1.20 | 420.00 | 0.00 |
| 01/12/2021 | Continue drafting letter to Haar | BF  350.00 | 0.90 | 315.00 | 0.00 |
| 01/12/2021 | Draft protective order | BF  350.00 | 0.20 | 70.00 | 0.00 |
| 02/16/2021 | Review file. Draft email to opposing counsel regarding response. | BF  350.00 | 0.10 | 35.00 | 0.00 |
| 02/17/2021 | Receive and review email from Haar | BF  350.00 | 0.10 | 35.00 | 0.00 |
| 02/17/2021 | Phone call to Haar. No answer. Sent an email | BF  350.00 | 0.10 | 35.00 | 0.00 |
| 02/17/2021 | Call with Haar regarding response. | BF  350.00 | 0.10 | 35.00 | 0.00 |
| 02/22/2021 | Draft email to opposing counsel following up on the discovery responses | BF  350.00 | 0.10 | 35.00 | 0.00 |
| 02/22/2021 | Receive, review, and respond to email from opposing counsel regarding response. | BF  350.00 | 0.20 | 70.00 | 0.00 |
| 02/24/2021 | Receive, review, and respond to email from opposing counsel regarding discovery issues | BF  350.00 | 0.20 | 70.00 | 0.00 |
| 03/01/2021 | Draft email to Haar | BF  350.00 | 0.10 | 35.00 | 0.00 |
| 03/01/2021 | Draft request for information | BF  350.00 | 1.00 | 350.00 | 0.00 |
| 03/02/2021 | Review alternative theories for Request for Information | BF  350.00 | 0.10 | 35.00 | 0.00 |
| 03/04/2021 | Research regarding appropriate remedy when a mortgage company seeks to collect fees without making a 3002.1 disclosure. | BF  350.00 | 0.90 | 315.00 | 0.00 |
| 03/04/2021 | Receive and review scheduling order | BF  350.00 | 0.20 | 70.00 | 0.00 |
| 03/05/2021 | Receive, review, and respond to letter from Haar | BF  350.00 | 1.90 | 665.00 | 0.00 |

| Date | Description | Initials/Rate | Hours | Amount | Adjustment |
|------|-------------|------|------|------|------|
| 03/05/2021 | ~~Continue drafting request for information~~ | ~~BF 350.00~~ | ~~0.40~~ | ~~140.00~~ | ~~0.00~~ |
| 03/08/2021 | Receive, review, and respond to email from Haar regarding scheduling a call for us to discuss the protective order | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 03/08/2021 | Begin drafting motion to compel. | BF 350.00 | 1.20 | 420.00 | 0.00 |
| 03/11/2021 | Prepare for phone call with Haar | BF 350.00 | 0.50 | 175.00 | 0.00 |
| 03/11/2021 | Phone call with Haar regarding the protective order. | BF 350.00 | 0.50 | 175.00 | 0.00 |
| 03/11/2021 | Draft modified protective order to send to Haar | BF 350.00 | 0.70 | 245.00 | 0.00 |
| 03/12/2021 | Conference with CS regarding motion to compel | BF 350.00 | 0.30 | 105.00 | 0.00 |
| 03/12/2021 | Finalize protective order redline to send to opposing counsel | BF 350.00 | 0.20 | 70.00 | 0.00 |
| 03/12/2021 | Draft email to opposing counsel regarding protective order issue, and request concurrence with modifying the scheduling order | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 03/12/2021 | Conference with BF regarding motion to compel | CS 415.00 | 0.30 | 124.50 | 0.00 |
| 03/24/2021 | Begin drafting motion to modify scheduling order. | BF 350.00 | 0.20 | 70.00 | 0.00 |
| 03/24/2021 | Phone call with Haar regarding response and modifying sheduling order. | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 03/25/2021 | Phone call with opposing counsel regarding the discovery issues. | BF 350.00 | 0.30 | 105.00 | 0.00 |
| 03/26/2021 | ~~Receive and review file with SMD. Letter to opposing counsel.~~ | ~~BF 350.00~~ | ~~0.10~~ | ~~35.00~~ | ~~0.00~~ |
| 03/29/2021 | Receive, review, and respond to email from opposing counsel regarding my proposed stipulation to extend the discovery deadline | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 03/31/2021 | Phone call to opposing counsel. No answer. Draft email to opposing counsel regarding stipulation and the need to file the motion. | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 04/05/2021 | Receive and review letter from Haar | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 04/08/2021 | Draft motion to extend deadlines | BF 350.00 | 0.50 | 175.00 | 0.00 |
| 04/08/2021 | ~~Draft email to opposing counsel~~ | ~~BF 350.00~~ | ~~1.80~~ | ~~630.00~~ | ~~0.00~~ |
| 04/12/2021 | Draft email to opposing counsel regarding motion | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 04/12/2021 | Review file. | BF 350.00 | 0.10 | 35.00 | -35.00 |
| 04/15/2021 | Receive and review email from opposing counsel with proposed changes to the joint motion | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 04/15/2021 | Modify joint motion. | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 04/15/2021 | Draft email to opposing counsel | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 04/15/2021 | Electronically file joint motion | BF 350.00 | 0.10 | 35.00 | -35.00 |
| 04/17/2021 | Email to client attaching motion to extend deadlines | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 04/21/2021 | Draft email to opposing counsel regarding protective order | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 05/03/2021 | Email to client with order filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 05/05/2021 | Receive and review email from opposing counsel regarding the protective order | BF 350.00 | 0.20 | 70.00 | 0.00 |
| 05/05/2021 | Phone call with Haar regarding modifications to the protective order | BF 350.00 | 0.20 | 70.00 | 0.00 |

| Date | Description | | Rate | Hours | Amount | Adj |
|---|---|---|---|---|---|---|
| 05/05/2021 | Modify protective order | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 05/05/2021 | Draft email to opposing counsel regarding the protective order | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 05/11/2021 | Draft email to opposing counsel regarding settlement | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 05/20/2021 | Draft email to opposing counsel regarding inexplicable delay in the protective order process | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 05/24/2021 | Finalize protective order. Draft email to opposing counsel asking for his consent to file the protective order | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 05/24/2021 | Receive and review email from opposing counsel approving the final version of the protective order | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 05/24/2021 | Electronically file protective order | BF | 350.00 | 0.10 | 35.00 | -35.00 |
| 05/25/2021 | Draft email to opposing counsel regarding motion to compel and if TMS will be supplementing its discovery responses | BF | 350.00 | 0.60 | 210.00 | 0.00 |
| 05/25/2021 | Edit Motion to Compel | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 05/26/2021 | Phone call with Haar and notes | BF | 350.00 | 0.30 | 105.00 | 0.00 |
| 05/26/2021 | Draft email to opposing counsel summarizing our conversation | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 05/26/2021 | Research regarding consequences for failing to raise issues during the good-faith conference | BF | 350.00 | 0.90 | 315.00 | 0.00 |
| 05/28/2021 | Research for brief | BF | 350.00 | 1.90 | 665.00 | 0.00 |
| 06/01/2021 | Continue researching for brief | BF | 350.00 | 0.40 | 140.00 | 0.00 |
| 06/15/2021 | Draft brief | BF | 350.00 | 2.30 | 805.00 | 0.00 |
| 06/17/2021 | Continue drafting brief | BF | 350.00 | 2.50 | 875.00 | 0.00 |
| 06/21/2021 | Receive and review email from Haar attaching letter acknowledging letter of 06/17/21 | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 06/23/2021 | Continue drafting brief | BF | 350.00 | 2.20 | 770.00 | 0.00 |
| 06/29/2021 | Receive and review motion to compel discovery filed on the docket | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 07/06/2021 | Continue drafting brief | BF | 350.00 | 2.60 | 910.00 | 0.00 |
| 07/07/2021 | Continue drafting brief | BF | 350.00 | 2.80 | 980.00 | 0.00 |
| 07/08/2021 | Continue drafting brief | BF | 350.00 | 3.30 | 1,155.00 | 0.00 |
| 07/13/2021 | Receive and review response to RFI from Haar | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 07/16/2021 | Email to client with answer to defendants opposition to motion to compel filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 07/19/2021 | Conference with CS regarding RFI response and next steps | BF | 350.00 | 0.80 | 280.00 | 0.00 |
| 07/19/2021 | Conference with BF regarding RFI response and next steps | CS | 415.00 | 0.80 | 332.00 | 0.00 |
| 07/23/2021 | Conference with BF to work on brief | CS | 415.00 | 2.40 | 996.00 | 0.00 |
| 07/26/2021 | Review brief opposing motion to compel | BF | 350.00 | 0.30 | 105.00 | 0.00 |
| 07/26/2021 | Draft reply brief in support of motion to compel | BF | 350.00 | 5.40 | 1,890.00 | 0.00 |
| 07/27/2021 | Continue drafting brief | BF | 350.00 | 2.50 | 875.00 | 0.00 |
| 07/28/2021 | Receive and review order continuing hearing filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |

| Date | Description | Timekeeper/Rate | Hours | Amount | |
|---|---|---|---|---|---|
| 08/02/2021 | Finalize brief with CS | BF 350.00 | 0.80 | 280.00 | 0.00 |
| 08/02/2021 | Draft email to opposing counsel following up on my email from 7/27 | BF 350.00 | 0.20 | 70.00 | 0.00 |
| 08/02/2021 | Conference with BF regarding brief | CS 415.00 | 0.70 | 290.50 | 0.00 |
| 08/02/2021 | Research; Review Gravel v. PHH Mortgage | CS 415.00 | 0.30 | 124.50 | 0.00 |
| 08/03/2021 | Conference with CS regarding defendants delay in responding to discovery questions. | BF 350.00 | 0.20 | 70.00 | 0.00 |
| 08/03/2021 | Conference with BF regarding defendants delay in responding to discovery questions. | CS 415.00 | 0.20 | 83.00 | 0.00 |
| 08/03/2021 | Receive and review motion to continue filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 08/05/2021 | Receive and review email from opposing counsel regarding TMS not having a bankruptcy policy | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 08/05/2021 | Modify brief in light of Defendant's counsel's statement | BF 350.00 | 0.30 | 105.00 | 0.00 |
| 08/05/2021 | Conference with CS regarding strategy | BF 350.00 | 0.20 | 70.00 | 0.00 |
| 08/05/2021 | Draft motion to extend deadline | BF 350.00 | 0.20 | 70.00 | 0.00 |
| 08/05/2021 | Conference with CS regarding strategy | BF 350.00 | 0.20 | 70.00 | -70.00 |
| 08/05/2021 | Conference with BF regarding strategy | CS 415.00 | 0.20 | 83.00 | 0.00 |
| 08/05/2021 | Work on proposed response to email from opposing counsel | CS 415.00 | 0.40 | 166.00 | 0.00 |
| 08/05/2021 | Receive and review order granting motion to continue hearing filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 08/08/2021 | Email to client with motion to continue, order continuing hearing, and motion for extension filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 08/13/2021 | Email to client with reply brief regarding motion to compel filed on the docket. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 08/17/2021 | Receive and review order approving the motion to extend time | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 08/23/2021 | Email to client with order granting motion to extend time for reply brief filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 08/24/2021 | Prepare binder for hearing | ASW 150.00 | 1.00 | 150.00 | 0.00 |
| 08/24/2021 | Receive, review, and respond to email from Ratchford regarding informal conference ahead of upcoming hearing | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 08/24/2021 | Review documentation in preparation for hearing | CS 415.00 | 0.40 | 166.00 | 0.00 |
| 08/24/2021 | Receive and review email from Haar regarding availability for conference tomorrow | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 08/24/2021 | Receive and review email from Ratchford regarding telephonic conference tomorrow | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 08/24/2021 | Receive and review order setting status conference filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 08/24/2021 | Receive and review email from Haar confirming status conference | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 08/25/2021 | Review file in preparation for court call. Call with court. | CS 415.00 | 0.50 | 207.50 | 0.00 |

Case 5:19-ap-00116-MJC    Doc 117-1    Filed 10/26/22    Entered 10/26/22 1C ᵒᵒ ¹¹
Desc Exhibit A - Statement of Fees    Page 14 of 20

Appx94

| Date | Description | Timekeeper/Rate | Hours | Amount | Adjustment |
|------|-------------|-----------------|-------|--------|------------|
| 08/25/2021 | Receive and review remote hearing registration confirmation | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/08/2021 | Review order regarding motion to compel discovery. | CS 415.00 | 0.30 | 124.50 | 0.00 |
| 09/11/2021 | Email to client with order on motion to compel discovery | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/28/2021 | Receive and review email from Haar regarding attachment size. | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 09/28/2021 | Receive and review email from Haar attaching supplemental discovery | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/28/2021 | Receive and review email from litigation support regarding files | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 09/29/2021 | Receive and review email from IT attaching secure document | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/30/2021 | Receive and review supplemental discovery responses | BF 350.00 | 1.40 | 490.00 | 0.00 |
| 10/05/2021 | Draft followup email to Haar | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 10/15/2021 | Analyze discovery response with CS and chart out deposition strategy and future discovery strategy. | BF 350.00 | 2.40 | 840.00 | 0.00 |
| 10/15/2021 | Analyze discovery response with BF and chart out deposition strategy and future discovery strategy. | CS 415.00 | 2.40 | 996.00 | 0.00 |
| 10/18/2021 | Receive and review email from Haar attaching discovery requests and dep notice | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 10/19/2021 | Conference with CS regarding old orders | BF 350.00 | 0.70 | 245.00 | -245.00 |
| 10/19/2021 | Conference with BF regarding old orders | CS 415.00 | 0.60 | 249.00 | -249.00 |
| 10/20/2021 | Conference with opposing counsel regarding discovery issues. | BF 350.00 | 0.50 | 175.00 | 0.00 |
| 10/21/2021 | Conference with CS regarding discovery responses and strategy moving forward | BF 350.00 | 0.60 | 210.00 | 0.00 |
| 10/21/2021 | Conference with BF regarding discovery responses | CS 415.00 | 0.30 | 124.50 | 0.00 |
| 10/21/2021 | Conference with BF regarding motion to extend deadline. | CS 415.00 | 0.30 | 124.50 | 0.00 |
| 10/25/2021 | Draft email to Haar regarding the outstanding discovery issues | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 10/26/2021 | Receive, review, and respond to email from opposing counsel regarding discovery proposal and extension | BF 350.00 | 0.40 | 140.00 | 0.00 |
| 10/27/2021 | Phone call to Haar to follow up on my email. No answer. Left a message. | BF 350.00 | 0.10 | 35.00 | -35.00 |
| 10/27/2021 | Edit motion to compel with CS. | BF 350.00 | 0.30 | 105.00 | 0.00 |
| 10/27/2021 | Draft motion to extend deadlines | BF 350.00 | 1.60 | 560.00 | 0.00 |
| 10/27/2021 | Phone call with opposing counsel. They will not agree to extend any deadlines | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 10/27/2021 | Draft deposition notices for the four individual witnesses | BF 350.00 | 0.20 | 70.00 | 0.00 |
| 10/27/2021 | Edit motion to compel with BF. | CS 415.00 | 0.30 | 124.50 | 0.00 |
| 10/28/2021 | Exercise billing judgment | ASW 150.00 | 1.00 | 150.00 | -150.00 |
| 10/28/2021 | Draft corporate designee deposition notice | BF 350.00 | 1.80 | 630.00 | 0.00 |
| 10/28/2021 | Draft brief in support of motion to extend. | BF 350.00 | 2.20 | 770.00 | 0.00 |
| 10/29/2021 | Exercise billing judgment | ASW 150.00 | 1.40 | 210.00 | -210.00 |

| Date | Description | Timekeeper / Rate | Hours | Amount | Adjustment |
|---|---|---|---|---|---|
| 10/29/2021 | Email to client attaching motion to enlarge deadlines filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 11/01/2021 | Review draft responses. Review file for postage receipts. Review endicia app and online account. Call to endicia | ASW 150.00 | 0.60 | 90.00 | -90.00 |
| 11/02/2021 | Review file regarding discovery. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 11/03/2021 | Research for documents requested in discovery | CS 415.00 | 0.40 | 166.00 | 0.00 |
| 11/03/2021 | Call with client regarding discovery | CS 415.00 | 0.30 | 124.50 | 0.00 |
| 11/03/2021 | Update discovery responses | CS 415.00 | 0.30 | 124.50 | 0.00 |
| 11/03/2021 | Email to ASW and BF regarding discovery responses. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 11/04/2021 | Call endicia regarding postage receipts | ASW 150.00 | 0.10 | 15.00 | 0.00 |
| 11/04/2021 | Review discovery responses. Prepare documentation for discovery responses | ASW 150.00 | 0.50 | 75.00 | 0.00 |
| 11/08/2021 | Draft email to opposing counsel regarding discovery | BF 350.00 | 0.20 | 70.00 | 0.00 |
| 11/08/2021 | Review bill. | CS 415.00 | 0.20 | 83.00 | -83.00 |
| 11/09/2021 | Prep responses for client signature. Email to CS regarding the same | ASW 150.00 | 0.20 | 30.00 | 0.00 |
| 11/09/2021 | Call to client regarding retainer agreement. No answer, leave message | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 11/11/2021 | Review discovery. Email to CS | ASW 150.00 | 0.10 | 15.00 | 0.00 |
| 11/11/2021 | Receive and review email from Haar. He is speaking to his client on Friday and then will get back to me | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 11/11/2021 | Call to client regarding discovery. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 11/15/2021 | Draft email to opposing counsel following up on his discussion with his client. | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 11/15/2021 | Email to client with brief in support of motion to extend deadlines and order regarding the same | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 11/16/2021 | Receive, review, and respond to email from opposing counsel regarding discovery issues | BF 350.00 | 0.20 | 70.00 | 0.00 |
| 11/18/2021 | Draft stipulation | BF 350.00 | 0.60 | 210.00 | 0.00 |
| 11/18/2021 | Phone call with client to advise him that the depositions have been canceled for next week | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 11/18/2021 | Draft combined discovery set 3 | BF 350.00 | 0.20 | 70.00 | 0.00 |
| 11/18/2021 | Review and edit discovery stipulation | CS 415.00 | 0.50 | 207.50 | 0.00 |
| 11/25/2021 | Email to client attaching stipulation regarding discovery | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 11/30/2021 | Email to client attaching notice setting hearing (2). | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/07/2021 | Attend hearing on stipulation regarding discovery. Court will refer the matter to a mediator immediately | BF 350.00 | 1.30 | 455.00 | 0.00 |
| 12/07/2021 | Receive and review proceeding hearing memo regarding stipulation concerning discovery filed on the docket | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 12/13/2021 | Email to client with order appointing mediator filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/15/2021 | Receive and review email from Haar regarding handling mediation | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/15/2021 | Conference with client regarding date for mediation | CS 415.00 | 0.10 | 41.50 | 0.00 |

| Date | Description | | Hours | Amount | |
|------|-------------|------|-------|--------|------|
| 12/15/2021 | Email to Wren regarding mediation | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/15/2021 | Receive and review email from Haar regarding mediation date | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/16/2021 | Prepare RFI | ASW 150.00 | 1.00 | 150.00 | 0.00 |
| 12/16/2021 | Review and edit redline RFI. | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 12/16/2021 | Edit RFI. Email to BF regarding redline RFI | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/16/2021 | Email to Haar and Riley attaching RFI | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/20/2021 | Receive and review email from Haar regarding proposed mediation date | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/21/2021 | Receive and review email from Wren regarding the dates being fine and filing a motion | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/21/2021 | Receive and review email from Haar regarding acceptable date and preparing a motion | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/21/2021 | Receive and review email from Haar attaching RFI acknowledgement letter | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/21/2021 | Receive and review email from Haar regarding dates for mediation | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/29/2021 | Email to Wren & Haar regarding zoom and dates for mediation | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/29/2021 | Receive and review auto reply from Haar regarding out of office | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 12/30/2021 | Receive and review email from Wren regarding setting up mediation | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/30/2021 | Receive and review email from Haar regarding preparing draft motion | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 01/04/2022 | Receive, review, and respond to email from Haar attaching joint motion on mediation. | CS 415.00 | 0.20 | 83.00 | 0.00 |
| 01/04/2022 | Receive and review email from Haar attaching new draft motion | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 01/04/2022 | Receive and review email from BF regarding discovery deadline | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 01/04/2022 | Receive and review email from BF regarding TMS request for continuance | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 01/04/2022 | Email to Haar regarding his draft | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 01/04/2022 | Receive, review, and respond to email from Haar attaching updated draft motion | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 01/04/2022 | Receive and review email from Haar regarding filing after hearing from mediator | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 01/05/2022 | Receive, review, and respond to email from Wren confirming mediation | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 01/05/2022 | Receive and review email from Haar confirming mediation time | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 01/05/2022 | Receive and review unopposed motion regarding mediation filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 01/05/2022 | Receive and review email from Haar confirming motion on mediation was filed and attaching the same | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 01/07/2022 | Call to client. No answer, leave message | ASW 150.00 | 0.10 | 15.00 | -15.00 |

| Date | Description | | Hours | Amount | Adj. |
|------|-------------|---|-------|--------|------|
| 01/07/2022 | Email to client attaching consent to mediation motion and regarding mediation date | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 01/10/2022 | Receive and review order concerning mediation filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 01/10/2022 | Receive and review email from Haar confirming order regarding mediation was granted | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 01/11/2022 | Call to client. No answer, leave message | ASW 150.00 | 0.10 | 15.00 | 0.00 |
| 01/13/2022 | Receive and review email from client confirming receipt of mediation information | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 01/18/2022 | Receive and review email from Haar attaching response to RFI | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 01/30/2022 | Email to client regarding mediation and attaching order regarding mediation | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 02/02/2022 | Receive and review email from CS to Haar. Analyze to determine if this is information which is needed for the mediation memo | BF 350.00 | 0.20 | 70.00 | 0.00 |
| 02/02/2022 | Begin drafting mediation memo | BF 350.00 | 0.30 | 105.00 | 0.00 |
| 02/02/2022 | Email to Haar with response to RFI response | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 02/04/2022 | Finalize mediation memo | BF 350.00 | 0.40 | 140.00 | 0.00 |
| 02/08/2022 | Contniue drafting SJ documents | BF 350.00 | 0.90 | 315.00 | 0.00 |
| 02/09/2022 | Continue drafting SJ documents regarding liability for the TILA claim | BF 350.00 | 1.20 | 420.00 | 0.00 |
| 02/09/2022 | Email to Haar asking after outstanding information from RFI | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 02/09/2022 | Email to Haar attaching part of a draft Motion for Summary Judgment. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 02/09/2022 | Receive and review email from Haar regarding following up with his client regarding response | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 02/10/2022 | Work on mediation memo with CS. | BF 350.00 | 0.30 | 105.00 | 0.00 |
| 02/10/2022 | Email to Wren attaching mediation memo. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 02/10/2022 | Work on mediation memo with BF | CS 415.00 | 0.30 | 124.50 | 0.00 |
| 02/11/2022 | Receive and review email from Haar with additional RFI response | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 02/15/2022 | Receive and review email from Haar regarding late start. Call to Haar. No answer, leave message. Email to Haar regarding the same | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 02/15/2022 | Receive, review, and respond to email from Haar regarding late start | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 02/15/2022 | Return call to Matt Haar regarding mediation. | CS 415.00 | 0.20 | 83.00 | 0.00 |
| 02/15/2022 | Receive, review, and respond to to email from Wren regarding mediation schedule | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 02/15/2022 | Receive, review, and respond to email from Haar regarding mediation call and availability | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 02/15/2022 | Receive and review email from Haar regarding mediation start time | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 02/16/2022 | Receive and review email from Wren regarding mediation schedule | CS 415.00 | 0.10 | 41.50 | 0.00 |

| Date | Description | Attorney/Rate | Hours | Amount | Adj. |
|---|---|---|---|---|---|
| 02/16/2022 | Receive and review email from Haar regarding proceeding with mediation | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 02/16/2022 | Meeting with client in preparation for mediation | CS 415.00 | 0.40 | 166.00 | 0.00 |
| 02/17/2022 | Receive and review email from client attaching mortgage statement | ASW 150.00 | 0.10 | 15.00 | 0.00 |
| 02/17/2022 | Conference with CS regarding mediation | BF 350.00 | 1.30 | 455.00 | 0.00 |
| 02/17/2022 | Meet with client ahead of mediation | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 02/17/2022 | Attend mediation via zoom | CS 415.00 | 2.20 | 913.00 | 0.00 |
| 02/17/2022 | Conference with BF regarding mediation | CS 415.00 | 1.30 | 539.50 | 0.00 |
| 02/17/2022 | Receive and review email with client's mortgage statement | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 02/17/2022 | Receive and review email from Wren regarding zoom not working | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 02/17/2022 | Receive, review, and respond to email from Haar regarding dial-in for mediation | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 02/17/2022 | Receive and review email from Haar asking after zoom info | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 03/02/2022 | Email to opposing counsel regarding depositions | BF 350.00 | 0.20 | 70.00 | 0.00 |
| 03/02/2022 | Receive and review mediator report | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 03/02/2022 | Receive, review, and respond to email from opposing counsel regarding depositions | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 03/02/2022 | Receive and review email from Wren attaching report of mediator that was filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/02/2022 | Receive and review email from Haar regarding mediation report | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 03/08/2022 | Receive and review email from Haar regarding working on settlement offer | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/11/2022 | Email to BF regarding deps | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/14/2022 | Email to client with report of mediator filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/14/2022 | Receive and review email from Haar with settelement offer | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/15/2022 | Conference with CS regarding settlement | BF 350.00 | 0.20 | 70.00 | 0.00 |
| 03/15/2022 | Draft offer of judgment for Defendant to tender | BF 350.00 | 0.20 | 70.00 | 0.00 |
| 03/16/2022 | Receive, review, and respond to email from Carlo regarding settlement offer | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 03/16/2022 | Draft email to opposing counsel regarding offer of judgment | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 03/16/2022 | Receive and review signed offer of judgment from Haar | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/16/2022 | Call to client. Begin email to client regarding offer. Call from client. He will accept offer | CS 415.00 | 0.20 | 83.00 | 0.00 |
| 03/16/2022 | Receive and review email from BF to Haar regarding proposal and draft offer of judgment | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 03/18/2022 | Receive and review offer of judgment. Draft email to CS with proposed plan | BF 350.00 | 0.10 | 35.00 | 0.00 |
| 03/24/2022 | Exercise billing judgment | CS 415.00 | 0.50 | 207.50 | -207.50 |

|  | | | Sub-total Fees: | 63,321.50 | -4,150.00 |
|---|---|---|---|---|---|
|  | | | Net Fees After Discount: | **59,171.50** | |

### Expenses

| Date | Description | Price | Units | Amount | Discount |
|---|---|---|---|---|---|
| 05/28/2020 | CourtCall Fee | 54.00 | 1.00 | 54.00 | 0.00 |
| 08/27/2020 | CourtCall | 69.75 | 1.00 | 69.75 | 0.00 |
| 09/03/2020 | Postage for RFI to the Money Source. | 1.00 | 7.09 | 7.09 | 0.00 |
| 09/25/2020 | Postage for second RFI to money source. | 1.00 | 7.09 | 7.09 | 0.00 |
|  | | Sub-total Expenses: | | 137.93 | 0.00 |

### Total

|  | | |
|---|---|---|
| Net Fees After Discount: | 59,171.50 | |
| Net Expenses After Discount: | 137.93 | |
| Total: | **59,309.43** | |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re Clarence Lewis | Bankruptcy No. 5:19-bk-01873-MJC |
| Clarence Lewis,<br>Plaintiff | Chapter 13 |
| | Adversary No. 5:19-ap-00116-MJC |
| v. | |
| The Money Source Inc.,<br>Defendant | |

### NOTICE OF ACCEPTANCE OF OFFER OF JUDGMENT

Plaintiff hereby accepts Defendant's March 16, 2022 Offer of Judgment, a copy of which

is attached hereto as Exhibit A.

Brett Freeman
Bar Number PA 308834
Attorney for Plaintiff
SABATINI FREEMAN, LLC
216 N. Blakely St.
Dunmore, PA 18512
P: (570) 341-9000
F: (570) 504-2769
bfecf@sabatinilawfirm.com

### CERTIFICATE OF SERVICE

Service is being effectuated on March 24, 2022 via first class mail, addressed to:

Matthew M. Haar
Saul Ewing Arnstein & Lehr LLP
Penn National Insurance Tower
2 North Second Street, 7th Floor
Harrisburg, PA 17101-1619

Brett Freeman

# **EXHIBIT A**

(March 16, 2022 Offer of Judgment)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re Clarence Lewis | Bankruptcy No. 5:19-bk-01873-MJC |
| Clarence Lewis,<br>　　　Plaintiff | Chapter 13 |
| | Adversary No. 5:19-ap-00116-MJC |
| v. | |
| The Money Source, Inc.,<br>　　　Defendant | |

## OFFER OF JUDGMENT

Defendant, The Money Source, Inc., pursuant to Federal Rule of Civil Procedure 68, as incorporated by Federal Rule of Bankruptcy Procedure 7068, hereby offers to allow a judgment to be taken against it in satisfaction of all claims by Plaintiff, Clarence Lewis, in the amount of $6,000.00, plus an additional amount for costs and reasonable attorney's fees. The parties will attempt to negotiate the amount of the costs and reasonable attorney's fees. If the parties are unable to resolve the amount of costs and reasonable attorney's fees, then Plaintiff shall file a petition with the Court within 30 days of the filing of a written acceptance of this Offer of Judgment, unless a later date is set by Court order or agreed upon by the parties.

In accordance with Federal Rule of Civil Procedure 68, this Offer of Judgment will be deemed withdrawn unless accepted within fourteen days of the date of service.

Dated: March 16, 2022

Matthew M. Haar, Esq. (85688)
Saul Ewing Arnstein & Lehr LLP
2 North Second St., 7th Floor
Harrisburg, PA 17101
matt.haar@saul.com – 717-257-7508

*Counsel for Defendant
The Money Source, Inc.*

39797436.2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re Clarence Lewis | Bankruptcy No. 5:19-bk-01873-MJC |
| Clarence Lewis,<br>　　　Plaintiff | Chapter 13 |
| v. | Adversary No. 5:19-ap-00116-MJC |
| The Money Source, Inc.,<br>　　　Defendant | |

## <u>PLAINTIFF'S PETITION FOR ATTORNEY'S FEES AND COSTS</u>

For the reasons in the accompanying brief, Plaintiff respectfully requests that the Court

enter an award of attorney's fees and costs as follows:

| | |
|---|---|
| Unchallenged amount through March 24, 2022 (Exhibit A1) | $36,758.00 |
| Disputed amount through March 24, 2022 (Exhibit A2) | $19,426.50 |
| Stipulated amount from March 25, 2022 – October 27, 2022 (Per oral agreement made on the record on November 8, 2022) | $5,732.50 |
| October 28, 2022 – December 8, 2022 (Exhibit B) | $4,761.68 |
| | ======== |
| Total | $66,678.68 |

In addition to the above amounts, Plaintiff also respectfully requests an amount to be

determined for time spent after December 8, 2022.

_Carlo Sabatini_
_____
Carlo Sabatini, Bar Number PA 83831
Attorney for Plaintiff
Sabatini Law Firm, LLC
216 N. Blakely St.
Dunmore, PA  18512
Phone (570) 341-9000
Email ecf@bankruptcypa.com

Document Ref: WJJSS-UL2QY-7JKQR-W5XFE

**Sabatini Freeman, LLC**

216 N. Blakely St.
Dunmore, PA 18512
Statement as of: 3/24/2022

**Clarence Lewis**
**312 Church St.**
**Taylor, PA 18517**

Our file number: 3250-002

## Rate Summary

| Professional | Gross | | | Discount | | | Net |
|---|---|---|---|---|---|---|---|
| Brett Freeman | 35.90 hours at $350.00/hr | | $12,565.00 | 2.10 hours | | ($735.00) | $11,830.00 |
| Carlo Sabatini | 66.00 hours at $415.00/hr | | $27,390.00 | 6.80 hours | | ($2,822.00) | $24,568.00 |
| Ashley Werner | 5.80 hours at $150.00/hr | | $870.00 | 3.40 hours | | ($510.00) | $360.00 |
| Total: | 107.70 hours (before discount) | | $40,825.00 | 12.30 hours | | ($4,067.00) | $36,758.00 |

## Itemized Listing of Services

| Date | Description | Rate | | Hours | Amount | Discount |
|---|---|---|---|---|---|---|
| 08/30/2019 | Review and edit request for information to mortgage company. | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 09/27/2019 | Review and sign letter to The Money Source Inc. requesting information | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 10/02/2019 | Receive and review voicemail from Andrew Spivack regarding information request. Email to Andrew regarding the same | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 10/02/2019 | Email to Hanyon regarding second request for information sent last week. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 10/02/2019 | Receive and review email from Hanyon regarding availability for a call tomorrow. | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 10/02/2019 | Receive, review, and respond to email from Spivack regarding phone call availability. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 10/03/2019 | Call with Spivack & Hanyon regarding charges and fees. | CS | 415.00 | 0.80 | 332.00 | 0.00 |
| 10/03/2019 | Receive and review phone message from Mario Hanyon. Return call to Hanyon regarding claims, fees, and response to Request for Information. | CS | 415.00 | 0.80 | 332.00 | 0.00 |
| 10/04/2019 | Receive and review email from Spivack regarding 506 (b) analysis | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 10/07/2019 | Review 506 cases from Spivack | CS | 415.00 | 1.30 | 539.50 | 0.00 |
| 10/09/2019 | Research to find authority that an undersecured creditor is not entitled to collect attorney's fees | CS | 415.00 | 0.40 | 166.00 | 0.00 |
| 10/16/2019 | Call with Mario Hanyon regarding receipt and response to Request for Information. | CS | 415.00 | 0.40 | 166.00 | 0.00 |
| 11/17/2019 | Draft RESPA complaint. | CS | 415.00 | 0.60 | 249.00 | 0.00 |
| 11/18/2019 | Conference with CS regarding pattern of practice | BF | 350.00 | 0.10 | 35.00 | 0.00 |

| Date | Description | | | | |
|---|---|---|---|---|---|
| 11/18/2019 | Research calculation of statutory damages. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 11/18/2019 | Research TILA violation including statutory damages for failure to provide a payoff statement upon request | CS 415.00 | 0.60 | 249.00 | 0.00 |
| 11/18/2019 | Edit RESPA complaint | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 11/18/2019 | Conference with BF regarding TILA issue | CS 415.00 | 0.40 | 166.00 | 0.00 |
| 11/18/2019 | Research amount of statutory damages | CS 415.00 | 0.20 | 83.00 | 0.00 |
| 11/18/2019 | Conference with BF regarding pattern of practice. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 11/20/2019 | Receive and review phone message from client. Return call to client regarding his claims against The Money Source, Inc. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 11/22/2019 | Email to client with retainer agreement | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 11/25/2019 | Work on complaint | CS 415.00 | 0.60 | 249.00 | 0.00 |
| 11/26/2019 | Work on complaint. | CS 415.00 | 2.10 | 871.50 | 0.00 |
| 11/27/2019 | Receive and review summons filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 11/27/2019 | Receive and review docket entry regarding filing fee not required | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 11/27/2019 | Review and sign letter to Defendant enclosing summons and complaint | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/06/2019 | Call from Mario Hanyon regarding confidential settlement communications. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/06/2019 | Email to Hanyon to confirm confidential settlement communications. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/06/2019 | Prepare settlement agreement | CS 415.00 | 0.30 | 124.50 | 0.00 |
| 12/06/2019 | Receive and review email from Hanyon confirming the parties' agreement to keep confidential the dollar amount of all settlement offers and demands. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/06/2019 | Email to Hanyon with draft settlement agreement | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/09/2019 | Receive, review, and respond to email from Hanyon regarding changing the payment date in the agreement | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/09/2019 | Receive, review, and respond to email from Hanyon requesting 30 days to pay | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/09/2019 | Receive, review, and respond to email from Hanyon regarding edit to the agreement. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/09/2019 | Receive, review, and respond to email from Hanyon attaching revised agreement | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/11/2019 | Receive, review, and respond to email from Hanyon asking for concurrence with extension to respond. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/11/2019 | Receive, review, and respond to email from Hanyon regarding reason for extension request. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/12/2019 | Receive, review, and respond to email from Hanyon regarding settlement demand and agreement. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/12/2019 | Email to client with complaint and summons filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/17/2019 | Email to Hanyon to follow up on settlement agreement. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 12/17/2019 | Receive, review, and respond to email from Hanyon regarding waiting to hear back from his client | CS 415.00 | 0.10 | 41.50 | -41.50 |

Case 5:19-ap-00116-MJC   Doc 128-1   Filed 12/08/22   Entered 12/08/22 22:57:14   Desc Exhibit A1 - First Bill Agreed Portion   Page 2 of 17

**Appx106**

| Date | Description | Code | Rate | Hours | Amount | Adj. |
|---|---|---|---|---|---|---|
| 12/18/2019 | Receive, review, and respond to email from Hanyon regarding setting up a phone call. | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 12/18/2019 | Receive, review, and respond to email from Hanyon regarding setting up a call for Friday | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/18/2019 | Receive and review email from Hanyon regarding phone call. | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 12/18/2019 | Receive, review, and respond to email from Hanyon asking whether I received the invite. | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 12/20/2019 | Research for multiple statutory damages | CS | 415.00 | 0.40 | 166.00 | 0.00 |
| 12/20/2019 | Call with Marion Hanyon and The Money Source regarding extension request, settlement demand, and settlement agreement. | CS | 415.00 | 0.30 | 124.50 | 0.00 |
| 12/20/2019 | Receive and review motion to extend time filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/27/2019 | Research the availability of multiple statutory damages and the meaning of "pattern and practice" for purposes of statutory damages | CS | 415.00 | 1.10 | 456.50 | 0.00 |
| 12/27/2019 | Receive and review order granting motion to extend time to file answer filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/27/2019 | Email to client with motion for extension of time filed on the docket. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/08/2020 | Receive, review, and respond to email from Hanyon requesting extension | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/08/2020 | Receive, review, and respond to email from Hanyon regarding extension | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/09/2020 | Receive, review and respond to email from Hanyon thanking me for extension and asking after conference. | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 01/09/2020 | Receive and review email from Hanyon. | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 01/09/2020 | Receive and review second motion for extension of time to file answer filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/13/2020 | Receive and review email from Hanyon attaching revised settlement agreement | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 01/13/2020 | Email to Hanyon regarding phone call to discuss changes to settlement agreement | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 01/14/2020 | Receive and review email from Hanyon regarding invite to conference call | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 01/14/2020 | Call with Mario and The Money Source to discuss proposed changes to settlement document. | CS | 415.00 | 0.50 | 207.50 | 0.00 |
| 01/14/2020 | Finish up edits to settlement agreement. Email to Hanyon with revised settlement agreement | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/15/2020 | Receive and review email from Hanyon confirming settlement agreement approved and requesting demand | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/15/2020 | Call with Hanyon regarding settlement., | CS | 415.00 | 0.60 | 249.00 | -41.50 |
| 01/17/2020 | Email to client with order regarding extension, second motion for extension, and order regarding second motion for extension filed on the docket. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/17/2020 | Receive and review answer filed on the docket | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 01/17/2020 | Email to Haar Requesting 26(f) | CS | 415.00 | 0.20 | 83.00 | -41.50 |

Case 5:19-ap-00116-MJC   Doc 128-1   Filed 12/08/22   Entered 12/08/22 22:57:14   Desc Exhibit A1 - First Bill Agreed Portion   Page 3 of 17

Appx107

| Date | Description | | | | | |
|---|---|---|---|---|---|---|
| 01/17/2020 | Research file regarding appropriate RFI address. | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 01/17/2020 | Email to Haar with copy of discovery that was mailed out | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/21/2020 | Review and sign letter to Haar enclosing first discovery request | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/21/2020 | Review second set of discovery | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/21/2020 | Email to Haar to follow up on 26(f) conference and attaching second set of discovery | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/21/2020 | Receive and review email from Haar regarding not scheduling 26(f) and asking after demand | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/21/2020 | Email to Haar regarding need for 26(f) conference and requesting response to demand | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 01/22/2020 | Conference with CS regarding email from Defendant's lawyer, motion for judgment on the pleadings, and motion to strike | BF | 350.00 | 0.80 | 280.00 | -280.00 |
| 01/22/2020 | Receive and review email from Francis Riley regarding my demand and my fees | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/22/2020 | Conference with BF regarding email from Defendant's lawyer, motion for judgment on the pleadings, and motion to strike | CS | 415.00 | 0.80 | 332.00 | 0.00 |
| 01/23/2020 | Review complaint and answer | BF | 350.00 | 0.40 | 140.00 | 0.00 |
| 01/23/2020 | Review applicable RESPA and TILA regulations. Research the same regarding proper statutory coverage of Defendant. | BF | 350.00 | 0.60 | 210.00 | 0.00 |
| 01/23/2020 | Draft amended complaint | BF | 350.00 | 1.20 | 420.00 | 0.00 |
| 01/23/2020 | Initial draft of email to opposing counsel regarding their amended answer. | CS | 415.00 | 0.40 | 166.00 | 0.00 |
| 01/23/2020 | Edit email to opposing counsel and send to Francis Riley. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/23/2020 | Receive and review email from Haar attaching offer of judgment. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/23/2020 | Email to client with offer of judgment | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/23/2020 | Receive and review email from Riley regarding settlement discussions and reasonable fees. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/27/2020 | Call to client to discuss offer of judgment. No answer, mailbox was full. Email to him regarding the same. | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 01/27/2020 | Receive and review order filed on the docket instructing Plaintiff to file redline of the amended complaint | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/27/2020 | Receive and review email from BF regarding OOJ | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/27/2020 | Work on redline complaint | CS | 415.00 | 0.30 | 124.50 | -124.50 |
| 01/27/2020 | Conference with BF regarding offer of judgment. | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 01/27/2020 | Call with client regarding offer from mortgage company. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 02/10/2020 | Email to client with motion for extension and proposed order filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 02/11/2020 | Review file regarding next steps. | CS | 415.00 | 0.10 | 41.50 | -41.50 |

| Date | Description | | Rate | Hours | Amount | Adj |
|---|---|---|---|---|---|---|
| 02/18/2020 | Receive and review email from Mishoe with letter regarding discovery. Review file | CS | 415.00 | 0.30 | 124.50 | 0.00 |
| 02/19/2020 | Draft letter to MIshoe regarding discovery | CS | 415.00 | 0.30 | 124.50 | 0.00 |
| 02/19/2020 | Edit stipulation | CS | 415.00 | 0.30 | 124.50 | 0.00 |
| 02/19/2020 | Email to Mishoe with letter, stipulation, and order | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 02/19/2020 | Receive, review, and respond to email from Mishoe regarding stipulations regarding discovery | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 02/24/2020 | Conference with CS regarding response to brief in support of motion to dismiss. | BF | 350.00 | 0.50 | 175.00 | 0.00 |
| 02/24/2020 | Receive and review Motion to Dismiss filed on the docket | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 02/24/2020 | Receive and review brief in support of motion to dismiss filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 02/24/2020 | Review brief filed on the docket in support of motion to dismiss | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 02/24/2020 | Receive and review email from Mishoe with letter regarding discovery | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 02/24/2020 | Conference with BF regarding response to brief in support of motion to dismiss. | CS | 415.00 | 0.50 | 207.50 | 0.00 |
| 02/24/2020 | Email to client with Entry of Appearance filed on the docket | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 02/25/2020 | Conference with BF regarding whether Rule 11 motion for asserting that RESPA does not require them to provide the name of the owner of the loan. | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 02/26/2020 | Research regarding motion to compel discovery | CS | 415.00 | 0.50 | 207.50 | 0.00 |
| 02/27/2020 | Receive and review email from JMM with results of scheduling order analysis | CS | 415.00 | 0.20 | 83.00 | -83.00 |
| 02/28/2020 | Review file regarding discovery response due date. | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 02/28/2020 | Draft letter to Haar regarding discovery | CS | 415.00 | 0.80 | 332.00 | 0.00 |
| 02/28/2020 | Email to Haar with letter regarding discovery | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 02/28/2020 | Email to client with motion to dismiss, brief in support of motion to dismiss, and order filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 02/28/2020 | Email to client with copy of letter to Haar | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 03/02/2020 | Receive, review, and respond to email from Mishoe requesting concurrence with motion to stay discovery | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 03/02/2020 | Receive and review email from Mishoe with motion to stay discovery | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 03/02/2020 | Receive and review Motion to Stay filed on the docket | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 03/02/2020 | Receive and review brief in support of motion to stay filed on the docket | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 03/05/2020 | Receive and review notice setting objection date and hearing filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 03/10/2020 | Receive and review Motion to Appear Pro Hac Vice filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 03/10/2020 | Email to client with motion to stay discovery, supporting brief, and hearing notice filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |

Case 5:19-ap-00116-MJC   Doc 128-1   Filed 12/08/22   Entered 12/08/22 2?:??:??
Desc Exhibit A1 - First Bill Agreed Portion   Page 5 of 17

Appx109

| Date | Description | | | | |
|------|-------------|---|---|---|---|
| 03/11/2020 | Receive and review order granting motion to appear pro hac vice filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/12/2020 | Receive, review, and respond to email from BF regarding damages | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 03/12/2020 | Receive and review docket entry modifying Attorney Riley | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/13/2020 | Email to client with motion for admission and order granting motion filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/14/2020 | Receive and review BNC Certificate of Notice filed on the docket | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 03/16/2020 | Edit second amended complaint | CS 415.00 | 0.30 | 124.50 | 0.00 |
| 03/19/2020 | Email to Riley, Haar, and Wesley requesting concurrence with motion to amend complaint. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/19/2020 | Receive, review, and respond to email from Riley regarding reviewing and discussing amendment with his client. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/19/2020 | Receive and review email from Riley confirming extension to file briefs | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/20/2020 | Draft stipulation and order | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/20/2020 | Email to Riley with stipulation and order. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/20/2020 | Receive and review email from Riley confirming I could file stipulation. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/20/2020 | Receive and review order continuing hearing filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/27/2020 | Email to client with stipulation and order filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/30/2020 | Email to Riley regarding amended complaint and extension | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/30/2020 | Receive and review email from Riley regarding opposition due and amending complaint | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/31/2020 | Email to Riley regarding extension | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/31/2020 | Receive and review email from Riley confirming three week extension from 03/31. | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 03/31/2020 | Receive and review email from Riley asking if I will draft consent order. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/31/2020 | Email to Riley attaching stipulation. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 03/31/2020 | Receive and review email from Riley confirming I could file stipulation. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 04/02/2020 | Receive and review email from Haar attaching offer of judgment | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 04/02/2020 | Receive and review order approving stipulation to extend deadlines filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 04/04/2020 | Email to client with stipulation, order, and settlement offer | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 04/04/2020 | Conference with BF regarding offer of judgment. | CS 415.00 | 0.20 | 83.00 | 0.00 |
| 04/06/2020 | Call with client regarding offer of judgment. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 04/07/2020 | Receive and review proceeding memo regarding hearing canceled and rescheduled. | CS 415.00 | 0.10 | 41.50 | 0.00 |

| Date | Description | | | | | |
|---|---|---|---|---|---|---|
| 04/09/2020 | Receive and review email from BF asking Riley if his client consents to amended complaint. | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 04/09/2020 | Receive and review email from Riley regarding TMS not consenting to complaint | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 04/09/2020 | Receive and review email from BF with response to Riley regarding amending complaint. | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 04/09/2020 | Conference with BF regarding TMS not consenting to amending complaint. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 04/09/2020 | Receive and review email from Riley regarding settlement. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 04/10/2020 | Edit brief regarding motion to amend | CS | 415.00 | 0.40 | 166.00 | 0.00 |
| 04/13/2020 | Receive, review, and respond to email from Trip regarding the 7k offer of judgment, the Andrews decision, and the impact of Rule 68 on attorney's fees | BF | 350.00 | 0.60 | 210.00 | 0.00 |
| 04/13/2020 | Receive and review email from Riley regarding OOJ | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 04/14/2020 | Receive and review entry of appearance of BF filed on the docket | ASW | 150.00 | 0.10 | 15.00 | -15.00 |
| 04/14/2020 | Email to Riley regarding motion to amend and pending motions | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 04/14/2020 | Receive and review email from Riley regarding getting back to me on staying pending motions | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 04/14/2020 | Receive, review, and respond to email from Riley regarding pending motions | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 04/14/2020 | Receive, review, and respond to email from Riley asking for clarification on staying pending motions. | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 04/14/2020 | Receive and review email from Riley confirming that he agrees to postponing briefing schedules. | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 04/14/2020 | Receive and review order setting status conference filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 04/14/2020 | Receive and review email from BF to Riley regarding motion to amend and pending motions | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 04/14/2020 | Receive and review email from Riley regarding getting back to BF on staying pending motions | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 04/14/2020 | Receive and review email from Riley to BF regarding pending motions | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 04/14/2020 | Receive and review email from BF to Riley regarding how to proceed with pending motions | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 04/14/2020 | Receive and review email from Riley to BF asking for clarification on staying pending motions. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 04/14/2020 | Receive and review email from BF to Riley regarding filing stipulation concerning postponing briefing schedules in pending motions | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 04/14/2020 | Receive and review email from Riley to BF confirming that he agrees to postponing briefing schedules won pending motions until after 05/20 conference | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 04/14/2020 | Receive and review email from Riley with edit to stipulation | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 04/14/2020 | Receive and review email from Riley confirming his consent to file stipulation. | CS | 415.00 | 0.10 | 41.50 | 0.00 |

Case 5:19-ap-00116-MJC   Doc 128-1   Filed 12/08/22   Entered 12/08/22 22:57:14   Desc Exhibit A1 - First Bill Agreed Portion   Page 7 of 17

Appx111

| Date | Description | | | | | |
|---|---|---|---|---|---|---|
| 04/15/2020 | Receive and review order approving stipulation filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 04/17/2020 | Email to client entry of appearance, motion to amend complaint, brief in support, order, stipulation for stay, and order approving stipulation filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 04/18/2020 | Receive and review BNC certificate of notice filed on the docket | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 04/21/2020 | Receive and review BNC certificate of notice. | ASW | 150.00 | 0.10 | 15.00 | -15.00 |
| 05/19/2020 | Receive and review withdrawal of appearance of K. Wesley Mishoe filed on the docket | ASW | 150.00 | 0.10 | 15.00 | -15.00 |
| 05/19/2020 | File CS entry of appearance for hearing | ASW | 150.00 | 0.10 | 15.00 | 0.00 |
| 05/19/2020 | Receive and review withdrawal of appearance of Wesley Mishoe filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 05/19/2020 | Prepare for tomorrow's hearing | CS | 415.00 | 1.00 | 415.00 | 0.00 |
| 05/20/2020 | Redact exhibits and file amended complaint | ASW | 150.00 | 0.10 | 15.00 | 0.00 |
| 05/20/2020 | Attend hearing | CS | 415.00 | 2.10 | 871.50 | 0.00 |
| 05/20/2020 | Receive and review order granting motion to file amended pleading, dismissing motion to dismiss, and staying discovery | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 05/20/2020 | Receive and review proceeding memo regarding hearing filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 05/24/2020 | Email to client with withdrawal of appearance, order, and second amended complaint filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 06/03/2020 | Review motion to dismiss and brief in support. Read part of Bernstein. Email to BF with theories. | CS | 415.00 | 0.40 | 166.00 | 0.00 |
| 06/04/2020 | Conference with BF regarding arguments for brief. | CS | 415.00 | 0.30 | 124.50 | 0.00 |
| 06/04/2020 | Edits to brief opposing MTD. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 06/05/2020 | Receive and review Order regarding brief due | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 06/05/2020 | Edit brief | CS | 415.00 | 1.00 | 415.00 | 0.00 |
| 07/02/2020 | Receive and review phone message from client regarding update on his case. Call to client. No answer, email to client regarding the same | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 07/16/2020 | Receive, review, and respond to email from Haar requesting extension | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 07/16/2020 | Receive and review email from Haar saying he will get proposed documents to me in the morning | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 07/17/2020 | Receive, review, and respond to email from Haar attaching proposed motion | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 07/17/2020 | Receive and review email from Haar confirming proposed order was acceptable and filing the same | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 07/17/2020 | Receive and review motion to extend time to file reply brief filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 07/20/2020 | Receive and review order granting motion to extend time to file reply brief filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 07/31/2020 | Receive and review brief in support of motion to dismiss filed on the docket. | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 08/02/2020 | Email to client with brief filed in his case. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 08/26/2020 | File notice of telephonic appearance on the docket | ASW | 150.00 | 0.10 | 15.00 | 0.00 |

| Date | Description | | | | |
|---|---|---|---|---|---|
| 08/26/2020 | Receive and review notice of appearance of Matthew Haar filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 08/27/2020 | Attend hearing | CS 415.00 | 3.00 | 1,245.00 | 0.00 |
| 08/27/2020 | Receive and review proceeding memo for hearing on motion to dismiss filed on the docket | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 08/29/2020 | Email to counsel regarding Request for Information | CS 415.00 | 0.20 | 83.00 | 0.00 |
| 08/31/2020 | Receive and review email from Haar regarding what information I am looking for | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 08/31/2020 | Receive and review email from Hanyon regarding not being able to accept RFI's | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 08/31/2020 | Email to Haar & Hanyon regarding preserving my client's rights under Regulation X and an address for an RFI | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/01/2020 | Review file. Call to client. Could not leave message. Text to client | CS 415.00 | 0.10 | 41.50 | -41.50 |
| 09/01/2020 | Call from client. Gave him an update regarding oral argument and when we might expect an opinion. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/01/2020 | Receive and review email from Haar regarding address for RFI | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/01/2020 | Email to Haar regarding address for RFI | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/01/2020 | Receive and review email from Haar regarding address for RFI. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/02/2020 | Email to Haar regarding confirmation that address in previous email is address to be used for Regulation X | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/02/2020 | Receive and review email from Haar confirming address for RFI and requesting a copy | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/03/2020 | Email copy of RFI to Haar and Riley | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/08/2020 | Receive and review email from Haar attaching letter concerning my RFI of September 3 | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/15/2020 | Receive and review email from Haar attaching letter and payoff statement | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/16/2020 | Email to Haar regarding payoff statement and regarding future requests | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/16/2020 | Receive and review email from Haar regarding future requests and outstanding information | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/24/2020 | Receive and review email from Riley regarding harassment | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/24/2020 | Email to Riley regarding his previous email and reasoning for multiple RFI's. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/24/2020 | Receive and review email from Riley regarding explanation of multiple RFI letters | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/24/2020 | Email to Haar regarding sending letter tomorrow | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/26/2020 | Email to Riley & Haar with second RFI | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/30/2020 | Receive and review email from Haar acknowledging RFI letter of 9/25 | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 09/30/2020 | Receive and review email from Riley acknowledging Haar's previous email with acknowledgement letter. | CS 415.00 | 0.10 | 41.50 | 0.00 |
| 10/26/2020 | Receive and review email from Haar attaching letter in response to 9/25 letter | CS 415.00 | 0.10 | 41.50 | 0.00 |

| Date | Description | | | | | |
|---|---|---|---|---|---|---|
| 10/28/2020 | Receive and review opinion of the court filed on the docket | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 11/12/2020 | Email to client with opinion, judgment, and third amended complaint filed in his case | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 11/13/2020 | Phone call with Haar. They are going to be filing an answer. Discussed outstanding discovery | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 12/04/2020 | Email to client with Defendant's Answer to third amended complaint | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/15/2020 | Review discovery responses | BF | 350.00 | 0.30 | 105.00 | 0.00 |
| 12/22/2020 | Email to Haar regarding discovery conference | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 12/22/2020 | Receive and review email from BF to Haar regarding discovery conference | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/04/2021 | Review discovery in advance of tomorrow's discovery conference | BF | 350.00 | 1.00 | 350.00 | 0.00 |
| 01/05/2021 | Prep for today's discovery conference | BF | 350.00 | 0.50 | 175.00 | 0.00 |
| 01/05/2021 | Discovery conference with opposing counsel. | BF | 350.00 | 0.60 | 210.00 | 0.00 |
| 01/05/2021 | Draft discovery letter | BF | 350.00 | 1.20 | 420.00 | 0.00 |
| 01/12/2021 | Continue drafting letter to Haar | BF | 350.00 | 0.90 | 315.00 | 0.00 |
| 01/12/2021 | Draft protective order | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 02/16/2021 | Review file. Draft email to opposing counsel regarding response. | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 02/17/2021 | Receive and review email from Haar | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 02/17/2021 | Phone call to Haar. No answer. Sent an email | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 02/17/2021 | Call with Haar regarding response. | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 02/22/2021 | Draft email to opposing counsel following up on the discovery responses | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 02/22/2021 | Receive, review, and respond to email from opposing counsel regarding response. | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 02/24/2021 | Receive, review, and respond to email from opposing counsel regarding discovery issues | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 03/01/2021 | Draft email to Haar | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 03/02/2021 | Review alternative theories for Request for Information | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 03/04/2021 | Receive and review scheduling order | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 03/05/2021 | Receive, review, and respond to letter from Haar | BF | 350.00 | 1.90 | 665.00 | 0.00 |
| 03/08/2021 | Receive, review, and respond to email from Haar regarding scheduling a call for us to discuss the protective order | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 03/08/2021 | Begin drafting motion to compel. | BF | 350.00 | 1.20 | 420.00 | 0.00 |
| 03/11/2021 | Prepare for phone call with Haar | BF | 350.00 | 0.50 | 175.00 | 0.00 |
| 03/11/2021 | Phone call with Haar regarding the protective order. | BF | 350.00 | 0.50 | 175.00 | 0.00 |
| 03/11/2021 | Draft modified protective order to send to Haar | BF | 350.00 | 0.70 | 245.00 | 0.00 |
| 03/12/2021 | Finalize protective order redline to send to opposing counsel | BF | 350.00 | 0.20 | 70.00 | 0.00 |

| | | | | | |
|---|---|---|---|---|---|
| 03/12/2021 | Draft email to opposing counsel regarding protective order issue, and request concurrence with modifying the scheduling order | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 03/12/2021 | Conference with BF regarding motion to compel | CS | 415.00 | 0.30 | 124.50 | 0.00 |
| 03/24/2021 | Begin drafting motion to modify scheduling order. | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 03/24/2021 | Phone call with Haar regarding response and modifying sheduling order. | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 03/25/2021 | Phone call with opposing counsel regarding the discovery issues. | BF | 350.00 | 0.30 | 105.00 | 0.00 |
| 03/29/2021 | Receive, review, and respond to email from opposing counsel regarding my proposed stipulation to extend the discovery deadline | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 03/31/2021 | Phone call to opposing counsel. No answer. Draft email to opposing counsel regarding stipulation and the need to file the motion. | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 04/05/2021 | Receive and review letter from Haar | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 04/08/2021 | Draft motion to extend deadlines | BF | 350.00 | 0.50 | 175.00 | 0.00 |
| 04/12/2021 | Draft email to opposing counsel regarding motion | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 04/12/2021 | Review file. | BF | 350.00 | 0.10 | 35.00 | -35.00 |
| 04/15/2021 | Receive and review email from opposing counsel with proposed changes to the joint motion | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 04/15/2021 | Modify joint motion. | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 04/15/2021 | Draft email to opposing counsel | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 04/15/2021 | Electronically file joint motion | BF | 350.00 | 0.10 | 35.00 | -35.00 |
| 04/17/2021 | Email to client attaching motion to extend deadlines | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 04/21/2021 | Draft email to opposing counsel regarding protective order | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 05/03/2021 | Email to client with order filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 05/05/2021 | Receive and review email from opposing counsel regarding the protective order | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 05/05/2021 | Phone call with Haar regarding modifications to the protective order | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 05/05/2021 | Modify protective order | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 05/05/2021 | Draft email to opposing counsel regarding the protective order | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 05/11/2021 | Draft email to opposing counsel regarding settlement | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 05/20/2021 | Draft email to opposing counsel regarding inexplicable delay in the protective order process | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 05/24/2021 | Finalize protective order. Draft email to opposing counsel asking for his consent to file the protective order | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 05/24/2021 | Receive and review email from opposing counsel approving the final version of the protective order | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 05/24/2021 | Electronically file protective order | BF | 350.00 | 0.10 | 35.00 | -35.00 |
| 05/25/2021 | Draft email to opposing counsel regarding motion to compel and if TMS will be supplementing its discovery responses | BF | 350.00 | 0.60 | 210.00 | 0.00 |

| Date | Description | | Rate | Hours | Amount | Adjustment |
|------|-------------|---|------|-------|--------|------------|
| 05/25/2021 | Edit Motion to Compel | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 05/26/2021 | Phone call with Haar and notes | BF | 350.00 | 0.30 | 105.00 | 0.00 |
| 05/26/2021 | Draft email to opposing counsel summarizing our conversation | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 06/21/2021 | Receive and review email from Haar attaching letter acknowledging letter of 06/17/21 | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 06/29/2021 | Receive and review motion to compel discovery filed on the docket | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 07/16/2021 | Email to client with answer to defendants opposition to motion to compel filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 07/26/2021 | Review brief opposing motion to compel | BF | 350.00 | 0.30 | 105.00 | 0.00 |
| 07/28/2021 | Receive and review order continuing hearing filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 08/02/2021 | Draft email to opposing counsel following up on my email from 7/27 | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 08/02/2021 | Conference with BF regarding brief | CS | 415.00 | 0.70 | 290.50 | 0.00 |
| 08/02/2021 | Research; Review Gravel v. PHH Mortgage | CS | 415.00 | 0.30 | 124.50 | 0.00 |
| 08/03/2021 | Receive and review motion to continue filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 08/05/2021 | Receive and review email from opposing counsel regarding TMS not having a bankruptcy policy | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 08/05/2021 | Modify brief in light of Defendant's counsel's statement | BF | 350.00 | 0.30 | 105.00 | 0.00 |
| 08/05/2021 | Draft motion to extend deadline | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 08/05/2021 | Conference with CS regarding strategy | BF | 350.00 | 0.20 | 70.00 | -70.00 |
| 08/05/2021 | Conference with BF regarding strategy | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 08/05/2021 | Work on proposed response to email from opposing counsel | CS | 415.00 | 0.40 | 166.00 | 0.00 |
| 08/05/2021 | Receive and review order granting motion to continue hearing filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 08/08/2021 | Email to client with motion to continue, order continuing hearing, and motion for extension filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 08/13/2021 | Email to client with reply brief regarding motion to compel filed on the docket. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 08/17/2021 | Receive and review order approving the motion to extend time | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 08/23/2021 | Email to client with order granting motion to extend time for reply brief filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 08/24/2021 | Prepare binder for hearing | ASW | 150.00 | 1.00 | 150.00 | 0.00 |
| 08/24/2021 | Receive, review, and respond to email from Ratchford regarding informal conference ahead of upcoming hearing | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 08/24/2021 | Review documentation in preparation for hearing | CS | 415.00 | 0.40 | 166.00 | 0.00 |
| 08/24/2021 | Receive and review email from Haar regarding availability for conference tomorrow | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 08/24/2021 | Receive and review email from Ratchford regarding telephonic conference tomorrow | CS | 415.00 | 0.10 | 41.50 | -41.50 |

| Date | Description | | | | | |
|---|---|---|---|---|---|---|
| 08/24/2021 | Receive and review order setting status conference filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 08/24/2021 | Receive and review email from Haar confirming status conference | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 08/25/2021 | Review file in preparation for court call. Call with court. | CS | 415.00 | 0.50 | 207.50 | 0.00 |
| 08/25/2021 | Receive and review remote hearing registration confirmation | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/08/2021 | Review order regarding motion to compel discovery. | CS | 415.00 | 0.30 | 124.50 | 0.00 |
| 09/11/2021 | Email to client with order on motion to compel discovery | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/28/2021 | Receive and review email from Haar regarding attachment size. | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 09/28/2021 | Receive and review email from Haar attaching supplemental discovery | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/28/2021 | Receive and review email from litigation support regarding files | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 09/29/2021 | Receive and review email from IT attaching secure document | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/30/2021 | Receive and review supplemental discovery responses | BF | 350.00 | 1.40 | 490.00 | 0.00 |
| 10/05/2021 | Draft followup email to Haar | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 10/15/2021 | Analyze discovery response with BF and chart out deposition strategy and future discovery strategy. | CS | 415.00 | 2.40 | 996.00 | 0.00 |
| 10/18/2021 | Receive and review email from Haar attaching discovery requests and dep notice | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 10/19/2021 | Conference with CS regarding old orders | BF | 350.00 | 0.70 | 245.00 | -245.00 |
| 10/19/2021 | Conference with BF regarding old orders | CS | 415.00 | 0.60 | 249.00 | -249.00 |
| 10/20/2021 | Conference with opposing counsel regarding discovery issues. | BF | 350.00 | 0.50 | 175.00 | 0.00 |
| 10/21/2021 | Conference with BF regarding discovery responses | CS | 415.00 | 0.30 | 124.50 | 0.00 |
| 10/21/2021 | Conference with BF regarding motion to extend deadline. | CS | 415.00 | 0.30 | 124.50 | 0.00 |
| 10/25/2021 | Draft email to Haar regarding the outstanding discovery issues | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 10/26/2021 | Receive, review, and respond to email from opposing counsel regarding discovery proposal and extension | BF | 350.00 | 0.40 | 140.00 | 0.00 |
| 10/27/2021 | Phone call to Haar to follow up on my email. No answer. Left a message. | BF | 350.00 | 0.10 | 35.00 | -35.00 |
| 10/27/2021 | Draft motion to extend deadlines | BF | 350.00 | 1.60 | 560.00 | 0.00 |
| 10/27/2021 | Phone call with opposing counsel. They will not agree to extend any deadlines | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 10/27/2021 | Draft deposition notices for the four individual witnesses | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 10/27/2021 | Edit motion to compel with BF. | CS | 415.00 | 0.30 | 124.50 | 0.00 |
| 10/28/2021 | Exercise billing judgment | ASW | 150.00 | 1.00 | 150.00 | -150.00 |
| 10/28/2021 | Draft corporate designee deposition notice | BF | 350.00 | 1.80 | 630.00 | 0.00 |
| 10/28/2021 | Draft brief in support of motion to extend. | BF | 350.00 | 2.20 | 770.00 | 0.00 |

Case 5:19-ap-00116-MJC   Doc 128-1   Filed 12/08/22   Entered 12/08/22 22:57:14   Desc Exhibit A1 - First Bill Agreed Portion   Page 13 of 17

Appx117

| Date | Description | | | | | |
|---|---|---|---|---|---|---|
| 10/29/2021 | Exercise billing judgment | ASW | 150.00 | 1.40 | 210.00 | -210.00 |
| 10/29/2021 | Email to client attaching motion to enlarge deadlines filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 11/01/2021 | Review draft responses. Review file for postage receipts. Review endicia app and online account. Call to endicia | ASW | 150.00 | 0.60 | 90.00 | -90.00 |
| 11/02/2021 | Review file regarding discovery | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 11/03/2021 | Research for documents requested in discovery | CS | 415.00 | 0.40 | 166.00 | 0.00 |
| 11/03/2021 | Call with client regarding discovery | CS | 415.00 | 0.30 | 124.50 | 0.00 |
| 11/03/2021 | Update discovery responses | CS | 415.00 | 0.30 | 124.50 | 0.00 |
| 11/03/2021 | Email to ASW and BF regarding discovery responses. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 11/04/2021 | Call endicia regarding postage receipts | ASW | 150.00 | 0.10 | 15.00 | 0.00 |
| 11/04/2021 | Review discovery responses. Prepare documentation for discovery responses | ASW | 150.00 | 0.50 | 75.00 | 0.00 |
| 11/08/2021 | Draft email to opposing counsel regarding discovery | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 11/08/2021 | Review bill. | CS | 415.00 | 0.20 | 83.00 | -83.00 |
| 11/09/2021 | Prep responses for client signature. Email to CS regarding the same | ASW | 150.00 | 0.20 | 30.00 | 0.00 |
| 11/11/2021 | Review discovery. Email to CS | ASW | 150.00 | 0.10 | 15.00 | 0.00 |
| 11/11/2021 | Receive and review email from Haar. He is speaking to his client on Friday and then will get back to me | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 11/11/2021 | Call to client regarding discovery. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 11/15/2021 | Draft email to opposing counsel following up on his discussion with his client. | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 11/15/2021 | Email to client with brief in support of motion to extend deadlines and order regarding the same | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 11/16/2021 | Receive, review, and respond to email from opposing counsel regarding discovery issues | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 11/18/2021 | Draft stipulation | BF | 350.00 | 0.60 | 210.00 | 0.00 |
| 11/18/2021 | Phone call with client to advise him that the depositions have been canceled for next week | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 11/18/2021 | Draft combined discovery set 3 | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 11/18/2021 | Review and edit discovery stipulation | CS | 415.00 | 0.50 | 207.50 | 0.00 |
| 11/25/2021 | Email to client attaching stipulation regarding discovery | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 11/30/2021 | Email to client attaching notice setting hearing (2). | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/07/2021 | Attend hearing on stipulation regarding discovery. Court will refer the matter to a mediator immediately | BF | 350.00 | 1.30 | 455.00 | 0.00 |
| 12/07/2021 | Receive and review proceeding hearing memo regarding stipulation concerning discovery filed on the docket | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 12/13/2021 | Email to client with order appointing mediator filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/15/2021 | Receive and review email from Haar regarding handling mediation | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/15/2021 | Conference with client regarding date for mediation | CS | 415.00 | 0.10 | 41.50 | 0.00 |

| Date | Description | | | | | |
|---|---|---|---|---|---|---|
| 12/15/2021 | Email to Wren regarding mediation | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/15/2021 | Receive and review email from Haar regarding mediation date | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/20/2021 | Receive and review email from Haar regarding proposed mediation date | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/21/2021 | Receive and review email from Wren regarding the dates being fine and filing a motion | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/21/2021 | Receive and review email from Haar regarding acceptable date and preparing a motion. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/21/2021 | Receive and review email from Haar attaching RFI acknowledgement letter | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/21/2021 | Receive and review email from Haar regarding dates for mediation | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/29/2021 | Email to Wren & Haar regarding zoom and dates for mediation | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/29/2021 | Receive and review auto reply from Haar regarding out of office | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 12/30/2021 | Receive and review email from Wren regarding setting up mediation | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/30/2021 | Receive and review email from Haar regarding preparing draft motion | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/04/2022 | Receive, review, and respond to email from Haar attaching joint motion on mediation. | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 01/04/2022 | Receive and review email from Haar attaching new draft motion | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/04/2022 | Receive and review email from BF regarding discovery deadline | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 01/04/2022 | Receive and review email from BF regarding TMS request for continuance | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 01/04/2022 | Email to Haar regarding his draft | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/04/2022 | Receive, review, and respond to email from Haar attaching updated draft motion | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/04/2022 | Receive and review email from Haar regarding filing after hearing from mediator | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/05/2022 | Receive, review, and respond to email from Wren confirming mediation | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/05/2022 | Receive and review email from Haar confirming mediation time | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 01/05/2022 | Receive and review unopposed motion regarding mediation filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/05/2022 | Receive and review email from Haar confirming motion on mediation was filed and attaching the same | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/07/2022 | Call to client. No answer, leave message | ASW | 150.00 | 0.10 | 15.00 | -15.00 |
| 01/07/2022 | Email to client attaching consent to mediation motion and regarding mediation date | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/10/2022 | Receive and review order concerning mediation filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/10/2022 | Receive and review email from Haar confirming order regarding mediation was granted | CS | 415.00 | 0.10 | 41.50 | 0.00 |

| Date | Description | | | | | |
|---|---|---|---|---|---|---|
| 01/11/2022 | Call to client. No answer, leave message | ASW | 150.00 | 0.10 | 15.00 | 0.00 |
| 01/13/2022 | Receive and review email from client confirming receipt of mediation information | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 01/30/2022 | Email to client regarding mediation and attaching order regarding mediation | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 02/02/2022 | Receive and review email from CS to Haar. Analyze to determine if this is information which is needed for the mediation memo | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 02/02/2022 | Begin drafting mediation memo | BF | 350.00 | 0.30 | 105.00 | 0.00 |
| 02/04/2022 | Finalize mediation memo | BF | 350.00 | 0.40 | 140.00 | 0.00 |
| 02/09/2022 | Email to Haar attaching part of a draft Motion for Summary Judgment. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 02/09/2022 | Receive and review email from Haar regarding following up with his client regarding response | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 02/10/2022 | Email to Wren attaching mediation memo. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 02/10/2022 | Work on mediation memo with BF | CS | 415.00 | 0.30 | 124.50 | 0.00 |
| 02/15/2022 | Receive and review email from Haar regarding late start. Call to Haar. No answer, leave message. Email to Haar regarding the same | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 02/15/2022 | Receive, review, and respond to email from Haar regarding late start | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 02/15/2022 | Return call to Matt Haar regarding mediation. | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 02/15/2022 | Receive, review, and respond to to email from Wren regarding mediation schedule | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 02/15/2022 | Receive, review, and respond to email from Haar regarding mediation call and availability | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 02/15/2022 | Receive and review email from Haar regarding mediation start time | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 02/16/2022 | Receive and review email from Wren regarding mediation schedule | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 02/16/2022 | Receive and review email from Haar regarding proceeding with mediation | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 02/16/2022 | Meeting with client in preparation for mediation | CS | 415.00 | 0.40 | 166.00 | 0.00 |
| 02/17/2022 | Receive and review email from client attaching mortgage statement | ASW | 150.00 | 0.10 | 15.00 | 0.00 |
| 02/17/2022 | Meet with client ahead of mediation | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 02/17/2022 | Attend mediation via zoom | CS | 415.00 | 2.20 | 913.00 | 0.00 |
| 02/17/2022 | Conference with BF regarding mediation | CS | 415.00 | 1.30 | 539.50 | 0.00 |
| 02/17/2022 | Receive and review email with client's mortgage statement | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 02/17/2022 | Receive and review email from Wren regarding zoom not working | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 02/17/2022 | Receive, review, and respond to email from Haar regarding dial-in for mediation | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 02/17/2022 | Receive and review email from Haar asking after zoom info | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 03/02/2022 | Email to opposing counsel regarding depositions | BF | 350.00 | 0.20 | 70.00 | 0.00 |

| Date | Description | | | | | |
|------|-------------|---|---|---|---|---|
| 03/02/2022 | Receive and review mediator report | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 03/02/2022 | Receive, review, and respond to email from opposing counsel regarding depositions | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 03/02/2022 | Receive and review email from Wren attaching report of mediator that was filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 03/02/2022 | Receive and review email from Haar regarding mediation report | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 03/08/2022 | Receive and review email from Haar regarding working on settlement offer | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 03/11/2022 | Email to BF regarding deps | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 03/14/2022 | Email to client with report of mediator filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 03/14/2022 | Receive and review email from Haar with settelement offer | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 03/15/2022 | Conference with CS regarding settlement | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 03/15/2022 | Draft offer of judgment for Defendant to tender | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 03/16/2022 | Receive, review, and respond to email from Carlo regarding settlement offer | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 03/16/2022 | Draft email to opposing counsel regarding offer of judgment | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 03/16/2022 | Receive and review signed offer of judgment from Haar | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 03/16/2022 | Call to client. Begin email to client regarding offer. Call from client. He will accept offer | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 03/16/2022 | Receive and review email from BF to Haar regarding proposal and draft offer of judgment | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 03/18/2022 | Receive and review offer of judgment. Draft email to CS with proposed plan | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 03/24/2022 | Exercise billing judgment | CS | 415.00 | 0.50 | 207.50 | -207.50 |
| | | | *Sub-total Fees:* | | 40,825.00 | -4,067.00 |
| | | | *Net Fees After Discount:* | | **36,758.00** | |

## Expenses

| Date | Description | Price | Units | Amount | Discount |
|------|-------------|-------|-------|--------|----------|
| 05/28/2020 | CourtCall Fee | 54.00 | 1.00 | 54.00 | 0.00 |
| 08/27/2020 | CourtCall | 69.75 | 1.00 | 69.75 | 0.00 |
| 09/03/2020 | Postage for RFI to the Money Source. | 1.00 | 7.09 | 7.09 | 0.00 |
| 09/25/2020 | Postage for second RFI to money source. | 1.00 | 7.09 | 7.09 | 0.00 |
| | | | *Sub-total Expenses:* | 137.93 | 0.00 |

## Total

| | |
|---|---|
| Net Fees After Discount: | 36,758.00 |
| Net Expenses After Discount: | 137.93 |
| *Total:* | **36,895.93** |

Case 5:19-ap-00116-MJC   Doc 128-1   Filed 12/08/22   Entered 12/08/22 2̶2̶ ̶5̶7̶ ̶4̶4̶
Desc Exhibit A1 - First Bill Agreed Portion   Page 17 of 17

**Appx121**

**Sabatini Freeman, LLC**

216 N. Blakely St.
Dunmore, PA 18512
Statement as of: 3/24/2022

**Clarence Lewis**
**312 Church St.**
**Taylor, PA 18517**

Our file number: 3250-002

## Rate Summary

| Professional | Gross | | | Discount | | | Net |
|---|---|---|---|---|---|---|---|
| Brett Freeman | 50.30 hours at $350.00/hr | | $17,605.00 | 4.40 hours | | ($1,540.00) | $16,065.00 |
| Carlo Sabatini | 11.10 hours at $415.00/hr | | $4,606.50 | 3.00 hours | | ($1,245.00) | $3,361.50 |
| Ashley Werner | 1.90 hours at $150.00/hr | | $285.00 | 1.90 hours | | ($285.00) | $0.00 |
| Total: | 63.30 hours (before discount) | | $22,496.50 | 9.30 hours | | ($3,070.00) | $19,426.50 |

## Itemized Listing of Services

| Date | Description | Rate | | Hours | Amount | Discount |
|---|---|---|---|---|---|---|
| 10/02/2019 | Receive and review email from Spivack regarding calling me tomorrow | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 10/03/2019 | Prepare for phone call with Spivack | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 11/18/2019 | Review RESPA complaint for accuracy | ASW | 150.00 | 0.30 | 45.00 | -45.00 |
| 11/18/2019 | Prepare RESPA Retainer Agreement | ASW | 150.00 | 0.10 | 15.00 | -15.00 |
| 11/18/2019 | Conference with CS regarding TILA issue | BF | 350.00 | 0.40 | 140.00 | 0.00 |
| 11/18/2019 | Review retainer and amendment. Call to client. No answer, mailbox full. Email to client with retainer agreement | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 11/23/2019 | Call to client regarding representation agreement | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 11/25/2019 | Email to client with retainer agreement. | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 11/25/2019 | Receive and review email from client concurring with representation agreement. | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 01/17/2020 | Work on discovery | CS | 415.00 | 1.20 | 498.00 | 0.00 |
| 01/20/2020 | Draft second discovery request | CS | 415.00 | 1.50 | 622.50 | 0.00 |
| 01/23/2020 | Review and edit amended complaint. | CS | 415.00 | 1.00 | 415.00 | 0.00 |
| 01/23/2020 | File amended complaint | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 01/27/2020 | Conference with CS regarding offer of judgment. | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 01/27/2020 | Review file. | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 01/27/2020 | Prepare redline of amended complaint per order filed on the docket | CS | 415.00 | 0.50 | 207.50 | -207.50 |
| 02/25/2020 | Conference with CS regarding whether Rule 11 motion for asserting that RESPA does not require them to provide the name of the owner of the loan. | BF | 350.00 | 0.20 | 70.00 | -70.00 |

| Date | Description | | | | | |
|------|-------------|--|--|--|--|--|
| 02/26/2020 | Receive and review email from BF regarding Rule 11 Motion. | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 02/26/2020 | Email to BF regarding designated address for RFI | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 03/02/2020 | Receive and review email from Mishoe attaching Motion to Stay Discovery and corresponding documents | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 03/11/2020 | Begin drafting brief | BF | 350.00 | 4.60 | 1,610.00 | 0.00 |
| 03/12/2020 | Continue drafting brief | BF | 350.00 | 3.90 | 1,365.00 | 0.00 |
| 03/12/2020 | Receive and review email from BF regarding cases cited. Conference with BF regarding the same. | CS | 415.00 | 0.40 | 166.00 | 0.00 |
| 03/12/2020 | Receive, review, and respond to email from BF regarding statutory damages under RESPA. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 03/16/2020 | Receive and review email from BF regarding statutory damages. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 04/04/2020 | Conference with CS regarding offer of judgment. | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 04/09/2020 | Conference with CS regarding TMS not consenting to amending complaint | BF | 350.00 | 0.10 | 35.00 | 0.00 |
| 05/19/2020 | Receive and review Matthew Haar's entry of appearance | ASW | 150.00 | 0.10 | 15.00 | -15.00 |
| 06/04/2020 | Conference with CS regarding arguments for brief. | BF | 350.00 | 0.30 | 105.00 | 0.00 |
| 09/10/2020 | Receive and review email from Bonial & Associates, P.C. advising that they cannot accept an RFI | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 09/24/2020 | Prepare QWR to the Money Source | CS | 415.00 | 0.80 | 332.00 | 0.00 |
| 09/25/2020 | Travel time to post office. In post office. Travel back from post office | ASW | 150.00 | 0.40 | 60.00 | -60.00 |
| 03/01/2021 | Draft request for information | BF | 350.00 | 1.00 | 350.00 | -350.00 |
| 03/04/2021 | Research regarding appropriate remedy when a mortgage company seeks to collect fees without making a 3002.1 disclosure. | BF | 350.00 | 0.90 | 315.00 | 0.00 |
| 03/05/2021 | Continue drafting request for information | BF | 350.00 | 0.40 | 140.00 | -140.00 |
| 03/12/2021 | Conference with CS regarding motion to compel | BF | 350.00 | 0.30 | 105.00 | 0.00 |
| 03/26/2021 | Receive and review file with SMD. Letter to opposing counsel. | BF | 350.00 | 0.10 | 35.00 | -35.00 |
| 04/08/2021 | Draft email to opposing counsel | BF | 350.00 | 1.80 | 630.00 | -630.00 |
| 05/26/2021 | Research regarding consequences for failing to raise issues during the good-faith conference | BF | 350.00 | 0.90 | 315.00 | 0.00 |
| 05/28/2021 | Research for brief | BF | 350.00 | 1.90 | 665.00 | 0.00 |
| 06/01/2021 | Continue researching for brief | BF | 350.00 | 0.40 | 140.00 | 0.00 |
| 06/15/2021 | Draft brief | BF | 350.00 | 2.30 | 805.00 | 0.00 |
| 06/17/2021 | Continue drafting brief | BF | 350.00 | 2.50 | 875.00 | 0.00 |
| 06/23/2021 | Continue drafting brief | BF | 350.00 | 2.20 | 770.00 | 0.00 |
| 07/06/2021 | Continue drafting brief | BF | 350.00 | 2.60 | 910.00 | 0.00 |
| 07/07/2021 | Continue drafting brief | BF | 350.00 | 2.80 | 980.00 | 0.00 |
| 07/08/2021 | Continue drafting brief | BF | 350.00 | 3.30 | 1,155.00 | 0.00 |
| 07/13/2021 | Receive and review response to RFI from Haar | CS | 415.00 | 0.10 | 41.50 | -41.50 |

Case 5:19-ap-00116-MJC   Doc 128-2   Filed 12/08/22   Entered 12/08/22 2?:??:??
Desc Exhibit A2 - First Bill Disputed Portion   Page 2 of 4

Appx123

| Date | Description | | | | | |
|------|-------------|---|---|---|---|---|
| 07/19/2021 | Conference with CS regarding RFI response and next steps | BF | 350.00 | 0.80 | 280.00 | -280.00 |
| 07/19/2021 | Conference with BF regarding RFI response and next steps | CS | 415.00 | 0.80 | 332.00 | -332.00 |
| 07/23/2021 | Conference with BF to work on brief | CS | 415.00 | 2.40 | 996.00 | 0.00 |
| 07/26/2021 | Draft reply brief in support of motion to compel | BF | 350.00 | 5.40 | 1,890.00 | 0.00 |
| 07/27/2021 | Continue drafting brief | BF | 350.00 | 2.50 | 875.00 | 0.00 |
| 08/02/2021 | Finalize brief with CS | BF | 350.00 | 0.80 | 280.00 | 0.00 |
| 08/03/2021 | Conference with CS regarding defendants delay in responding to discovery questions. | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 08/03/2021 | Conference with BF regarding defendants delay in responding to discovery questions. | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 08/05/2021 | Conference with CS regarding strategy | BF | 350.00 | 0.20 | 70.00 | 0.00 |
| 10/15/2021 | Analyze discovery response with CS and chart out deposition strategy and future discovery strategy. | BF | 350.00 | 2.40 | 840.00 | 0.00 |
| 10/21/2021 | Conference with CS regarding discovery responses and strategy moving forward | BF | 350.00 | 0.60 | 210.00 | 0.00 |
| 10/27/2021 | Edit motion to compel with CS. | BF | 350.00 | 0.30 | 105.00 | 0.00 |
| 11/09/2021 | Call to client regarding retainer agreement. No answer, leave message | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 12/16/2021 | Prepare RFI | ASW | 150.00 | 1.00 | 150.00 | -150.00 |
| 12/16/2021 | Review and edit redline RFI. | BF | 350.00 | 0.10 | 35.00 | -35.00 |
| 12/16/2021 | Edit RFI. Email to BF regarding redline RFI | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 12/16/2021 | Email to Haar and Riley attaching RFI | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 01/18/2022 | Receive and review email from Haar attaching response to RFI | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 02/02/2022 | Email to Haar with response to RFI response | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 02/08/2022 | Contniue drafting SJ documents | BF | 350.00 | 0.90 | 315.00 | 0.00 |
| 02/09/2022 | Continue drafting SJ documents regarding liability for the TILA claim | BF | 350.00 | 1.20 | 420.00 | 0.00 |
| 02/09/2022 | Email to Haar asking after outstanding information from RFI | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 02/10/2022 | Work on mediation memo with CS. | BF | 350.00 | 0.30 | 105.00 | 0.00 |
| 02/11/2022 | Receive and review email from Haar with additional RFI response | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 02/17/2022 | Conference with CS regarding mediation | BF | 350.00 | 1.30 | 455.00 | 0.00 |

|  |  |  |  | *Sub-total Fees:* | 22,496.50 | -3,070.00 |
|---|---|---|---|---|---|---|
|  |  |  |  | *Net Fees After Discount:* | **19,426.50** | |

## Expenses

| Date | Description | | Price | Units | Amount | Discount |
|------|-------------|---|-------|-------|--------|----------|
|  |  |  |  | *Sub-total Expenses:* | | |

## Total

|  | Net Fees After Discount: | 19,426.50 |
|---|---|---|

Net Expenses After Discount:    0.00

*Total:*    **19,426.50**

**Sabatini Freeman, LLC**

216 N. Blakely St.
Dunmore, PA 18512
Statement as of: 12/8/2022

**Clarence Lewis**
**312 Church St.**
**Taylor, PA 18517**

Our file number: 3250-002

## Rate Summary

| Professional | Gross | | | Discount | | | Net |
|---|---|---|---|---|---|---|---|
| Brett Freeman | 4.00 hours at $350.00/hr | $1,400.00 | | 0.00 hours | $0.00 | | $1,400.00 |
| Carlo Sabatini | 8.30 hours at $415.00/hr | $3,444.50 | | 0.30 hours | ($124.50) | | $3,320.00 |
| Ashley Werner | 0.10 hours at $150.00/hr | $15.00 | | 0.00 hours | $0.00 | | $15.00 |
| Total: | 12.40 hours (before discount) | $4,859.50 | | 0.30 hours | ($124.50) | | $4,735.00 |

## Itemized Listing of Services

| Date | Description | | Rate | Hours | Amount | Discount |
|---|---|---|---|---|---|---|
| 10/28/2022 | Receive and review order scheduling status conference filed on the docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 10/31/2022 | Receive and review entry of appearance of John Paul Regan filed on docket | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 11/01/2022 | Receive and review notice of status conference. Calendar the same. Create hearing docket and set tasks re preparation for CS and notifying client whether he should attend | ASW | 150.00 | 0.10 | 15.00 | 0.00 |
| 11/03/2022 | Briefing (including analysis of time entries). Amount is conservatively estimated. Date is estimated | BF | 350.00 | 4.00 | 1,400.00 | 0.00 |
| 11/03/2022 | Call to Haar. No answer, leave message | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 11/03/2022 | Email to Haar regarding time to discuss supplemental bill | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 11/03/2022 | Receive and review email from Haar regarding the voicemail I left earlier and letting me know he will call tomorrow. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 11/06/2022 | Email to Haar regarding time to speak | CS | 415.00 | 0.10 | 41.50 | -41.50 |
| 11/06/2022 | Receive and review email from Haar regarding setting a time to speak tomorrow | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 11/07/2022 | Call with Matt concerning supplemental bill. | CS | 415.00 | 0.20 | 83.00 | 0.00 |
| 11/08/2022 | Travel time round trip to status conference | CS | 415.00 | 1.10 | 456.50 | 0.00 |
| 11/08/2022 | Prep for status conference | CS | 415.00 | 0.40 | 166.00 | 0.00 |
| 11/08/2022 | Attend status conference. | CS | 415.00 | 0.30 | 124.50 | 0.00 |
| 11/08/2022 | Receive and review email from Regan with information concerning his client's willingness to agree on the discounted total offered on the second invoice. | CS | 415.00 | 0.10 | 41.50 | 0.00 |

| | | | | | |
|---|---|---|---|---|---|
| 11/08/2022 | Receive and review proceeding memo concerning status conference filed on docket. | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/05/2022 | Call to case administrator to explain status and offer of judgment. No answer, left detailed message | CS | 415.00 | 0.10 | 41.50 | 0.00 |
| 12/08/2022 | Finish brief | CS | 415.00 | 5.30 | 2,199.50 | 0.00 |

|  |  |  |
|---|---|---|
| *Sub-total Fees:* | 4,859.50 | -124.50 |
| *Net Fees After Discount:* | **4,735.00** | |

## Expenses

| *Date* | *Description* | *Price* | *Units* | *Amount* | *Discount* |
|---|---|---|---|---|---|
| 11/08/2022 | Mileage round trip to status conference. | 0.59 | 45.60 | 26.68 | 0.00 |
| | *Sub-total Expenses:* | | | 26.68 | 0.00 |

## Total

| | |
|---|---|
| Net Fees After Discount: | 4,735.00 |
| Net Expenses After Discount: | 26.68 |
| *Total:* | **4,761.68** |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re Clarence Lewis | Bankruptcy No. 5:19-bk-01873-MJC |
| Clarence Lewis,<br>Plaintiff | Chapter 13 |
| v. | Adversary No. 5:19-ap-00116-MJC |
| The Money Source, Inc.,<br>Defendant | |

## PLAINTIFF'S BRIEF IN SUPPORT OF HIS PETITION
## FOR ATTORNEY'S FEES AND COSTS

Introduction and Procedural History

Plaintiff is a Chapter 13 debtor. Defendant is the holder of a mortgage on Plaintiff's residence, and filed in the bankruptcy case a Notice of Postpetition Mortgage Fees, Expenses, and Charges which included over $900.00 in attorney's fees. Plaintiff sent letters to Defendant, asking *inter alia*, for information related to the fees. Defendant refused to adequately respond to the letters, in violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA") and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA").[1] Plaintiff filed this adversary proceeding seeking statutory damages and attorney's fees.

After dispositive motions, discovery, and a mediation, the parties were eventually able to resolve this case through an offer of judgment. Specifically,

---

[1] Defendant ultimately withdrew the Notice of Postpetition Fees. However, such a withdrawal would not moot Plaintiff's requests for information, or otherwise justify Defendant's non-compliance with TILA and RESPA.

1

Document Ref: LPQVR-VPKEO-FE3SV-5DTK6

Plaintiff accepted Defendant's "offer to allow a judgment to be taken against it in satisfaction of all claims by Plaintiff, Clarence Lewis, in the amount of $6,000.00, plus an additional amount for costs and reasonable attorney's fees." (Doc. 127.) Thereafter, the parties attempted to mediate the outstanding costs and attorney's fees. However, the mediations were ultimately unsuccessful. The Court then set a schedule for briefing and argument of a fee application. (Doc. 124.)

<u>Argument</u>

1. *A fully commensurate fee should be awarded.*

TILA and RESPA each require an award of costs and attorney's fees to a successful plaintiff. 15 U.S.C. §1640(a)(3) and 12 U.S.C. § 2605(f). Under TILA, "[a]n award of fees to [the Plaintiff] is mandatory under § 1640(a)(3)." *Bradford v. HSBC Mortg. Corp.*, 859 F. Supp. 2d 783, 789 (E.D. Va. 2012). Likewise, a successful RESPA action "mandates an award of attorney's fees." *In re Nosek*, 2006 WL 2700792, at *4 (Bankr. D. Mass. Sept. 19, 2006). Plaintiff's complaint pursued claims *solely* under TILA, RESPA, and RESPA's implementing regulations. (*See* Docs. 1, 9, 42, and 57.) The acceptance of an offer of judgment is clearly a successful outcome. *See, e.g., Denton v. Pennymac Loan Servs., LLC,* 252 F.Supp.3d 504 (E.D. Va. 2017). Thus, Plaintiff has brought a successful action under these statutes.

"Congress' purpose in adopting fee-shifting provisions was to strengthen the enforcement of selected federal laws by ensuring that private persons seeking to enforce those laws could retain competent counsel." *City of Burlington v. Dague*, 505 U.S. 557, 568 (1992). Fee shifting statutes are designed to combat two issues that

2

Document Ref: LPQVR-VPKEO-FE3SV-5DTK6

would otherwise prevent people from obtaining competent attorneys. "First, many potential plaintiffs lack sufficient resources to hire attorneys." *Id.* Furthermore, "many of the statutes to which Congress attached fee-shifting provisions typically will generate either no damages or only small recoveries; accordingly, plaintiffs bringing cases under these statutes cannot offer attorneys a share of a recovery sufficient to justify a standard contingent-fee arrangement." *Id.* Thus, "[t]he strategy of the fee-shifting provisions is to attract competent counsel to selected federal cases by ensuring that if they prevail, counsel will receive fees commensurable with what they could obtain in other litigation." *Id.* Otherwise, "if federal fee-bearing litigation is less remunerative than private litigation, then the only attorneys who will take such cases will be underemployed lawyers-who likely will be less competent than the successful, busy lawyers who would shun federal fee-bearing litigation-and public interest lawyers . . . ." *Id.* at 568-69.

Additionally, the fee should not be reduced to achieve a result that is proportional to the underlying recovery. "The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011)(emphasis in original). The *Millea* court explained that this policy is especially important for claims where a small financial recovery is expected. *Id.* The availability of a lodestar fee, without regard to considerations of proportionality, assures that "claims of modest cash value can attract competent counsel." *Id.*

3

In determining a fee application, the Court must calculate the lodestar, which is the number of hours reasonably spent working on the case multiplied by a reasonable hourly rate. *See, Interfaith Community Organization v. Honeywell*, 426 F.3d 694, 703 n.5 (3d Cir. 2005). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation . . . ." *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983).

"[T]he degree of the plaintiff's overall success goes to the reasonableness of a fee award under *Hensley v. Eckerhart.* Indeed, the most critical factor in determining the reasonableness of a fee award "is the degree of success obtained." *Farrar v. Hobby,* 506 U.S. 103, 114 (1992)(internal citations and quotations omitted.) Here, Plaintiff has been completely successful, because he recovered the maximum statutory damages available. The accepted offer of judgment provides for payment of $6,000 in statutory damages. That figure is the sum of the $4,000 available under the TILA claim, (*see* 15 U.S.C. § 1640(a)(2)(A)(iv)) and the $2,000 available under the RESPA claim (*see* 12 U.S.C. § 2605(f)(1)(B)). Recovery of the maximum amount of statutory damages available is "a high degree of success" for purposes of the *Farrar* analysis. *Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir. 1995). As a result, the Court should award Plaintiff with the full amount of his requested attorney's fees.

4

2. *Most of the fee issues have been resolved by agreement.*

Although the matter did not resolve at mediation, with the mediator's assistance the parties were able to significantly narrow the issues. First, the parties filed a stipulation in which they agreed on the hourly rates that will be used when calculating any fee award. (Doc. 117 at ¶ 4.)[2] Additionally, the parties have agreed as to the reasonableness of *some* of the time entries. Attached to the above-mentioned stipulation as Exhibit A is a listing of time entries through March 24, 2022. The parties have agreed that all the time-entries highlighted in green will be considered reasonable. On the other hand, the entries that are crossed out in red will not be billable, and the entries that have no formatting applied are still in dispute.

To facilitate review and calculation, Plaintiff has now broken Exhibit A from the stipulation into two parts. Attached to Plaintiff's Petition for Attorney's Fees and Costs ("the Petition") as Exhibit A1 is a bill that contains only the agreed-upon entries – i.e., those entries that were highlighted in green on the original Exhibit A. That bill amounts to $36,758.00 and all of that time is compensable. Attached to the Petition as Exhibit A2 is a bill that contains the rest of the entries from the original Exhibit A. Some of those entries have been discounted, including each entry that

---

[2] Specifically, the parties have agreed to the following hourly rates:

| Professional Name | Hourly Rate |
|---|---|
| Carlo Sabatini | $415.00 |
| Brett Freeman | $350.00 |
| Ashley Werner | $150.00 |

5

Document Ref: LPQVR-VPKEO-FE3SV-5DTK6

had been crossed out in red on the original Exhibit A. Those time entries on Exhibit A2 that do not show a discount remain in dispute.

Furthermore, the parties have agreed that a reasonable fee for the time spent from March 25, 2022 through October 27, 2022 would be $5,732.50. This agreement was orally made on the record during a status conference on November 8, 2022.

The amount that Defendant actively contests is the entire $19,426.50 from the A2 bill. Additionally, Defendant has not yet had an opportunity to challenge the time entries from October 28, 2022 through the present. Those entries are on the bill attached to the Petition as Exhibit B, and amount to $4,761.68. Finally, Plaintiff will seek compensation for the time spent after the filing of this brief, including the preparation of a reply brief, and the attendance at any hearing on the fee application.

3. *The challenged time on Exhibit A2 is compensable.*

Defendant's primary objections to the time entries on Exhibit A2 fall into two categories: time spent briefing and time spent on intra-office conferences. These objections account for about 72%[3] and 12%[4] respectively of the dollar value of the challenged time on Exhibit A2. These objections fail.[5]

---

[3] See page 7.

[4] See footnote 10.

[5] In settlement discussions, Defendant raised other objections as well. For some of those objections, Plaintiff has conceded the time. For the remaining objections, the amount at issue seems small enough that Defendant may decide that it no longer wishes to pursue the objection. Therefore, Plaintiff will refrain from briefing those issues unless and until Defendant actually raises them in opposition.

6

### *Briefing*

By far, Defendant's largest category of challenges is to the time entries associated with researching and drafting various briefs. That time totals 39.7 hours, for which Plaintiff seeks $14,051.00 in fees. That dollar amount represents 72% of the $19,426.50 that Defendant actively contests on the A2 bill.

These time entries are for Plaintiff's drafting of: (1) a brief opposing Defendant's motion to dismiss,[6] (2) a brief in support of a motion to compel discovery,[7] (3) a reply brief in support of the motion to compel,[8] and (4) a brief in support of a draft summary judgment motion.[9] Combined, these briefs equate to over 46 pages of briefing filed on the docket.[10] Thus, at only 39.7 hours spent on these briefs, Plaintiff spent only approximately 0.88 hours per page.

The Third Circuit has evaluated the reasonableness of a fee request for briefing by looking at the amount of time spent per page. Specifically, in *Maldonado v. Houstoun*, 256 F. 3d 181 (3d Cir. 2001), the Third Circuit had to determine how much time to award for an appellate brief. The court observed that the briefing task was not complicated. The brief addressed only a single issue. The appellate attorneys had also represented the party before the district court, and the issue that

---

[6] $2,975.00 of the time entries objected to involve this brief.

[7] $6,300.00 of time.

[8] $4,041.00 of time.

[9] $735.00 of time.

[10] The matter ultimately resolved prior to Plaintiff filing his motion for summary judgment. Though Plaintiff is including that time in the amount of hours spent, he is not including the pages spent on that brief in this page count. Unfinished, draft work does not take as long as refined, filing-ready work.

7

Document Ref: LPQVR-VPKEO-FE3SV-5DTK6

was being briefed had already been researched and briefed by those same attorneys before the district court. *Id.* at 186. Further, the district court had written an opinion setting forth the pertinent law. *Id.* With this experience addressing the issue, the claimant's attorneys had a relatively simple briefing task. The court awarded 120 hours of time for a 41-page brief. *Id.* This award amounts to about three hours per page.

Subsequently, this per-page analysis was also used by the court in *Walton v. Massanari*, 177 F. Supp. 2d 359 (E.D. Pa 2001). There, the court observed that the *Maldonado* court approved three hours per page and determined that the claimant's request for "53.6 hours reported for a 27 page brief, which is approximately 2 hours per page, [was] reasonable." *Id.* at 365.

This approach has also been followed in this district. *See Gryzbowski v. I.C. Sys., Inc.*, 2010 WL 2507516, at *3 (M.D. Pa. May 24, 2010)(Prince, M.J.) *report and recommendation adopted,* 2010 WL 2470853 (M.D. Pa. June 15, 2010)(Vanaskie, J.)("Moreover, in addressing the briefing of dispositive motions, Plaintiff has demonstrated that his hours per page fall within the range of what this court has concluded to be reasonable.").[11] And, in *Styers v. Pennsylvania*, 621 F. Supp. 2d 239, 244 (M.D. Pa. 2008)(Caldwell, J.), the court allowed 48 hours for the preparation of a thirteen-page brief (i.e., 3.6 hours per page) where the issue being litigated was

---

[11] In *Gryzbowski*, the court granted a request of 49 hours for 22 pages of briefing – i.e., 2.2 hours per page. Docket 3:08-cv-01884-TIV at Doc. 36 p. 3 and footnote 1.

"fairly straightforward and did not present any particularly difficult or novel issues of law."

Here, Plaintiff's briefing time was a mere fraction of the time awarded by these other courts.[12] At 0.88 hours, Plaintiff spent less than one-third as much time on each page of briefing as did the *Maldonado* lawyers. There was nothing excessive about this briefing. Plaintiff briefed these issues in an extremely efficient manner and prevailed on the two motions which were filed and relate to these briefs. Thus, because the time spent briefing was reasonable and necessary in pursuing this action, Plaintiff should be awarded all of the time incurred on these briefing tasks.

### *Intra-office Conferences*

Defendant objected to 15 time-entries where Attorneys Carlo Sabatini and Brett Freeman both billed for conferences.[13] These conferences included brainstorming sessions on arguments for briefing, reviewing and editing briefs, emails regarding potential issues with the case, and general strategy sessions. "Conferences between attorneys . . . are necessary, valuable, and often result in greater efficiency and less duplication of effort, thus requiring fewer hours overall." *Disciullo v. D'Amrosio Dodge, Inc.*, 2008 WL 4287319, at \*5 (E.D. Pa. Sept. 18, 2008)(quoting *Apple Corps. Ltd. v. Int'l Debt Collectors Society,* 25 F.Supp.2d 480, 488 (D.N.J.1998))(ellipsis in original, internal quotation marks omitted).

---

[12] Defendant objected to nearly all of the time spent on these briefing tasks, with only a combined handful of hours being left unchallenged.

[13] For those fifteen entries, Plaintiff seeks $2,406.00 in fees, which amounts to 12% of the $19,426.50 that is on Exhibit A2.

9

Document Ref: LPQVR-VPKEO-FE3SV-5DTK6
**Appx136**

Here, the intra-office communications were warranted, and their relative rarity demonstrate the efficiency with which Plaintiff's counsel litigated this matter. This lawsuit has been active for over three years. During that time, there have been over 125 docket entries and multiple mediations, dispositive motions, and discovery battles. Yet, in all that time, counsel for Plaintiffs billed for only about fifteen intra-office conferences, totaling a combined 6.8 hours of time. This amounts to just over two hours of time **per year** on this matter. While Plaintiff could perhaps understand Defendant's argument if it was objecting to dozens or hundreds of hours of time on this basis, it is clear that Plaintiff's attorneys generally handled this matter independently, and conferred amongst themselves only when necessary. A court is permitted to award time for these conferences "on the theory that attorneys must spend at least some of their time conferring with colleagues, particularly their subordinates, to ensure that a case is managed in an effective as well as efficient manner." *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1337 (D.C. Cir. 1982). Here, based on the infrequency of these communications, the Court should allow the requested time.

## CONCLUSION

Plaintiff's request for attorney's fees and costs should be granted in full.

Carlo Sabatini, Bar Number PA 83831
Attorney for Plaintiff
Sabatini Law Firm, LLC
216 N. Blakely St.
Dunmore, PA 18512
Phone (570) 341-9000
Email ecf@bankruptcypa.com

10

Document Ref: LPQVR-VPKEO-FE3SV-5DTK6

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CLARENCE W. LEWIS JR., | : | Adversary Proceeding No. |
|  | : | 5:19-ap-00116 |
|  | : |  |
| Plaintiff, | : | Related Bankruptcy Case No. |
|  | : | 5:19-bk-01873 |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
| THE MONEY SOURCE INC., | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

## DEFENDANT'S BRIEF IN OPPOSITION
## TO PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................1

II.  FACTS AND PROCEDURAL POSTURE......................................................2

III.  ARGUMENT......................................................................................4

  A.  TILA AND RESPA DO NOT MANDATE RECOVERY OF ATTORNEYS' FEES IN THIS MATTER...........................................................................5

  B.  THE COSTS AND FEES REQUESTED ARE UNREASONABLE. ..............9

  C.  ALTERNATIVELY, THE COURT SHOULD AWARD NO MORE THAN A REASONABLE FEE GIVEN PLAINTIFF'S LIMITED RECOVERY..........19

IV.  CONCLUSION .................................................................................20

i

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240 (1975)...................4

*Denton v. Pennymac Loan Servs., LLC*, 252 F.Supp.3d 504 (E.D. Va. 2017)......8, 9

*Grissom v. The Mills Corp.*, 549 F.3d 313 (4th Cir. 2008) ......................................9

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...............................................5

*In re Badyrka*, 2022 WL 4656034 (Bankr. M.D. Pa., Sept. 30, 2022).............passim

*In re Nosek*, 2006 WL 2700792 (Bankr. D.Mass., Sept. 19, 2006).........................8

*In re Pine*, 705 F.2d 936 (7th Cir. 1983) ...............................................11

*In re S.S.*, 271 B.R. 240 (Bankr. D.N.J. 2002)...............................................4

*In re West Chestnut Realty of Haverford, Inc.*, 186 B.R. 612 (Bankr. E.D.Pa. 1995) ................................................................................5

*Marek v. Chesny*, 105 S.Ct. 3012 (1985)...............................................5

*Mirabel v. General Motors Acceptance Corp.*, 576 F.2d 729 (7th Cir. 1978)........11

**FEDERAL STATUTES**

12 U.S.C. § 2602 ...........................................................6

12 U.S.C. § 2605 ...........................................................3

12 U.S.C. § 2605(f)(1) and (3)...........................................................7

15 U.S.C. § 1602 ...........................................................6

15 U.S.C. §§ 1639g, 1640(a)(2)(A) & (a)(3)...........................................................3

15 U.S.C. § 1640(a)(3) ...........................................................6

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ...........................................8

Fed. R. Civ. P. 68 ...........................................................3, 4, 5, 6, 9

ii

Appx140

# I.   **INTRODUCTION**

Resolution of Plaintiff's Petition will likely have a greater impact on general practice before this Court for years to come than on the specific outcome for Defendant The Money Source Inc. ("TMS"). Following an otherwise routine Chapter 13 case, Plaintiff's Counsel, Carlo Sabatini, Esquire ("Sabatini"), has been attempting to run an end around this Court's presumptively reasonable fee ("PFR") for Chapter 13 cases by manufacturing an adversary claim out of what should have been a discovery issue in the related Bankruptcy Case, and what was more accurately described as a dispute about nothing of consequence to Plaintiff. After ginning up claims against TMS, for alleged violations of the Real Estate Settlement Procedures Act ("RESPA"), and the Truth in Lending Act ("TILA"), Sabatini now strives to support his "loss leader" bankruptcy practice by seeking wholly excessive attorneys' fees. Neither this Court's rules, nor the jurisprudence binding this matter, support an award of attorneys' fees or condone Sabatini's conduct, and this Court should act now to dissuade future practitioners from similar opportunistic behavior. TMS respectfully requests that this Court find that Plaintiff's Petition for Attorneys' Fees and Costs (Doc. 128, the "Petition") seeks excessive costs and attorneys' fees, and limit Plaintiff, Clarence W. Lewis Jr.'s ("Lewis") recovery to $6,000.00, as provided in TMS' Offer of Judgment (Doc. 127-1).

1

## II.    FACTS AND PROCEDURAL POSTURE

On April 30, 2019, Lewis filed a Voluntary Petition for Individuals Filing for Bankruptcy.  (Doc. 1, No. 5:19-bk-01873).  On July 24, 2019, the Court confirmed Lewis' First Amended Chapter 13 Plan (the "Amended Plan").  (Docs. 34 & 38, No. 5:19-bk-01873).  On July 3, 2019, before the Court approved the Amended Plan, TMS filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges (the "Notice").  (See Doc. 9-1 at 1, 3; Doc. 41, No. 5:19-BK-01873).  The Notice listed attorneys' fees incurred by TMS' outside counsel reviewing the impact of the Amended Plan on Lewis' obligations under a loan and mortgage that Lewis executed in TMS' favor. (See Doc. 9 at ¶ 6; Doc. 9-1 at 1, 3).  Sabatini claims to have perceived the fees in the Notice ($900) as "unreasonably large."  He then sought information from TMS' in-house and former outside counsel regarding how the fees were calculated.  (Doc. 9-1 at 1, 3).  Any questions concerning the Notice should have been resolved during the pendency of the related Bankruptcy Case through discussions among counsel or common discovery practices.

Nevertheless, on August 6, 2019 and September 27, 2019, while still in close contact with TMS' counsel, Sabatini sent two letters *directly* to TMS (the "Letters"), without a copy to counsel, that were in essence discovery requests related to the Notice. (Doc. 9-1). Sabatini requested the same information about which he had been communicating with TMS' counsel, and in an apparent attempt to invoke RESPA

2

Appx142

and TILA, he included a request for any estimate of the value of the property, a payoff statement, and the name and address of the owner of the loan. In response to discussions with Sabatini and the Letters, on October 7, 2019, TMS withdrew the Notice (Doc. 41), thereby disclaiming any entitlement to the $900 in attorneys' fees it expended in response to Lewis' Bankruptcy Petition. Once TMS withdrew the claim for $900, Lewis had no legitimate basis to seek discovery or relief as to those fees, and as (unnecessary) discovery in this matter would later confirm, Lewis had no good faith basis to seek the other information requested in the Letters. Put plainly, Sabatini's initiation and prosecution of the Adversary Action have been almost exclusively about generating fees for his firm.

In this proceeding, Lewis claimed that TMS' failure to respond to the Letters constitutes a violation of RESPA, 12 U.S.C. § 2605, and TILA, 15 U.S.C. §§ 1639g, 1640(a)(2)(A) & (a)(3). However, given TMS' withdrawal of the Notice, and Judge Opel's decision dismissing Count I of Lewis' complaint alleging a qualified written request ("QWR") (Doc. 55), Lewis' only entitlement to relief, at best, comprises the minimal statutory damages provided under RESPA and TILA.

In light of the minimal damages available to Lewis, TMS sought early on to amicably resolve this matter through Offers of Judgment pursuant to Fed. R. Civ. P. 68. On January 23, 2020 and April 2, 2020, TMS served Offers of Judgment on

3

Sabatini, the more recent being for $7,000.[1] At no time did Lewis have any out-of-pocket losses related to the Letters, and Sabatini's reasonable fees related to the Letters at that point should have been easily covered by splitting the $7,000 Offer of Judgment with Lewis. Sabatini, however, dragged the litigation on for years, with little if any attendant benefit to Lewis. On March 16, 2022, following mediation and in an effort to cease Sabatini's unabashed crusade to generate unending legal fees, TMS offered to settle for $6,000 and reserved all rights to contest the anticipated fee application by Sabatini. On March 24, 2022, Lewis accepted TMS' March 16, 2022 Offer of Judgment (Doc. 127).[2] Thereafter, on December 8, 2022, Lewis filed the Petition seeking an award of attorneys' fees and costs totaling $66,678.68.

### III.   <u>ARGUMENT</u>

It is well-settled that a prevailing party is not entitled to attorneys' fees except under certain limited circumstances. *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975) (referring to this principle as the "American Rule"). The American Rule applies to litigation conducted before Bankruptcy Courts. *In re S.S.*, 271 B.R. 240, 244-45 (Bankr. D.N.J. 2002) (citing *In re Fox*, 725 F.2d 661, 662 (11th Cir. 1984)). There are four recognized exceptions to the

---

[1] Copies of the Offers of Judgment are attached hereto as Exhibits A and B respectively. Fed. R. Civ. P. 68(b) (stating, "[e]vidence of an unaccepted offer is not admissible except in a proceeding to determine costs.").

[2] Plaintiff did not file the Acceptance of Judgment until December 5, 2022.

American Rule, only one of which is relevant here: a contract or statute granting a right to attorneys' fees. *In re West Chestnut Realty of Haverford, Inc.*, 186 B.R. 612, 617 (Bankr. E.D.Pa. 1995) (citation omitted). An award of reasonable attorneys' fees "must be determined on the facts of each case." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Moreover, an award of attorneys' fees is left to the sound discretion of the Court. *In re Schermer*, 388 N.R. 123, 126 n.3 (Bankr. E.D.Pa. 2008). For the reasons set forth below, this Court should not award Plaintiff the costs and attorneys' fees that he seeks in the Petition.

### A.    TILA AND RESPA DO NOT MANDATE RECOVERY OF ATTORNEYS' FEES IN THIS MATTER.

Lewis contends that two statutory bases compel this Court to award him attorneys' fees, claiming that "TILA and RESPA each require an award of costs and attorney's fees to a successful plaintiff." Plaintiff's Brief in Support of His Petition for Attorney's Fees and Costs ("Plaintiff's Brief"), at 2. However, when reading the clear and unambiguous language provided in TILA and RESPA, this is not so.

As an initial matter, the mere acceptance of an Offer of Judgment does not guarantee an award of attorneys' fees. It is long-settled that a Rule 68 Offer of Judgment is a "cost" shifting mechanism. In considering whether "costs" under Rule 68 necessarily include attorneys' fees, the United States Supreme Court noted that "costs," as used in Rule 68, "was intended to refer to all costs properly awardable *under the relevant substantive statute* or other authority." *Marek v. Chesny*, 105

5

S.Ct. 3012, 3016 (1985) (emphasis added). It added, "absent congressional expressions to the contrary, when the underlying statute defines 'costs' to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68." *Id*. As discussed further below, neither TILA nor RESPA define "costs," as including attorneys' fees. *See also*, 15 U.S.C. § 1602; 12 U.S.C. § 2602. Accordingly, Lewis must establish an independent entitlement to attorneys' fees, which he cannot do.

*First*, under TILA, Section 1640(a) defines a plaintiff's potential recovery, including reasonable attorney's fees and costs, as follows:

> (a) Except as otherwise provided in this section, any creditor *who fails to comply with any requirement imposed under this part*, . . . is liable to such person in an amount equal to the sum of:
>
> > (1) any actual damage sustained by such person as a result of the failure;
> >
> > . . . .
> >
> > (3) in the case of any successful action to enforce the foregoing liability . . . the costs of the action, together with a reasonable attorney's fee as determined by the court[.]

15 U.S.C. § 1640(a)(3) (emphasis added).

*Second*, and similarly, RESPA provides:

> Whoever *fails to comply with any provision of this section* shall be liable to the borrower for each such failure in the following amounts:
>
> > (1) Individuals

6

> In the case of any action by an individual, an amount equal to the sum of--
>
> > (A) any actual damages to the borrower as a result of the failure; and
> >
> > (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.
>
> . . . .
>
> (3) Costs
>
> In addition to the amounts under paragraph (1) and (2), in the case of any successful action under this section, the costs of the action, together with any attorneys (sic) fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

12 U.S.C. § 2605(f)(1) and (3) (emphasis added). In addition to underscoring this Court's discretion in awarding (or not) reasonable attorneys' fees, TILA and RESPA condition any such award upon a finding that a person (or entity) *failed to comply* with the provisions contained in each respective statute. Because there is no such finding here, Lewis is not entitled as a matter of right to an award of attorneys' fees.

Lewis accepted TMS' Offer of Judgment on March 24, 2022 (Doc. 127). Although the Offer of Judgment "allow[s] a judgment to be taken against [TMS] in satisfaction of all claims by" Lewis, it is silent with respect to TMS' alleged noncompliance with TILA and RESPA. As this matter did not proceed to a hearing on the merits, this Court has not found TMS to be in violation of either statute.  Since

7

TILA and RESPA explicitly premise an award of costs and attorneys' fees on a violation of its provisions, and no such violation has been found to have occurred here, neither TILA nor RESPA mandate this Court to award attorneys' fees.

For this reason, Lewis' contention that "an acceptance of an offer of judgment is clearly a successful outcome," misses the mark. Plaintiff's Brief, at 2. In support of this proposition, Lewis baldly asserts that "TILA and RESPA each require an award of costs and attorney's fees to a *successful plaintiff*." *Id.* (emphasis added). As outlined above, TILA and RESPA say no such thing. An award of costs and reasonable attorneys' fees under TILA and RESPA clearly and unambiguously require a finding that a party failed to comply with those statutes. *In re Nosek*, 2006 WL 2700792, at *3 (Bankr. D.Mass., Sept. 19, 2006) (noting, "the Defendant is correct in its assertion that absent damages caused by a RESPA violation, there is no 'successful action' under RESPA,") (listing cases).[3]

Nor does Lewis' citation to *Denton v. Pennymac Loan Servs., LLC*, 252 F.Supp.3d 504 (E.D. Va. 2017), for the proposition that the "acceptance of an offer of judgment is clearly a successful outcome," salvage his contentions. Plaintiff's Brief, at 2. Aside from being non-precedential, *Denton* involved a request for attorneys' fees for an alleged violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, not RESPA or TILA. Importantly, the Court in *Denton* noted that an

---

[3] A copy of the *In re Nosek* opinion is attached here to as Exhibit C.

8

Offer of Judgment "may shift and/or limit the attorney-fee burden," but cited to *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008), for the proposition that "under the Rule 68 offer of judgment in the case, plaintiff was entitled to attorneys' fees up to the date of the offer." That is, *Denton* does not stand for the principle that the mere acceptance of an Offer of Judgment constitutes a "successful outcome," entitling the Plaintiff to reimbursement for fees.

Here, since TILA and RESPA do not define "costs" as including attorneys' fees, and TMS has not been found to be in violation the same, Lewis' mere acceptance of TMS' Offer of Judgment does not mandate the recovery of attorneys' fees.

### B.   THE COSTS AND FEES REQUESTED ARE UNREASONABLE.

Even if this Court finds that Lewis is entitled to recover some costs and reasonable attorneys' fees, the amount requested by Sabatini is wholly unreasonable. The Petition seeks approval of attorneys' fees and costs of $66,678.68, for services provided from August 30, 2019, until the present, and additional fees related to the Petition itself, which may subsequently be incurred.[4] The requested amount relates to work done by Sabatini, Brett Freeman, Esquire ("Freeman"), and a paralegal

---

[4] In the Petition, Lewis claims that $5,732.50 of the $66,678.68, was stipulated to at a status conference on November 8, 2022. At that hearing, TMS stipulated to the $5,732.50 subject to objections raised following the filing of the instant Petition, which are outlined herein. TMS maintained this same approach in stipulating to all fees that Lewis claims were previously agreed to as reasonable.

9

working for Sabatini, Ashley Werner ("Werner"). According to invoices supplied by Sabatini, *see* Petition Exhibits A1, A2, and B, Sabatini, Freeman, and Werner collectively expended no less than 183.40 hours pursuing Lewis' claim that TMS allegedly failed to respond to the Letters, even after TMS withdrew its claim, and any information requested in the Letters was wholly worthless to Lewis. Sabatini is not entitled to those fees.

In reviewing the Petition, the Court must "conduct an objective inquiry based upon what services a reasonable lawyer or legal firm would have performed in the same circumstances." *In re Badyrka*, 2022 WL 4656034, at *9 (Bankr. M.D. Pa., Sept. 30, 2022)[5] (Conway, J.) (citation omitted). Further, a "judge's experience with fee petitions and his or her expert judgment pertaining to appropriate billing practices, founded on an understanding of the legal profession, will be the starting point for any analysis." *Id*. (citing *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 854 (3d Cir. 1994)). In addition, "[w]hen making its consideration, the court is not required to make a line-by-line analysis of the fee application, and a sampling will suffice." *Id.* (citation omitted). Instead, "[b]ecause its time is precious the reviewing court need only correct reasonably discernable abuses, not pin down to the nearest dollar the precise fee to which the professional is ideally entitled." *Id*. (citation omitted).

---

[5] A copy of the *In re Badyrka* opinion is attached hereto as Exhibit D.

Moreover, "a fee applicant's failure to exercise billing judgment will result in reduction of fees where, in the sound discretion of the bankruptcy court, such fees are unreasonable." *Badyrka*, 2022 WL 4656034, at *10 (citation omitted). Such "billing judgment" has been described as "the voluntary reduction of a fee by counsel to a private client for services that either conferred a negligible benefit or were excessive." *Id*. This Court previously observed that "[s]uch billing judgment is an 'absolute requirement' of fee applications in bankruptcy." *Id*. (citation omitted). Thus, when rendering a fee determination, "the court must take into consideration whether the professional exercised 'reasonable billing judgment.'" *Id*.  Notably, the "amount of money at stake in a case is always *highly relevant* to the reasonableness of an attorney's fee request[.]" *In re Pine*, 705 F.2d 936, 939 (7th Cir. 1983) (emphasis added); *Mirabel v. General Motors Acceptance Corp.*, 576 F.2d 729, 730 (7th Cir. 1978) (finding that 350 hours spent on a TILA case was "clearly out of proportion with the amount in controversy.").[6] Finally, the Petitioner "bears the burden of proving that the fees and expenses sought are reasonable and necessary." *Badyrka*, 2022 WL 4656034, at *8 (citation omitted). When applying these

---

[6] This Court's Code of Professional Conduct is also informative, as it is worth noting that all members of the Bar of this Court are expected to "earnestly attempt to resolve differences through negotiation, expeditiously and *without needless expense*." United States District Court for the Middle District of Pennsylvania, Code of Professional Conduct, at ¶ 6 (emphasis added).

11

principles to the instant matter, the expenses, fees, and hours incurred are entirely unreasonable for *several* reasons.

This Adversary Action is based on Lewis' claim for information from TMS, which at the time the Adversary Action was initiated was clearly of no value whatsoever to Lewis. TMS had withdrawn its claim for $900, so there was no basis to request information about the withdrawn claim. Similarly, Lewis had no legitimate basis to seek valuation information, a payoff statement or confirmation of the name and address of the owner of the loan.

In *Badyrka*, this Court considered a Chapter 13 Debtor's Counsel's Interim Application for Compensation and Reimbursement of Expenses (the "Fee Application") filed by Sabatini.  Like the underlying Bankruptcy Case in this matter, *Badyrka* involved a routine Chapter 13 case. Notwithstanding the straightforward nature of that case, Sabatini sought approval of interim compensation of $10,452.50 and reimbursement of $438.07, for services that he provided over an approximately eight-month period.

After considering the totality of the circumstances, this Court found that the Fee Application was excessive, and reduced the compensation requested by Sabatini by nearly half. In so finding, this Court determined that several factors were especially relevant.  First, it found that Sabatini's "billing in this 'routine' case appear[ed] to be grossly excessive compared to other practitioners in this District."

12

*Badyrka*, 2022 WL 4656034, at \*3. For example, it noted that "Mr. Sabatini's hourly rate of $415.00 would be considered one of the highest rates for consumer bankruptcy practitioners in this District, including attorneys with substantially more experience." *Id*. In light of this "premium" billing rate, the Court took exception to Sabatini's apparent failure to delegate administrative or paralegal tasks accordingly. In addition, it observed that Sabatini's invoices often reflected excessive time billed to simple tasks, such as the preparation and filing of the standard Chapter 13 form, numerous charges for communications "no matter how minor," and duplicative and overhead charges. *Id*. at \*4. This Court's review of Sabatini's invoices led it to wonder "how these unreasonably large fees can be incurred at this stage of the case and how the bankrupt Debtor, if he was paying these fees, could afford such fees." *Id*. This case presents an even more egregious overreach by Sabatini. The Adversary Action was not filed until after TMS withdrew its $900 claim, so the only potential gain for Lewis was an award of a statutory penalty and obtaining information that was useless to him. It is difficult to imagine any litigant affording the fees that Sabatini seeks to obtain the miniscule relief potentially available to Lewis at the time this action was commenced.

This Court in *Badyrka* next considered the PRF utilized by most attorneys in Chapter 13 cases in this District as a "guide or starting point to what should be considered a reasonable fee in a routine Chapter 13 case in this District." *Badyrka*,

13

2022 WL 4656034, at *5-6. Like many Bankruptcy Courts in the United States, this District provides the PRF method for billing, which "was adopted as an alternative to the traditional lodestar approach," employed by Sabatini herein. *Id*. at *5. The Court noted that, currently, under Local Rule 2016-2, the PRF is $4,500.00. *Id*., at *5 n.16. In the normal course, the Court "presumes that upon the attorney's affirmation of the work done, fees that are less than or equal to the PRF are deemed to be reasonable." *Id*.  In *Badyrka*, the Court noted disapprovingly that Sabatini's request was more than double the PRF in the District, and that, as an interim request, he would likely attempt to bill additional fees. *Id*.

After setting forth its initial observations regarding the unreasonableness of the Fee Application, the Court then assessed Sabatini's request in light of the principles outlined above, and found that a reduction of Sabatini's fees was warranted. In addition to the failures in Sabatini's billing judgment discussed *supra*, the Court highlighted its concern that Sabatini "appears to use his bankruptcy cases as a 'loss leader' and covers any lost fees not collected in his Chapter 13 cases by prosecuting" other claims. *Badyrka*, 2022 WL 4656034, at *11. Specifically, the Court emphasized testimony by Sabatini in which he asserted that he

> was not making money on this case. The way I make money is by all of the affirmative claims that I bring for them [(referencing his Chapter 13 clientele)]. I would file Federal Debt Collection and Practice Act claims, Telephone Consumer Protection Act claims, right, and I'd make the money on those claims. So, my partner, [Mr.] Freeman, that's what he does. I get them in the door with the bankruptcy, *we find the claims*

14

and he makes the money that keeps the lights on, the claims. Bankruptcy is not keeping it on.

*Id.*, at \*11 (emphasis added).  Continuing, the Court stated, "[w]hat is concerning is that it appears as though the statutory claims that Mr. Sabatini brings on behalf of his clients/debtors are limited to $1,000.00 per claim by statute and the attorneys fees have no such limit." *Id.*  Moreover, it added, "the debtor may be tied-up in protracted litigation for several years for a $1,000.00 recovery while the case is being prosecuted to recover Mr. Sabatini's attorney fees lost in his 'loss leader' cases." *Id.*

Here, Sabatini's conduct is the exact same conduct that the Court found so worrisome in *Badyrka*.  *First*, Sabatini appears to have manufactured affirmative claims under RESPA and TILA by requesting information on behalf of Lewis that was of no actual value to Lewis. For example, there was no good faith basis to request a payoff statement because Lewis had no reasonable basis to payoff his loan from TMS. Based on Sabatini's testimony in *Badyrka*, such conduct was clearly geared towards running an end around the PRF, which the Court openly views as a reasonable starting point when considering fee applications, and which would have limited Sabatini's ability to recoup his expenses had he pursued this matter in the Bankruptcy Case (as he should have).

*Second*, discovery taken in this matter casts doubt on whether Lewis had a legitimate basis to seek the information that he sought. For instance, Lewis requested a payoff amount for his loan.  However, in Plaintiff's Responses to Defendant's First

15

Set of Combined Discovery Requests Directed to Plaintiff, Lewis responded to a request that he "[i]dentify any actions, if any, [that he] took from July 24, 2019 to present to refinance, payoff or discharge," the loan he had with TMS, by claiming the term "your loan" was ambiguous. Plaintiff's Responses to Defendant's First Set of Combined Discovery Requests Directed to Plaintiff ("Plaintiff's Responses"), at 2. A true and correct copy of Plaintiff's Responses are attached hereto as Exhibit E. Nevertheless he asserted that he has not attempted to pay off his loan, aside from making payments. *Id.* In response to Plaintiff's Requests for Admission, Lewis wholly failed to answer simple questions, such as whether he had attempted to pay off or discharge his loan, or whether he had the financial resources to do so. Ex. 1, at 5-6. It appears beyond doubt that the information requested in the Letters was sought only to create a claim for Sabatini to litigate, and not to benefit Lewis.

Sabatini made matters worse by alleging that TMS' conduct was part of a "pattern and practice of noncompliance," which he would be required to prove to obtain statutory damages under RESPA. Despite Lewis having no good faith basis to allege that this was part of a "pattern and practice," TMS was forced to manually review hundreds of its files to confirm that it did not routinely disregard RFIs from parties in bankruptcy. Indeed, TMS' lengthy and costly review revealed that this was the only instance where TMS did not directly respond to an RFI from a client in

16

bankruptcy. Discovery confirmed that Lewis could not establish his claim that TMS had a pattern and practice of noncompliance.

Further, Lewis alleged that he had knowledge of "consumers" and "former employees" that could corroborate such a pattern and practice (*see* Third Amended Complaint, Doc. 57, at ¶¶ 48-52), but his discovery responses did not support this contention. Instead, he claimed that the information necessary to identify such people was "presumably" available to TMS from a Consumer Financial Protection Bureau database. Ex. 1., at 3-4. Likewise, when asked to provide documents in his possession to support his allegations in this regard, Lewis asserted that he had none. *Id.*, at 8. Lewis' discovery responses reveal that his allegations and his discovery efforts lacked a good faith basis. They were nothing more than a fishing expedition geared towards driving Sabatini's fees.

*Third*, in light of the dearth of evidence to support Lewis' claimed damages, and the minimal damages at stake even if Lewis were successful, a sensible attorney would be expected to exercise (and would exercise) the reasonable billing judgment this Court also found lacking in Sabatini in *Badyrka*. A review of Sabatini's invoices reflects no such judgment. Like in *Badyrka*, Sabatini's invoices are rife with duplicative charges, charges better suited for associates, paralegals or staff, and charges for minor communications with his client, TMS' former and current counsel, and others. For example, between December 6, 2019, and December 18, 2019,

17

Sabatini generated eighteen (18) separate entries related to communications to opposing counsel or his client. This pattern persists (apparently pervasively through Sabatini's practice, as reflected in the *Badyrka* opinion).

Most worrisome is Sabatini's response to TMS' Offers of Judgment made years ago, which would have adequately and reasonably compensated Lewis and Sabatini had they been accepted when offered. Specifically, as noted in Exhibit A to the Petition, on April 2, 2020, TMS provided Lewis with an Offer of Judgment providing for a payment of $7,000.00. *See* Exhibit A1, pp 6-7, entries on 4/2/2020 and 4/13/2020. Lewis and Sabatini would have been reasonably compensated (in actuality more than reasonably compensated) had they accepted the April 2, 2020 Offer of Judgment. Had Lewis been paying directly for Sabatini's fees, there is little doubt that the case would have resolved at that point. Sabatini, however, was already off to the races pumping up his fees. As of April 2, 2020, Sabatini and his colleagues had billed Lewis an incredible (and excessive), approximately $13,000.00 in fees, including 98 entries for .1 hours spent largely on e-mails and other communications (totaling $4,067.00). Instead of accepting TMS' Offer of Judgment, Sabatini continued on his fishing expedition, racking up over $50,000.00 in additional fees before accepting TMS' March 16, 2022 Offer of Judgment.

When considering the totality of the circumstances, the fees sought in the Petition are clearly excessive. In order to deter future practitioners from engaging in

18

Appx158

the sort of opportunistic behavior that Sabatini exhibited here and in *Badyrka*, this Court should find that Lewis is entitled to no more than provided in the Offer of Judgment accepted by him on March 24, 2022.

C.    ALTERNATIVELY, THE COURT SHOULD AWARD NO MORE THAN A REASONABLE FEE GIVEN PLAINTIFF'S LIMITED RECOVERY

For all the reasons set forth above, the fees that Lewis and Sabatini request in the Petition are not warranted under RESPA and TILA, are wholly unreasonable, and should be denied in their entirety. Nevertheless, if this Court grants the Petition in some respect, Lewis' award should be limited to what the Court determines to be a reasonable fee for the result obtained. The Court should decline to review Sabatini's time entries on a line by line basis because neither the Court nor TMS can identify whether most individual time entries are, standing by themselves, reasonable or not. The Court can and should disregard significant amounts of time expended by Sabatini that did not contribute to meaningful relief for Lewis. For example, Sabatini's averments and subsequent discovery into the theory that TMS had a pattern and practice of not responding to RFIs was wholly unsupported when alleged, and disproven in discovery. Similarly, Judge Opel dismissed Lewis' claims based on QWRs under RESPA (Doc. 55), and Lewis cannot recover for those unsuccessful endeavors. The Court should not consider any such time in fashioning a fee award.

19

If the Court looks at what was actually obtained through litigation, the fee, if any, should be modest at best. Lewis obtained a judgment of $6,000, even though Lewis suffered no out of pocket loss. Under the "American Rule," Sabatini's fee should be paid out of that recovery. Beyond the $6,000, Lewis obtained the breakdown of how TMS was billed $900 for an attorney to review Lewis' bankruptcy filings, information which is seemingly worthless to Lewis because the $900 charge had been withdrawn. Lewis received confirmation that TMS was the owner of the loan and the address for TMS, but he has not identified any reason why he sought such information in 2019 or why it is of any value to him. Similarly, Lewis obtained TMS' information on the valuation of the property and a payoff statement, but again that information is of no real value to him because he has not been in a position to payoff his loan from TMS.

Comparing what Lewis obtained to the outrageous fees now sought by Sabatini exposes this Adversary Action as nothing other than blatant opportunism. The Court should not reward Sabatini's hijinks, or it is sure to see them repeatedly in the future.

## IV.    CONCLUSION

For all the foregoing reasons TMS respectfully requests that this Court find that Plaintiff, Clarence W. Lewis Jr.'s Petition for Attorneys' Fees and Costs seeks

20

excessive costs and attorneys' fees, and limit Plaintiff's recovery to $6,000.00, as

provided in the Offer of Judgment accepted by Plaintiff on December 5, 2022.


Respectfully submitted,


Dated:  January 9, 2023

/s/ Matthew M. Haar
Matthew M. Haar, Esq. (85688)
Saul Ewing LLP
2 N. Second Street, 7th Floor
Harrisburg, PA  17101
matt.haar@saul.com – 717-257-7508

Francis X. Riley III, Esq. (74075)
Saul Ewing LLP
650 College Road East, Suite 4000
Princeton, NJ 08540-6603
francis.riley@saul.com
(Admitted Pro Hac Vice)

John Paul Regan, Esq. (320664)
Saul Ewing LLP
One PPG Place, Suite 3010
Pittsburgh, PA 15222
jp.regan@saul.com

*Attorneys for Defendant The Money Source Inc.*

21

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing Brief in Opposition to Plaintiff's Petition for Attorney's Fees and Costs complies with the requirements of Local Rule 9013-2, because it contains 4821 words.

/s/ Matthew M. Haar
Matthew M. Haar

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2023, I served a true and correct copy of the foregoing Brief in Opposition to Plaintiff's Petition for Attorneys' Fees and Costs upon the following through ECF filing:

Carlo Sabatini, Esq.
Sabatini Freeman, LLC
216 N. Blakely Street
Dunmore, Pennsylvania 18512
carlo@bankruptcypa.com
*Attorneys for Plaintiff*

Dated:  January 9, 2023                    /s/ Matthew M. Haar
                                           Matthew M. Haar

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re Clarence Lewis, | Bankruptcy No. 5:19-bk-01873-MJC |
| Clarence Lewis,<br>    Plaintiff | Chapter 13 |
| | Adversary No. 5:19-ap-00116-MJC |
| v. | |
| The Money Source, Inc.,<br>    Defendant | |

### Plaintiff's Reply Brief in Support of Fee Application

s/ Carlo Sabatini
Carlo Sabatini, PA 83831
Attorney for Plaintiff
Sabatini Law Firm, LLC
216 N. Blakely St.
Dunmore, PA  18512
Phone (570) 341-9000
Email carlo@bankruptcypa.com

Appx164

## Table of Contents

I.   Table of Authorities ...............................................................................iii

II.  Argument ........................................................................................... 1

    1.  Who is to blame for not settling? ................................................ 1

    2.  *Badyrka* is of limited applicability. ........................................... 5

    3.  Defendant's two specific objections............................................ 8

    4.  Proportionality is not a basis to reduce a fee. .......................... 10

    5.  Plaintiff is contractually <u>and</u> statutorily entitled to attorneys' fees........ 13

       a. Plaintiff is entitled to attorneys' fees as a matter of contract. ............. 13

       b. Any ambiguity is construed against Defendant................................... 13

       c. Plaintiff is entitled to attorneys' fees as a matter of statute................ 14

       d. The fee is allowed because Plaintiff did not explicitly waive it............ 15

    6.  The degree of success is high. ................................................... 16

III. Conclusion ........................................................................................ 18

ii

Appx165

## Table of Authorities

### Cases

*A.B. by & through F.B. v. Pleasant Valley Sch. Dist.*,
2019 WL 2715681 (M.D. Pa. June 28, 2019) ............................................... 11, 12, 13

*Andrews v. Pro. Bureau of Collections of Maryland, Inc.*,
270 F.R.D. 205 (M.D. Pa. 2010) ...................................................................... 3

*Baker Botts L.L.P. v. ASARCO LLC*,
576 U.S. 121 (2015) ........................................................................................ 4

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*,
532 U.S. 598 (2001) ...................................................................................... 15

*Burlington v. Dague*,
505 U.S. 557 (1992) ...................................................................................... 18

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) ...................................................................................... 13

*City of Riverside v. Rivera*,
477 U.S. 561 (1986) ................................................................................. 10, 11

*Cunningham v. City of McKeesport*,
807 F.2d 49 (3d Cir. 1986) ............................................................................ 11

*Elaine v. Credit Control LLC*,
2018 WL 1705959 (E.D. Pa. Apr. 9, 2018) .................................................... 7

*Evans v. Port Auth. of New York & New Jersey*,
273 F.3d 346 (3d Cir. 2001) ............................................................................ 6

*Farrar v. Hobby*,
506 U.S. 103 (1992) ...................................................................................... 17

*Grissom v. The Mills Corporation*,
549 F.3d 313 (4th Cir. 2008) ......................................................................... 15

*In re Badyrka*,
2022 WL 4656034 (Bankr. M.D. Pa. Sept. 30, 2022) ............................... 5, 6, 7

*In re Busy Beaver Bldg. Ctrs., Inc.*,
19 F.3d 833 (3d Cir. 1994) ........................................................................... 5, 6

*In re Maruko Inc.*,
160 B.R. 633 (Bankr. S.D. Cal. 1993) ............................................................ 6

iii

*In re Nosek,*
  2006 WL 2700792 (Bankr. D. Mass. Sept. 19, 2006)................................. 14

*In re Pine,*
  705 F.2d 936 (7th Cir. 1983) ...................................................... 10

*Lima v. Newark Police Dep't,*
  658 F.3d 324 (3d Cir. 2011) ................................................... 14, 15

*Machado v. L. Offs. of Jeffrey H. Ward,*
  2016 WL 3574007 (D.N.J. June 29, 2016) .......................................... 13

*Millea v. Metro-North R.R. Co.,*
  658 F.3d 154 (2d Cir. 2011) ..................................................... 13

*Mirabel v. General Motors Acceptance Corp.,*
  576 F.2d 729 (7th Cir. 1978) .................................................... 10

*Ne. Women's Ctr. v. McMonagle,*
  889 F.2d 466 (3d Cir. 1989) .................................................. 11, 18

*Nordby v. Anchor Hocking Packaging Co.,*
  199 F.3d 390 (7th Cir.1999) ..................................................... 14

*Prandini v. National Tea Co.,*
  585 F.2d 47 (3d. Cir. 1978) ...................................................... 4

*Reed v. Heller's Gas, Inc.,*
  5:13-ap-00207, Doc. 73 (M.D. Pa. Jan. 7, 2016).................................... 4

*Rode v. Dellarciprete,*
  892 F.2d 1177 (3d Cir. 1990)..................................................... 5

*Romeo v. Simm Assocs., Inc.,*
  170 F. Supp. 3d 750 (M.D. Pa. 2016) ............................................. 7

*Shattuck v. Harmon Heating & Air Conditioning, LLC,*
  2019 WL 3202507 (E.D. Pa. July 16, 2019) ....................................... 12

*Slantis v. Capozzi & Assocs., P.C.,*
  2011 WL 2531752 (M.D. Pa. June 24, 2011) ....................................... 11

*Tolentino v. Friedman,*
  46 F.3d 645 (7th Cir. 1995) ..................................................... 17

*Torres v. Metro. Life Ins. Co.,*
  189 F.3d 331 (3d Cir. 1999) ..................................................... 16

iv

*United Auto. Workers Loc. 259 Soc. Sec. Dep't v. Metro Auto Ctr.*,
    501 F.3d 283 (3d Cir. 2007) ................................................................... 11

*Utility Automation 2000, Inc. v. Choctawhatchee Electric Co-op., Inc.*,
    298 F.3d 1238 (11ᵗʰ Cir. 2002) ............................................................ 15

*Washington v. Philadelphia Cnty. Ct. of Common Pleas*,
    89 F.3d 1031 (3d Cir. 1996) ................................................................. 12

**Statutes**

11 U.S.C. § 330 ................................................................................. 4, 5, 6
11 U.S.C. § 362 ..................................................................................... 4
12 U.S.C. § 2605 ............................................................................. 14, 15
15 U.S.C. § 1640 .................................................................................. 15

**Regulations**

12 C.F.R. § 1024.36 ................................................................................ 1

**Rules**

Fed.R.Civ.P. 68 ....................................................................... 4, 13, 14, 15

v

<u>**Argument**</u>

**1. Who is to blame for not settling?**



This is how Defendant's lawyer introduced himself when he substituted into this case. Since throwing down this gauntlet, Defendant has tried to make this case about Plaintiff's counsel, lobbing an attack in virtually every court filing since.[1] The

---

[1] Doc. 8 – Answer, ¶ 7 ([Sabatini] sent the Requests for Information "in an attempt to communicate directly with TMS outside of its counsel in violation of applicable attorney ethics rules.") Because this particular attack accuses Plaintiff's counsel of unethical conduct, Plaintiff will respond to it. Where, as here, a mortgage servicer designates a specific address to be used for requests for information, then requests sent elsewhere are not valid. 12 C.F.R. § 1024.36. More importantly, Sabatini had asked Defendant's bankruptcy counsel whether he was authorized to receive the forthcoming request. Counsel indicated that he was not. *See* Sabatini Affidavit ¶ 1.

Doc. 14 – Brief in Support of First Motion to Dismiss, p. 13 ("[Sabatini] attempts to spring a RESPA and TILA trap. . .")

Doc. 17 – Brief in Support of Motion to Stay Discovery, p. 3 – ("Because, as [Sabatini] likely planned, TMS did not respond to the Letters. . .")

Doc. 45 – Brief in Support of Second Motion to Dismiss, p. 4 ("exactly as Lewis' counsel planned, TMS did not respond to the Letters, resulting in this Adversary Proceeding. . .")

1

assault reaches new heights with Defendant's latest brief, in which "Sabatini"

appears 68 times. Critically, Defendant now claims that Sabatini is to blame for the

length of this litigation:

> [O]n April 2, 2020, TMS provided Lewis with an Offer of Judgment providing for a payment of $7,000.00. Lewis and Sabatini would have been reasonably compensated (in actuality more than reasonably compensated) had they accepted the April 2, 2020 Offer of Judgment. Had Lewis been paying directly for Sabatini's fees, there is little doubt that the case would have resolved at that point. **Sabatini, however, was already off to the races pumping up his fees.**

(Doc. 130, p. 18, citations omitted, emphasis added.) This characterization is

inaccurate.

Plaintiff has a judgment for $6,000 plus attorneys' fees. Comparing this

actual result to the parties' early settlement positions is illuminating. Defendant

now *concedes*, that as of the date of Attorney Riley's email, Sabatini's reasonable

lodestar was $7,048.50. (Doc. 128-1) Thus, the value of the case was at least

$13,048.50.[2] Plaintiff's demand of $13,000 was reasonable.[3]

---

Doc. 58 – Answer to Third Amended Complaint, pp. 7 – 8 ("an attempt by Plaintiff's counsel to evade discovery proceedings in the bankruptcy case, and the relief sought in Plaintiff's Complaint amounts to an attorney seeking a windfall by collecting attorneys' fees for improper submission of discovery demands that he knew were procedurally barred.")

Doc. 68 – Brief Opposing Motion to Compel Discovery, p. 2 ("because of Lewis' counsel's improper conduct . . . ")

Doc. 130 – Brief in Opposition to Fee Petition, *passim*

[2] In fact, the true value of the case was $1,385 more; the entries from the disputed A2 Bill should also be included.

[3] Consider how difficult it could have been from a client-relations standpoint for Attorney Riley to encourage Defendant to settle at that reasonable number. (cont.)

2

Defendant's settlement posture was less realistic. The day after Attorney Riley's email, Defendant tendered an offer of judgment for $2,000 plus fees. At first blush, that dollar amount might be considered a reasonable offer. A litigant does not have a crystal ball and cannot know exactly where a case will resolve. Thus, a settlement offer can be made in good faith even if it ultimately varies from the eventual result by a fair bit.

However, Defendant's settlement offer contained an additional requirement, namely, that Plaintiff waive any post-offer fees. The relevant portion of the offer provides:

> Defendant, The Money Source, Inc., hereby offers to allow entry of judgment pursuant to Rule of Civil Procedure 68, as follows:
>
> 1. Judgment in favor of Plaintiff, Clarence W. Lewis Jr., against Defendant in the total pretax sum of $2,000 in statutory penalty, and reasonable attorneys' fees and costs accrued as of the date of this Offer, as the court in this action determines are just and equitable.

By limiting the fees to those "accrued as of the date of this Offer," Defendant would require Plaintiff to forego fees for the time litigating the fee application, including time spent on any appeal that Defendant might file. Such language does have the fee-limiting effect that Defendant desired. *See Andrews v. Pro. Bureau of Collections of Maryland, Inc.*, 270 F.R.D. 205, 208 (M.D. Pa. 2010) (Nealon, J.) And

---

Attorney Mario Hanyon had secured that offer before Riley's firm appeared. What value would Attorney Riley's firm have provided to Defendant if Attorney Riley recommended acceptance of the offer that Attorney Hanyon had obtained?

3

Appx171

that effect could be severe. The cost for time spent litigating a fee application could easily dwarf the roughly $8,500 in fees that Plaintiff had accrued.[4] Adding all of those uncompensated hours into the calculus would cause the *effective* hourly rate to be slashed. To prevent that result, in cases involving statutory awards of attorneys' fees the time spent litigating the fee petition is compensable. *Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3d. Cir. 1978).[5]

On April 2, 2020, Defendant tendered a new Rule 68 offer for $7,000.00, **inclusive** of attorneys' fees.[6] By that date, the fees that Defendant admits are reasonable were $11,396.50. (See Doc 128-1 "A1 Bill.") So, once the $6,000 judgment amount is included, the value of the case was over $17,000.[7] Can Defendant really claim that both Sabatini and Lewis would have been "more than reasonably compensated" by accepting $10,000 less than the value of the case? Should

---

[4] Considering the tone of Attorney Riley's entrance into the case, Plaintiff's counsel would have been naïve to expect that fee litigation would be resolved expeditiously.

[5] *Cf. Baker Botts L.L.P. v. ASARCO LLC,* 576 U.S. 121, 124 (2015)(11 U.S.C. § 330(a)(1) does not provide a basis to award attorneys' fees for work performed in defending an application for fees from the bankruptcy estate); *see also*, *Reed v. Heller's Gas, Inc.*, 5:13-ap-00207, Doc. 73 (M.D. Pa. Jan. 7, 2016)(Thomas, J.)(Exhibit B)(reconsidering prior order that had disallowed fees for fee litigation; on reconsideration, the court allowed the fees after finding that "Plaintiffs' counsel is not restricted by the language of § 330 but seeks compensation under the broader provisions of § 362(k)(1).")

[6] Although this offer contained a "plus fees" provision identical to that contained in the earlier offer of judgment, Defendant later explained that that language was included by mistake and that the new offer was instead a lump sum offer that precluded recovery of additional attorneys' fees. (See annotations boxed in red on portion of email string attached to Sabatini Affidavit as Exhibit 2.)

[7] The actual value of the case, when including the $5,094 of disputed time from the A2 Bill, was over $22,000.

4

Defendant be asserting that Sabatini "was already off to the races pumping up his fees"?

### 2. *Badyrka* is of limited applicability.

Defendant spends most of its brief discussing *In re Badyrka*, 2022 WL 4656034 (Bankr. M.D. Pa. Sept. 30, 2022), and claims that the instant case is no different. (*See e.g.,* Doc. 130, p. 15)("[h]ere, Sabatini's conduct is the exact same conduct that the Court found so worrisome in *Badyrka*."). But, *Badyrka* is of limited applicability here for a number of reasons.

First, in *Badyrka*, the Court's role was different. There, it was *sua sponte* fulfilling its "independent obligation to review fee applications presented for approval. . . 'which . . . derives from the court's inherent obligation to monitor the debtor's estate and to serve the public interest.'" *Id.* at p. 16, quoting *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833 (3d Cir. 1994). That review occurs "under 11 U.S.C. § 330 and 11 U.S.C. § 1325." *Id.* at p. 11.

Here, however, the fees are not to be paid from the debtor's estate, and § 330 is not applicable. Instead, because fees are being awarded under a non-bankruptcy fee-shifting statute, the Court's duty is almost exactly the opposite. It has no independent duty to *sua sponte* review fees and look for problems. That task lands on Defendant, which must lodge specific objections. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). And, it is *only* those issues that the Court must resolve. In fact, a court "cannot decrease a fee award based on factors not raised at all by the adverse party." *Id.*

5

Additionally, the extent of the Court's review is different under each standard. For a *sua sponte* review under § 330, the Circuit does not expect a court to scrutinize every line of a fee application. Instead the court "need only correct reasonably discernible abuses, not pin down to the nearest dollar the precise fee to which the professional is entitled." *Badyrka* at p. 18, citing *Busy Beaver*. Thus, in *Badyrka* the Court cited to *In re Maruko Inc.*, 160 B.R. 633, 642, 645 (Bankr. S.D. Cal. 1993) for the proposition that "the court is not required to make a line-by-line analysis of the fee application, . . ." Defendant cites to that language as providing the standard here. (Doc. 130, p. 10.) It does not. The standard is different where the Court is ruling on an objection that has been raised with specificity by a party. Indeed, "it *is* necessary that the Court go line, by line, by line through the billing records supporting the fee request." *Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 362 (3d Cir. 2001) (emphasis in original, internal quotation marks omitted).

Even if *Badyrka* had been decided under the same standard that applies here, it would still be of very limited relevance. At its essence, *Badyrka* was about delegation of duties. 95% of the fee reduction came from determinations that certain activities should have been performed by lower-paid professionals – i.e., attorneys were doing some paralegal work; paralegals were doing some secretarial work. The Court's analysis found only $273.00 that was not billable at all. Here, Defendant does not assert an "insufficient delegation" objection. Thus, the delegation principles at issue in *Badyrka* have not been raised here.

6

Furthermore, one bad opinion should not define an attorney, and *Badyrka* is not representative of Sabatini's career. To the contrary, in searching his files back to 2010, Sabatini has been able to find 12 cases where he filed a fee application that was opposed by a defendant. In nine of those cases, the full amount requested was awarded. In the remaining three cases, the amounts awarded were 93%, 92%, and 80% of the amounts requested. (Sabatini Affidavit attached as Exhibit A, ¶¶ 4 – 6.)

Finally, courts discussing Sabatini's practices and performance have commented favorably. *See e.g.*, *Elaine v. Credit Control LLC,* 2018 WL 1705959, at *7 and *11 (E.D. Pa. Apr. 9, 2018)("Plaintiff's counsel's legal work was excellent. . . . After a line-by-line review, Plaintiff made significant reductions based upon Defendants' objections. These deductions are thoughtful and well-reasoned, and appear to have been made in a good-faith effort to reach a fair resolution of the fee issue."); *Romeo v. Simm Assocs., Inc.,* 170 F. Supp. 3d 750, 754 (M.D. Pa. 2016)(Conaboy, J.)(the amount of time expended by Plaintiff's counsel's firm in generating their client's recovery and vindicating their right to the fees sought in this case is consistent with the cases Plaintiff's counsel has cited . . . , proportionate to the tenacity with which Defendant litigated this matter, and reasonable under the circumstances.") Thus, the result in *Badyrka* should not be fairly characterized as representing Plaintiff's counsel's general performance. *Badyrka* is of little relevance to this matter.

7

### 3. Defendant's two specific objections.

Given its duty to lodge specific objections, Defendant's brief should focus on identifying those objections that prevented the fee dispute from being resolved by negotiation. However, Defendant's brief mentions only two sets of entries about which it specifically complains.

The first is for "eighteen (18) separate entries related to communications to opposing counsel or [Plaintiff]." (Br. at p. 18.) However, these entries all appear on the A1 Bill. In other words, Defendant *has already agreed* that these particular entries are reasonable, provided that the Court decides that an award of fees is appropriate. (Doc. 117 ¶ 7). Additionally, these entries were generated over a 13-day period, thus averaging just over one communication a day. That volume of communication hardly seems unreasonable during a period where a settlement is being actively negotiated. Finally, in the exercise of billing judgment, counsel had already discounted four of those entries. No additional reduction is warranted.

The second set of entries that Defendant challenges is "98 entries for .1 hours [as of April 2, 2020] spent largely on e-mails and other communications (totaling $4,067.00)" (Br. at p. 18.) However, on the *disputed* portion of the bill, there are only three entries for .1 hours that were actually billed during this period. (Doc. 128-2 "A2 Bill.") The other nine entries were discounted. Thus, Defendant is really contesting only 18 minutes of time totaling $124.50.

Where are the rest of Defendant's specific objections? After the mediation failed and it became clear that the attorneys' fee issue would not settle, the parties

8

agreed to limit the scope (and attendant expense) of the fee application process by narrowing the issues that would need to be decided by the Court. To that end, Plaintiff's counsel provided his bill. Defendant responded with a detailed itemization identifying each time entry on the bill to which it objected, *along with the specific reason that it objected to each of those entries*. Plaintiff agreed to discount some of the entries to which Defendant had objected and identified those entries on the bill using red strike-through text. The entries on the bill that Defendant had not objected to were underlined in green. The remaining entries remained in plain text. That marked-up bill was attached to a filed stipulation which explained that the parties "have agreed to narrow the issues that would need to be decided by the Court."

Of course, Plaintiff's expectation here was that Defendant would raise with the Court the same specific objections that it had raised during negotiations. After all, that was the whole point of the agreement to narrow the issues.

As explained in Plaintiff's first brief, 84% of the dollar value of those objections related to either time spent briefing or to intra-office conferences. Plaintiff spent a substantial portion of the first brief tackling those issues. Defendant's reply brief does not disagree that the reason these time entries were relegated to the A2 Bill was because Defendant had raised those objections. Yet, Defendant does not reassert the objections here. Defendant should be considered to have forfeited those objections.

9

Again, Defendant has the duty to identify the entries to which it objects and the reasons therefor. Without notice of the objections, Plaintiff cannot respond, and the Court cannot know which of the "line, by line, by line" entries are at issue. But, other than the two sets of time entries identified at the beginning of this section, Defendant's brief does not identify any specific individual entry, or even an entire category of entries, to which it objects. Instead, the rest of Defendant's arguments apply universally to all time entries – whether on the agreed A1 Bill, or the disputed A2 Bill. None of those arguments are a reason to reduce the requested fee.

### 4. Proportionality is not a basis to reduce a fee.

Defendant cites to two cases from the Seventh Circuit to support a proportionality argument. The continuing validity of those opinions is questionable. Defendant quotes language from *In re Pine*, 705 F.2d 936, 939 (7th Cir. 1983) that the "amount of money at stake in a case is always *highly relevant* to the reasonableness of an attorney's fee request[.]" (Doc. 130, p. 14, emphasis and bracket added by Defendant.) Defendant also cites to *Mirabel v. General Motors Acceptance Corp.*, 576 F.2d 729, 730 (7th Cir. 1978) for the statement that 350 hours spent was "out of proportion" with the amount in controversy.

However, a few years after these cases were decided, the Supreme Court rejected the rule that fees be proportional to the underlying recovery. *See City of Riverside v. Rivera*, 477 U.S. 561, 580–81 (1986) (plurality op.). Of course, ruling that proportionality is not required is completely at odds with *Pine's* statement that

it is "always highly relevant." *Pine* and *Mirabel* are both out-of-circuit pre-*Riverside* cases that are of limited value today.

Fortunately, in the Third Circuit the rule is clear. In rejecting proportionality for an ERISA claim, the Circuit stated:

> [the defendant] offers no argument specific to ERISA's mandatory fee structure to ease our longstanding concerns with requiring proportionality. As we have previously explained with regard to another fee-shifting statute, [h]ad Congress believed ... that attorneys' fees should be awarded only in some proportion to the plaintiff's damages, it could have easily eliminated or modified the attorneys' fees provision. We will not impose such a change by judicial fiat.

*United Auto. Workers Loc. 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 294 (3d Cir. 2007)(quoting *Ne. Women's Ctr. v. McMonagle*, 889 F.2d 466, 474 (3d Cir. 1989))(internal quotation marks omitted.) The Third Circuit has also "rejected a rule of proportionality in civil rights cases," *Id.* at 293, citing *Cunningham v. City of McKeesport*, 807 F.2d 49 (3d Cir. 1986), and in RICO cases, *Id.* at 293, citing *McMonagle.*

The Third Circuit has not addressed proportionality under RESPA or TILA. However, since *Riverside*, the Third Circuit has not allowed proportionality for **any** fee shifting statute. There is no reason that a different treatment is warranted here. District courts within the Circuit have applied the analysis to other fee shifting statutes. *See Slantis v. Capozzi & Assocs., P.C.*, 2011 WL 2531752, at *5 (M.D. Pa. June 24, 2011)(Conner, J.)(Fair Credit Reporting Act); *A.B. by & through F.B. v. Pleasant Valley Sch. Dist.*, 2019 WL 2715681, at *9 (M.D. Pa. June 28, 2019)(Caputo, J.), *aff'd*, 839 F. App'x 665 (3d Cir. 2020)(Individuals with

11

Disabilities Education Act); *Shattuck v. Harmon Heating & Air Conditioning, LLC,*
2019 WL 3202507, at *4 (E.D. Pa. July 16, 2019)(Fair Labor Standards Act)

So what does the bar on proportionality mean? One way that the Third
Circuit described it is as follows: "we embrace the broader proposition that the
district court cannot adjust counsel fees to maintain a certain ratio between the fees
and damages—to insure, for instance, that fees not exceed three times the amount
of damages. *Washington v. Philadelphia Cnty. Ct. of Common Pleas*, 89 F.3d 1031,
1042 (3d Cir. 1996).

Elsewhere in its brief, Defendant argues for proportionality without explicitly
describing the argument as such. Defendant claims that "[i]t is difficult to imagine
any litigant affording the fees that Sabatini seeks to obtain the miniscule relief
potentially available to Lewis at the time this action was commenced." (Doc. 130, p.
13). Of course, a comparison of fees to potential relief is a proportionality analysis.
In *A.B. by & through F.B.* (cited above) Judge Caputo dispatched of such an
argument:

> The District makes much out of that fact that it is
> inconceivable that plaintiff's counsel would submit a bill
> for such high fees to a parent and her son . . . . But that
> inconceivability is precisely why Congress includes fee-
> shifting provisions in the laws it enacts. The purpose of fee-
> shifting is to enable private parties to obtain legal help in
> seeking redress of injuries resulting from the actual or
> threatened violation of specific federal laws. That purpose
> is only satisfied if plaintiffs find it possible to engage a
> lawyer based on the statutory assurance that he will be
> paid a "reasonable fee." A "reasonable fee," therefore, does
> not mean a fee that an IDEA plaintiff would pay her lawyer
> if the IDEA's fee-shifting provision did not exist, as the

12

> District argues. The whole point of fee-shifting is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery, thereby assuring that civil rights claims of modest cash value can attract competent counsel. *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011).

*A.B. by & through F.B.,* 2019 WL 2715681, at *9. (emphasis in original; internal brackets, quotation marks and citations omitted).

### 5. Plaintiff is contractually <u>and</u> statutorily entitled to attorneys' fees.

Defendant points out that Rule 68's cost-shifting mechanism is not a basis to award fees here, and that Plaintiff must therefore "establish an independent entitlement to attorney's fees. . . ." (Doc. 130 p. 6.) Plaintiff agrees. But that independent entitlement is easily established in a few different ways.

*a. Plaintiff is entitled to attorneys' fees as a matter of contract.*

"Rule 68 offers of judgment are governed by basic principles of contract law." *Machado v. L. Offs. of Jeffrey H. Ward*, 2016 WL 3574007, at *1 (D.N.J. June 29, 2016); see also *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 163 (2016), as revised (Feb. 9, 2016)(evaluating Rule 68 offer "[u]nder basic principles of contract law, . . .") The accepted Rule 68 offer here provides that Defendant will have a judgment entered against it for "$6,000, plus an additional amount for costs and reasonable attorneys' fees." Defendant agreed contractually to pay costs and fees.

*b. Any ambiguity is construed against Defendant.*

It would seem difficult for Defendant to make a good faith argument that the contractual language to pay fees is anything other than crystal clear. But, if Defendant does make that effort, it should remember that "under basic principles of

13

contract law," any ambiguity in the contract is construed against the drafter – here, Defendant. The Third Circuit has expressly applied this principle in the context of Rule 68, noting that "[a]mbiguities in Rule 68 offers are to be resolved against the offerors," *Lima v. Newark Police Dep't*, 658 F.3d 324, 330 (3d Cir. 2011)(quoting *Nordby v. Anchor Hocking Packaging Co.*, 199 F.3d 390, 391–93 (7th Cir. 1999)).

    *c.  Plaintiff is entitled to attorneys' fees as a matter of statute.*

Defendant implies, without citation to any supporting authority,[8] that the judgment obtained by acceptance of a Rule 68 Offer does not constitute a finding that Defendant violated either statute or that Plaintiff has brought a successful action. Defendant then claims that, without a finding of a statutory violation, Plaintiff cannot recover attorneys' fees. (Doc. 130 p. 7)

The judgment against Defendant is "in satisfaction of all claims by Plaintiff." Plaintiff asserted claims under TILA and RESPA. The judgment is in satisfaction of those claims. Again, this interpretation seems clear, but to the extent that there is any ambiguity, it is construed against Defendant. As the holder of a $6,000

---

[8] The closest that Defendant comes to having authority is a case that Plaintiff had relied upon in his first brief: *In re Nosek*, 2006 WL 2700792 (Bankr. D. Mass. Sept. 19, 2006). That case does not mention Rule 68. When read in isolation, the language that Defendant quotes appears to support Defendant's position that there must be a finding that the party violated the statute: "absent damages caused by a RESPA violation, there is no 'successful action' under RESPA," (Doc. 130, p. 8). However, the actual facts of the case show that it does not help Defendant. The *Nosek* court did <u>not</u> find that there was no violation and then refuse to award statutory attorneys' fees. To the contrary, the court found a violation that merited only nominal damages of $1.00. Then the court awarded $45,000 in attorneys' fees. One thing that this case *is* useful for is as an example of an appropriate disproportionate fee. (See p. 10, supra.)

14

judgment on the TILA and RESPA claims, Plaintiff has clearly prosecuted a "successful action" as that term is used in both TILA (15 U.S.C. § 1640(a)(3)) and RESPA (12 U.S.C. § 2605(f)(3)).

The Supreme Court has discussed how to demonstrate that a successful action has been brought for purposes of a fee award. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001).[9] One way to establish that status is to show a judicially sanctioned material alteration of the legal relationship between the parties. Acceptance of a Rule 68 offer satisfies that requirement. *See Walsh v. Bos. Univ.*, 661 F. Supp. 2d 91, 102–03 (D. Mass. 2009)("Circuit court cases addressing Rule 68 judgments after *Buckhannon* uniformly find prevailing party status.")(citing *Grissom v. The Mills Corporation*, 549 F.3d 313, 316–319 (4th Cir. 2008) and *Utility Automation 2000, Inc. v. Choctawhatchee Electric Co-op., Inc.,* 298 F.3d 1238, 1248 (11th Cir. 2002)).

   d.  *The fee is allowed because Plaintiff did not explicitly waive it.*

Waivers of statutory attorneys' fees must be explicit. *Lima v. Newark Police Dep't*, 658 F.3d 324, 332 (3d Cir. 2011). In *Lima*, the defendants tendered a Rule 68 offer to a civil rights plaintiff "to allow Judgment to be entered. . . in the amount of

---

[9] *Buckhannon* actually interprets the Civil Rights Act's fee shifting provision which uses the term "prevailing party," instead of "successful action." However, "use of the term 'successful action' appears to be synonymous with the term 'prevailing party.'" *Lucas v. Convergent Healthcare Recoveries, Inc.*, No. 3:12-CV-916, 2012 WL 6092734, at *3 (M.D. Pa. Dec. 7, 2012)(Kosik, J.)(FDCPA case)(citing *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001); and *Buckhannon Bd. And Care Home, Inc. v. West Virginia Department of Health and Human Res.*, 532 U.S. 598, 602 (2001).

$55,000.00, including all of Plaintiff's claims for relief against all defendants." The offer was silent as to the treatment of the statutory attorneys' fees that were potentially available. The plaintiff accepted the offer and then sought attorneys' fees and costs. The defendant objected, stating that "the Defendants' Offer of Judgment was for 'all of Plaintiff's claims against all defendants.' There should be no confusion about any remaining claims, whether for costs or anything else; no such claims remain." The district court agreed and refused to allow attorneys' fees. The Third Circuit reversed. Citing to *Torres v. Metro. Life Ins. Co.*, 189 F.3d 331, 333 (3d Cir. 1999) for the proposition that fee waivers must be explicit, the Circuit held that where an "offer of judgment is silent as to fees and costs, they must be fixed by the court after the offer of judgment is accepted." *Lima,* 658 F.3d at 331. Of course, here the offer contains the opposite of a fee waiver. Instead, the offer expressly states that the judgment is to include "an additional amount for costs and reasonable attorneys' fees."

### 6. The degree of success is high.

Defendant characterizes the award of a statutory penalty as "miniscule" (Doc. 130, p. 13) and "minimal" (Doc. 130, p. 17). Plaintiff disagrees. To most consumers, $6,000 is very substantial. Defendant further argues that the fee should be reduced because the litigation was not very successful: "If the Court looks at what was actually obtained through litigation, the fee, if any, should be modest at best. Lewis obtained a judgment of $6,000, even though Lewis suffered no out of pocket loss." (Doc. 130, p. 20.)

Defendant does not attempt to rebut or distinguish the authority in Plaintiff's first brief regarding degree of success. (See Doc. 129, p. 4, citing *Farrar v. Hobby,* 506 U.S. 103, 114 (1992) and *Tolentino v. Friedman,* 46 F.3d 645, 653 (7th Cir. 1995)). Nor does Defendant provide any authority of its own to support its position. However, if we compare Defendant's earlier characterizations of this case to the result actually obtained, we can see that Plaintiff has been *very* successful. After tendering the ultimately unaccepted $7,000 offer of judgment, Defendant explained the offer as follows:

> We see no way your client would be awarded the highest amount of the statutory penalty range (he has no actual damages) under both statutes. Thus, even if he was awarded $1,000 under each, which we believe is above what he'd actually get, the fees to your firm are $5,000.

(See annotations highlighted in green on portion of email string attached to Sabatini Affidavit as Exhibit 2.) What are the take aways from this statement? There are two. First, Defendant thought that the maximum statutory damages available to Plaintiff were only $2,000. At $6,000, Plaintiffs recovered triple what Defendant believed was theoretically possible. The second take away is that Defendant saw "no way" that Plaintiff would get even the $2,000 because the case was so weak. Viewed in that light, the result of $6,000 is even more extraordinary. Certainly, no reduction is warranted based on degree of success.[10]

---

[10] Arguably, achieving a result that Defendant implied was impossible *could* make this the "rare" or "exceptional" case that warrants a multiplier enhancement on the lodestar attorneys' fee. *See Burlington v. Dague,* 505 U.S. 557 (1992). Plaintiff is not requesting such a multiplier here.

17

## Conclusion

Defendant's brief began by stating that the Court's decision here could impact "general practice before this Court for years to come. . ." Plaintiff agrees. Consumer protection litigation is a difficult practice area for a plaintiff's lawyer. Fees are contingent and the lawyer does not receive any premium to compensate for that contingency. This treatment is different than in many other practice areas. For example, personal injury attorneys also work on a contingent basis. Like consumer protection plaintiffs' lawyers, when the personal injury attorney loses, she receives nothing. But, when she wins, the effective hourly rate that she recovers is likely substantially more than she would have charged if her client had been paying hourly, win-or-lose. The fee for the successful consumer protection plaintiff's attorney, however, is *capped* at the lodestar and is subject to reduction from there.

A court enjoys broad discretion in determining an appropriate fee. *Ne. Women's Ctr. v. McMonagle*, 889 F.2d 466, 476 (3d Cir. 1989). If the Court exercises that discretion here by applying a very austere approach to the calculation of the fee, then it **will be** likely that in "this Court for years to come," practitioners will be reluctant to represent consumers in fee-shifting litigation.

Plaintiff respectfully requests that the Court award the full amount itemized in the original application, plus an additional $13,570.45 for time spent preparing this brief, and plus such additional time as may be required to prepare for and attend the hearing.

## Certification of Page Count

The substantive portion of this brief contains 4,998 words.

s/ Carlo Sabatini
Carlo Sabatini, PA 83831
Attorney for Plaintiff
Sabatini Law Firm, LLC
216 N. Blakely St.
Dunmore, PA  18512
Phone (570) 341-9000
Email carlo@bankruptcypa.com

# Exhibit A

(Sabatini Affidavit)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re Clarence Lewis, | Bankruptcy No. 5:19-bk-01873-MJC |
| Clarence Lewis,<br>　　　　Plaintiff | Chapter 13 |
| v. | Adversary No. 5:19-ap-00116-MJC |
| The Money Source, Inc.,<br>　　　　Defendant | |

## SABATINI AFFIDAVIT

1. Attached as Exhibit 1 is an email string between me and Mario Hanyon.

2. This is a snippet of an email I received from Francis Riley on or about

January 22, 2020:



3. Attached as Exhibit 2 is portion of an email string between counsel for the

parties. The email string has been modified by (a) removing extraneous material at

the bottom of the string, (b) adding red boxes to pages one and two, and (c) adding green highlighting to page one.

4.  In searching my files back to 2010, I have been able to find twelve cases where a fee application was opposed by a defendant.

5.  In nine of those cases, the full amount requested was awarded.

6.  In the remaining three cases, the amounts awarded were 93%, 92%, and 80% of the amounts requested.

7.  In preparing Plaintiff's Reply Brief in Support of Fee Application, I have spent over 32.7 hours of time.

s/Carlo Sabatini
Carlo Sabatini, PA 83831
Attorney for Plaintiff
Sabatini Law Firm, LLC
216 N. Blakely St.
Dunmore, PA  18512
Phone (570) 341-9000
Email carlo@bankruptcypa.com

Exhibit 1

**Carlo Sabatini**

---

| | |
|---|---|
| **From:** | Mario J. Hanyon <Mario.Hanyon@phelanhallinan.com> |
| **Sent:** | Tuesday, July 30, 2019 10:29 AM |
| **To:** | Carlo Sabatini |
| **Subject:** | RE: 5:19-bk-01873-RNO -Clarence William L Notice of Postpetition Mortgage Fees, Expenses and Charges Rule 3002.1 |

Hey Carlo,

Sorry, we cannot accept service.

**Mario J. Hanyon, Esquire | Litigation Associate**
**Phelan Hallinan Diamond & Jones, LLP**
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
mario.hanyon@phelanhallinan.com
p: 215-563-7000 x31340
f: 215-563-5534

---

**From:** Carlo Sabatini [mailto:carlo@bankruptcypa.com]
**Sent:** Monday, July 29, 2019 3:36 PM
**To:** Mario J. Hanyon
**Subject:** 5:19-bk-01873-RNO -Clarence William L Notice of Postpetition Mortgage Fees, Expenses and Charges Rule 3002.1

Hi Mario,

I'm going to be sending out a RESPA RFI to obtain information regarding the below Notice because the $900.00 charged seems very high. Are you authorized to receive that for your client? Or, should I instead send it directly to The Money Source, Inc.? Thanks.

Carlo Sabatini
Sabatini Freeman, LLC
216 N. Blakely St.
Dunmore, PA 18512
carlo@bankruptcypa.com
(570) 341-9000

**From:** PAMB_LiveDB@pamb.uscourts.gov <PAMB_LiveDB@pamb.uscourts.gov>
**Sent:** Wednesday, July 3, 2019 6:11 PM
**To:** Courtmail@pamb.uscourts.gov
**Subject:** Ch-13 5:19-bk-01873-RNO -Clarence William L Notice of Postpetition Mortgage Fees, Expenses and Charges Rule 3002.1

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30-page limit do not apply.**

1

## U.S. Bankruptcy Court

## Middle District of Pennsylvania

Notice of Electronic Filing

The following transaction was received from Mario John Hanyon entered on 7/3/2019 at 6:10 PM EDT and filed on 7/3/2019

**Case Name:**      Clarence William Lewis, Jr.
**Case Number:**    5:19-bk-01873-RNO
**Document Number:** doc

**Docket Text:**

Notice of Postpetition Mortgage Fees, Expenses, and Charges Rule 3002.1 (Claim # 7) Filed by Mario John Hanyon of Phelan Hallinan & Schmieg on behalf of THE MONEY SOURCE INC. (Attachments: # (1) Certificate of Service) (Hanyon, Mario)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**\\Client\d$\LKR\BK PA\1045685_PPFN.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1009835235 [Date=7/3/2019] [FileNumber=15709793-0
] [aa9fb9d48e5522279ab4687927ac25381dc8b2094ee22a9f62e9ba597a55daf55e0
bd5564999c71712cd19fd2449b1317901102a106f4cdd9f265a7dbb554d15]]
**Document description:**Certificate of Service
**Original filename:**\\Client\d$\LKR\BK PA\1045685_COS.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1009835235 [Date=7/3/2019] [FileNumber=15709793-1
] [7479444961bf5bcacf54390377f42c06d32be90116ae9f0efcc7b6ee301728631fc
0f582add48d8a657216a43a450aacaf51d64b1937f4e755c7cde760af2bab]]

**5:19-bk-01873-RNO Notice will be electronically mailed to:**

Charles J DeHart, III (Trustee)
TWecf@pamd13trustee.com

Keri P Ebeck on behalf of Creditor Consumer Portfolio Services, Inc.
kebeck@bernsteinlaw.com, jbluemle@bernsteinlaw.com

Mario John Hanyon on behalf of Creditor THE MONEY SOURCE INC.
pamb@fedphe.com

Carlo Sabatini on behalf of Debtor 1 Clarence William Lewis, Jr.
usbkct@bankruptcypa.com,
kecf@bankruptcypa.com;ivms@bankruptcypa.com;necf@bankruptcypa.com;sabecf@gmail.com;secf@bankruptcypa.com;G62721@notify.cincompass.com

United States Trustee
ustpregion03.ha.ecf@usdoj.gov

2

**5:19-bk-01873-RNO Notice will not be electronically mailed to:**

Robert Joseph Davidow on behalf of Creditor THE MONEY SOURCE INC.
Phelan, Hallinan, Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103

LVNV Funding LLC
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

3

**Carlo Sabatini**

| | |
|---|---|
| **From:** | Riley, Francis X. <Francis.Riley@saul.com> |
| **Sent:** | Thursday, April 9, 2020 1:49 PM |
| **To:** | Brett Freeman |
| **Cc:** | Haar, Matthew M.; Mishoe, K. Wesley; Carlo Sabatini |
| **Subject:** | Re: Clarence Lewis v The Money Source, Inc.; Motion to Amend |

Sorry, speaking it my computer didn't pick up the "Not." So to be clear, TMS is NOT going above $7,000.

Francis X. Riley III, Esq.
Saul Ewing Arnstein & Lehr LLP
(609) 452-3150 (O)

Sent from my iPhone. I apologize for typos.

> On Apr 9, 2020, at 1:45 PM, Brett Freeman <brett@bankruptcypa.com> wrote:
>
> Trip,
>
> Was the last sentence of your email a typo, or is your client willing to come above $7,000? If so, how much higher?
>
> You did not respond to my last paragraph about conceding liability. In a case such as this, where liability is clear, it often seems like a quick concession of liability makes the most sense. The Court can then conduct a hearing on damages, and you will have an opportunity to make your argument that any post-offer fees are unreasonable because of the OOJ. Is your client willing to concede liability here?
>
> Brett Freeman
> SABATINI FREEMAN, LLC
> 216 N. Blakely St.
> Dunmore, PA 18512
> (570) 341-9000
> Brett@SabatiniLawFirm.com
>
> -----Original Message-----
> From: Riley, Francis X. <Francis.Riley@saul.com>
> Sent: Thursday, April 9, 2020 12:03 PM
> To: Brett Freeman <brett@bankruptcypa.com>
> Cc: Haar, Matthew M. <matt.haar@saul.com>; Mishoe, K. Wesley <wes.mishoe@saul.com>; Carlo Sabatini <carlo@bankruptcypa.com>
> Subject: Re: Clarence Lewis v The Money Source, Inc.; Motion to Amend
>
> The latest superseding OOJ was $7,000 inclusive of reasonable attorneys' fees that would be awarded. We see no way your client would be awarded the highest amount of the statutory penalty range (he has no actual damages) under both statutes. Thus, even if he was awarded $1,000 under each, which we believe is above what he'd actually get, the fees to your firm are $5,000. Therefore, running up fees after this OOJ was served will be viewed by the Bankruptcy Judge as unreasonable and won't award you any more of the fees you generated beyond date of OOJ. Fee shifting doesn't allow a firm to run up fees to do things that, when looking at the amount Plaintiff could have gotten via OOJ, produced a result no more or perhaps only slightly more than under the OOJ. If you want to argue to the Bankruptcy Judge that thousands

1

of more fees from this point forward should be awarded even though your client got no more than that under the OOJ or only a couple hundred more, that's your call.
>
> Happy to discuss further, if warranted but we are going higher than $7,000.
>
> Trip
>
> Francis X. Riley III, Esq.
> Saul Ewing Arnstein & Lehr LLP
> (609) 452-3150 (O)
>
> Sent from my iPhone. I apologize for typos.
>
> On Apr 9, 2020, at 11:37 AM, Brett Freeman <brett@bankruptcypa.com> wrote:
>
>
> Trip,
>
> Can you please explain what you mean by "the fees portion of the OOJ is also beyond reasonable"? As you probably know, I had a call with Matt earlier this week, in which I explained that we would accept an OOJ that was for $7,000, plus reasonable attorney's fees (as I explained, the problem with your offer was that it limited fees to the date of the offer, which numerous courts have held does not provide for complete relief in a fee shifting case—see, e.g., Andrews v. Prof'l Bureau of Collections of Maryland, Inc., 270 F.R.D. 205, 208 (M.D. Pa. 2010)). I even provided Matt with a draft version of an OOJ that, if served, we would accept. However, he informed me that your OOJ actually was not meant to include any additional sum for fees, and that the total amount of the offer, inclusive of fees, was $7,000.00. He even sent an offer which he said was meant to supersede the earlier offer. So, I'm not sure why you're now talking about a fee portion of the OOJ if the fee portion of the OOJ was an error that was removed. Which offer are you referring to?
>
> Your refusal to consent to an amended complaint, even though Rule 15 states that such amendments are to be "freely give[n]," does not seem to be based on the likelihood of your client successfully opposing a motion to amend. Rather, it seems to be based solely on your belief that your client provided an offer of complete relief. But, surely your position will not be that, because you believe you have served a "complete" OOJ, you will oppose everything for the remainder of the litigation. For example, will you be taking the position that all discovery is improper, because you have served this OOJ? Or will you take the position that there should not be a trial, for the same reason? Surely you do not believe that the litigation must come to an end based on an unaccepted OOJ (and, to the extent that you do have this belief, you are wrong – see Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663 (2016)). We will file our motion to amend the complaint tomorrow, so if you wish to change your mind—thus saving your client the expense of paying for briefing related to an unnecessary motion—please let me know by the end of today.
>
> Additionally, if you truly believe that your offer "fully addresses any reasonable penalty that conceivably could be awarded," then I do not understand why you would not concede liability, and allow the Court to determine the amount of damages. Doing so would be the way to resolve the case in the quickest, and least expensive, manner for your client.
>
> Brett Freeman
> SABATINI FREEMAN, LLC
> 216 N. Blakely St.
> Dunmore, PA 18512
> (570) 341-9000
> Brett@SabatiniLawFirm.com
>
> -----Original Message-----
> From: Riley, Francis X. <Francis.Riley@saul.com>

2

> Sent: Thursday, April 9, 2020 10:56 AM
> To: Brett Freeman <brett@bankruptcypa.com>
> Cc: Haar, Matthew M. <matt.haar@saul.com>; Mishoe, K. Wesley <wes.mishoe@saul.com>; Carlo Sabatini <carlo@bankruptcypa.com>
> Subject: RE: Clarence Lewis v The Money Source, Inc.; Motion to Amend
>
> TMS will not consent to the filing of the proposed Third Amended Complaint.  Your client has been served with an OOJ that fully addresses any reasonable penalty that conceivably could be awarded pursuant to the RESPA and TILA claims given the genesis and subject matter of the letters and the context in which they were sent.  Likewise, the fees portion of the OOJ is also beyond reasonable.  If your client, who should be the person deciding whether to accept or not, chooses not to accept the OOJ, I am confident that even if he is successful on both of those statutory claim, any attorneys' fees in excess of what is in the OOJ and incurred beyond the date of service will be found by the Bankruptcy Judge to be unreasonable given the amount your client would receive under the OOJ.  Please be guided accordingly.
>
> Regards,
>
> Trip
>
> Francis X. Riley III Esq.| Partner
> Co-Chair, Consumer Financial Services Litigation Group
> 650 College Rd. East, Suite 4000 | Princeton, NJ 08540-6603
> Office: 609.452.3150 | Mobile: 609.558.5277 Francis.Riley@saul.com<mailto:Francis.Riley@saul.com> | www.saul.com<http://www.saul.com>
>
>
>
>
> -----Original Message-----
> From: Brett Freeman <brett@bankruptcypa.com<mailto:brett@bankruptcypa.com>>
> Sent: Thursday, April 9, 2020 10:40 AM
> To: Riley, Francis X. <Francis.Riley@saul.com<mailto:Francis.Riley@saul.com>>
> Cc: Haar, Matthew M. <matt.haar@saul.com<mailto:matt.haar@saul.com>>; Mishoe, K. Wesley <wes.mishoe@saul.com<mailto:wes.mishoe@saul.com>>; Carlo Sabatini <carlo@bankruptcypa.com<mailto:carlo@bankruptcypa.com>>
> Subject: RE: Clarence Lewis v The Money Source, Inc.; Motion to Amend
>
> Trip,
>
> Does your client have a decision on the amended complaint? The Court's order required Defendant to inform us as soon as possible regarding this request.
>
> Thank you,
>
> Brett Freeman
> SABATINI FREEMAN, LLC
> 216 N. Blakely St.
> Dunmore, PA 18512
> (570) 341-9000
> Brett@SabatiniLawFirm.com<mailto:Brett@SabatiniLawFirm.com>
>
> -----Original Message-----
> From: Riley, Francis X. <Francis.Riley@saul.com<mailto:Francis.Riley@saul.com>>

3

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**
**WILKES-BARRE DIVISION**

| | |
|---|---|
| IN RE: | ) Case No. 5-19-bk-01873-MJC |
| | ) Chapter 13 |
| CLARENCE W. LEWIS, JR., | ) |
| | ) |
| Debtor. | ) |
| | ) |
| _____ | ) |
| CLARENCE W. LEWIS, JR., | ) Adversary No. 5-19-ap-00116-MJC |
| | ) |
| Plaintiff, | ) |
| | ) Bankruptcy Courtroom No. 2 |
| v. | ) 274 Max Rosenn U.S. Courthouse |
| | ) 197 South Main Street |
| | ) Wilkes-Barre, Pennsylvania 18701 |
| THE MONEY SOURCE, INC., | ) |
| | ) January 31, 2023 |
| Defendant. | ) 2:03 p.m. |

TRANSCRIPT OF APPLICATION FOR ALLOWANCE OF COMPENSATION
AND EXPENSES FILED BY CARLO SABATINI (DOC 128)
BEFORE HONORABLE MARK J. CONWAY
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | Sabatini Law Firm |
| | By:  CARLO SABATINI, ESQ. |
| | 216 N. Blakely Street |
| | Dunmore, Pennsylvania 18512 |
| | |
| For the Defendant: | Saul Ewing LLP |
| | By:  MATTHEW M. HAAR, ESQ |
| | Two N Second Street, 7th Floor |
| | Harrisburg, Pennsylvania 17101 |
| | |
| Audio Operator: | Lyndsey Price |
| | |
| Transcription Service: | TRANSCRIPTS PLUS, INC. |
| | 435 Riverview Circle |
| | New Hope, Pennsylvania 18938 |
| | Telephone:  215-862-1115 |
| | e-mail CourtTranscripts@aol.com |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

2

APPEARANCES VIA ZOOM:

For U.S. Trustee:          U.S. Department of Justice
                           By:  GREGORY SCHILLER, ESQ.
                           228 WALNUT STREET, Suite 1190
                           Harrisburg, PA 17101

3

INDEX

| ARGUMENT | PAGE |
|---|---|
| By Mr. Sabatini | 11 |
| By Mr. Haar | 33 |
| Response by Mr. Sabatini | 48 |
| Response by Mr. Haar | 67 |
| Response by Mr. Sabatini | 74 |

| PLAINTIFF'S EXHIBITS | | ID | EVID |
|---|---|---|---|
| 1 | Affidavit (Sabatini) | 9 | 12 |
| 2 | Mortgage statement | 9 | 12 |
| 3 | Discovery responses | 9 | 12 |
| 4 | Lewis Complaint | 9 | 12 |
| 5 | Discovery responses | 9 | 12 |
| 6 | Payoff statement | 9 | 12 |
| 7 | Itemization of amount | 9 | 12 |
| 8 | March, 2021 RFI | 9 | 12 |
| 9 | March, 2021 RFI Denial | 9 | 12 |
| 10 | June, 2021 payoff | 9 | 12 |
| 11 | December, 2021 RFI | 9 | 12 |
| 12 | January, 2022 RFI response | 9 | 12 |
| 13 | Orr v. TMS | 9 | 12 |
| 14 | Supplemental discovery response | 9 | 12 |
| 15 | Bill (12/11/2022 to 1/31/2023) | 9 | 12 |
| 16 | Affidavit (Sabatini) | 9 | 12 |

| DEFENDANT'S EXHIBITS | | ID | EVID |
|---|---|---|---|
| 1 | Original offer of judgment | 10 | 12 |
| 2 | Amended offer of judgment | 10 | 12 |
| 3 | Discovery responses by Plaintiff | 10 | 12 |

4

THE COURT:  Attorney Sabatini, how are you this afternoon?

MR. SABATINI:  Good, Your Honor; thank you.

THE COURT:  And who are you, sir?

MR. HAAR:  Good afternoon, Your Honor.  Matt Haar from the Saul Ewing Law Firm here for Defendant, The Money Source.

THE COURT:  Okay.  Attorney Haar, welcome to Wilkes-Barre.

MR. HAAR:  Always good to be here, Your Honor.

THE COURT:  And then on my Zoom screen, who do I have from the UST?

MR. SCHILLER:  Gregory Schiller from the U.S. Trustee, Your Honor.

THE COURT:  Hello again, Attorney Schiller.

MR. SCHILLER:  Good afternoon.

THE COURT:  Well, today is Tuesday, January 31st, it's a little after 2 p.m.  We're here on the Clarence William Lewis, Jr. versus The Money Source, Inc., adversary case, in particular, the Application of Allowance of Compensation and Expenses filed by Carlo Sabatini, Counsel to the Plaintiff, it was filed at Docket Number 128, according to my notes.

I think every good judge, which I don't know if I'm a good judge or not yet, but should start off with, have you folks been able to resolve this matter?

TRANSCRIPTS PLUS, INC.
215-862-1115 ● CourtTranscripts@aol.com
Case 5:19-ap-00116-MJC   Doc 133   Filed 02/22/23   Entered 02/22/23 12:30:5?   Des?
Main Document     Page 4 of 77

Appx200

5

MR. SABATINI:  No, Your Honor.

THE COURT:  Okay.  Is there any chance that if I lock you two in a room that you'd be able to resolve this with a little more discussion, given the fact that no one ever talks to anyone anymore or sees anyone in person?  Attorney Sabatini, do you want to have five minutes?

MR. SABATINI:  I -- I think that might be time well spent.

THE COURT:  Well spent.  Attorney Haar, do you have any objection?

MR. HAAR:  Certainly no objection, Your Honor.

THE COURT:  Well, I'll give you as long as you want. There's attorney meeting rooms out there, Attorney Sabatini is familiar with the layout of the land here.  I don't know, have you ever been here before?

MR. HAAR:  Yes, Your Honor, I have.

THE COURT:  Okay.  Not -- in this case?

MR. HAAR:  Not in this case and, Your Honor, not before you.

THE COURT:  Okay.

MR. HAAR:  I was here with Judge Thomas.

THE COURT:  Some of those other guys.  Oh, well, they don't count.

MR. HAAR:  And I get to see Judge Saporito from time-to-time, as well.

TRANSCRIPTS PLUS, INC.
215-862-1115 ● CourtTranscripts@aol.com
Case 5:19-ap-00116-MJC   Doc 133   Filed 02/22/23   Entered 02/22/23 12:30:5̇   ̇
Main Document   Page 5 of 77

Appx201

THE COURT: Oh, do you? Okay. Well, he's right down the hall for me; good man.

Well, I'm going to give you an opportunity to discuss this, and I'd really strongly recommend that you both try and resolve this for perhaps both of your clients' sakes.

And I'll also note for the record that I understand that another adversary case has been filed, which means an additional round of attorneys' fees, and costs, and time, both your time, my time, the U.S. Trustee's time. So if it can be resolved, the Court would love to hear that. Okay?

MR. SABATINI: Okay. Thank you, Your Honor.

THE COURT: Thank you.

MR. HAAR: Thanks.

THE COURT: You can just let my Courtroom Deputy know -- Trish, how would they get in touch?

COURTROOM DEPUTY: I'll be in here.

THE COURT: You'll be in here? Okay. She'll be in here, okay?

MR. SABATINI: All right.

THE COURT: Thank you.

MR. SABATINI: Thank you.

MR. HAAR: Thank you.

THE COURT: We'll take a brief recess.

(Recess 2:05 p.m./Reconvene 2:22 p.m.)

THE COURT: Please be seated. Attorney Sabatini,

7

anything to report?

MR. SABATINI:  No success, Your Honor.

THE COURT:  Okay.  Well, it's worth the effort.

How about Attorney Schiller, do we have him back?

COURTROOM DEPUTY:  Well, I do see him on my screen. There he is.

THE COURT:  There is he, okay.

MR. SCHILLER:  Yes, Your Honor.

THE COURT:  Well, how do you want to proceed?  Do you want to do openings, and then we'll go from there?  Or do you want to present your case, Attorney Sabatini?

MR. SABATINI:  I don't know that we need a large opening.  I would like to introduce some exhibits.  And then -- and in lieu of testimony, I've prepared an affidavit that says what I would say if -- and I've provided the exhibits and the affidavit to opposing counsel.  I have some binders here with copies.

THE COURT:  And I'm sorry, when did you provide that affidavit to opposing counsel?

MR. SABATINI:  The affidavit and the most recent bill for time through today, I gave him just before the hearing today.

THE COURT:  Okay.

MR. SABATINI:  The other exhibits were all provided last week.

8

THE COURT: So to be fair, I want to make sure Attorney Haar has had an opportunity to review the affidavit, to digest it, and to be able to respond to that.

MR. HAAR: Sure, Your Honor. And Mr. Sabatini and I spoke briefly before we started here at 2 o'clock. I did read those Exhibits 15 and 16.

As far as the exhibits that he's offering, I don't dispute the authenticity of any of them. I certainly dispute the relevance of some, and the weight that the Court should provide to them. But I think if it dispenses with, you know, a half an hour or more of testimony, I'm fine with those 16 exhibits being offered by Mr. Sabatini into evidence, and Your Honor considering them for what they're worth.

THE COURT: Okay.

MR. HAAR: And also, in our brief in response to the petition, we included several exhibits, three of which I would propose to actually enter as evidence, if we're considering this an evidentiary proceeding. I have handed copies this afternoon to Mr. Sabatini, and I'm prepared to hand up copies to the Court, as well.

THE COURT: Okay. Do you have any opposition to his exhibits?

MR. SABATINI: No, Your Honor.

THE COURT: Okay. Well, then I'm more than happy to short circuit this as much as we possibly can. So just so I'm

9

clear, Attorney Sabatini, in your case, case in chief, we'll call it, you're not anticipating testifying or making a proffer?

MR. SABATINI:  No, Your Honor.

THE COURT:  You're going to rely on your exhibits and your affidavit.

MR. SABATINI:  Correct.

THE COURT:  Okay.  Attorney Haar, are you going to cross-examine Mr. Sabatini, or are you just going to let the record speak for itself?

MR. HAAR:  I think the documents speak for themselves, Your Honor.  We'll make arguments as to what they mean or don't mean, but I'm fine with the exhibits being the record.

THE COURT:  Okay.  All right.  Well, why don't we get the exhibits lined up?  If, Attorney Sabatini, do you want to come forward, and give me whatever you're intending to introduce?

So just so I'm clear and I'll make the record -- try to make the record clear, Attorney Sabatini has provided me with a binder, and the table of contents indicates that it contains Exhibits 1 through 16, Number 1 being a Sabatini affidavit, and Number 16 being a second Sabatini affidavit, and there's relevant documents and invoicing noted as Exhibits 2 through 15.

And, Attorney Haar, you're in possession of that as well, right?

MR. HAAR:  Correct, Your Honor.  I have the binder with Exhibits 1 to 16.

THE COURT:  Okay.  Anything else, Attorney Sabatini?

MR. SABATINI:  Just argument.

THE COURT:  Okay.  Attorney Haar, what do you intend on providing?  Introducing exhibits?  What do you got?

MR. HAAR:  If I may approach, Your Honor.  It's three --

THE COURT:  You may.

MR. HAAR:  It's three exhibits.  The first is an original offer of judgment that was made; the second is an amended offer of judgment that was made; and the third is some discovery responses by Plaintiffs.  All were attached to and referenced in our brief in opposition to the petition.  I believe Mr. Sabatini discussed them, as well, in his reply brief.

THE COURT:  Okay.

MR. HAAR:  Does Your Honor want the tabbed -- or the stickered copies?

THE COURT:  No, give them to the boss there.  I'll lose them.

MR. HAAR:  Which is the boss?

THE COURT:  Well, they both are, but for right now,

11

just give them here.

(Pause)

THE COURT:  Okay.  Attorney Sabatini?

MR. SABATINI:  Thank you, Your Honor.

So I'd like to start by reading the second sentence from their brief, and I'm going to add some numbers in there to highlight the four issues that are packed into this one sentence that I want to start by talking about.  So they say "Sabatini, one, has been attempting to run an end around this Court's presumptively reasonable fee for Chapter 13 cases; two, by manufacturing an adversary claim; three, out of what should have been a discovery issue in the related bankruptcy case; and, four, what was more accurately described as a dispute about nothing of consequence to Plaintiff.

So let's start with the first one, that I've been attempting to run an end around this Court's presumptively reasonable fee.  So if we could turn to the Exhibit 16, and all the -- all the exhibits have been admitted, right, Your Honor?

THE COURT:  Well, let me ask you -- and, again, let's be clear that the record -- let's make sure the record is clear.

Attorney Haar, do you have any objection to Exhibits 1 through 16 as far as being admitted?

MR. HAAR:  I don't.  Again, Your Honor, I don't dispute that they're all authentic.  I do dispute the level of

relevance, but considering we're in front of a Judge, not a jury --

THE COURT:  Right.

MR. HAAR:  But I think that goes to the weight rather than the admissibility of the exhibits.

THE COURT:  I agree.

And then conversely, or similarly, Attorney Sabatini, Exhibits D-1, D-2, and D-3, no objection?

MR. SABATINI:  Correct, Your Honor.

THE COURT:  So we have the universe of exhibits, they're all admitted into evidence.

(Plaintiff's Exhibits 1 through 16 in evidence)

(Defendant's Exhibits 1 through 3 in evidence)

MR. SABATINI:  Thank you.

So if we turn to Exhibit 16, and we read Paragraphs 1 to 5 of the affidavit.  My fee agreement with the Debtor for services rendered in the underlying bankruptcy case provides that it will be paid on an hourly basis.  I filed one interim fee application in this case, which was for a time period that ended in June of 2019.  That fee application has been approved. The events that gave rise to this adversary proceeding did not begin until July of 2019, which was when Defendant filed the notice of post-petition fee seeking $900.  And any time I spent a speeding that notice occurred only after the notice had been filed, right.

13

So to say that I'm attempting to run an end around the Court's presumptively reasonable fee just doesn't make any sense on the facts in this case. We're not using the presumptively reasonable fee. I've already been approved for the interim fees that I sought compensation for. All of that time that I've been approved for was before everything that happened here. I'm getting paid on a lodestar, so if this creates additional fees, the time that I had to spend, we're not doing an end around. All right, that's number one.

Number 2, "By manufacturing adversary claim." So how did I manufacture this claim? First, let's look at the actual reason for why they broke the law here. If we turn to Exhibit 14, Page 3 is -- 2 and 3 are their discovery responses, and they explain on these pages why they didn't respond to each of the two letters that were issued in the underlying case. So, again, the underlying complaint alleged that two qualified written requests or requests for information were sent, and that they didn't adequately acknowledge the requests or that they didn't adequately provide the information that was requested.

So the first letter, the actual reason that they didn't respond is in the last sentence at the paragraph that begins at the top of Page 3, "Bankruptcy counsel advised that they would respond, but they did not." So that's the reason why they didn't respond to the August 6th, 2019 letter.

TRANSCRIPTS PLUS, INC.
215-862-1115 ● CourtTranscripts@aol.com
Case 5:19-ap-00116-MJC   Doc 133   Filed 02/22/23   Entered 02/22/23 12:30:50   Desc
Main Document   Page 13 of 77

Appx209

The September 27, 2019 request for information, why didn't they respond to that?  If you look at the last sentence, "TMS neglected to serve a response to the September 27, 2019 letter."

So they didn't respond to the first letter because their lawyer dropped the ball.  And they didn't respond to the second letter because they dropped the ball themselves.

Now neither of these failures have anything at all to do with me, but that's not what they tell the Court.  What they've said to the Court is they describe my manufacturing with this sentence, "Given TMS's knowledge of Lewis's bankruptcy, not surprisingly and exactly as Lewis's counsel planned, TMS did not respond to the letters."  Right, that's in their brief in support of the motion to dismiss.

THE COURT:  I saw that.

MR. SABATINI:  So what they've told the Court, right, that sentence explicitly alleges causation,  That the only reason they didn't respond was because they had knowledge of this bankruptcy case.  And that statement is obviously false, right.

So for them to imply that the letters that I'm sending are a trap somehow is false.  They know that bankruptcy does not excuse them from their duty to respond under RESPA and TILA when requests are sent to them.

Mr. Lewis is still in bankruptcy.  During this

Case 5:19-ap-00116-MJC   Doc 133   Filed 02/22/23   Entered 02/22/23 12:30:50   Desc
Main Document    Page 14 of 77

Appx210

bankruptcy case, we've sent through counsel -- or to the address that designated a number of requests, and they've responded to those, even though they know that the person's in bankruptcy case. So they know that they can and that they're supposed to, but they haven't. So they haven't. So for them to say that I'm manufacturing an adversary claim is disingenuous.

The third point --

THE COURT: Mr. Sabatini, let me stop you.

MR. SABATINI: Sure.

THE COURT: I'm curious. I know the answer to this question, I'm going to ask it anyway. Why did you send the first letter?

MR. SABATINI: Because they filed a notice of post petition fees that said that it was $900 for them to review a plan and -- which contained very little additional language that I add in, other than the form, right. So if you're reviewing a form plan, all you have to do is look at, you know, Paragraph 2C and 2D, which is where they're treating the mortgages. There's not very much that you have to read because you know what all of it says, right. So to review the plan, to prepare the proof of claim, and to review the proof of claim form, I think, the information that they used to prepare the claim, I think it was those three things, they charge $900. So I thought that seemed high.

THE COURT: Okay. And then why did you send the second letter?

MR. SABATINI: Because they didn't respond to the first letter.

THE COURT: And did your client have a concern about that letter?

MR. SABATINI: Did my client have a --

THE COURT: Or did your client even know about those two letters being sent?

MR. SABATINI: I don't remember if my client -- if I told my client that I was sending those letters.

THE COURT: And was Mr. Lewis -- was he deposed in this case? Did the Defendants do any examination -- conduct any examination of Mr. Lewis?

MR. SABATINI: No, we didn't get to the depositions. The discovery had not closed, and we were -- we had depositions that we were in the process of trying to schedule for some of their employees and their representative, it didn't get that far.

THE COURT: Okay. And then on October 7, 2019, Phelan, Hallinan, Diamond, and Jones withdrew the notice of post-petition mortgage fees, expenses, and charges.

MR. SABATINI: Correct.

THE COURT: Okay. So what information after October 7th of 2019 were you looking to obtain? And I apologize, I

17

don't have the date -- your complaint was filed -- let me -- hold on one second -- almost two months later.  So what information were you looking for, if you were still looking for any information, once the praecipe to withdrawal was filed on October 7th?

MR. SABATINI:  I wanted to know how they calculated that, and I wanted their time records to show how it is that they spent $900 worth of time.  Even though they withdrew it, it doesn't moot the request for information.  They have a duty to respond to the request that's sent.  And the reason that I -- if they only can reasonably charge $200 to my client, or nothing, because part of the information that I was seeking was information about valuation on the home.  If the home is completely undersecured -- I'm sorry.  If the mortgage is undersecured, then under 506, perhaps they don't get to charge any attorney's fees, right?  So if they are routinely charging fees that they're not supposed to charge, and when someone challenges them on it, they say, "Oh, okay, you know what?  Forget it, we'll withdrawal it, we'll just move on to the next 500 people and charge it to them."  There's --

THE COURT:  I apologize for interrupting you, but are you aware of them charging it to any other parties?

MR. SABATINI:  Actually, yes.  If you look at Exhibit 13, this is a copy of a complaint that was filed in Minnesota, alleging the same thing.  That wasn't why I have this complaint

18

here, and I wasn't aware of this at the time, right.  But my understanding from conversations -- because I had conversations with Attorney Spivack and Attorney Hanyon, who were both employed at Phelan, Hallinan, and Schmieg at the time, which is now defunct, but that's who was representing The Money Source.

After I sent the first letter, I had conversations with them about this, and that's in my affidavit.  If you look at the affidavit beginning on Page 6 -- I'm sorry, Paragraph 6, "On October 3, 2019, I had a phone call with Attorney Mario Hanyon and Attorney Andrew Spivack of Phelan, Hallinan, and Schmieg.  The Phelan firm was representing Defendant in the bankruptcy case.  During that call, I explained that I thought that the fees charged to Lewis for reviewing a form plan, the loan history, and filing a proof of claim were unreasonable.  I also told them that I expected that if Defendant did not provide the information sought in the request for information, that we would file an action for their client's failure to correctly respond."  Right, so they're on notice here that, look, just give me the information, provide it, you're required to provide it under the law.

"Later that day, I had a second phone call with Attorney Mario Hanyon.  During that call, I explained that I would accept a time sheet showing how the time had been spent, that no fees could be charged to the loan if the mortgage is undersecured.  Even if they withdrew the notice of post-

petition fees, that they would still have to respond to the request for information.  If the response showed that the fees were being unfairly charged, that Lewis would have an affirmative claim.  Depending on whether the mortgage was a purchase money mortgage, there could be claim under Pennsylvania's Fair Credit Extension Uniformity Act, which provides for treble actual damages.  And there could also be claim under the Fair Debt Collections Practices Act for $1,000 plus attorney's fees."

As long as we're on that phone call, "During the second call with Attorney Hanyon, I also asked him about his hourly rate, which attorney Spivack had previously said was $400 per hour.  I asked whether Hanyon was doing work for other clients using that hourly rate."

So that's why I want the information, because it's -- bankruptcy is not supposed to be a game of cat and mouse.  That you do something improper, you get challenged on it, and then you withdrawal, and you say, "Now I don't have to provide you with the information."  They knew that withdrawing the notice would not satisfy my request, that I was still going to insist that they show me how they had calculated those fees in the first place.

THE COURT:  Well, the Debtor's schedules indicate a value of $80,000 for the property, and a claim by The Money Source of $143,000, is that accurate?

MR. SABATINI: I honestly haven't looked at them in a very long time, but I --

THE COURT: I'm reading from it.

MR. SABATINI: If that's what it says --

THE COURT: You know, again, that wasn't a trick question, but -- and I understand if you're not -- if you don't remember exactly what it is, but I'm reading from Docket 1 in the case filed on April 30th, 2019 on Schedule D, so I would assume that would be accurate, at least from the Debtor's position when it was filed.

MR. SABATINI: Right.

THE COURT: So The Money Source, Inc. was undersecured by about $63,000.

MR. SABATINI: Right.

THE COURT: Okay.

MR. SABATINI: So in my estimation, any fee is not reasonable, and they shouldn't be able to avoid the explanation before having to --

THE COURT: Okay. Your letter -- excuse me. Your letter also indicates a request for a loan payoff. And I know that defense, in their brief, asked -- and don't hold me to my wording -- but they asked for a reasoning for why you would have asked for a payoff statement at that particular time. And I'm curious what the Debtor's position is in asking for a payoff statement at that time.

TRANSCRIPTS PLUS, INC.
215-862-1115 ● CourtTranscripts@aol.com
Case 5:19-ap-00116-MJC   Doc 133   Filed 02/22/23   Entered 02/22/23 12:30:5^   ^
Main Document   Page 20 of 77

Appx216

21

MR. SABATINI: So I can speculate, you know, my memory is not -- I don't make notes, "This is why I'm asking for a payoff statement," right. So I -- but there are some -- a number of reasons -- well, one reason comes to mind why I might have request it, which is that the payoff statement shows you what they're actually charging, what they're actually seeking to collect from the Debtor, and what they actually assert is due on the loan. They send out mortgage statements that say, "Well, you know, if you're in bankruptcy, nothing on the statement means anything." They have a disclaimer on there that says, you know, "We're not attempting to collect anything. We don't necessarily think that this is owed."

But when a person who's in bankruptcy asks for a payoff statement, and they say, "All right, well, you know, it's great that you want to pay off your mortgage and get out of your bankruptcy case or whatever, this is how much you have to pay us." And the payoff statement includes unacceptable fees, but that's -- that's one way to find out whether they're charging it. And of course, that's exactly what happened here. The payoff statement, right, so -- and that's the fourth point in the sentence that we started out today, "What was more accurately described is a dispute about nothing of consequence to Plaintiff."

Right, so the payoff statement is, if you look at Exhibit 6, which is the payoff statement, and it shows the

recoverable corporate advance balance of $4,537.76.  So we asked for an itemization of that amount, and we've received that, and that's Exhibit 7.

Now, the first line on this itemization, with the date of 9/21/20, you could see that that's gray a little bit compared to the rest of it.

THE COURT:  Yes.

MR. SABATINI:  And that's how it was received.  And the reason why, I believe, is because that one line is a transaction that was not included in the payoff statement.  Right, this payoff statement's dated September 11th.  That transaction occurred on September 21st, right?  So if you ignore that $20 and you go to the end, you see that their total would be $4,537.76, right?  That's the exact amount that was on the payoff statement, right?

So now going back to the beginning of this, the bankruptcy case was filed, I believe in April of --

THE COURT:  Yes, April 30th, 2019.

MR. SABATINI:  Right.  So all of the charges on the first page, and the first four charges on the next page are all charges that they're seeking to collect from the Debtor that are still included in the payoff statement, and it includes the $900 in attorney's fees that -- I mean, filing-after-filing in this case, they say, you know, "We disclaimed any entitlement to those fees once we withdrew the notice of post-petition

23

fees.  The Debtor has, you know, no -- no longer is this of anything of consequence of the Debtor," but they're still -- they're still trying to collect it from the Debtor.

And it's not just on the payoff statement.  If you go to Exhibit 2, this is their mortgage statement.  And if you go all the way down to the bottom right, at the very bottom of the page, you see "Corporate advances, $4,537.76," right?  This is from -- statement date of September 16, 2020.  All right, so the exact same amount.  So they're sending monthly statements to the Debtor, saying that this is how much you owe, including all these fees that we said we weren't going to collect from you.

So that's the -- that's what the second complaint is about that you referenced earlier, is that they're --

THE COURT:  Right.

MR. SABATINI:  You know, at a minimum, they're violating 3002.1.  There might also be a violation of the stay or the confirmation order, that I need to do some additional research on.

Going back to the third issue in their first sentence, or their -- you know, the sentence I read before, "What should have been a discovery issue in the related bankruptcy case."  Then later in their brief, they say, "Any questions concerning the notice should have been resolved during the pendency of the related bankruptcy case through

discussions among counsel or common discovery practices." So, again, if the -- if you look at the conversation that I described with their counsel, the discussions with their counsel were unsuccessful in getting the information, even though I explained that if they didn't provide it, an action like this could be expected.

And then through common discovery practices, discovery wasn't available here because there was no contested matter, no adversary proceeding had been filed, right? So what they're saying is that I should file an objection to their claim to make available the discovery mechanisms so that I can then serve a discovery request that they're going to most likely object to, right? I mean, if they didn't provide the information after the conversations on the phone. There's very little downside to a defendant not providing information in discovery, at least initially. Discovery sanctions are rarely assessed. Defendants and plaintiffs know that judges don't like discovery disputes, so there's a disincentive for plaintiff to come in and push the issue, right? And so -- and there's no fee-shifting for any of that. If I do all of that, and it turns out that the charges were reasonable, then should I ask my client to pay me for that time? And why not just send the -- use the rights that RESPA and TILA provide, which is to send a simple letter? And if they don't provide the information that they're statutorily required to provide, then

25

they know that there's a consequence, and they're more likely to provide.

The existence of one remedy does not foreclose other remedies that are statutorily available to a consumer.  So the Third Circuit in Simon versus FIA Card Services, this is 732 F.3d 259, a 2013 case, involved the FDCPA and the Bankruptcy Code.  And the defendant was arguing that the FDCPA didn't apply because since the consumer was in bankruptcy, the Bankruptcy Code trumped the FDCPA.  And Third Circuit said, "When, as here, FDCPA claims arise from communications a debt collector sends a bankruptcy debtor in a pending bankruptcy proceeding, and the communications are alleged to violate the Bankruptcy Code or Rules, there is no categorical preclusion of the FDCPA claims."

Bankruptcy Judge Frank in the Eastern District talked about Simon, and he said, "In short, Simon instructs that if a creditor can comply with both the Bankruptcy Code and the Rules, and the FDCPA, the creditor must do so."  Well, there's no reason that RESPA or TILA should be treated differently than the FDCPA.

Finally, as I alluded to before, the mortgage company knows that there is a consequence of not responding to a request for information that is potentially stronger than an initial failure respond to a discovery request.  In Dryden v. Lou Budke's Arrow Financial Company, 630 F.2d 641, at Page 647,

26

the Eighth Circuit said, "The statutory damages are explicitly a bonus to the successful TILA plaintiff, designed to encourage private enforcement of the Act, and a penalty against the defendant, designed to deter future violations."  So that's exactly what we're doing here.  We're using a statute that Congress designed to -- and wanted it enforced the way that we're enforcing it here by filing a private action, which will encourage them to respond appropriately in the future.

Okay.  So next, further in the brief, they talk about the discovery responses, they admitted them into evidence.  And I don't agree that it's appropriate to, like, litigate discovery disputes, or to be characterizing what discovery showed when discovery never closed.  We never got to the end of discovery; I didn't get to take depositions.  But their characterization, nevertheless, is very misleading.  So if we look at their brief, they complain that the discovery casts doubt on whether Lewis had a legitimate basis to seek the information that he sought.

In Plaintiff's responses to first set of combined discovery requests directed to Plaintiff, "Lewis responded to a request that he identify any actions, if any, that he took from July 24, 2019 to present a refinance, payoff, or discharge the loan that he had with TMS by claiming the term 'your loan was ambiguous.'"  That's true, right.  If we look at the discovery responses, which is Defendant's Exhibit 3, the second page, we

object, "Plaintiff objects on the basis that the term 'your loan' is undefined and is ambiguous when construed as a combination of the two separate combined terms, 'Your' and 'Loan.'"

So they defined both of these terms. "Your" was defined to mean Clarence Lewis, and "Loan" was defined to mean the loan that's issuing all of this. So what they said was, "What actions did you take to pay off Clarence Lewis loan?" So we said that's ambiguous, but we're going to respond by omitting the word "Your." We're just going to assume that you didn't want to include the word "Your," and we're going to respond to the question on that basis. But that's not -- certainly not what you think after reading the brief. We identified the ambiguity that was in their question, and we told them, "Look, even though it's ambiguous, we're going to answer it the way you really wanted us to. We're going to answer the question you were trying to ask."

So next, they complain --

THE COURT: Was there a point to that whole discussion about "Your Loan"? Was there any -- I suppose you can argue that it's ambiguous, but is that the sole purpose you brought that to my attention? Because capital Y instead of, I guess, lowercase Y?

MR. SABATINI: The reason I -- they're using --

THE COURT: Could it have been "The Loan" instead of

28

"Your Loan?"

MR. SABATINI:  The reason I'm talking about it is because in their brief, they try to cast us in a negative light by saying, "Come on.  They objected to this on the basis that 'Your Loan' is ambiguous," and they made it look like because of that objection, we didn't provide any information.  That's -- I'm --

THE COURT:  Okay.  So you're making the point that you just pointed that out, but then you responded --

MR. SABATINI:  Right.

THE COURT:  -- substantively to the request.

MR. SABATINI:  Right.  That --

THE COURT:  Okay.  I'm just looking at this for the first time, so --

MR. SABATINI:  Right.

THE COURT:  Well, it was attached, but I'm looking at it closer now, I suppose, since you're pointing it out.

MR. SABATINI:  Right.

THE COURT:  Okay.

MR. SABATINI:  So the point is that they're using this objection to try to make us look bad as though we're being evasive.  And the fact is we could have been within our rights to say, "No, this is unclear, we're not going to respond to it."  Instead, we clarified the question for them and provided a response.  So if anything, this shows our good faith.

TRANSCRIPTS PLUS, INC.
215-862-1115 ● CourtTranscripts@aol.com
Case 5:19-ap-00116-MJC    Doc 133    Filed 02/22/23    Entered 02/22/23 12:30:52    Desc
Main Document    Page 28 of 77

Appx224

29

THE COURT: Okay, I got it.

MR. SABATINI: So the rest of their paragraph does the same thing, right? They complain that in our requests for admissions, we failed -- in our response to requests for admissions, Lewis wholly failed to answer simple questions, such as whether he attempted to pay off or discharge his loan, or whether he had the financial resources to do so. All right, well, request for admission is not a question, it's a contention, right? And admitting a request for admission, you know, has consequences.

In our responses to the request for admission, we denied -- we denied by saying, "Plaintiff objects to this request as being vague and ambiguous, as the term 'Discharge' is not defined." Right. The Plaintiff is discharging his loan, right? We could have simply denied this, because the Plaintiff's in bankruptcy, right? So from July 24, 2019 to present, Plaintiff has not attempted to pay off or discharge the loan. No, we can deny that simply. But rather than do that, we, again, pointed out to them, "Look, the reason that we're not admitting this is because discharge has a special meaning in this context, and it's different than what we think you're trying to say."

They say that our claim that TMS had a pattern or practice of non-compliance was baseless because discovery confirmed that Lewis could not establish the claim. Discovery

wasn't over.  Discovery can't confirm the absence of an ability to establish something until it's over, and you move for summary judgment, and you show, look, they have no evidence to support this allegation.

And then they say, "Indeed, TMS's lengthy and costly review revealed that this was the only instance where TMS did not directly respond to a request for information from a client in bankruptcy."  That's what's in their brief that they filed here on this motion, right?

But if you look at the -- at their discovery response, they identify, as one of the -- as a case, the complaint that I downloaded, and that I brought you to before where another bankruptcy debtor sent a request for information saying that the fees that were being charged were unreasonable. So clearly, this is not the only instance where they didn't respond.

THE COURT:  Are you aware of any others besides the Lewis case and this other one?

MR. SABATINI:  No.

THE COURT:  Because I remember being on a phone call early on where you were asking for them to review thousands of loan files, and they were objecting to thousands, saying that the only relevant ones would be less than tens of thousands and related to bankruptcy.  So, I mean, out of thousands of loan files, is the universe confined to just these two cases then?

31

MR. SABATINI: So, Your Honor, I disagree. I mean, that's how they characterized, but --

THE COURT: Well, I'm not asking you to agree or disagree. I'm just saying wasn't that the discussion back -- I want to say it was the fall of 2021?

MR. SABATINI: Well, no, I don't agree that that was the discussion.

THE COURT: Okay.

MR. SABATINI: They have thousands of loan files. What we had asked for was a sampling, right. We had initially -- we didn't know they had thousands. We asked for this information. They come back and say, we have thousands of loan files. We say we want a sampling, a random sampling, right. So identify, you know, sort all your files by account number, and give us every whatever file, right, to get down to a manageable number. So we never asked them to review thousands of loan files.

And then, you know, I -- the briefing, I'm sure that you've read through it. I don't know whether you have questions or concerns about the arguments that I made in the brief, I'd be happy to go over those. I could summarize them a bit here again, if you think that would be helpful, but I don't want to just regurgitate what I've already --

THE COURT: Well, I don't think there's any need for it. I'd like to hear from Attorney Haar whenever -- when

you're prepared to rest.

MR. SABATINI:  Yeah, I think that makes sense.

THE COURT:  Attorney Haar?

MR. HAAR:  Thank you, Your --

THE COURT:  You could sit down.  If you're more comfortable standing, please stand.  I apologize for not telling you that, Attorney Sabatini.

MR. SABATINI:  Did --

THE COURT:  If you want to sit down, you can.

MR. SABATINI:  Before you go, did you say progress or rest?  Because I feel like the evidence is all in, and we're just arguing, and I thought we'd be going back and forth perhaps.

THE COURT:  Well, I suppose -- you're not asking any questions, you're not cross-examining, you're just arguing?

MR. HAAR:  Correct, Your Honor.

THE COURT:  Okay.

MR. SABATINI:  Thank you.

THE COURT:  Well, then I guess we're all in with the evidence.  Go ahead.

MR. HAAR:  I appreciate Your Honor's invitation to sit.  But does Your Honor have a preference, whether I'm at counsel table or the podium?

THE COURT:  I have no preference.

MR. HAAR:  Okay.

33

THE COURT: Wherever you're comfortable.

MR. HAAR: All right. Well, if it's all right with Your Honor --

THE COURT: As long as I can hear you.

MR. HAAR: -- I will sit, because I've got a whole spread of papers now set out between briefs and exhibits, and all that stuff.

THE COURT: I understand.

MR. HAAR: So hopefully this will work.

And I will start with this premise, in looking at the cases that discuss fee petitions, I think Busy Beaver is accepted as the seminal case there, and the standard that they've articulated in one word is "reasonableness." And I don't believe that in Mr. Sabatini's entire argument before the Court, he used the word "reasonable" or "reasonableness" once. And I think moving on from Busy Beaver, Your Honor had a very recent case, In Re Badyrka --

THE COURT: It's Badyrka.

MR. HAAR: Badyrka. I was --

THE COURT: It's a good Northeastern Pennsylvania name.

MR. HAAR: I was not sure how to pronounce that, and I guess now I know. But I think the Court hit the nail on the head in that, that the issue in these fee petitions is what's reasonable. What would a reasonable lawyer or a law firm do

34

under the circumstances?  And I think if we take this case all the way back to the beginning, the exchange of -- the two letters that were sent to TMS, the alleged conversations that Mr. Sabatini had with prior counsel, Mr. Hanlon [sic], you know, it's common practice in this District that if there is a dispute, such as documents not turned over, it's as simple as requesting a status conference with the Court.  And if that alone doesn't spur the supposedly missing documents turned over, you can discuss it with the Court.  The Court may or may not give an initial impression of whether this stuff needs to be turned over.  You know, in this case, there would at least probably have been a longer discussion about are things like identifying the counsel involved and fee schedules and that between the Phelan firm and TMS fairly within the scope of an RFI or a qualified written request?

But if you're looking at this in terms of reasonableness, I think what you're hearing from Plaintiff is they knew they had an option that would expeditiously resolve the issue, and they had another option which would start the path to generating fees, and they chose to start the path to generating fees.  And I think that is where the path of reasonableness starts to diverge.

And I think Your Honor can see from the beginning of this dispute what was, I believe, a reasonable path forward by TMS.  They got the letter about thinking that the $900 was

TRANSCRIPTS PLUS, INC.
215-862-1115 ● CourtTranscripts@aol.com
Case 5:19-ap-00116-MJC    Doc 133    Filed 02/22/23    Entered 02/22/23 12:30:50    Desc
Main Document    Page 34 of 77

Appx230

35

unreasonable, and after they read it, they did take the affirmative step of withdrawing the $900 claim for fees. And it's not entirely clear why it was there was not a more formal response to those letters sent. You know, I think looking backwards at the time, and this is probably pure speculation, but it may have had something to do with the unwinding of the Phelan firm.

But in any event, there was a clear effort on behalf of TMS to respond to the concern by Mr. Lewis. And I think if you look after that going forward, the resolution is always just a little bit out of reach. And I think the impetus for that going forward is always that Plaintiff's counsel is looking to try and generate more fees out of this. For example, even after we provided -- even after we completely walk away from the $900 fee request, there's a demand, "Well, I still want to know all the information that's behind that." And I think if you look at -- Plaintiff has included in one of their exhibits, and I'm trying to find which one here, our discovery responses, it's Plaintiff's Exhibit 5. Even after the entire $900 is forgiven, there is still this demand that we identify the dates that the work was performed, the name and title of every professional that did do work, the amount of time that each professional did work.

So TMS, in an effort to try to assuage whatever concern this was here, is providing this information. And when

36

it's pointed out that some of these things are flat fees, there's more demands, "Yeah, well, we want to know who negotiated the rates between Phelan and TMS.  We want to know that those fees were actually paid."  So there's always this one more thing, this one other hurdle to try and keep jumping over such that a resolution is always just out of reach.

And, again, I think it's very -- Your Honor hit on this a little bit in asking Mr. Sabatini some questions during his argument, but I think the progression of these facts is key.  The first letter was in August, 2019.  The second letter, September 27th, 2019.  Approximately two weeks after that, TMS withdrew the $900 claim.  So that's clearly a benefit to Mr. Lewis.  And it's also clear at that point in time that as it relates to these requests, there's no out-of-pocket loss to Mr. Lewis.

And, again, if you're trying to look at this from the prospect of reasonableness, even accepting that there was some information that Plaintiff didn't have at that point, the question is how do you go about getting that in a reasonable manner?  And, for example, the Busy Beaver case instructs that the starting point for all considerations of reasonableness is the bankruptcy judge's impression of, you know, what fees or expenses should be incurred at the time.  And I would be willing to bet that if, at that point in time, Mr. Sabatini had come to the Court and said, "Hey, I need to get these three

small categories of documents, I think it's going to take me about $80,000, to do it," that would have been laughed out of court.  There are far more reasonable ways to try and obtain that.  And the information was then provided to Plaintiff.

So after Plaintiff's counsel initiates the adversary action through the first adversary complaint, again, TMS takes a reasonable response.  We see what is, at best, a single violation of RESPA or TILA with no out-of-pocket loss to Plaintiff.  And Defendant's Exhibit 1 is our first offer of judgment for $2,000.  You know, after that, there was a discussion between TMS's counsel -- I believe it was entirely my colleague, Mr. Riley, and Plaintiff's counsel, and the result of that was an increased offer of judgment.  Again, $7,000 for what Plaintiff was arguing at the time was, well, there's one violation of RESPA, there's one violation of TILA, two different things, but still no out-of-pocket loss to Plaintiff, he still can get all the information he's seeking.  And I think the Court can see, based on the evidentiary records in front of us, that that would have been a reasonable resolution of the claims for Mr. Lewis.

But I think what we can see from this is that Mr. Lewis does not appear to be looking for a grievance between the Phelan firm and TMS.  He doesn't appear to be looking for all this background information.  This is purely generated so that Plaintiff's counsel can start to increase those fees on the

38

claim, including some that I would point out in their exhibit binder really aren't even tied to the litigation itself. They sent subsequent requests for information, but I don't believe that those are appropriately attributed to the litigation. You don't need to have an adversary complaint open in order to send those requests for information. He sent them, they were reviewed, we provided responses.

So if we're looking at the reasonableness analysis on the specific claims for fees, you know, first of all, I think, as we've pointed out in our brief, the Plaintiff has to overcome the American Rule, which is that the Plaintiff pays for his own counsel. And I think TILA and RESPA both require a finding of a failure to comply before those fees are available, and that simply did not happen in this case. I think the briefing from Plaintiff tries to couch this as, "Well, they paid something so clearly that's an admission that there was a violation." And I think that's an argument out of the facts, but I don't think that's borne out by the evidence that's in front of the Court. I mean, candidly, by the time we got to mediation, it was clear to us based on the discovery responses that came in, which is Plaintiff's Exhibit 3, that this premise that there was a pattern and practice of not responding to RFIs was clearly disproven.

Your Honor did reference the phone call that we had in this matter. Now, TMS -- I forget the exact number of

claims -- the exact number of files that they have opened at any time, but it's over 100,000 clients that they have.

THE COURT: That's my recollection, as well.

MR. HAAR: Yeah, and what, you know -- although we didn't think we should have to review any of them, we ended up, based on a compromised discovery position, reviewing all those files where TMS's client was in bankruptcy. And that was done at considerable expense to TMS because there's not a computer field that says, you know, "Yes, this client has sent in an RFI." All those files had to be hand-reviewed to determine whether or not there was an RFI, and whether or not it was responded to. And the only thing that came out of that is the complaint, and it's only that, a complaint, that Plaintiff attached to their exhibits where somebody else made a similar accusation.

So between that, their discovery responses, we actually got an opportunity to see a little bit of Mr. Lewis himself during the mediation, we were content that there was not going to be any finding of a pattern and practice here. So that the money that was offered to Mr. Lewis was significantly less than having to take his deposition, likely defend some, and then go through dispositive motion practice. So --

THE COURT: Mr. Haar, let me interrupt you.

MR. HAAR: Sure.

THE COURT: I'm looking at the offer of judgment that

40

was accepted, and that's dated under your signature on March 16th, 2022. And you -- and I'll now quote, "Defendant, The Money Source, Inc., hereby offers to allow a judgment to be taken against it in satisfaction of all claims by Plaintiff, Clarence Lewis, in the amount of $6,000, plus an additional amount for costs and reasonable attorney's fees." When you wrote -- you wrote this, correct?

MR. HAAR: No, it was actually Mr. Sabatini who wrote it. We obviously agreed to it, and -- by its terms, I think it's an offer from TMS.

THE COURT: Okay. So the scrivener on this is Mr. Sabatini.

MR. HAAR: I believe that is the case, correct?

THE COURT: But I'm looking at your signature. That's your signature, correct?

MR. HAAR: It is indeed my signature.

THE COURT: So when you signed that, indicating that you were giving them $6,000 for all of Mr. Lewis's claims, plus -- and I'll say plus again, I'm not stuttering -- plus an additional amount for costs and reasonable attorney's fees, what did you mean by that?

MR. HAAR: Well, I think he's free to make a claim for it, and that's exactly what we're here on today. And again, going back to Busy Beaver, it's entirely up to the Court what, if anything, is a reasonable fee beyond the American

TRANSCRIPTS PLUS, INC.
215-862-1115 ● CourtTranscripts@aol.com
Case 5:19-ap-00116-MJC   Doc 133   Filed 02/22/23   Entered 02/22/23 12:30:58   Desc
Main Document   Page 40 of 77

Appx236

41

Rule.

THE COURT:  So is it your position today -- and I think I read in your brief that Mr. Sabatini is entitled to no fees?

MR. HAAR:  I -- well, I think under the American Rule, again, his fee would come out of the $6,000 that was paid to Mr. Lewis.  And, again, I think it's undisputed that Mr. Lewis had zero out-of-pocket losses under this claim.  In fact, he already had the benefit of the $900 assessment from TMS being waived.

THE COURT:  Then I guess your alternative defense is that if I find that he's entitled to attorney's fees, they must be reasonable, is that fair?

MR. HAAR:  Yeah, it's for the Court to determine what is reasonable.  The Busy Beaver case again says the starting point for that is the Court's impression of what would be a reasonable fee given the relief requested and the relief obtained.  Again, in this instance, the fees that Mr. Sabatini are requesting are more than 1,000 -- I mean, if you accept that all $6,000 is going to Mr. Lewis, the relief that Mr. Sabatini is requesting is more than 1,000 percent of Mr. Lewis's recovery.

THE COURT:  Okay.  Mr. Sabatini, I believe, referenced some subsequent documents from The Money Source where it seems as though your client is continuing to charge

42

that same $900 cumulative attorney's fees in documents that were sent to Mr. Lewis, is that correct?

MR. HAAR:  You're right that Mr. Sabatini said that. To be clear, the amended complaint that's making that accusation was filed this past Friday about 11 o'clock p.m.  I didn't see it until Saturday, and I've only had the most brief opportunity to discuss it with my client.

THE COURT:  No, I think it's attached -- it's in his documents that are admitted into evidence to today.

MR. HAAR:  It is.  And I'm just indicating that from the time -- I forget which letter it was that he was referencing.  It was Plaintiff's Exhibit 7, this is a letter that I sent to Mr. Sabatini October 26th, 2020.  And the first time anywhere that it's raised that anything identified on here is a problem is three days ago, whatever Friday was, January 27th or 26th, whatever the date may be.  But, you know, again, I did have a brief opportunity to review the newest amended complaint with my client, and I am advised that it is not an attempt to rebill those same charges through to Mr. Lewis, that these are all charges that are provided for underneath -- under the loan documents, and that these are standard fees that would be billed through to the client.  And again, I wish I had more detail on that, but having only had a few days --

THE COURT:  Well, Mr. Haar, I'm looking at Exhibit 6 --

43

MR. HAAR: Okay.

THE COURT: -- in conjunction with Exhibit 7, and Mr. Sabatini pointed out to me -- Mr. Sabatini can correct me if I'm wrong -- that your recoverable corporate advance balance is 4,537.76. And then your follow-up letter, which is Exhibit 7, is 4,557.76, which is only $20 off, and you have a line item in gray that's $20. And your letter at Exhibit 7 went to Attorney Sabatini, and it looks like your payoff -- your client's payoff at Exhibit 6 -- well, it's addressed directly to Clarence and Mary Lewis at their Taylor address. So it would seem to me that your payoff letter that's computer-generated from your client, as well as your letter that's on your letterhead, is still trying to collect the $900 that you're saying is waived, unless I'm misreading this, and you're here to correct me if I'm wrong.

MR. HAAR: And my client has advised me that that is not what they are trying to do.

THE COURT: So why did your client send Exhibit 6, and why did you send Exhibit 7?

MR. HAAR: Well, my client sent Exhibit 6 because -- I think it was -- it might have been Exhibit 5 that was a request for a payoff statement. They requested a payoff statement, and that's what was provided by The Money Source. And I sent Exhibit -- what's Exhibit 7. I think it references in the first line that it was in response to a letter dated

44

September 25th from -- 2020 from Mr. Sabatini.

THE COURT: But I think my point is your letter and your client's payoff is trying to collect the $900 in attorney's fees that you say are waived.

MR. HAAR: My understanding from my client is that that is not what those numbers are. I can see that there are two line items on the first page of Exhibit 7 that say -- that add up to $900. But with the bare bones information that was given me to put into Exhibit 7, I can't tell just from that that it's the exact same charges, and I'm advised by my client that it is not.

THE COURT: Now I have too many pages laid out here, so give me one second.

(Pause)

THE COURT: I think you withdrew -- your client withdrew the notice on October 7th of '19.

MR. HAAR: That sounds correct.

THE COURT: So the two numbers on your Exhibit 7 that add up to $900, one of them is -- the first one the top -- four lines down in your grid is from June 26th of '20 for 250, and then 650 is from August 30th of '19. So I would discount the $250 charge because that comes after all the issues in question. So you have so you have the 650 charge, which says ATTF reclasses, but I'll guess that's attorney's fees, and I'm only guessing, you can correct me.

45

The next charge, going down, is $100 so you're up to 750.

And then you have charges in May of '19:  May 16th of 250; May 7, '19, $470; May 7th of '19, $67.80.  And they're all post petition because I think we said the petition was file in April 30th.  Now I don't think that adds up to $900.  In fact, it adds up to more than $900.

So I'm just a little bit confused.  I appreciate that your client withdrew the notice on October 7th, and did that approximately 10 days -- nine or 10 days after Attorney Sabatini's second letter.  But then it seems like a year later, you're still trying to collect those fees, that's what those documents would appear.

MR. HAAR:  And, again, what my client has told me is that those are not the fees that were withdrawn for the $900, that they were other fees that were generated because of the bankruptcy.

THE COURT:  Okay.

MR. HAAR:  And beyond what's actually written in the October 26th, 2020 letter, I really can't tell you what they are.

MR. SABATINI:  Your Honor, I would object to hearsay testimony about what his client told him, right.  I'd like a chance to question him about, you know, what clearly seems to be.  I mean, if you look at the May 16th, '19 entry of 250, and

TRANSCRIPTS PLUS, INC.
215-862-1115 ● CourtTranscripts@aol.com
Case 5:19-ap-00116-MJC   Doc 133   Filed 02/22/23   Entered 02/22/23 12:30:50   Desc
Main Document   Page 45 of 77

Appx241

46

then the August 30, '19 entry of 650, that adds up to 900, right?  Maybe their notice didn't include all these other fees, but there's two fees that are labeled "attorney" that add up to 900.  And if his client wants to say that that's not what they were collecting, I'd like them here to say it.

THE COURT:  Well, we're just making an argument and I'll -- I'm looking at the documents, I'm listening to what counsel says, and I will give, I guess, your hearsay the appropriate weight, or lack thereof, Attorney Haar.  Continue.

MR. HAAR:  I'm trying to find where I was in my --

THE COURT:  Take your time toward.

MR. HAAR:  Okay.  Getting back to my outline here, I think part of the review -- you know, in determining the reasonableness of any fee, if any additional to be awarded to Mr. Sabatini, I think part of this needs to be an analysis of what tasks were actually undertaken, and what actually generated some benefit to Mr. Lewis.  And trying to review Mr. Sabatini's invoices on a line-by-line basis is a bit of an exercise in futility, and I think Your Honor hit on this a little on the Badyrka case.  You know, if he has all these one-tenths of an hour entries for "he called a client," "he called me," I can't say for sure whether or not that actually happened, whether that particular call was appropriate or not.  But we do know that large categories of time did not actually generate a return for Plaintiff.  I think the biggest example

47

of that is the chase after information about pattern and practice activity.  That was not proven by Plaintiff.  It's not reflected in the offer of judgment.  And I think in considering, you know, again what would be a reasonable fee to actually get the result that Plaintiff got, those -- items like that need to be discounted in their entirety.

So, again, I think really what this comes back to is -- and some of this is Monday morning quarterbacking.  I'm not sure if anybody up here is, you know, an Eagles fan.  There's probably a little bit of that, you know, after this past weekend, but --

THE COURT:  Well, Attorney Haar, luckily for you, the Judge is an Eagles fan, and we had some discussion on that this morning.  Are you an Eagles fan?

MR. HAAR:  I am.  I'm more Penn State fan, but I was Eagles game, not this week but the one before, and it's certainly a fun time to be around Philadelphia.

THE COURT:  Well, when the Judge tells you he's an Eagles fan, you probably should just stick with, "Yes, I'm an Eagles fan," and move on but I like Penn State, too, so --

MR. HAAR:  Good.  But, again, some of this is Monday morning quarterbacking, and I think it's meant to be.  But looking back on what started this complaint, what was necessary to actually get important information to the Plaintiff, it certainly did not take $80,000 to get to a resolution that was

TRANSCRIPTS PLUS, INC.
215-862-1115 ● CourtTranscripts@aol.com
Case 5:19-ap-00116-MJC    Doc 133    Filed 02/22/23    Entered 02/22/23 12:30:    
Main Document    Page 47 of 77

Appx243

48

obtained here by Mr. Lewis.  And I think the cases tell us that it's for the Court to determine what would -- what is a reasonable fee under the circumstances if you get past the American Rule.

THE COURT:  Are you done?

MR. HAAR:  I am, Your Honor.  Thank you.

THE COURT:  Anything in response, Attorney Sabatini?

MR. SABATINI:  Yes, Your Honor.  Thank you.

This case is not about getting information on the $900.  This case was about The Money Source refusing to comply with its duty under the statute to provide information.  That the information about the $900 was provided as part of the discovery here so that we could try and evaluate why they weren't providing the information, whether there was some willfulness, right?  Right, the information had some relevance to the case, but this case wasn't filed to get that information.

They say -- they said that the biggest example of the large categories of time that should be cut is the chase after information for pattern and practice activity, and that compensation for that activity -- he didn't use the word "compensation," but that that element of damages was not reflected in the offer of judgment.  That's completely inaccurate.

Statutory damages under RESPA are only available if

49

the consumer can demonstrate a pattern or practice. That's the reason that we needed the pattern and practice evidence. So when they give us an offer of judgment --

THE COURT: Attorney Sabatini, let me ask you a question though. When you filed your complaint -- and here's my concern -- were you aware -- you've -- and I don't know if I'll be able to find it, but did you allege that there's a pattern and practice with a good faith basis?

MR. SABATINI: So in the complaint, we --

THE COURT: Because if you did, how could you allege that without knowing if there were other cases? Because so far today, the only other case is a case from another court that you've put into your exhibits.

MR. SABATINI: Well --

THE COURT: I would think if you're alleging a pattern and practice in a Federal complaint, that you would be aware of a pattern and practice, and not making it a fishing expedition.

MR. SABATINI: So, first, there is a pattern and practice with respect to our client, right. So there's a legal question as to whether the pattern or practice has to be with respect to borrowers as a whole, or whether it's with respect to your client. And with my client, they had a pattern and practice, twice, right. So I can file that in good faith just on that.

TRANSCRIPTS PLUS, INC.
215-862-1115 ● CourtTranscripts@aol.com
Case 5:19-ap-00116-MJC   Doc 133   Filed 02/22/23   Entered 02/22/23 12:30:58   Desc
Main Document   Page 49 of 77

Appx245

50

But I think that the majority rule is that it's with respect to other borrowers, right. And the motion to dismiss -- I mean we could go back and look at the complaints, but the first complaint may have explained that -- I guess we could just look at it. Let me pull it up, I don't want to speculate. But eventually we filed -- I think the third amended complaint contains information about the other -- the other borrowers that we found. We found some people in the CFPB database and I think we found some other complaints. So we put in -- oh, we had some information from some people who used to work there, I think we saw some allegations about that. So in the operative complaint right now, we did have facts to describe the behavior with respect to borrowers, other than the Plaintiff.

So in the first complaint, I don't see any allegations of pattern and practice. I'm reading it quickly, but I don't see anything in the first one.

(Pause)

MR. SABATINI: Okay. So in the first amended complaint, we described the conduct, and we say that during -- Paragraph 46 -- or Paragraph 45, "Defendant failed to timely provide the other servicing-related information that was requested in each of the letters."

Paragraph 46, "During the period beginning on the date that Defendant received the August letter, and continuing through the date that this adversary proceeding was filed,

51

Defendant did not provide Plaintiff with any of the information that was requested in letters.  Defendant's conduct in willfully refusing to acknowledge receipt of the letters or to provide the information requested in the letters establishes a pattern or practice of non-compliance with the requirements."  Right, so there, I'm talking about their conduct with respect to this borrower only.

The next paragraph, "Defendant's handling of mail received from other borrowers establishes a pattern or practice of non-compliance with requirements."

And then to satisfy Rule 9011, it says, "The allegation in this paragraph is likely to have evidentiary support after an opportunity for discovery."  Right, so that's what the Rule says, that if you don't have the information yourself, but you have a reasonable belief that this is going to be out there, you could put that in.  This wasn't enough to survive the motion to dismiss.

So in the next amended complaint, we provided information about borrowers that we found.

THE COURT:  I think my point was when you made the allegation in the complaint or the amended complaint, did you have any facts to support that?  Or are you just throwing something out there, and then you cover yourself by putting in that qualifier?

MR. SABATINI:  Well, I think that's the purpose.  The

52

purpose of the qualifier is to provide notice that we don't have these -- right, that's what Rule -- let's see what Rule 9011 says. "The allegations have evidentiary support or, if specifically so identified, are likely to have evidentiary support after an opportunity for further investigation or discovery." Right, how could the borrower know what they're going to find in discovery, right? So this is what you have to put out there to say, "Look, I don't have the facts in my possession right now to support this but" --

THE COURT: Typically, Counsel, in my experience when you are alleging a pattern and practice, the plaintiff or the party in whatever case would have knowledge of a pattern and practice. There would be knowledge that the, in this case the lender had a pattern and practice of violating RESPA, or TILA, or any other claims. It's not shoot first and then ask questions. There's usually some knowledge to support the allegation, that's what I'm saying.

MR. SABATINI: Well, I think that for certain types of information, the Defendant is the only one who has access, right. So we do --

THE COURT: So you're going to make an allegation and wish that it comes true in discovery.

MR. SABATINI: No. I'm making an allegation, and I'm saying that we don't have the facts to support this. It says if you specifically identify it, that you believe that the --

TRANSCRIPTS PLUS, INC.
215-862-1115 ● CourtTranscripts@aol.com
Case 5:19-ap-00116-MJC   Doc 133   Filed 02/22/23   Entered 02/22/23 12:30:58   Desc
Main Document      Page 52 of 77

Appx248

53

if specific -- the allegations have support, or specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. And so this allegation was specifically identified, right. Defendant saw that, and said, "Oh, we don't think that's enough." They came and they filed a motion to dismiss, this was all litigated. It was decided that there wasn't enough there, so for our next amended complaint we went in and we provided information about other people who had to support the pattern and practice allegation. The -- and I believe that they sought to dismiss that complaint, too, and that that one -- that Judge Opel found that -- that there was a plausible basis to find pattern or practice based on those facts.

THE COURT: Proceed.

MR. SABATINI: So, again, they said that the chase after information for this activity, that this was not reflected in the offer of judgment. To get statutory damages under RESPA, you have to show pattern or practice. The offer of judgment was for the maximum of available statutory damages. So the offer of judgment, although it doesn't specifically identify -- reference pattern and practice because no defendant is going to say, "Here's an offer to admit that we have a pattern or practice of violating whatever," right? That's not the type of language you expect to see in there. The dollar amount demonstrates that that the full statutory damages were

54

awarded.

They say that large categories of time didn't generate a return for Plaintiff, what he says here now. In their reply brief, they only identified two specific sets of time entries. And, you know, when I get the last word in briefing, and I come in to oral argument, I expect to hear from the other side all the reasons why my brief is wrong. And I heard -- I don't know if I heard anything today about anything that they disagreed with in my brief.

Who's to blame for not settling? There was no discussion about this offensive email that they used to introduce themselves to me. That they've attacked us every time during this case, their brief mentions to me 68 times. And they say "Sabatini was already off to the races pumping up his fees." I show that the value of the case, if you add the $6,000, and the $7,048.50 that they've agreed was a reasonable lodestar at the time that the -- that I made my $13,000 settlement demand, we were offering to settle for less than what the case was actually worth.

So their offer, on the other hand, was for $2,000, inclusive of fees. So we had a $13,000 demand, and that wasn't a "take it or leave it" demand. We demanded $13,000 and if -- and with the benefit of the Monday morning quarterback, and we could see that that was actually less than what the case was ultimately worth. There's been no discussion about that.

55

They came into this case --

THE COURT: Attorney Sabatini, I'm sorry. Where is the $13,000 offer? Is that in one of your exhibits?

MR. SABATINI: No, it is -- if you go into my brief, the first page is the email from them, it says, "Carlo, you and I have not been opposite of each other before but many, many of my consumer finance colleagues have been. Thus, I know your MO, including doing unnecessary things to jack your fees. Given the max, your QWR clients is 2,000," there's a typo there, "and not budging off them. I understand we all need to make a living, however, not on this one. I think your demand was $13,000. Assuming the letters are actual QWRs and/or RFIs, neither appear to be seeking servicing information, but rather calculation of outside counsel fees to review bankruptcy pleadings, and did not violate your ethical constraints not to communicate with my client on issues on which you knew it was represented, then all your client is entitled to his $2,000 and reasonable attorney's fees."

So that -- that $13,000 offer that they're referencing, again, this is the first time that I've had any communication with them is this email. So obviously, that $13,000 demand was not made to them, it was obtained by Mario Hanyon, right. So they come in and replace Hanyon's firm, and now they have to sell themselves to their client. If they come in and they say, "Well, you know what, Carlo offered $13,000,

56

and looking at the situation here, you might get a $6,000 statutory damage award, you might have $7,000 in fees now, that doesn't seem that bad.  You know, maybe you want to counter a little bit."  Well, if that's what they come in and tell their client after their client fired Hanyon to hire them, presumably at some expense, how are they going to get hired again the next time, right?  So they need to settle this case for less than $13,000.  So they've been pointing their finger at me being the one jacking up my fees, but the whole time because they were -- they didn't recommend that offer to their client, and they needed to come in with the big strong stance and try and make me come down from the 13,000 substantially to justify the fees that they're charging their client.  There was no talk about any of that.

They talk about the $2,000 and the $6,000 -- or $7,000, I'm sorry.  The $2,000 and $7,000 offers of judgment, both of those offers were inclusive of attorney's.  I'm sorry - - yes, both of those -- the 2,000 was not inclusive of fees. It was 2,000 and fees, and reasonable fees accrued as of the date of this offer.  Well, that means that all the time spent on the fee application and the litigation to try and determine the amount of the fee, none of that would be compensable. Judge Nealon found that that's the -- that that language is effective to cut off fees after the date of the offer, right. So, you know, particularly after receiving an introductory

57

email such as that one, it would not have made sense for me to think that the fee litigation would be anything other than very contentious, right.

So for me to agree to do all of that, and then if they decide to appeal, the appeal is for free, too.  To agree to do all of that without getting compensated for it, if they could force us to do that, no one will do this area of law.  It's already a very, very under-represented area of the law, it's it's not an attractive area.  The -- you only get paid for your time.  You're not getting paid, you know, a big percentage basis of some personal injury case, and you're only getting paid if you win.  And what you get paid for your time is going to, you know, -- is subject to -- subject to attack and this type of fighting.

There was no discussion of why I think Badyrka doesn't apply.  Badyrka deals with Section 330, right, and with your obligation to independently review fees that are being charged to the bankruptcy estate.  Here, it's a completely different situation.  The Third Circuit has made it clear that you are not supposed to reduce fees, other than in response to specific objections that they've raised sufficient to give me notice of the objection.  It's not okay for them to come in here today and say -- and to say what they've said, that the biggest example is the chase after information for pattern and practice activity, so that -- and they shouldn't get paid for

58

time spent -- well, actually that was addressed a bit in the brief, I'll take that back.

The other thing with Badyrka is that there was some language in there that if I were writing the opinion might have been written differently.  But largely --

THE COURT:  I'm sorry, what did you just say?

MR. SABATINI:  There was some language in Badyrka that, you know, obviously if I were writing the opinion would have been written a little differently.

THE COURT:  Well, Attorney Sabatini, I don't mean to point out the geography here, but I'm up here and you're down there.

MR. SABATINI:  I get it.

THE COURT:  As I admonished Mr. Haar, I don't know if I'd say that if I was down there to the Judge sitting here, but --

MR. SABATINI:  Well --

THE COURT:  Go ahead.

MR. SABATINI:  But what Badyrka really was about, the actual holding was that -- was on delegation.  Ninety-five percent of the fee reduction that you applied in Badyrka, 95 percent of it came from determinations that certain activities should have been performed by lower paid professionals.  He hasn't raised a single objection to a single entry that that entry should have been done by a lower paid professional,

59

right.

So -- so, you know, I understand why, you know, Badyrka is obviously not a good opinion for me, so they're going to want to, you know, say this is Badyrka, this is Badyrka, this is Badyrka. But this is this is not Badyrka. There's nothing to do with delegation.

And, again, Badyrka is really my first negative fee opinion, as I mentioned in the first affidavit. I looked back to 2010, and I found 12 cases where I filed a fee application that was opposed by a defendant. In nine, I got the full amount that was requested. Nine contested fee applications out of 12, I got every penny. And the remaining three cases, I got 93 percent, 92 percent, and 80 percent.

So, you know, I think courts have generally looked favorably on my fee applications. I provide a lot of detail in the bill. And I do -- Judge Lloret, "Plaintiff's counsel's legal work was excellent. After a line-by-line review, Plaintiff made significant reductions based upon Defendant's objections. These deductions were thoughtful and well-reasoned, and appear to have been made in a good faith effort to reach a fair resolution of the fee issue." That's exactly what I did here. I gave them my bill, I said come back to me with the objections that you have. All the objections that they didn't -- all the entries that they didn't object to, which is the substantial majority of the bill at that time, is

on the A-1 exhibit, right.  The remaining entries, the A-2 exhibit, if you look through that, you'll see that I went ahead and I discounted a substantial number of those entries in response to the objections that they made.  But by far, the -- by far, biggest part of their objection during that dialogue where we're trying to work out the fees was that -- was for the time spent briefing, and I think the other one was for interoffice conferences.  Eighty-four percent of the -- 80 percent -- 84 percent of the dollar value of those objections was on those two issues.  So that's all I talked about, for the most part, in my first brief was I laid out the substantial authority in this District that shows that we brief very efficiently, and that actually our briefing should have cost a lot more than it did, and that the interoffice conferences that we had were not substantial relative to the amount of time, and what's been going on in this litigation.

So even though that was the -- what I understood to be the premise on why most of those entries were on the A-2 bill, why 84 percent of the dollar value of that A-2 bill was there, they didn't touch on those issues in their brief.  They have essentially forfeit those objections.

So the only specific objections they've raised, they no longer appear to be pursuing.  And unlike Badyrka where you said the Court doesn't have to go line-by-line-by-line through an application.  Here, it's their duty, it's the Defendant's

61

duty to identify the specific parts of the bill that it objects to. And the Third Circuit says it is necessary -- the emphasis is in the original, it is necessary that the court go line-by-line-by-line through the billing records supporting the fee request so to evaluate the objections that the Defendants raised.

So here, they haven't pointed to anything in the bill where they're saying this entry is problematic. They haven't addressed proportionality, but they're still arguing it today. They come in today and say, "Judge, you know, if Carlo came in at the beginning and said, 'hey, look I need this information about this $900 thing that was withdrawn, it's going to cost $80,000 to get it,' that would never be viewed as reasonable," right. So that's a complete proportionality argument.

The Third Circuit has rejected proportionality for ERISA, for Civil Rights, and for RICO. Those are the only three times they've talked about it since the Supreme Court's decision on it in <u>Riverside</u>. Since -- and within the Circuit, Judge Conner rejected it for a Fair Credit Reporting Act claim; Judge Caputo rejected it for a Individuals With Disabilities Education Act claim; and then in the Eastern District, a Fair Labor Standards Act claim. So every decision I was able to find, proportionality has no relevance.

So I get it. It looks shocking to look at this and say, "Hey, this is an $80,000 bill on a $6,000 claim," right.

**TRANSCRIPTS PLUS, INC.**
**215-862-1115 ● CourtTranscripts@aol.com**
Case 5:19-ap-00116-MJC   Doc 133   Filed 02/22/23   Entered 02/22/23 12:30:5?   ??
Main Document   Page 61 of 77

Appx257

62

And if there is some degree of proportionality, then what that teaches me is you can't bring these claims because the banks need to send a message that you're wasting your time.  If you sue us over $6,000, you're going be held to some proportional fee.  The Judge is not going to give you 80 grand if we make you spend 80 grand worth of time.  So we're going to make you spend that time, we're going to appeal the case, we're going to fight you hard everywhere.  And at the end of the day, maybe you get six grand, you get something proportional, or you get 12 grand, right.

So, again, my brief spends a substantial amount of time talking about proportionality because they made these -- they made an argument like that in their brief; they don't attempt to rebut it.  They talk about the American Rule, but they don't address the Third Circuit's clear authority that I outline in my brief, that a fee waiver has to be explicit; that to the extent there's an ambiguity here, it's construed against them.  The fact that I may have -- and I don't remember whether we wrote this offer of judgment that they tendered.  I suspect that we did because it's common for us to try to resolve cases by saying, "Look, you sent us an offer of judgment that contains this problematic language cutting off our fees, right. Here's an offer of judgment that we'll accept.  So sign this and send it back, and we'll accept this," right.  So that's something that we do.  I don't know whether this was changed.

63

You know, after I sent it to them, I don't know whether they said, "Oh, well, we don't really like that, we're going to tweak it."  But even if I'm the one who drafted it, it's their offer.  There's no way that an ambiguity should be construed against me because I showed them a way to try and get the case resolved.

There's been no discussion about <u>Buckhannon</u>, the Supreme Court's case that shows that to demonstrate an entitlement to fees, we can do that by showing a judicially sanctioned material alteration of the legal relationship between parties.  And that -- and the cases I cited, District of Massachusetts case which says that, "Circuit Court cases addressing Rule 68 judgments after <u>Buckhannon</u> uniformly find prevailing party status."  So -- now that was in 2009.  I did spend some time looking, I didn't find anymore, and there might, but I didn't -- I didn't find anymore Circuit Court cases on this issue, but my research was brief.  But at least as of 2009, it was unanimous that if you get a Rule 68 judgment, you're a prevailing party.

And prevailing party status is what the statutes talk about to have entitlement to fees.  These statutes talk about a successful action to enforce liability, but the two terms are interchangeable.  Judge Kosik, I think --

THE COURT:  I've read your brief.

MR. SABATINI:  If we're not getting a fee -- all of

64

us aside, for us to not get a fee, we would have to explicitly waive it.  And, you know, clearly, as you mentioned, the offer contains a provision -- a contractual provision entitling us to contractual attorney's fees.  So, again, nothing there.  I heard nothing today to rebut our argument that we've had a very high degree of success.  They said that the award of a statutory penalty is, quote, "minuscule and minimal," right.  And they say -- and they say that -- but --

THE COURT:  Attorney Sabatini, I know you're paraphrasing through your brief, which I read, attacking their brief or lack of briefing.  But I'd like to direct your attention to your Exhibit 15, which appears to be your bill -- billing statement from December 11th through January 31st, and that's in the amount of $16,102.  It was $16,434, but you gave a discount of $332.  This appears to be for all work done after your initial brief, is that accurate?

MR. SABATINI:  Yeah, and if I could make a -- point something out to the Court here.  My brief said that our time, as of the time that the brief was filed, said that I spent $13,570.45 for time preparing this brief.  That contains a mistake, right, that number was too large.  The way that I kept track of my time on this was I had an outline that I was working off of when I was working on my brief, and every time that I started working, I wrote down what time it was.  And then every time I stopped working, I wrote down what time it

TRANSCRIPTS PLUS, INC.
215-862-1115 ● CourtTranscripts@aol.com
Case 5:19-ap-00116-MJC   Doc 133   Filed 02/22/23   Entered 02/22/23 12:30:58   Desc
Main Document   Page 64 of 77

Appx260

65

was.  So I had all these -- and if you -- and actually, if you look in the itemized listing of service, you know, in the -- you could see those time entries on there showing the start and stop times.

So then to calculate the amount, I took those, and I put them in an Excel spreadsheet, and then I added them up.  But I -- the screen that I was looking at, there were a few rows up at the top where I had duplicated some of the entries.  So the -- and then I summed up a whole column, so that 13,500 is inaccurate.  If you add up the time spent on the briefing that's on this bill, you'll see that it's less.

So I would -- and then in the exercise of --

THE COURT:  So you worked on your reply brief about 30 hours?

MR. SABATINI:  Roughly.

THE COURT:  Okay.

MR. SABATINI:  Yeah, I would say.  I mean, that's pretty close.

THE COURT:  Okay.  Anything else, sir?

MR. SABATINI:  So I would --

(Cell phone ringing)

MR. SABATINI:  I apologize for that. It's on silent, too, I don't know what happened.  I guess the alarms override silent.

So I would ask for 15,000 for the time spent since

the -- in addition to what was already on the original --

THE COURT:  I'm sorry.  Attorney Sabatini, I think I'm losing you here at the end.  What are you saying?

MR. SABATINI:  So the bill shows $16,102 in fees.

THE COURT:  Right.

MR. SABATINI:  I would ask for 15,000 of that time, in addition to the other times that I've previously -- the other amounts of I've previously identified.

THE COURT:  So you're cutting that by a $1,102?

MR. SABATINI:  Yes, sir.

THE COURT:  Anything else, sir?

MR. SABATINI:  No, Your Honor.  Thank you.

THE COURT:  I hesitate to ask, Attorney Haar, anything else?

MR. HAAR:  Your Honor, if I may have just a very brief -- I guess it would be surreply/rebuttal.

THE COURT:  Sure.

MR. HAAR:  And I think it's just four succinct points.

THE COURT:  And I'll allow Attorney Sabatini to respond.  I could stay here all night, if you want to.  We'll go -- it will be like a tennis match.

MR. HAAR:  Not in --

THE COURT:  I'm not looking left or right of me.

(Laughter)

67

MR. HAAR:  I'm not anticipating --

THE COURT:  So -- I'm afraid of the eyes that I'm getting.

MR. HAAR:  I'm not anticipating needing to go into the evening, Your Honor.  I think this should be brief.

THE COURT:  I'm not either.

MR. HAAR:  You had a discussion with Mr. Sabatini about whether or not he had a good faith basis to make the allegation that there was a pattern and practice.  And I'd refer Your Honor to Defendant's Exhibit 3, it's Page -- it starts on Page 3, which is response to Interrogatories 8, 9, 10, and 11, I don't know if you want to go to that in the paperwork there.  And this is where we asked them to identify these people that supposedly give them the basis to allege that there's a pattern and practice.  And we asked them to identify the consumers referenced in Paragraph 48 of the third amended complaint.  Interrogatory 9, we asked them to identify the consumer in Paragraph 49.  10, the consumers in Paragraph 50 and 51.  And, 11, the former employees in 50 and 52.  And we're kind of going from the bottom up, the response to interrogatory directs us to a response to 9.  The response to 10 directs us to the response to the Exhibit 9.  The response to Exhibit 9 directs us to Exhibit 8.  And the only thing that they can offer in response to our request for information is that they obtained information from the CFP database, but they didn't

68

keep a copy of any of it, and we're supposed to go find it ourselves.

And I would direct the Court further back to -- it is Page 8 of this exhibit which is Response to Document Request 8, "We ask for all documents in your possession related to the complaints to the Consumer Financial Protection" --

THE COURT:  I'm sorry.  Where are you directing me?

MR. HAAR:  Sure.  Defendant's Exhibit 3, Page 8.

THE COURT:  Okay.

MR. HAAR:  What we're looking at -- where it says 8 and 9, this is Plaintiff's response to Money Source's Document Requests 8 and 9.  And specifically what I'm referring to you is 8, this is where we're asking for this basis for the pattern and practice.  And we asked for all documents related to these CFPB complaints they're talking about.  And their response is "None."

So the -- if you tried to wade through the information that they had to make this allegation that there was a pattern and practice, you wouldn't get your ankles wet going through this.  There was very little there, but yet it formed the basis for why -- one of the reasons why we could never really try and get to any resolution on any of the underlying things.  There's always the theory that there was this big pattern and practice issue out there.

So, you know, I told you I had four points, the first

TRANSCRIPTS PLUS, INC.
215-862-1115 ● CourtTranscripts@aol.com
Case 5:19-ap-00116-MJC   Doc 133   Filed 02/22/23   Entered 02/22/23 12:30:5̇ ̇   ̇ ̇ ̇ ̇
Main Document    Page 68 of 77

Appx264

69

one is there really wasn't a basis for the idea that there was a pattern and practice.

The second point I wanted to talk about is the supposed $13,000 offer that was made by Plaintiffs. And I'd submit to you, that's not in record that's before the Court. What you see is, if you go to Plaintiff's Exhibit 1, this is kind of the second page of it where there's the clip of the email from my colleague, Trip Riley, about -- is Your Honor with me?

THE COURT: Yes.

MR. HAAR: If you go into that email, about the fourth line down, Trip Riley says, "I think your demand was 13,000." That, I believe, is the only place in here that that is referenced. There is not something in the record that says, "I will settle anything and everything as of -- I think the email -- January 22nd, 2020 for $13,000." That's not here. There's always the "I need more, I need more, I need more." That's why you get to discovery responses like Exhibit 5 where, you know, not only do they want us to respond to the letters -- formally respond to the letters that were sent back in 2019, they rephrase them as discovery requests, and that's why they're in what we've titled an Omnibus Response to Plaintiff's Request for Information. We're trying to fully and finally put to rest this idea that you need more information. So I throw that out there in response to the suggestion that there was

70

somehow a firm $13,000 offer that would have ended it; there wasn't.

I would -- I think the record also does not support what I would suggest is pure speculation on the part of Plaintiff's counsel that when Mr. Riley and I came into this, that we somehow had to sell to our client that you can't settle for 13,000, or we'd never get business from them, or something like that.  That is entirely speculation, and there's no basis for that in the record.  You know, it was -- our firm, when representing TMS, clearly made two offers of judgment in an effort to fully and finally resolve these issues, and that's the evidentiary record.  Not some suspicion about, you know, how we may or may not be trying to sell something to our client.

And the last point I would raise -- and I think, again, this really encapsulates all the cases that talk about attorney fee awards in this context.  You can find little clips from districts here and there, but my synopsis of it is there's clearly no jurisprudence allowing a court to award unreasonable attorney's fees.  There's always the qualifier that it's got to be reasonable fees somehow.  And it's ultimately the Court that determines whether or not something is reasonable.  When the Court says this is the fee that we will award, that is putting the imprimatur of the Court on that particular award.

And, again, without going into a snippet here and a

TRANSCRIPTS PLUS, INC.
215-862-1115 ● CourtTranscripts@aol.com
Case 5:19-ap-00116-MJC   Doc 133   Filed 02/22/23   Entered 02/22/23 12:30:5°   ⁻⁻⁻
Main Document    Page 70 of 77

Appx266

snippet there about, "Well, this I consider, and this I don't," I don't read any of these cases to handcuff the Court and say, "Well, I have to discount something specifically because it's unreasonable, but for some reason I can't touch it." And I think that is what this ultimately comes down to, should the Court determine that a fee should be awarded. It's the Court that determines what, if anything, is reasonable.

THE COURT: Let me ask you a question, though.

MR. HAAR: Sure.

THE COURT: Attorney Sabatini, on his fee application --

(Cell phone ringing)

MR. SABATINI: I apologize.

THE COURT: Attorney Sabatini, you have to turn that phone off.

MR. SABATINI: Yeah, I apologize.

THE COURT: I think you've been around long enough. I let the first one go, but --

MR. SABATINI: Yeah, I -- I --

THE COURT: Some judges would throw you and your phone out the window or out the door. I'm somewhat tolerant, but phones should be off.

I was getting at the petition for attorney's fees.

72

Attorney Sabatini makes a point that $36,758 has not been challenged by you.

MR. HAAR:  And I would disagree with that characterization.

THE COURT:  Okay, and you can disagree, but let me --

MR. HAAR:  Okay.

THE COURT:  I'll finish where I was going with that.

MR. HAAR:  I'm sorry, I didn't mean to interrupt.

THE COURT:  It would be helpful to the Court if you did go through and tell me what's wrong with his fees.  If you both -- you both seem like you've read the Badyrka opinion, and I think I made some effort to go through line-by-line, or pointing out line-by-line what I disagreed with, and why I thought they were improper.  And I suppose I would have expected more from the Defendant to go after Mr. Sabatini based upon Badyrka, and I really don't see that in your papers.  You paint with a broad brush, but you don't get into the nitty gritty.  And I'm wondering if you're expecting the Court to do that for you.

MR. HAAR:  I am not, Your Honor.  And I think it was a mischaracterization by Mr. Sabatini to say that we somehow agree with everything we didn't specifically object to.  And I think I raised this during my first part of the argument saying some of those entries, it's impossible to tell, you know, is it something that contributed to a resolution or not.  There's so

73

many of these one-tenths of an hour entries that, you know, "I read a letter.  I call the client."  And I have no way to know if that is specifically true or not, and if that is a call that actually helped move the case along.

The things where we did take exception were, I think, where there were clear what we viewed as, you know, abuses here.  There were, for example, a number of times where Mr. Sabatini and his former colleague, Mr. Freeman, you know, spent time discussing areas of the case.  And I think, you know, something that came out of the Badyrka opinion is, you know, for somebody who's charging 415 an hour, which is towards the high end of what the Court would allow, you'd expect that there'd be a certain level of understanding of issues here without having to have internal conferences and research.  I mean, this is about two very short statutes.  The amount of research that went into it, I don't think was extensive, but that's what we saw in some of those instances.

So, again, I don't -- I'm certainly not asking the Court to go through on a line-by-line basis because I think the Court would run into the same frustration that we did.  That there are so many of these ticky-tack lines for small entries that it's impossible to determine what is appropriate and what isn't.

Again, I think that the Court can step back and say, "Look, I see what was alleged.  I have -- you know, as a

74

Bankruptcy Judge, I can make a reasonable expectation of what should have been done to get this to a good resolution, and this is how much time it would have taken."

THE COURT: Okay. Anything else?

MR. HAAR: Nothing further, Your Honor. Thank you very much.

THE COURT: Attorney Sabatini?

MR. SABATINI: Yes, Your Honor. Thank you.

THE COURT: And I'm not reopening the can of worms here. You can respond to his response.

MR. SABATINI: Right.

THE COURT: So I'm trying to -- we're gonna narrow this down.

MR. SABATINI: Yeah, right.

THE COURT: Not expand it, okay?

MR. SABATINI: And I appreciate the opportunity for the tennis, at any rate.

I completely disagree that you can make reductions to the bill based on your sense of, you know, being a Bankruptcy Judge, and what you think should have happened here. You're only allowed under the Third Circuit, I think it's Rode v. Dellarciprete, to make reductions based on specific objections that they've raised. This is about due process, right? They could raise these objections, and I could have had a chance to brief whatever the issues are, I have to have notice of them.

75

And so they say that there's no way to know if something is true. I -- that's true for 95 percent of every fee application, I guess the lawyer could be lying.

The $13,000 that they're saying is not in the record, it is. This is the email that they sent to me acknowledging the demand of $13,000. For them to say that's not in the record, it doesn't make any sense.

And then the discovery -- if you look at the -- at their Defendant's Exhibit 3, it's 58 pages. Page 10 is where we begin producing documents in response to their request in Paragraph 9 of the Request for Production. So they say we haven't produced anything -- there's about 40 pages of documents there that relate to the lawsuits referenced in the complaint.

And then on the interrogatories, they complained that -- that you look at 9 and it referred to 8 or -- I forgot how it was said. Interrogatory Number 11 and Interrogatory Number 10, they inferred were non-responsive -- or that they provided nothing because they said, "See the response to 9." But those interrogatories both say, "See the response to Request for Production 9," which is where we are referencing all of the documents that are attached to this. So Interrogatories 10 and 11 do reference a number of individuals.

Regarding the request to identify consumers, the CFPB website, you know, my partner Brett did this. You know, I

don't know, but I would be stunned if the CFPB website gives you the identification information for the consumers who file complaints on their website. I would expect all of that information to be redacted, and there to just be general -- you know, to tell you what the complaint is but not to provide the information about the consumers. So, you know, I don't know what more could be done there.

His fourth point, I don't remember what it was, so unless you had questions about it, I guess I'm done.

THE COURT: Point. Counterpoint. Mr. Haar, we're narrow, narrow, narrow. You don't have to speak if you don't want to.

MR. HAAR: I will end the tennis match there, Your Honor.

THE COURT: Okay.

MR. HAAR: Thank you.

THE COURT: I appreciate that. Well, I appreciate both of you coming forth. I appreciate the fact that you tried to resolve things. I have a lot to review. I'm going to take this under advisement, and I'll issue an order accordingly, okay?

Thank you. We're adjourned

MR. SABATINI: Thank you, Your Honor.

MR. HAAR: Thank you, Your Honor.

(Whereupon, at 4:17 p.m., the hearing was adjourned.)

77

CERTIFICATE OF TRANSCRIBER

I, KAREN HARTMANN, a certified Electronic Court Transcriber, certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

Karen Hartmann, AAERT CET 475   Date:   February 19, 2023
TRANSCRIPTS PLUS, INC.

**Sabatini Freeman, LLC**

216 N. Blakely St.
Dunmore, PA 18512
Statement as of: 1/31/2023

**Clarence Lewis**
**312 Church St.**
**Taylor, PA 18517**

Our file number: 3250-002

## Rate Summary

| Professional | Gross | | | Discount | | Net |
|---|---|---|---|---|---|---|
| Carlo Sabatini | 39.60 hours at $415.00/hr | $16,434.00 | | 0.80 hours | ($332.00) | $16,102.00 |
| Total: | 39.60 hours (before discount) | $16,434.00 | | 0.80 hours | ($332.00) | $16,102.00 |

## Itemized Listing of Services

| Date | Description | Rate | Hours | Amount | Discount |
|---|---|---|---|---|---|
| 12/11/2022 | Letter to Haar with settlement offer and explaining why they should settle now. . | CS 415.00 | 1.20 | 498.00 | 0.00 |
| 01/09/2023 | Read brief. | CS 415.00 | 0.40 | 166.00 | 0.00 |
| 01/09/2023 | Work on brief. [8:36 PM - 11:14 PM]. | CS 415.00 | 2.70 | 1,120.50 | 0.00 |
| 01/14/2023 | Work on brief. [3:04 PM - 3:43 PM, 4:05 PM - 4:24 PM]. | CS 415.00 | 1.00 | 415.00 | 0.00 |
| 01/20/2023 | Work on brief. [9:13 AM - 9:58 AM, 10:03 AM - 10:08 AM, 10:26 AM - 11:28 AM, 5:44 PM - 7:50 PM, 8:02 PM - 9:16 PM]. | CS 415.00 | 5.20 | 2,158.00 | 0.00 |
| 01/21/2023 | Work on brief. [1:30 PM - 3:31 PM, 3:52 PM - 5:38 PM, 5:48 PM - 6:01 PM, 7:00 PM - 8:36 PM]. | CS 415.00 | 5.60 | 2,324.00 | 0.00 |
| 01/22/2023 | Work on brief. [6:55 AM - 8:49 AM, 2:37 PM - 4:29 PM, 5:03 PM - 6:00 PM, 6:30 PM - 7:55 PM, 8:28 PM - 10:31 PM, 10:40 PM - 11:14 PM]. | CS 415.00 | 8.80 | 3,652.00 | 0.00 |
| 01/23/2023 | Work on brief. [7:35 AM - 8:22 AM, 8:22 AM - 9:33 AM, 10:10 AM - 11:25 AM, 11:45 AM-12:12 PM, 12:15 PM-1:10 PM, 8:30 PM - 10:40 PM]. | CS 415.00 | 6.80 | 2,822.00 | -332.00 |
| 01/30/2023 | Prepare for hearing. (Conservative estimate as time was not tracked). | CS 415.00 | 4.10 | 1,701.50 | 0.00 |
| 01/31/2023 | Prepare for hearing. | CS 415.00 | 1.80 | 747.00 | 0.00 |
| 01/31/2023 | Estimated travel time round trip to court. | CS 415.00 | 1.00 | 415.00 | 0.00 |
| 01/31/2023 | Estimated time to attend hearing. | CS 415.00 | 1.00 | 415.00 | 0.00 |
| | | *Sub-total Fees:* | | 16,434.00 | -332.00 |
| | | *Net Fees After Discount:* | | **16,102.00** | |

## Expenses

## Total

Net Fees After Discount: 16,102.00

**Appx274**

Net Expenses After Discount:     0.00

*Total:* **16,102.00**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Clarence Lewis,<br>    Appellant<br><br>v.<br><br>The Money Source, Inc.,<br>    Appellee | Case No. 3:24-cv-00387-JKM<br><br>(District Judge Julia K. Munley) |

## ORDER

Upon consideration of the Stipulation filed by the parties on April 11, 2024, (Doc. _5_) it is hereby Ordered that the Stipulation is approved. Lewis's acceptance from The Money Source, Inc. of the amounts awarded by the Bankruptcy Court shall not be deemed a waiver of any argument, and notwithstanding any such payment this Court shall retain jurisdiction over the appeal.

Date:___4/18/24___

_____
Julia K. Munley
United States District Judge

No. 3:24-cv-00387-JKM

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**CLARENCE LEWIS,**

Appellant,

v.

**THE MONEY SOURCE, INC.,**

Appellee.

---

On Appeal from the United States Bankruptcy Court for the Middle District of
Pennsylvania in Case No. 5:19-ap-00116-MJC

---

## BRIEF OF APPELLEE THE MONEY SOURCE, INC.

---

**Saul Ewing LLP**

Matthew M. Haar, Esq. (85688)
2 N. Second Street, 7th Floor
Harrisburg, PA 17101
Phone: (717) 257-7508
Fax: (717) 238-4622
Matt.Haar@saul.com

John Paul Regan, Esq. (320664)
One PPG Place, Suite 3010
Pittsburgh, PA 15222
Phone: (412) 209-2500
Fax: (412) 209-2570
JP.Regan@saul.com

Appx277

# TABLE OF CONTENTS

STATEMENT OF THE CASE.................................................................................1

SCOPE AND STANDARD OF REVIEW ...........................................................1

SUMMARY OF THE ARGUMENT ....................................................................3

ARGUMENT ........................................................................................................5

    I.    THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN AWARDING APPELLANT REASONABLE ATTORNEYS' FEES BECAUSE IT CONSIDERED ALL RELEVANT FACTORS IN RENDERING ITS DECISION. ....................................................................................................5

    II.   EVEN APPLYING APPELLANT'S STANDARD OF REVIEW, THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION BECAUSE APPELLEE SPECIFICALLY OBJECTED TO APPELLANT'S EXCESSIVE FEES, APPELLANT HAD NOTICE OF APPELLEE'S OBJECTION, AND THE BANKRUPTCY COURT ASSESSED APPELLANT'S REASONABLE ATTORNEYS' FEES ON THAT BASIS ALONE. ...............................................9

        A.  THE BANKRUPTCY COURT PROPERLY CALCULATED THE LODESTAR AMOUNT OF REASONABLE ATTORNEYS' FEES .............13

        B.  APPELLEE SPECIFICALLY OBJECTED TO APPELLANT'S ATTORNEYS' FEES AS EXCESSIVE AND THE BANKRUPTCY COURT BASED ITS DECISION ON THAT OBJECTION .........................................14

        C.  THE BANKRUPTCY COURT'S REDUCTIONS NEED NOT BE EXACTLY THE SAME AS THE OBJECTIONS RAISED ...........................17

    III.  THE BANKRUPTCY COURT'S COMMENTARY IS SUPPORTED BY THE RECORD AND SUPPORTS ITS DECISION ...........................................19

    IV.  CONCLUSION .................................................................................22

APPENDIX A

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bell v. United Princeton Properties, Inc.*,
884 F.2d 713 (3d Cir. 1989).............................................................................17, 18

*Blum v. Stenson*,
465 U.S. 886 (1984)......................................................................................10, 11

*Clemens v. New York Central Mutual Fire Ins. Co.*,
903 F.3d 396 (3d Cir. 2018)....................................................................................12

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)....................................................................6, 10, 11, 12

*In re Badyrka*,
2022 WL 4656034 (Bankr. M.D. Pa. Sept. 30, 2022) ...................................8, 21

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
806 F.3d 125 (3d Cir. 2015)....................................................................................3

*In re Gordon-Brown*,
340 B.R. 751 (Bankr. E.D. 2006) ...........................................................................2

*In re Szymczak*,
246 B.R. 774 (Bankr. D. N.J. 2000) ........................................................................8

*Johnson v. Georgia Highway Exp., Inc.*,
488 F.2d 714 (5th Cir. 1974) ..........................................................................6, 11

*Laurel Gardens, LLC v. Mckenna*,
948 F.3d 105 (3d Cir. 2020)....................................................................................3

*M3 USA Corporation v. Hart*,
2021 WL 2917374 (E.D. Pa. July 9, 2021)............................................................2

*Maldonado v. Houstoun*,
256 F.3d 181 (3d Cir. 2001)......................................................11, 12, 13, 15

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986)................................................................*passim*

*Rode v. Dellarciprete*,
    892 F.2d 1177 (3d Cir. 1990)................................................12

*Toshiba America Med. Sys., Inc. v. Valley Open MRI and Diagnostic Center Inc.*,
    674 Fed. App'x 130 (3d Cir. 2016) ........................................2

*United States ex rel. Palmer v. C&D Technologies, Inc.*,
    897 F.3d 128 (3d Cir. 2018).................................................19

STATE CASES

*Arches Condominium Ass'n v. Robinson*,
    131 A.3d 122 (Pa. Commw. Ct. 2015) ..........................2, 3, 5, 9

*In re LaRocca's Trust Estate*,
    246 A.2d 337 (Pa. 1968)......................................2, 5, 6, 21

*McMullen v. Kutz*,
    985 A.2d 769 (Pa. 2009) .........................................6, 21

*Vinculum, Inc. v. Goli Technologies, LLC*,
    310 A.3d 231 (Pa. 2024) ..............................................2

*Wert v. Manorcare of Carlisle, PA, LLC*,
    124 A.3d 1248 (Pa. 2015)..............................................2

FEDERAL STATUTES

Federal Rule of Civil Procedure 68 ...................................*passim*

15 U.S.C. §§ 1601 *et seq*..........................................15, 16

12 U.S.C. §§ 2601 *et seq*..........................................15, 16

iii

## STATEMENT OF THE CASE

Appellant, Clarence Lewis, appeals from an Order of the Bankruptcy Court, which awarded him $63,108.43 in reasonable attorneys' fees (he requested $81.678.68) plus $164.41 in costs in a dispute over $900.00.[1] Appellee, The Money Source, Inc. ("TMS" or "Appellee"), disclaimed any entitlement to the $900.00 in fees it had assessed against Appellant's loan, but Appellant persisted. After exchanging offers of judgment pursuant to Federal Rule of Civil Procedure 68, attempted mediation, and a contested fee petition resolved *substantially* in Appellant's favor, Appellant now seeks to undo the Bankruptcy Court's careful consideration in awarding Appellant reasonable attorneys' fees. Because the Bankruptcy Court exercises significant authority and discretion with respect to determining reasonable attorneys' fees, and it did not palpably abuse that discretion, its judgment should be affirmed.

## SCOPE AND STANDARD OF REVIEW

In awarding Appellant reasonable attorneys' fees, the Bankruptcy Court determined that "judgment was obtained through a Rule 68 Offer," ("Rule 68 Offer") and found that Appellee's Rule 68 Offer left "no doubt that the parties agreed to award attorney's fees to Plaintiff." (Opinion at 9, AA042; AA190). It is well-settled that "Rule 68 offers of judgment are governed by basic principles of contract law,"

---

[1] Appellee, The Money Source, Inc., paid the judgment, fee award, and costs in full on or around April 26, 2024.

and further, that issues of contract interpretation are matters of state law. *Id*. (citing *M3 USA Corporation v. Hart*, Civil Action No. 20-5736, 2021 WL 2917374 at *5 n.64 (E.D. Pa. July 9, 2021);[2] *see also Wert v. Manorcare of Carlisle, PA, LLC*, 124 A.3d 1248, 1259 (Pa. 2015) ("We apply Pennsylvania law to the offer of judgment which Defendant's counsel executed in Philadelphia")).

Since the interpretation of a contract is a question of law, this Court's standard of review is *de novo* and its scope of review is plenary. *Vinculum, Inc. v. Goli Technologies, LLC*, 310 A.3d 231, 242 (Pa. 2024). Pennsylvania law requires that attorneys' fees awarded as part of a contractual fee-shifting provision be reasonable. *In re Gordon-Brown*, 340 B.R. 751, 755 n.6 (Bankr. E.D. 2006). Further, "[i]t is hornbook law that the reasonableness of attorney fees is a matter for the sound discretion of the trial court and will be changed by an appellate court only when there is a clear abuse of discretion." *Id*. (citing *In re LaRocca's Trust Estate*, 246 A.2d 337, 229 (Pa. 1968) (brackets omitted)); *see also Toshiba America Medical Systems, Inc. v. Valley Open MRI and Diagnostic Center Inc.*, 674 Fed. App'x 130, 132-33 (3d Cir. 2016) (citing *LaRocca*, 246 A.2d at 339). Moreover, "[a]ppellate review of a trial court's order awarding attorney's fees to a litigant is *limited* solely to determining whether the trial court *palpably abused its discretion* in making a fee award." *Arches Condominium Ass'n v. Robinson*, 131 A.3d 122, 131 (Pa. Commw.

---

[2] A copy of the *M3 USA Corporation v. Hart* decision is attached hereto as Appendix A.

Ct. 2015) (emphasis in original, citation omitted). Finally, an appellate court may affirm a lower court's judgment "on grounds other than those considered by the [Bankruptcy Court] itself." *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 143 (3d Cir. 2015); *see also Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 116 (3d Cir. 2020) (observing, "we may affirm on any ground supported by the record, and an appellee may urge affirmance on such a ground even if the [Bankruptcy Court] overlooked it or it involves an attack on the [Bankruptcy Court's] reasoning.").

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court awarded Appellant reasonable attorneys' fees and costs pursuant to the Rule 68 Offer. As a matter of contract law, the interpretation and application of the Rule 68 Offer, including what constitutes "reasonable" attorneys' fees, is subject to state law. When applying the standards and considerations applicable under Pennsylvania law, the Bankruptcy Court, which observed the parties' and counsels' handling of the matter first hand, properly exercised its discretion and did not palpably err in calculating the reasonable attorneys' fees awarded to Appellant. When calculating this amount, the Bankruptcy Court had the discretion to rely on its knowledge of the matter, the parties and counsel, the efforts undertaken litigating the matter, and to consider various other factors to arrive at an award of attorneys' fees that it deemed to be reasonable. It did so. Thus, when the

3

Bankruptcy Court determined that Appellant was entitled to approximately 77% of the attorneys' fees that he requested, it did not abuse its discretion.

In the alternative, even when applying the standards that Appellant mistakenly relies upon, the Bankruptcy Court still did not abuse its discretion in awarding Appellant reasonable attorneys' fees. The Bankruptcy Court reached its decision by applying the lodestar method, which required it to determine the amount of reasonable fees by multiplying the hours reasonably expended on the matter by a reasonable hourly rate. Under the Third Circuit's jurisprudence, determining the amount reasonably expended on the matter required the Bankruptcy Court to exclude those hours that it deemed to be excessive, redundant, or otherwise unnecessary. Because the Bankruptcy Court relied on its own review of the case docket, its experience, a thorough review of the invoices submitted, and on the specific objections lodged by Appellee to which Appellant had ample opportunity to respond (and did so), the Bankruptcy Court (again) did not abuse its discretion in awarding Appellant reasonable attorneys' fees.

Finally, Appellant apparently takes exception to certain statements that reflect the Bankruptcy Court's judgment that the amount of time Appellant spent on this matter was excessive. Because those statements support the Bankruptcy Court's ultimate determination, and they are otherwise supported by the record, Appellant's argument falls flat.

4

For these reasons, and the additional reasons that follow, the Bankruptcy

Court's decision should be affirmed.

## ARGUMENT

I.     **THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN AWARDING APPELLANT REASONABLE ATTORNEYS' FEES BECAUSE IT CONSIDERED ALL RELEVANT FACTORS IN RENDERING ITS DECISION.**

When applying the proper legal standards to the Bankruptcy Court's award of

reasonable attorneys' fees and costs, it did not palpably abuse its discretion. In

determining the reasonableness of attorneys' fees, the Pennsylvania Supreme Court

stated that the amount of attorneys' fees is

> peculiarly within the discretion of the court of first instance. Its opportunities of judging the exact amount of labor, skill and responsibility involved, as well as its knowledge of the rate of professional compensation usual at the time and place, are necessarily greater than ours, and its judgment should not be interfered with except for plain error . . . . [T]he allowance or disallowance of counsel fees rests generally in the judgment of the court of first instance and its decision will not be interfered with except for palpable error.

*Arches*, 131 A.2d at 131 (citing *LaRocca*, 246 A.2d at 340). When considering the

amount of reasonable attorneys' fees that a party might be awarded, courts consider:

> the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

*McMullen v. Kutz*, 985 A.2d 769, 774 (Pa. 2009) (citing *LaRocca*, 246 A.2d at 339). The Bankruptcy Court's assessment of reasonable attorneys' fee was in accord with these factors. Accordingly, its decision was not palpable error.

As highlighted above, the Bankruptcy Court found that the award of attorneys' fees herein was governed by the Rule 68 Offer. (Opinion at 10, AA043). It noted that "the parties specifically and contractually agreed in the Rule 68 Offer . . . that [such attorneys' fees] must be 'reasonable.'" *Id*. To assess the reasonableness of Appellant's attorneys' fees, it applied the "lodestar method," which relies upon "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id*. (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Bankruptcy Court then outlined "other considerations" it deemed relevant to establishing reasonable attorneys' fees as set forth in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The *Johnson*-factors are coextensive with the considerations furnished by Pennsylvania law. *See McMullen*, 985 A.2d at 774.

After outlining these principles, the Bankruptcy Court summarized Appellee's objections, reiterating Appellee's contention that Appellant's proposed fees were excessive. (Opinion at 12, AA045) (noting Appellant's objections were "based on a blanket statement that the professional fees were wholly unreasonable," and, that "[t]he main thrust of [Appellee's] argument centered on what [Appellee]

6

characterized as [Appellant's counsel's] opportunistic billing practices and 'egregious overreach[ing]' and the lack of any benefit the requested information would have provided to [Appellant]."). As discussed further below in Section II.B, the Bankruptcy Court's summary of the "main thrust" of Appellee's argument *understates* and *underappreciates* the specific objections that Appellee lodged against Appellant's claimed fees *as a whole*. Nevertheless, the Bankruptcy Court then specified "[b]ecause [Appellee's] argument as to the reasonableness of the fees is basically limited to generalized statements regarding excessive time spent, the Court will limit its review of the time entries on that ground." (Opinion at 12, AA045).

With Appellant's objection in hand, the Bankruptcy Court found that Appellant's requested fees were excessive and determined that Appellant was entitled to reasonable attorneys' fees of $63,108.43 and $164.61 in costs "based upon a review of the case docket, the Court's experience and a thorough review of the invoices submitted . . . ." (Opinion at 11-12, AA044-45). It outlined its reasoning as follows:

> During the discovery phase of this litigation, [Appellant] filed a Motion to Compel Discovery on June 29, 2021, Dkt. # 65, with a supporting brief filed on July 9, 2021, Dkt. # 66. [Appellant's] Counsel spent 3.2 hours researching and 15.7 hours drafting the brief. The Court finds the time expended relating to a motion to compel discovery to be excessive and will reduce the fees by twelve hours. The reduction equates to $4,200 ($350/hr. x 12). [Appellant's] Counsel expended 11.5 hours on discussing and drafting the reply brief, Dkt. # 77. This too was

7

excessive and the fees will be reduced by 8 hours, *i.e.*, $2,800 ($350/hr. x 8).

[Appellee] objects to 98 entries of .1 hours totaling $4,067. Like in [*In re Badyrka*, Case No. 5:20-03618-MJC, 2022 WL 4656034 (Bankr. M.D. Pa. Sept. 30, 2022)], the Court finds [Appellant's counsel's] entries for almost every conceivable communication, no matter how minor, to lack billing judgment and will reduce those entries by 75% or $3,050.25. *See In re Szymczak*, 246 B.R. 774, 783 (Bankr. D. N.J. 2000) ("In reviewing Applicant's time records, it appears the Debtors were billed every time the Applicant picked up the telephone, uttered the Debtors' name, or looked at the Debtors' case; even where nothing meaningful occurred.").

In November 2022, [Appellant's] Professionals spent a combined 8.3 hours to draft a brief in support of the Fee Petition. The court finds that the time spent was excessive for a ten-page brief. The fees will be reduced by 3 hours for each attorney, *i.e.*, $2,295 (($415 x 3) + ($350 x 3)).

Lastly, [Appellant's] Counsel billed 30.1 hours for the reply brief in support of the Fee Petition, Dkt. # 131. Counsel discounted that amount by 6.8 hours. The Court finds the time expended was still excessive and will reduce the fees by 15 hours, *i.e.*, $6,225 ($415/hr. x 15).

The above disallowed attorney's fees total $18,570.25. Consequently, the Court finds a reasonable attorney fee in this matter is $63,108.43 [($81,678.68 - $18,570.25)].

(Opinion at 12-14, AA045-47). The Bankruptcy Court also noted that Appellant's counsel "has significant experience relating to disputes over the reasonableness of attorney's fees." *Id*. at 13 n.11, AA046.

The Court's Opinion as a whole, reflects that it appreciated the straightforward factual and procedural history of this matter, as well as the minimal amount in dispute. The Court's reasoning, in particular, reflects that it carefully

8

considered, expressly or implicitly: 1) the amount of work performed; 2) the character of the services rendered; 3) the difficulty of the problems involved; 4) the importance of the litigation; 5) the amount of value of the property in question; 6) the degree of responsibility incurred; 7) whether the fund involved was created by the attorney; 8) the professional skill and standing of the attorney in his profession; 9) the results he was able to obtain; 10) the ability of the client to pay a reasonable fee for the services rendered; and, 11) "very importantly," the amount of money in question. *Arches*, 131 A.3d at 131-132.

Against this backdrop, the Bankruptcy Court clearly did not abuse its discretion in awarding Appellant over $63,000 in attorneys' fees and costs (or approximately 77% of his requested fees and 100% of his requested costs) in a dispute over $900.00. Accordingly, its judgment should be affirmed.

**II. EVEN APPLYING APPELLANT'S STANDARD OF REVIEW, THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION BECAUSE APPELLEE SPECIFICALLY OBJECTED TO APPELLANT'S EXCESSIVE FEES, APPELLANT HAD NOTICE OF APPELLEE'S OBJECTION, AND THE BANKRUPTCY COURT ASSESSED APPELLANT'S REASONABLE ATTORNEYS' FEES ON THAT BASIS ALONE.**

Appellant incorrectly asserts that the Bankruptcy Court erred when it "reduced the fees for reasons not argued by TMS." Appellant's Brief at 13. Unlike the cases cited in Appellant's principle brief, this matter does not involve *statutory* fee-shifting because the Bankruptcy Court found that Appellant was *contractually*

9

entitled to attorneys' fees. (Opinion at 9-10, AA042-42). Thus, Appellant's case law is inapposite. However, even if we assume that the Bankruptcy Court was required to follow the procedure enunciated by Appellant, it still did not err.

As noted above, the Bankruptcy Court reached its decision by applying the lodestar method for determining reasonable attorneys' fees. A brief recitation of the origin of the lodestar method underscores the extensive *and active* discretion that the Bankruptcy Court exercises in making this determination. In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, the United States Supreme Court addressed the proper manner for determining reasonable attorneys' fees arising from a statutory fee-shifting provision. 478 U.S. 546, 563-64 (1986). Quoting *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court observed,

> [t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. To this extent, the method endorsed in *Hensley* follows the Third Circuit's description of the first step of the lodestar approach.
>
> . . . .
>
> We then refined our views in *Blum v. Stenson*, [465 U.S. 886 (1984)]. *Blum* restated that the proper first step in determining reasonable attorneys' fees is to multiply the number of hours reasonably expended on the litigation times a reasonable hourly rate. We emphasized, however, that the figure resulting from this calculation is more than a mere 'rough guess' or initial approximation of the final award to be made. Instead, we found that when . . . the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are

10

reasonable, the resulting product *is presumed* to be the reasonable fee to which counsel is entitled.

*Blum* also limited the factors which a district court may consider in determining whether to make adjustments to the lodestar amount. Expanding on our earlier finding in *Hensley* that many of the *Johnson* [*v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)] factors are "subsumed within the initial calculation" of the lodestar, we specifically held in *Blum* that the "novelty and complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as an independent basis for increasing the basic fee award. Although upward adjustments of the lodestar figure are still permissible, such modifications are proper only in certain "rare" and "exceptional" cases, supported by both "specific evidence" on the record and detailed findings by the lower courts.

*Delaware Valley*, 478 U.S. 563-65 (cleaned up).

In turn, the United States Court of Appeals for the Third Circuit stated, "[i]n calculating the hours reasonably expended, a court should 'review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (citation omitted). In addition, "[h]ours that would not generally be billed to one's own client are not properly billed to an adversary." *Id*. (citation omitted). As such, the Bankruptcy Court has "a positive and affirmative function in the fee fixing process, not merely a passive role." *Id*.

11

Under the lodestar method, "[t]he party seeking attorneys' fees has the burden to prove that the request . . . is reasonable." *Clemens v. New York Central Mutual Fire Ins. Co.*, 903 F.3d 396, 400 (3d Cir. 2018) (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). Further, "[t]o meet its burden, the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" *Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 433).

Here, the Bankruptcy Court did not abuse its discretion when it disposed its duty to calculate the lodestar amount of Appellant's reasonable attorneys' fees. In setting the lodestar amount, the Bankruptcy Court: 1) implicitly determined Appellant did not carry his burden of showing the hours expended on this matter were reasonable; 2) reviewed the time charged to decide which hours set out were reasonably expended for each particular purpose described, and it excluded those that were excessive, redundant, or otherwise unnecessary; and 3) calculated its own assessment of the hours *reasonably* expended times a reasonable rate. Thus, the Bankruptcy Court applied the proper procedure, and Appellant's contentions to the contrary should be rejected. *Delaware*, 478 U.S. at 564; *Maldonado*, 256 F.3d at 184.

Nonetheless, Appellant argues that the Bankruptcy Court erred by *sua sponte* reducing Appellant's requested fees, and that any such reduction was arbitrary.

12

Appellant's Brief, at 13-30.[3] Not so. Appellant's arguments are misguided for *three*

reasons.

### A.   THE BANKRUPTCY COURT PROPERLY CALCULATED THE LODESTAR AMOUNT OF REASONABLE ATTORNEYS' FEES

*First*, the Bankruptcy Court did not *reduce* Appellant's fee, but rather, it

calculated the lodestar amount of Appellant's reasonable attorneys' fees based on its

own assessment of the hours reasonably expended by Appellant's counsel, and

omitted time that, in its view, was excessive, redundant, or otherwise unnecessary.

(Opinion at 13-14, AA046-47); *Delaware*, 478 U.S. at 564; *Maldonado*, 256 F.3d at

184. This case does not represent, and Appellant neither argued nor proffered

specific evidence establishing, that this is a "rare" or "exceptional" case justifying

---

[3] Appellant also asserts that certain charges were not in dispute because Appellee "stipulated" to the reasonableness of those charges. *See* Appellant's Brief at 6, 9, 10, 16-17, 19-20, 22. However, Appellant's assertions are mistaken because Appellee withdrew any such stipulations upon the filing of the Petition. *See* Stipulation at ¶ 9 ("Notwithstanding any contrary language in this stipulation, [Appellee] further retains the right to argue that **no** award of fees is appropriate, and that therefore no fee at all should be awarded.") (emphasis in original). As reflected in the record, and notwithstanding Appellant's numerous references to alleged "stipulations," Appellant: 1) was aware that, upon the filing of his Petition, any amount stipulated to for the sake of negotiating an agreed-upon amount of attorneys' fees was subject to Appellee's objections upon the filing of his Petition; and, 2) Appellee's opposition expressly challenged the reasonableness of his requested fees in their entirety. *See* Appellee's Brief in Opposition to Plaintiff's Petition for Attorneys' Fees and Costs at 9 n.4, AA237 (noting that any stipulations were "subject to objections raised following the filing of [Appellant's] Petition, which are outlined herein."), and at 18, AA246 (stating, "[w]hen considering the totality of the circumstances, the fees sought in the Petition are clearly excessive."). So, for example, Appellant is mistaken in contending that Appellee "did not object to 98 entries of .1 hours," because that objection is clearly lodged as an exemplar of Appellant's poor billing judgment and excessive fees within Appellee's opposition. Appellee's Brief in Opposition at 18, AA246.

13

an upward adjustment in the lodestar amount. *Delaware Valley*, 478 U.S. 565. For this reason alone, the Bankruptcy Court's judgment should be affirmed.

### B. APPELLEE SPECIFICALLY OBJECTED TO APPELLANT'S ATTORNEYS' FEES AS EXCESSIVE AND THE BANKRUPTCY COURT BASED ITS DECISION ON THAT OBJECTION

*Second*, Appellee specifically objected to Appellant's requested fees as excessive, and the Bankruptcy Court based its findings on that objection. (Opinion at 12, AA045) (noting, "Because [Appellee's] argument as to the reasonableness of the fees is basically limited to generalized statements regarding excessive time spent, the Court will limit its review of the time entries to that ground."). There can be no disputing that Appellee objected to Appellant's fees as excessive, and the Bankruptcy Court agreed. However, because Appellant devotes much of his brief to arguing that Appellee failed to *specifically* raise it objections, this point is worth exploring further.

As noted above, the Bankruptcy Court's statement that the "main thrust" of Appellee's argument "centered on what [Appellee] characterized as [Appellant's counsel's] opportunistic billing practice and 'egregious overreach[ing]' and the lack of any benefit of the requested information" sells Appellee's objections vastly short. Appellee argued that Appellant was not entitled to recover *any* fees beyond those contained in the agreed-upon judgment amount as stated in the Rule 68 Offer. It then specifically objected to Appellant's remaining claimed fees as *wholly* excessive for

14

various reasons, including: 1) Appellant was not entitled to *any* attorneys' fees under the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq*. ("TILA") or the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq*. ("RESPA"); 2) the fees sought were disproportionate to the amount in dispute and the value of the case to Appellant; 3) the fees sought violated the Bankruptcy Court's Code of Professional Conduct; 4) Appellant's counsel lacked billing judgment; 5) Appellant's claims were improperly brought as affirmative claims rather than resolved as a discovery issue in the underlying bankruptcy proceeding; 6) Appellant's claims were not supported by the facts adduced during discovery; 7) Appellant would have been made whole through Appellee's previous offers of judgment; and, 8) other reasons outlined in Appellant's Brief in Opposition to Plaintiff's Petition for Attorneys' Fees and Costs ("Appellant's Brief in Opposition"). *See* Appellant's Brief in Opposition at 4-21, AA232-249. Specifically pinpointing individual entries (aside from identifying exemplar entries meant to highlight the unreasonableness of the fees requested) when challenging Appellant's fees in their entirety was unnecessary. Doing so would have been redundant and a waste of the parties' and the Bankruptcy Court's resources, especially considering the Court's independent obligation to remove excessive, redundant, and otherwise unnecessary entries. *Delaware*, 478 U.S. at 564; *Maldonado*, 256 F.3d at 184.

15

Moreover, to understand why Appellee took this approach in its Opposition, it should be emphasized that Appellant initially premised his request for reasonable attorneys' fees and costs on the statutory fee-shifting provisions contained in TILA and RESPA *alone*, not on the language contained in the Rule 68 Offer. *See* Appellant's Brief in Support of His Petition for Attorneys' Fees and Costs, at 2-4, AA216-18. Appellant so argued because the parties understood that Appellee mistakenly failed to indicate in the Rule 68 Offer that Appellant's award of attorneys' fees was intended to be *inclusive* of the judgment offered. *See id.*; Appellant's Reply Brief in Support of Fee Application, at 4 n.6, AA351 (noting, "Although [the Rule 68 Offer] contained a 'plus fees' provision identical to that contained in the earlier offer of judgment, [Appellee] later explained that that language was included by mistake and that the new offer was instead a lump sum offer that precluded recovery of additional attorney's fees."); *see also* AA373-74.

In its Opinion, the Bankruptcy Court rejected the parties' mutual understanding of the accidental "plus fees" provision in Rule 68 Offer as parole evidence when it ruled that the Rule 68 Offer created a contractual obligation underpinning the award of reasonable attorneys' fees. (*See* Opinion at 7, AA040) (noting, "[t]he general rule of contract interpretation under Pennsylvania law is the intent of the parties to a written contract is contained in the writing itself. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence,

16

Appx296

instead, the meaning of a clean and unequivocal written contract must be determined by the contents alone.") ( internal quotations and citation omitted). As such, although the Bankruptcy Court asserted that Appellee "ignored" the language of the Rule 68 Offer, this is not so. (Opinion at 8, AA041). Appellee responded, in kind, to the arguments Appellant raised in his Petition, including specifically objecting to Appellant's claimed fees as excessive. Appellee cannot be said to have "ignored" a basis that Appellant did not raise. For these reasons, Appellee's approach was tailored to Appellant's argument, and its objections were sufficiently specific.

### C. THE BANKRUPTCY COURT'S REDUCTIONS NEED NOT BE EXACTLY THE SAME AS THE OBJECTIONS RAISED

*Third*, in *Bell v. United Princeton Properties, Inc.*, a case upon which Appellant primarily relies, the Third Circuit recognized that "the type of reduction made by the court [need not] be exactly the same as that requested by the adverse party" as long as (1) "the fee applicant is given sufficient notice to present his or her contentions with respect to the reduction that the district court ultimately makes"; (2) "any reduction is based on objections actually raised by the adverse party"; and (3) "the [Bankruptcy Court] . . . provide[]s a concise but clear explanation of its reasons for the fee award." 884 F.2d at 721-723. The Bankruptcy Court's decision was consistent with *Bell*.

17

At the risk of redundancy, Appellee specifically objected to Appellant's claimed fees as excessive, and it provided numerous justifications in law and fact, including analogous caselaw, for why this was so. *See* Appellant's Brief in Opposition at 4-21, AA232-249. Appellant was provided sufficient notice of Appellee's objections, and, in fact, responded to those objections in his Reply Brief in Support of Fee Application, and had the opportunity to address them at the hearing on his Petition on January 31, 2023. *See* Appellant's Reply Brief in Support of Fee Application, AA343-65; Hearing Transcript, 1/31/23, AA054-130.

In addition, the Bankruptcy Court explicitly noted that it was basing its determination on "excessive time spent" by counsel, and it made determinations based on its assessment that certain of Appellant's fee entries were excessive. (Opinion at 12, AA045). Finally, the Bankruptcy Court provided a clear explanation for the fee award, including that it based its analysis "upon a review of the case docket, the Court's experience and a thorough review of the invoices submitted," Appellant's counsel's "significant experience relating to disputes over the reasonableness of attorney's fees," and by providing its reasoning and calculations related to the entries that it deemed were excessive. (Opinion at 12-14, AA045-AA047). Accordingly, even under Appellant's standard of review, the Bankruptcy Court did not abuse its discretion. *Bell*, 884 F.2d 713, 721 (noting, "[e]xcessiveness of time spent in light of an applicant's expertise is a legitimate reason for reducing

18

a fee award."); *United States ex rel. Palmer v. C&D Technologies, Inc.*, 897 F.3d 128, 137 (3d Cir. 2018) (affirming district court's reduction of fee award in an amount greater than argued for by opponent).

## III. THE BANKRUPTCY COURT'S COMMENTARY IS SUPPORTED BY THE RECORD AND SUPPORTS ITS DECISION

Appellant takes issue with certain statements contained in the Bankruptcy Court's Opinion that provide color to its reasoning. Rather than representing error, as Appellant argues, the Bankruptcy Court's commentary supports its decision that the fees claimed by Appellant were unreasonable and excessive for several reasons.

To reiterate, the Bankruptcy Court based its determination that the fees sought by Appellant were excessive, in part, on its experience, a review of the case docket, and a thorough review of the invoices submitted. (Opinion at 12, AA045). So, when the Court suggests that it "tends to agree with [Appellee] that 183 hours of time spent on this matter appears excessive," it is basing that determination on its experience, its knowledge of the case, and its familiarity with counsel. This Court should respect a determination of this nature based on the Bankruptcy Court's experience and familiarity with this matter.

Nor does Appellant's entreaty to consumer protection laws salvage his position. *See* Appellant's Brief at 31 (arguing "to the extent that the court believes that on a generalized basis any particular number of hours is too large for a consumer

19

protection matter, that judgment is mistaken."). As the United States Supreme Court

noted in *Delaware Valley*,

> [a] strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a "reasonable" fee is wholly consistent with the rationale behind the usual fee-shifting statute, including the one in the present case. These statutes were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client. Instead, the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws. Hence, if plaintiffs, such as Delaware Valley, find it possible to engage a lawyer based on the statutory assurance that he will be paid a "reasonable fee," the purpose behind the fee-shifting statute has been satisfied.

*Delaware Valley*, 478 U.S. at 565. Contrary to Appellant's argument, the

Bankruptcy Court explained, as it is entitled to so do, that Appellant's claimed fees

were excessive and unreasonable, notwithstanding the fact that it may involve a

statutory fee-shifting provision (although, here, it did not). Appellant's complaints

to the contrary are not a basis for reversal.

Similarly, Appellant takes exception to the Court's consideration of the

proportionality of the award of attorneys' fees to the amount in dispute, claiming

that consumer protection laws do not countenance such considerations. Appellant's

Brief at 32-33. Again, Appellant is mistaken because his award of attorneys' fees

was premised upon the contractual obligations arising from the Rule 68 Offer, which

are subject to Pennsylvania law. Pennsylvania law holds that the amount of money

20

in question is "very important," when assessing the reasonableness of attorneys' fees. *McMullen*, 985 A.2d at 774 (citing *LaRocca*, 246 A.2d at 339). This argument also fails to justify reversal.

Next, Appellant claims that the *Badyrka*-case is not a basis to reduce his claimed fees. Appellant's Brief at 33-36. However, Appellant also acknowledges that in *Badyrka*, "the [same] court reviewed a fee petition filed in an unrelated case by the same attorney representing [Appellant] here and was critical of the billing practices." *Id*. at 33. *Badyrka* shows that the Bankruptcy Court is intimately familiar with Appellant's counsel and his billing practices. As such, *Badyrka* provides additional support for the conclusion that the Bankruptcy Court's discretionary determinations that were based on its own experience should not be undermined. Compared to this Court, the Bankruptcy Court had a better understanding of this case and its (lack of) complexity, it knew the parties, and, most importantly, it knew Appellant's counsel's billing tendencies. *Badyrka* bears that out.

Finally, insofar as Appellant claims that the Bankruptcy Court improperly relied upon facts not of record, the same can be said of Appellant's allegations to the contrary. *See* Appellant's Brief at 37-41. Appellant's allegations, which appear in his brief alone, are not matters of record and they have not been judicially determined. For example, the timing of this suit in relation to when Appellee disclaimed its entitlement to the $900 in fees is the subject of a separate adversarial

21

proceeding between the parties that has not been resolved. *See Lewis v. The Money Source, Inc.*, Adv. No. 5-23-ap-00007-MJC, United States Bankruptcy Court for the Middle District of Pennsylvania. Nevertheless, there is no indication in the Bankruptcy Court's Opinion or otherwise, that it reduced Appellant's claimed fees for any other reason than those stated therein. The Bankruptcy Court provided a concise explanation as to why it found Appellant's claimed fees to be unreasonable. Its judgment should be affirmed.

## IV.   CONCLUSION

For the reasons set forth above, Appellee, The Money Source, Inc., respectfully requests that this Court affirm the Judgment of the Bankruptcy Court.

Respectfully submitted,

Dated:  June 26, 2024

/s/ *John Paul Regan*
Matthew M. Haar, Esq. (85688)
Saul Ewing LLP
2 N. Second Street, 7th Floor
Harrisburg, PA  17101
matt.haar@saul.com – 717-257-7508

John Paul Regan, Esq. (320664)
Saul Ewing LLP
One PPG Place, Suite 3010
Pittsburgh, PA 15222
jp.regan@saul.com

*Attorneys for Defendant The Money Source Inc.*

22

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. Bankr. P. 8015(h), I certify that this document complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B), which allows a brief that contains no more than 13,000 words. This brief contains 5,188 words. Counsel is relying on the word count feature of the word-processing system used to prepare the document.

/s/ *John Paul Regan*
John Paul Regan, Esq.

# CERTIFICATE OF SERVICE

I hereby certify that this document has been served on all counsel and parties

of record through the Court's CM/ECF System.


Date: June 26, 2024                                    /s/ *John Paul Regan*
                                                       John Paul Regan, Esq.

No. 3:24-cv-00387-JKM

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

**CLARENCE LEWIS,**
*Appellant,*

v.

**THE MONEY SOURCE, INC.,**
*Appellee.*

_____

On Appeal from the United States Bankruptcy Court
for the Middle District of Pennsylvania
in Case No. 5:19-ap-00116-MJC

---

## REPLY BRIEF OF APPELLANT CLARENCE LEWIS

---

Carlo Sabatini
SABATINI LAW FIRM, LLC
216 N. Blakely St.
Dunmore, PA 18512
(570) 341-9000
carlo@bankruptcypa.com

*Attorney for Appellant*
*Clarence Lewis*

July 17, 2024

Appx305

**TABLE OF CONTENTS**

Table of Contents..................................................................................................... ii

Table of Authorities ............................................................................................... iv

    I.    Argument ........................................................................................... 1

        A.    This case is over TMS's failure to comply with statutory obligations; it is not "a dispute over $900." .................... 1

        B.    TMS did not "withdraw" the stipulation, nor could it have ........... 2

        C.    TMS's identification of "exemplar entries" was not sufficiently specific to challenge the fees ............................................ 3

        D.    TMS mischaracterizes the parties' understanding of the operative offer of judgment by instead referring to a different offer of judgment that was never accepted ....................... 5

        E.    TMS does not attempt to show that it ever objected to time spent briefing ...................................................................................... 7

        F.    TMS mischaracterizes the record ............................................................ 8

        G.    The calculation of the attorney's fee is not limited by Pennsylvania law. ....................................................................................... 9

            1.    TMS forfeit this argument by not raising it below. ................ 9

            2.    The contractual right to attorneys' fees in the accepted offer of judgment is an **additional** avenue to recover fees and should not be read to limit Lewis's separate statutory right to receive a fee award ..................... 11

            3.    Federal courts deciding attorney's fees pursuant to accepted Rule 68 Offers of Judgment base the calculation on federal authority rather than state law ....... 13

            4.    The parties intended for federal law to apply to the calculation of the fees ................................................................. 14

ii

5. If the Court decides that Pennsylvania law should be used to calculate the fee, then it would also have to decide which of various competing Pennsylvania standards should be used................................................ 16

6. TMS inaccurately characterizes the trial court's faulty lodestar analysis as instead being a proper post-lodestar *LaRocca* or *Johnson* reduction......................... 21

II. Conclusion.................................................................................................... 24

III. Certificate of Compliance........................................................................ 26

IV. Certificate of Service................................................................................. 26

iii

## TABLE OF AUTHORITIES

**Federal Cases**

*Albertson v. Winner Auto.,*
   2004 WL 2435290 (D. Del. Oct. 27, 2004) ................................................................ 14

*Albrechtsen v. Bd. of Regents of the Univ. of Wisconsin Sys.,*
   309 F.3d 433 (7th Cir. 2002) ........................................................................................ 4

*Alexander v. NCO Fin. Sys., Inc.,*
   2011 WL 2415156 (E.D. Pa. June 16, 2011) ............................................................ 14

*APC Filtration, Inc. v. Becker,*
   2008 WL 548765 (N.D. Ill. Feb. 25, 2008) ................................................................ 4

*Bagot v. Ashcroft,*
   398 F.3d 252 (3d Cir. 2005) ........................................................................................ 11

*Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.,*
   877 F.3d 136 (3d Cir. 2017) ........................................................................................ 10

*Bell v. United Princeton Properties, Inc.,*
   884 F. 2d 713 (3d Cir. 1989) ........................................................................................ 7

*Bilazzo v. Portfolio Recovery Assocs., LLC,*
   876 F. Supp. 2d 452 (D.N.J. 2012) ............................................................................ 14

*Blanchard v. Bergeron,*
   489 U.S. 87 (1989) ........................................................................................................ 21

*Blum v. Stenson,*
   465 U.S. 886 (1984) ...................................................................................................... 23

*Clemens v. New York Cent. Mut. Fire Ins. Co.,*
   903 F.3d 396 (3d Cir. 2018) ........................................................................................ 18

*D.A. Nolt Inc. v. Philadelphia Mun. Auth.,*
   2022 WL 2048668 (E.D. Pa. June 7, 2022) .............................................................. 19

*David v. AM Int'l,*
   131 F.R.D. 86 (E.D. Pa. 1990) .................................................................................... 14

iv

*El Club Del Barrio, Inc. v. United Cmty. Corps.*,
735 F.2d 98 (3d Cir. 1984) .............................................................................. 12

*Falkenstein v. Santander Bank, N.A.*,
2015 WL 3439853 (E.D. Pa. May 27, 2015) ....................................................... 14

*Former Emps. of BMC Software, Inc. v. U.S. Sec'y of Lab.*,
31 C.I.T. 1600 (2007)......................................................................................... 4

*Garcia v. Rubin & Rothman, LLC*,
2018 WL 4562457 (D.N.J. Sept. 24, 2018) ...................................................... 14

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).......................................................................................... 5

*In re Trib. Media Co.*,
902 F.3d 384 (3d Cir. 2018)............................................................................. 10

*Interfaith Com. Org. v. Honeywell Int'l, Inc.*,
426 F.3d 694 ................................................................................................... 4

*Johnson v. Georgia Highway Exp., Inc.*,
488 F.2d 714 (5th Cir. 1974) ...............................................................21, 22, 23

*Joseph Q. Mirarchi Legal Servs., P.C. v. Thorpe*,
2020 WL 2030036 (E.D. Pa. Apr. 28, 2020) .................................................... 19

*LaRocca's Trust Estate*,
246 A.2d 337 (Pa. 1968)................................................................................. 22

*Lazarska v. Cnty. of Union*,
2006 WL 2264455 (D.N.J. Aug. 8, 2006)......................................................... 14

*Lima v. Newark Police Dep't*,
658 F.3d 324 (3d Cir. 2011)............................................................................ 12

*Lozano v. Hazleton*,
2015 WL 5895545 (M.D. Pa. Oct. 6, 2015)..................................................... 4, 5

*M3 USA Corporation v. Hart*,
2021 WL 2917374 (E.D. Pa. July 9, 2021) ...................................................13, 15

v

Appx309

*Miller v. Adrenaline Amusements, Inc.,*
  2023 WL 2186568 (E.D. Pa. Feb. 22, 2023) ............................................................ 18

*Minnick v. Dollar Fin. Grp., Inc.,*
  2002 WL 1023101 (E.D. Pa. May 20, 2002) ............................................................ 14

*Montemuro v. Jim Thorpe Area Sch. Dist.,*
  99 F.4th 639 (3d Cir. 2024) ............................................................................................ 10

*Navarro v. Monarch Recovery Mgmt. Inc.,*
  2014 WL 2805244 (E.D. Pa. June 20, 2014) ......................................................... 14

*Perdue v. Kenny A. ex rel. Winn,*
  559 U.S. 542 (2010) ......................................................................................................... 21

*Polselli v. Nationwide Mut. Fire Ins. Co.,*
  126 F.3d 524 (3d Cir. 1997) .................................................................................. 17, 18

*Polselli v. Nationwide Mut. Fire Ins. Co.,*
  1993 WL 479050 (E.D. Pa. Nov. 12,1993) ............................................................ 20

*Puzzangara v. Evans Assocs.,*
  2011 WL 2273726 (E.D. Pa. June 9, 2011) ........................................................... 14

*Rosner v. Faloni L. Grp., LLC,*
  2021 WL 933371 (D.N.J. Feb 8, 2021) .................................................................... 14

*Souryavong v. Lacka. Cnty.,*
  872 F.3d 122 (3d Cir. 2017) ........................................................................................ 22

*Stover v. Riley,*
  30 F. Supp. 2d 501 (E.D. Pa. 1998) ......................................................................... 14

*Taormina v. Heritage Env't Servs., Inc.,*
  2017 WL 3912353 (W.D. Pa. Sept. 5, 2017) ........................................................ 14

*Torres v. Metro. Life Ins. Co.,*
  189 F.3d 331 (3d Cir. 1999) ........................................................................................ 12

*United States v. Dowdell,*
  70 F.4th 134 (3d Cir. 2023) ......................................................................................... 10

vi

*Williams v. NCO Fin. Sys., Inc.,*
   2011 WL 1791099 (E.D. Pa. May 11, 2011) ............................................................ 14


**State Cases**

*Arches Condo. Ass'n v. Robinson,*
   131 A.3d 122 (Pa. Commw. Ct. 2015) ...................................................................... 22

*Croft v. P & W Foreign Car Serv., Inc.,*
   557 A.2d 18 (Pa. Super. 1989) .............................................................................. 19, 20

*In re LaRocca's Tr. Est.,*
   431 Pa. 542 (1968) ......................................................................................... passim

*McMullen v. Kutz,*
   985 A.2d 769 (Pa. 2009) ............................................................................................ 22

*Samuel-Bassett v. Kia Motors Am., Inc.,*
   613 Pa. 371 (2011) .................................................................................................. 16, 18

**Federal Statutes**

11 U.S.C. § 1325(b)(1)(B). .................................................................................................. 1

**State Statutes**

41 P.S. § 503 ................................................................................................................... 17, 20

**Federal Rules**

Fed. R. Bankr. P. 8015(a)(7)(B) ...................................................................................... 26

Fed. R. Bankr. P. 8015(h) ................................................................................................. 26

**State Rules**

Pa. R. Civ. P. 1716 .............................................................................................................. 17

Pa. R. Civ. P. 1717 .............................................................................................. 17, 18, 20

# I. Argument

### A. This case is over TMS's failure to comply with statutory obligations; it is not "a dispute over $900."

TMS tries to minimize the importance of this action by twice stating that this is a "dispute over $900." (TMS's Brief, hereafter "Br.", at pp. 1 and 9.) First, the implication that $900 is not substantial enough to justify this case is callous. That amount, tacked on to a borrower's mortgage, is a sizeable sum to most people, let alone to someone who is in a Chapter 13 bankruptcy case and who must therefore pay all of his disposable income to his creditors. See 11 U.S.C. § 1325(b)(1)(B). More importantly, TMS is simply wrong. This dispute was not over $900.[1] Instead, it was over TMS's refusal to comply with its statutory duties under RESPA and TILA to respond to a consumer's request for information regarding his mortgage loan. The consumer was entitled to recover statutory damages of $6,000.00 for TMS's noncompliance. TMS acknowledged as much by tendering an offer of judgment for that amount.

---

[1] The "dispute over the $900" that TMS unlawfully sought from Lewis was resolved in a subsequent, separate lawsuit. TMS recently settled that action with an agreement to pay Lewis $10,000 for potential punitive damages, plus attorney's fees. See n. 4, infra.

1

*B.     TMS did not "withdraw" the stipulation, nor could it have.*

TMS attempts to disavow the stipulation by claiming that it "withdrew any such stipulations upon the filing of the [fee petition]." (Br. p. 13, n. 3.) However, TMS had no power to unilaterally withdraw a stipulation, nor did TMS make any effort to do so. And, the trial court recognized the binding effect of the stipulation when it observed that the parties had "filed a stipulation . . . that designated certain fees and costs on which they were able to agree." (AA 037.) The court further credited the stipulation for the point that TMS had "stipulated that the hourly rates of Plaintiff's professionals are reasonable." (AA 043, n. 7.)

It is true that the stipulation did reserve for TMS the right to argue that **no fee at all** should be awarded. (AA 167 at ¶ 9)("Notwithstanding any contrary language in this stipulation, Defendant further retains the right to argue that no award of fees is appropriate, and that therefore no fee at all should be awarded.") And, TMS did avail itself of that right by arguing that acceptance of an offer of judgment did not establish a failure to comply with RESPA and TILA and that, therefore, Lewis was "not entitled as a matter of right to an award of attorneys' fees." (AA 233 – AA 237.) However, the right to argue for no fee at all does not mean that TMS also retained some lesser-

2

included right to argue that the hourly rates were too great or that the time expended on any particular task was too much.

To the contrary, TMS specifically agreed "that, if the Court determines that an award of fees is appropriate, then [TMS] will not challenge the reasonableness of the entries on Exhibit A that are annotated with green underlining." (AA 167.) Those annotated entries, in the record at AA 168 – AA 186, included all but three of the 98 entries that the court improperly reduced for lack of billing judgment. Thus, not only did TMS fail to object to those entries, it went even further and stipulated to their reasonableness.

C.    *TMS's identification of "exemplar entries" was not sufficiently specific to challenge the fees.*

TMS claims that "[s]pecifically pinpointing individual entries (aside from identifying exemplar entries meant to highlight the unreasonableness of the fees requested) when challenging Appellant's fees in their entirety was unnecessary." (Br. p. 15.) However, exemplar entries are not enough.

> It is, in general, inappropriate . . . to merely cite "examples," and effectively delegate to the Court the work of analyzing all billing entries line-by-line in an effort to identify other entries that the [defendant] might find similarly objectionable. . . . It is particularly inappropriate here, because—quite apart from the trespass on the Court's time—the Court cannot know what the [defendant] considers to be [objectionable]. Federal judges are not required to be telepathic.

3

*Former Emps. of BMC Software, Inc. v. U.S. Sec'y of Lab.*, 31 C.I.T. 1600, 1641 (2007). Another court has explained the need for specific objections as follows: "Defendants still have largely left the Court to 'hunt[] for truffles' by omitting any detailed, line-by-line objection to specific items in Plaintiff's detailed fee petition." *APC Filtration, Inc. v. Becker*, 2008 WL 548765, at *2 (N.D. Ill. Feb. 25, 2008) (brackets in original, quoting *Albrechtsen v. Bd. of Regents of the Univ. of Wisconsin Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) ("Judges are not like pigs, hunting for truffles buried in the record")).

But, here, TMS claims that specific objections were unnecessary, "considering the Court's independent obligation to remove excessive, redundant, and otherwise unnecessary entries." (Br. p. 15.) In *Lozano v. Hazleton*, 2015 WL 5895545 (M.D. Pa. Oct. 6, 2015) the defendant made the same argument, citing to *Interfaith Com. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 713 (3d Cir. 2005) for the proposition that "[t]he court has a positive and affirmative duty to conduct a thorough and searching analysis to identify excessive, redundant, or otherwise unnecessary charges." 2015 WL 5895545 at * 5. The *Lozano* court distinguished *Interfaith*, observing that "[i]n *Interfaith,* however, the defendant objected to specific numbers of hours to perform various tasks for which the plaintiff's attorney sought compensation.

4

In the instant case, the defendant did not make such specific objections to the plaintiffs' petitions." Id. at n. 4.

The court concluded that "[a]s no specific objections were made, [the court] need not, and indeed [did] not have the discretion to, address each item in plaintiff's time records specifically." *Id.* at * 5. The court then calculated a preliminary lodestar exceeding $2.7 million without any reduction in the hourly rates or the amount of time spent.[2] *Id.* at * 10*. As in *Lozano,* TMS's failure here to present specific objections to the trial court precluded the court from *sua sponte* reducing the fee.

> D.    *TMS mischaracterizes the parties' understanding of the operative offer of judgment by instead referring to a different offer of judgment that was never accepted.*

TMS now, for the first time, claims that "the parties understood that Appellee mistakenly failed to indicate in the Rule 68 Offer that Appellant's award of attorneys' fees was intended to be *inclusive* of the judgment offered." (Br. p. 16.) Not true. The parties absolutely did not have that understanding, and TMS did not make any such allegation to the bankruptcy court.

---

[2] The court did, however, thereafter apply a downward adjustment to that calculated lodestar figure under *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) as it agreed with the defendant that the plaintiff had had only partial success on the successful claims and was also unsuccessful on a number of claims. 2015 WL 5895545 at * 13. No such reduction was requested by TMS here, nor applied by the trial court.

5

The offer of judgment that TMS is referring to is not the operative offer here. Instead, it is an offer that was tendered on April 2, 2020 (AA 351) and which was never accepted. That offer was not accepted because TMS intended for it to preclude the recovery of additional attorney's fees. In its opposition below, TMS presented this unaccepted offer and argued that "Sabatini's reasonable fees . . . should have been easily covered by splitting the $7,000 Offer of Judgment with Lewis. Sabatini, however, dragged the litigation on for years, with little if any attendant benefit to Lewis." (AA 232.) However, as Lewis explained in his reply brief, it is now clear that the value of the case, inclusive of attorney's fees, was then much more than the $7,000 offer. Instead, it was actually in the range of $17,000 to $22,000. (AA 351.) Thus, the offer was for no more than about 40% of the value of the case.[3]

The offer that was actually accepted here was tendered almost two years later, on March 16, 2022. (AA 198 - 190) That offer was accepted because it did *not* preclude the recovery of additional attorney's fees. Before the filing of its brief on this appeal, TMS had never pretended that the accepted offer of judgment was understood to be inclusive of attorney's fees.

---

[3] Lewis's settlement position at the outset, on the other hand, was much more reasonable than TMS's. See Lewis's Opening Br. at n. 6.

TMS then compounds the inaccuracies relating to this unaccepted offer of judgment by misdescribing how the trial court construed it. Of course, the trial court did not construe it at all because it was not the accepted offer. Yet, TMS claims that "the Bankruptcy Court rejected the parties' mutual understanding of the accidental 'plus fees' provision in [sic] Rule 68 Offer as parole evidence when it ruled that the Rule 68 Offer created a contractual obligation underpinning the award of reasonable attorneys' fees." (Br. p. 16.) Again, this characterization is false. The bankruptcy court merely set out the legal standard that would apply to its construction of an offer of judgment. (AA 039 – AA 041.) One of the various rules that it mentioned was that if the intent is clear, there is no need to resort to extrinsic evidence. However, the bankruptcy court never actually applied that rule in this case as neither party asked for the court to consider any parole evidence.

### E. TMS does not attempt to show that it ever objected to time spent briefing.

TMS acknowledges the requirement in *Bell v. United Princeton Properties, Inc.*, 884 F. 2d 713 (3d Cir. 1989) that "any reduction is based on objections actually raised by the adverse party" (Br. p. 17) but still fails to identify any point where it complained to the trial court that the **time spent briefing** was excessive. Instead, TMS baldly states that it "specifically objected

7

to Appellant's claimed fees as excessive, and it provided numerous justifications in law and fact, including analogous caselaw, for why this was so." (Br. p. 18.) It then cites to the entire argument and conclusion of its trial court brief. (Id.) Even though Lewis's opening brief here devoted substantial space to the argument that TMS did not complain about briefing time below, TMS still refuses to address this argument. In fact, like TMS's brief in opposition below, its brief in opposition here again does not mention time spent briefing **at all**.

### F. *TMS mischaracterizes the record.*

TMS says that Lewis "claims that the Bankruptcy Court improperly relied upon facts not of record." (Br. p. 21, citing to pages 37-41 of Lewis's brief.) Although Lewis discusses, *inter alia*, erroneous conclusions reached by the bankruptcy court, there is no allegation that the court strayed from the record. TMS next implies that it waived the disputed $900 in fees before this case was filed and says that Lewis's allegations to the contrary "appear in his brief alone, are not matters of record and they have not been judicially determined." (Br. p. 21.) This position is meritless because, as explained at note 15 in Lewis's opening brief, the record contains a letter from TMS to

8

Judge Conway admitting that the fees were not waived until February 10, 2023

– i.e., years after this case was filed. (AA 378.)[4]

> G. *The calculation of the attorney's fee is not limited by Pennsylvania law.*
>
> 1. *TMS forfeit this argument by not raising it below.*

TMS now argues for the first time that Pennsylvania law, rather than

federal law, should be used to calculate the proper attorney's fee. Neither

party cited any state law authority in the briefs below. Instead, all citations

were to federal cases and statutes. TMS forfeit the argument that state law

should apply by failing to raise it in the bankruptcy court. See *In re Trib. Media*

---

[4] TMS itself strays from the record to inaccurately describe a second adversary proceeding filed in the bankruptcy court to docket 5:23-ap-00007 and involving the same parties herein. As TMS has opened the door on that issue, Lewis is attaching the relevant documents. (Complaint at Exhibit A, Notice of Settlement at Exhibit B, and Settlement Agreement at Exhibit C.) In that case Lewis complained that, years after having allegedly waived the $900 in fees, TMS was still affirmatively collecting them from him in violation of the bankruptcy rules. (Exhibit A.) TMS's brief here states that the case has not been resolved. (Br. pp. 21 – 22.) That characterization is misleading. Six days **before** it made that statement in the brief, TMS had already filed a Notice of Settlement in the bankruptcy court. (Exhibit B.) TMS has agreed to pay Lewis $10,000 (representing punitive damages) plus attorney's fees and costs. (Exhibit C, ¶¶ 3.b and 5.e.ii.) All that remains is for a third-party neutral to decide the fees, and for the bankruptcy court to approve the settlement.

9

*Co.*, 902 F.3d 384, 400 (3d Cir. 2018)(issue not raised in bankruptcy court is "waived"[5] on appeal to the district court.)

A forfeited argument should not be considered by the appellate court "absent truly exceptional circumstances." *Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017). Where the forfeited issue involves a pure question of law, the bar is not quite as high. *Id.* Still, even on pure legal questions, the Third Circuit considers itself to have been only "*slightly* less reluctant" to consider a forfeited argument. *Id.* (emphasis added).

Here, the question might be a pure question of law, because the issue is whether Pennsylvania or federal law should be used to calculate the fee award. However, if Pennsylvania law applies, then additional fact finding would be necessary as the case would have to be remanded for the trial court to apply the Pennsylvania standards to the fee application at issue. *C.f., Bagot*

---

[5] As *Trib. Media* is a slightly older case, the Circuit may have been imprecise in referring to the concept of *waiver* rather than *forfeiture*. *See e.g.*, *United States v. Dowdell*, 70 F.4th 134, 142 (3d Cir. 2023)(acknowledging the Third Circuit's "recent efforts to express waiver and forfeiture more accurately") and *Montemuro v. Jim Thorpe Area Sch. Dist.*, 99 F.4th 639, 646 (3d Cir. 2024)("[w]aiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.")(citations and internal quotations omitted). Here, TMS did not intentionally abandon this argument in the bankruptcy court, instead, it never mentioned it at all. That omission would more accurately be characterized as forfeiture rather than waiver.

10

*v. Ashcroft*, 398 F.3d 252, 256 (3d Cir. 2005)(deciding to consider an argument that had been forfeited where the issue was "a pure question of law, . . . [where **no] additional fact-finding [was] necessary** . . . [and where] failing to consider [the appellant's] arguments would result in the substantial injustice of deporting an American citizen.")(emphasis added). This case does not present the truly exceptional circumstance that would justify consideration of TMS's forfeited argument.

> 2. *The contractual right to attorneys' fees in the accepted offer of judgment is an **additional** avenue to recover fees and should not be read to limit Lewis's separate statutory right to receive a fee award.*

TMS is correct that, because the acceptance of the Rule 68 offer created a contract, certain contractual rights provided by the agreement are interpreted by reference to state law. And, because the agreement contains a provision for a contractual attorney's fee, state law is relevant to the construction of that provision. But resorting to state law does not help TMS because the contractual attorney's fee provided for by the agreement is merely an ***additional*** avenue for recovery of attorney's fees on top of the statutory right to fees that Lewis automatically obtained once the agreement was formed.

11

The agreement does not explicitly waive any right to *statutory* attorney's fees. The Third Circuit has made it clear that a statutory right to attorney's fees continues after acceptance of an offer of judgment unless the language of the offer explicitly waives the right to such fees. *Lima v. Newark Police Dep't*, 658 F.3d 324, 329 - 330 (3d Cir. 2011)(quoting *Torres v. Metro. Life Ins. Co.*, 189 F.3d 331, 333 (3d Cir. 1999) and *El Club Del Barrio, Inc. v. United Cmty. Corps.*, 735 F.2d 98, 101 (3d Cir. 1984)). Here, the offer did not explicitly waive the right to fees. (AA 190.) Thus, Lewis is entitled to recover statutory attorney's fees.

Judge Conway correctly found that fees were available under both separate avenues: first by contract and second under the statutes. "Here, . . . there is a clear and unambiguous contract right **and** the underlying statutes provide for Plaintiff to recover attorney's fees.")(AA 041, emphasis added.) He then discussed those two alternative bases to award fees. He first explained that Lewis was entitled to statutory fees as he was "[c]learly, . . . a prevailing party or ha[d] achieved a 'successful action' regarding his claims brought under TILA and RESPA." (AA 042.) In the next paragraph, he described the *alternative* contractual basis for fees that the offer provided: "[s]econd, TMS completely ignores that the Rule 68 Offer clearly provides for an award of

12

attorney's fees." (AA 042.) Thus, Judge Conway clearly – and correctly – found that the fees are available **both** contractually and also under the statutes.

Obviously, Lewis cannot recover the fees twice. However, if one calculation results in a greater fee award than the other, then because Lewis is entitled to fees under each method, he should clearly receive the greater amount. So, if calculating the fee with reference to federal statutory fee shifting authority yields a greater figure than would otherwise be awarded under Pennsylvania contract law, Lewis would be entitled to that greater recovery. Thus, TMS's efforts to have the fee calculated under state law does not help it, because if that alternative calculation were less than under federal law, it would simply be disregarded.

> 3. *Federal courts deciding attorney's fees pursuant to accepted Rule 68 Offers of Judgment base the calculation on federal authority rather than state law.*

TMS has not cited any case that applied state procedure to calculate an attorney's fees award provided for by an accepted Rule 68 offer of judgment. But there are numerous cases the other way. For example, TMS mentioned *M3 USA Corporation v. Hart*, 2021 WL 2917374 (E.D. Pa. July 9, 2021). (Br. p. 2.) In that case, the court used Pennsylvania law to construe ambiguities in an offer of judgment against the drafter and found that the Rule 68 agreement did allow for contractual attorney's fees. However, after reaching that

13

determination the court did not again cite any Pennsylvania authority. Instead, it relied strictly upon federal cases to calculate the amount of that fee. TMS's position that Pennsylvania law should be used to calculate the fee is incorrect.[6]

> 4. *The parties intended for federal law to apply to the calculation of the fees.*

A court construing the contract should attempt to determine the parties' intent with respect to how the fees would be calculated. Here, the contract states:

> Defendant. . . . offers to allow a judgment to be taken against it in satisfaction of all claims by Plaintiff, Clarence Lewis, in the amount of $6,000.00, plus an additional amount for costs and reasonable attorney's fees. The parties will attempt to negotiate the amount of the costs and reasonable attorney's fees. If the

---

[6] Other cases within the Third Circuit using federal standards to calculate a fee pursuant to an accepted offer of judgment include not only the decision below, but also *Albertson v. Winner Auto.*, 2004 WL 2435290, at *10 (D. Del. Oct. 27, 2004); *Minnick v. Dollar Fin. Grp., Inc.*, 2002 WL 1023101, at *10 (E.D. Pa. May 20, 2002); *Stover v. Riley*, 30 F. Supp. 2d 501, 503 (E.D. Pa. 1998); *Taormina v. Heritage Env't Servs., Inc.*, 2017 WL 3912353, at *7 (W.D. Pa. Sept. 5, 2017); *Bilazzo v. Portfolio Recovery Assocs., LLC*, 876 F. Supp. 2d 452, 458 (D.N.J. 2012); *Lazarska v. Cnty. of Union*, 2006 WL 2264455, at *10 (D.N.J. Aug. 8, 2006); *Navarro v. Monarch Recovery Mgmt. Inc.*, 2014 WL 2805244, at *6 (E.D. Pa. June 20, 2014); *Rosner v. Faloni L. Grp., LLC*, 2021 WL 933371, at *2 (D.N.J. Feb., at *2 (D.N.J. Feb. 8, 2021); *David v. AM Int'l*, 131 F.R.D. 86, 90 (E.D. Pa. 1990); *Williams v. NCO Fin. Sys., Inc.*, 2011 WL 1791099, at *7 (E.D. Pa. May 11, 2011); *Falkenstein v. Santander Bank, N.A.*, 2015 WL 3439853, at *5 (E.D. Pa. May 27, 2015); *Alexander v. NCO Fin. Sys., Inc.*, 2011 WL 2415156, at *5 (E.D. Pa. June 16, 2011); *Puzzangara v. Evans Assocs.*, 2011 WL 2273726, at *2 (E.D. Pa. June 9, 2011); and *Garcia v. Rubin & Rothman, LLC*, 2018 WL 4562457, at *1 (D.N.J. Sept. 24, 2018).

14

> parties are unable to resolve the amount of the costs
> and reasonable attorney's fees, **the Plaintiff shall file
> a petition with the Court**. . . .

(AA 190, emphasis added.)

The parties expected the fees to be calculated in federal court, by a federal judge, using federal law. The offer was tendered on a federal case caption. The offer provides that if the parties cannot agree on an amount, then the fees will be determined upon application to the federal court. The federal cases awarding fees using federal standards after acceptance of an offer of judgment are legion. (See e.g., n. 6 supra.) The lawyers who signed the offer and the acceptance should be presumed to know the state of that caselaw and to expect that that law would govern the construction of the offer. What was the most likely intent of the parties as to what law would apply when the federal judge decided the fee petition? Federal law.

Even if there is an argument that the contract could be interpreted in a way that state law would be used to calculate the fee, such an additional interpretation would merely mean that the contract is ambiguous. A contract is ambiguous if it can be interpreted in more than one way. (Opinion, AA 040, citing *M3 USA Corp.*, 2021 WL 2917374 at *5.) And ambiguities in Rule 68 offers are resolved against the offeror. (*Id.* citing *Lima,* 658 F.3d at 330.)

15

Because a reasonable construction of the agreement is that the parties expected federal law to govern, and because any ambiguity in the contract is construed against TMS, federal law should govern.

> 5. *If the Court decides that Pennsylvania law should be used to calculate the fee, then it would also have to decide which of various competing Pennsylvania standards should be used.*

TMS argues for the test enunciated in *In re LaRocca's Tr. Est.*, 431 Pa. 542, 547, n. 4 (1968). Although that aged case may have continued vitality in the appropriate circumstance, it is unlikely that it would be used by a Pennsylvania court in a fee shifting case like this one. Nevertheless, the *LaRocca* standard, along with two other possible tests, will be discussed here.

> a. *The standard that a Pennsylvania court would most likely use would actually be federal law.*

The Pennsylvania Supreme Court has held that when a Pennsylvania state court awards attorney's fees under a federal statute, the Supremacy Clause binds the state court to the United States Supreme Court's interpretation of the federal law. *Samuel-Bassett v. Kia Motors Am., Inc.*, 613 Pa. 371, 462, 34 A.3d 1, 55 (2011)(reversing a trial court decision that had awarded a contingency multiplier enhancement on a lodestar fee as permitted by state law, and holding that instead the controlling law was the U.S. Supreme Court guidance that generally prohibits contingency multipliers.) Thus, the state court deciding a fee application on a federal claim applies

16

federal law. State law simply submits to federal law for the proper calculation of fee awards on federal claims.

> ### b. The second most likely standard would be Pa. R. Civ. P. 1717.

When a federal court sitting in diversity on a bad faith insurance claim awards attorney's fees it should be guided by Pa. R. Civ. P. 1717. *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 532 (3d Cir. 1997)(citing to Pa. R. Civ. P. 1716, subsequently renumbered to 1717).[7] That rule requires a court to consider, *inter alia*, the following factors:

> (1) the time and effort reasonably expended by the attorney in the litigation;
> (2) the quality of the services rendered;
> (3) the results achieved and benefits conferred upon the class or upon the public;
> (4) the magnitude, complexity and uniqueness of the litigation; and
> (5) whether the receipt of a fee was contingent on success.

Pa. R. Civ. P. 1717.

---

[7] In announcing this rule, the appeals court in *Polselli* rejected yet a fourth possible Pennsylvania standard for calculating attorney's fees. The trial court in *Polselli* had used the standards provided in 41 P.S. § 503 for awarding fees to borrowers who prevail against lenders in usury actions. *Polselli,* 126 F.3d 524, 532-533. On appeal, the Circuit held that "[w]hile section 503 and Rule [1717] are similar, the district court should have looked to Rule [1717] in calculating a reasonable fee." *Id*. at 533.

17

The calculation of the fee under this standard begins with the lodestar. *Clemens v. New York Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 399 (3d Cir. 2018)(also sitting in diversity on a bad faith insurance claim, and stating that "[l]ike with federal fee-shifting statutes, the calculation of an attorney's fee award under Rule 1717 begins with the lodestar method: the multiplication of the actual number of hours spent in pursuing the claim by a reasonable rate.") So, again, TMS's efforts to resort to state law do not seem to change the actual standard that might apply: in either event, the lodestar is used. Nevertheless, as fees are being awarded here under a federal statute rather than on a state law claim, *Samuel-Bassett's* explicit instruction to defer to federal law should govern.

### c. The least likely standard would be LaRocca.

Although the language is not crystal clear, the Third Circuit seems to have indicated that the *LaRocca* factors were superseded by Rule 1717. "Before the adoption of Rule [1717], the Pennsylvania Supreme Court instructed trial courts to consider [the *LaRocca* factors]." *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 533 n. 9 (3d Cir. 1997). However, notwithstanding that language, some federal courts have continued to cite the *LaRocca* factors. *See e.g., Miller v. Adrenaline Amusements, Inc.*, 2023 WL 2186568, at *3 (E.D. Pa. Feb. 22, 2023); *Joseph Q. Mirarchi Legal Servs., P.C. v.*

18

*Thorpe*, 2020 WL 2030036, at *6 (E.D. Pa. Apr. 28, 2020); *D.A. Nolt Inc. v. Philadelphia Mun. Auth.*, 2022 WL 2048668, at *6 (E.D. Pa. June 7, 2022). Thus, the Court should consider why, even without Rule 1717, a state court would be unlikely to apply the *LaRocca* factors*.*

In *LaRocca*, the lawyers protected a minor's trust and then sought to be paid from the trust. The opposition contended that the fees claimed were unreasonable in view of the size of the trust – i.e., it sought a proportionality analysis. The court credited that argument: "[w]e are familiar with the fact that an attorney can rarely ever receive a reasonable fee when the services rendered are very numerous and the amount of money or value of the property involved is small." *LaRocca* 431 Pa. 542,at 547, n. 4. It then found that: "[w]hile the services of the attorneys consumed a tremendous amount of time and produced a very beneficial result for their client . . . , the small amount of money involved must be taken into consideration in fixing their fee; . . ." *Id.* at 549.

The court's frugality in *LaRocca* made sense. The policy was to prevent dilution of a minor's trust. However, when a claim for *statutory* fees was thereafter presented to the Pennsylvania Superior Court, the court disregarded the *LaRocca* factors. In *Croft v. P & W Foreign Car Serv., Inc.*, 557 A.2d 18 (Pa. Super. 1989) the court distinguished *LaRocca* as inappropriate in

19

the Magnusson-Moss Act fee shifting case that was before it, explaining as

follows:

> The trial court refers to the factors enumerated in [*LaRocca*], where the Pennsylvania Supreme Court discusses reasonable attorneys fees for counsel for an estate. Although, these factors were considered by the trial court, we find that the factors enumerated in 41 P.S. § 503 (concerning the award of attorneys' fees to counsel for residential real estate owners who have prevailed in causing a judgment by confession to be stricken), are more appropriate in the instant case. Unlike the fees paid out of the estate funds to estate counsel, *. . .* , the entitlement to attorneys' fees under § 503 and in actions under the Magnuson–Moss Act, is designed to make the pursuit of certain public rights economically feasible, and the amount of the award is not dependent on a fixed fund, such as a decedent's estate. Because of these differences we find the factors considered in § 503 in awarding reasonable attorneys' fees more appropriate than those considered in *LaRocca.*

*Id.* at 20.

Like *Croft*, the instant case involves a fee shifting consumer protection

statute, and the factors enumerated in other sources – such as Rule 1717 and

41 P.S. § 503– are more appropriate than the *LaRocca* factors. *See also, Polselli*

*v. Nationwide Mut. Fire Ins. Co.,* 1993 WL 479050, at *3 (E.D. Pa. Nov. 12,

1993)(rejecting *LaRocca* in favor of 41 P.S. § 503 partly because § 503

20

"awards attorney fees directly from the defendant, whereas *LaRocca* awards

the fees from the decedent's fixed estate").[8]

> 6.  *TMS inaccurately characterizes the trial court's faulty lodestar analysis as instead being a proper post-lodestar* LaRocca *or* Johnson *reduction.*

The trial court erred by improperly calculating the lodestar when it

reduced time that TMS had not specifically challenged. TMS attempts to now

recharacterize that reduction as instead being a **post**-lodestar adjustment that

was warranted based on the factors in *LaRocca* or *Johnson v. Georgia Highway*

*Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), abrogated by *Blanchard v.*

*Bergeron*, 489 U.S. 87 (1989). (Br. pp. 8 – 9.) That characterization is

inaccurate.

There is a strong presumption that the lodestar is the reasonable fee.

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). "After calculating the

lodestar, the court may deviate from it [using the *Johnson* factors] but only in

the rare circumstances in which the lodestar does not adequately take into

account a factor that may properly be considered in determining a reasonable

---

[8] As indicated in footnote 3, on appeal the Third Circuit later found that this *Polselli* trial court decision erred in selecting § 503 rather than Rule 1717. However, the trial court's analysis as to why *LaRocca* was an even worse option remains persuasive.

fee." *Souryavong v. Lacka. Cnty.*, 872 F.3d 122, 128 (3d Cir. 2017)(quoting *Perdue*, cleaned up).

TMS pretends that the trial court conducted an analysis of the factors to consider in connection with a *Johnson* lodestar reduction. It says that "[t]he Court's reasoning, in particular, reflects that it carefully considered, expressly or implicitly: [the 11 *LaRocca* factors]." (Br. pp. 8 – 9.) This statement is incorrect. The court never cited *LaRocca* or the comprehensive list of *LaRocca* factors. To say that the court "carefully considered" them is groundless.

TMS further claims that the *LaRocca* factors are "co-extensive" with *Johnson*. (Br. p. 6.) It first cites to *McMullen v. Kutz*, 985 A.2d 769, 774 (Pa. 2009) for the proposition that "[t]he [federal] *Johnson* factors are coextensive with the considerations furnished by Pennsylvania law." (Br. p. 6.) Then, to describe "Pennsylvania law," TMS lists the *LaRocca* factors (Br. at 9, citing *Arches Condo. Ass'n v. Robinson*, 131 A.3d 122, 132 (Pa. Commw. Ct. 2015)(citing *LaRocca*)).

But *McMullen* does not say anything about co-extensivity. The *McMullen* court did not mention *Johnson* at all, let alone make a finding that the factors were co-extensive with *LaRocca*. In fact, the *McMullen* court did not discuss *LaRocca* either, other than to mention that one of the litigants cited the *LaRocca* factors in support of her argument.

22

The *LaRocca* factors are **not** coextensive with the *Johnson* factors. Of course, there is some overlap. However, the following *Johnson* factors do not seem to be considered by *LaRocca*: (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent;  (7) time limitations imposed by the client or the circumstances; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Additionally, the following *LaRocca* factors do not seem to be considered by *Johnson*: the importance of the litigation; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; and the ability of the client to pay a reasonable fee for the services rendered.

It is true that by listing the *Johnson* factors, the trial court indirectly mentioned the overlapping *LaRocca* factors*.* But, although the court listed the *Johnson* factors, it did so only in its narrative explaining the applicable law. (AA 043 – AA 044.)  It never then actually applied those factors in this case. Nor should it have because TMS did not ask for a *Johnson* reduction. The party who asks for the fees to be adjusted has the burden of proving an adjustment is necessary. *Blum v. Stenson,* 465 U.S. 886, 898 (1984). Here, TMS never even

23

requested a *Johnson* reduction, let alone present the full measure of evidence or argument that would be required to meet its burden.

Additionally, although TMS's brief below does incidentally allude to one or more considerations that were discussed in *Johnson*, those comments alone do not constitute a request for a *Johnson* reduction. By definition, a factor test requires the court to consider **all** of the factors. Even if one or more factors augured for a downward departure, it would be wrong to cherry pick only those factors and to ignore any other factors that support leaving the lodestar untouched.

At any rate, the bankruptcy court did *not* conduct any analysis as to whether a downward reduction from the lodestar was warranted. TMS cannot pretend that the court's errors in its original computation of the lodestar may somehow be excused simply because the same figure might have been justifiable by a *Johnson* downward departure.

For the foregoing reasons, the calculation of attorney's fees is not limited by Pennsylvania law.

## II.   Conclusion

Lewis respectfully requests that the Court reverse the decision of the court below, and that it award Lewis the full original request of $81,678.68.

24

Case: 24-1389   Document: 19   Page: 302   Date Filed: 07/13/2026

25

Respectfully Submitted,

_s/Carlo Sabatini_
Carlo Sabatini

## III.   Certificate of Compliance

Pursuant to Fed. R. Bankr. P. 8015(h), Counsel certifies that this document complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B), which allows a reply brief that contains no more than 6,500 words. The substantive portion of this brief contains 5,926 words. Counsel is relying on the word count feature of the word-processing system used to prepare the document.

*s/Carlo Sabatini*
Carlo Sabatini

## IV.   Certificate of Service

This document is being served through the CM/ECF system.

*s/Carlo Sabatini*
Carlo Sabatini

26

## CERTIFICATE OF SERVICE

On July 13, 2026, I caused the foregoing Appendix Volume II to be filed through the Court's CM/ECF system, which will serve all counsel of record, including counsel for Appellee.

s/ Carlo Sabatini
Carlo Sabatini