**No. 26-1389**

# In the United States Court of Appeals for the Third Circuit

**IN RE: CLARENCE WILLIAM LEWIS, JR.**

**CLARENCE WILLIAM LEWIS, JR.**
*Appellant,*

v.

**THE MONEY SOURCE, INC.**
*Appellee.*

On Appeal from the United States District Court
for the Middle District of Pennsylvania
in Case No. 3:24-cv-00387-JKM

## REPLY BRIEF OF APPELLANT

Carlo Sabatini
SABATINI LAW FIRM, LLC
216 N. Blakely St.
Dunmore, PA 18512
(570) 341-9000
*Attorney for*
*Clarence William Lewis, Jr.*

September 16, 2026

# TABLE OF CONTENTS

**I. INTRODUCTION .................................................................................. 1**
**II. ARGUMENT .......................................................................................... 2**
A. The bar on sua sponte reductions controls this award. ............................... 2
1. *Bell* itself enforced that bar where a settlement agreement left the fee for the court to fix. ......................................................................... 2
2. TMS's "matter of contract" authority goes to entitlement, not to amount—and both courts below calculated amount under federal law. ............................................................................................ 4
3. TMS's Pennsylvania-law theory is forfeited, and it would change nothing anyway. .................................................................................. 5
B. TMS's brief does not identify any objection that supports the cuts. ........... 8
1. Nothing on TMS's list of "objections" addresses any brief. .................. 9
2. The bankruptcy court's description of its review process describes a sua sponte review—one TMS invited. .................................................. 11
3. *Bell*'s allowance for categorical objections cannot rescue an objection never made. ........................................................................ 13
4. "Context" supplies no objection. ........................................................ 15
5. TMS cannot point to Lewis's statements as a substitute for the objections that TMS never asserted itself. ................................................ 16
6. The fee-petition briefing never drew any objection at all. ................... 17
C. TMS concedes the court misread two invoices; even after correcting for that misreading, the cuts are still severe. ................................................ 18
D. The stipulation took the communication cut off the table, and TMS defends that cut on a new theory. ..................................................................... 19
E. Grounds the bankruptcy court never stated cannot sustain the reductions. ............................................................................................... 23
1. The missing findings cannot be supplied by the District Court's rationales or by TMS's "any ground" request. ......................................... 23
2. Neither Maldonado, nor experience, nor "disproportionality" justifies the cuts. ........................................................................................ 25
**III. CONCLUSION ..................................................................................... 27**

**IV. CERTIFICATIONS ........................................................................ 29**
A. Certificate of Compliance ........................................................................ 29
B. Certificate of Service ........................................................................ 29
C. Certificate that Briefs Are Identical ........................................................................ 29
D. Certificate that E-Brief Has Been Virus Checked ........................................ 30

# TABLE OF AUTHORITIES


PAGE(S)

CASES

*Arches Condominium Ass'n v. Robinson*,
131 A.3d 122 (Pa. Commw. Ct. 2015) ........................................................5, 6, 7

*Bagot v. Ashcroft*,
398 F.3d 252 (3d Cir. 2005) ...............................................................................6, 7

*Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*,
877 F.3d 136 (3d Cir. 2017) ...............................................................................6, 7

*Bell v. United Princeton Props., Inc.*,
884 F.2d 713 (3d Cir. 1989) ........................................................................ Passim

*City of Riverside v. Rivera*,
477 U.S. 561 (1986)..............................................................................................26

*Cunningham v. City of McKeesport*,
753 F.2d 262 (3d Cir. 1985), vacated, 478 U.S. 1015 (1986),
reinstated on remand, 807 F.2d 49 (3d Cir. 1986).........................................3, 21

*Farrar v. Hobby*,
506 U.S. 103 (1992)..............................................................................................26

*Gelis v. BMW of North America, LLC*,
178 F.4th 810 (3d Cir. 2026) ...........................................................................4, 5, 6

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) .......................................................................23, 24, 27

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)................................................................................5, 7, 9, 23, 24

*In re Badyrka*,
No. 5:20-03618-MJC, 2022 WL 4656034
(Bankr. M.D. Pa. Sept. 30, 2022) ...................................................................22, 23

*In re Busy Beaver Bldg. Ctrs., Inc.*,
19 F.3d 833 (3d Cir. 1994) .......................................................................13, 23

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015) ..........................................................................24

*In re Gordon-Brown*,
340 B.R. 751 (Bankr. E.D. Pa. 2006) ..............................................................8

*In re Home Depot Inc.*,
931 F.3d 1065 (11th Cir. 2019) .........................................................................4

*In re LaRocca's Trust Estate*,
246 A.2d 337 (Pa. 1968)........................................................................................6

*In re S.S. Body Armor I, Inc.*,
961 F.3d 216 (3d Cir. 2020) ..............................................................................8

*In re Szymczak*,
246 B.R. 774 (Bankr. D.N.J. 2000) ...........................................................22, 23

*In re Tower Air, Inc.*,
397 F.3d 191 (3d Cir. 2005) ............................................................................23

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
119 F.3d 1070 (3d Cir. 1997) ..........................................................................20

*Koon v. United States*,
518 U.S. 81 (1996).................................................................................................8

*Laurel Gardens, LLC v. McKenna*,
948 F.3d 105 (3d Cir. 2020) ............................................................................24

*Lima v. Newark Police Dep't*,
658 F.3d 324 (3d Cir. 2011) ..............................................................................7

*M3 USA Corp. v. Hart*,
No. 20-5736, 2021 WL 2917374 (E.D. Pa. July 9, 2021)...............................5, 7

*Maldonado v. Houstoun*,
256 F.3d 181 (3d Cir. 2001) ....................................................................15, 25

*Migliori v. Lehigh Cnty. Bd. of Elections*,
No. 22-cv-397, 2025 WL 2493843 (E.D. Pa. May 19, 2025), report and recommendation adopted, No. 22-cv-397, 2025 WL 2493838 (E.D. Pa. July 31, 2025)..........................................................................19

*Miller v. City of Portland*,
868 F.3d 846 (9th Cir. 2017) ..........................................................................4

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010)........................................................................................4

*Pullman-Standard v. Swint*,
456 U.S. 273 (1982)........................................................................................24

*Rode v. Dellarciprete*,
892 F.2d 1177 (3d Cir. 1990) ....................................................................5, 23

*Samuel-Bassett v. Kia Motors Am., Inc.*,
34 A.3d 1 (Pa. 2011)........................................................................................8

*Tolentino v. Friedman*,
46 F.3d 645 (7th Cir. 1995) ..........................................................................26

*United States ex rel. Palmer v. C&D Technologies, Inc.*,
897 F.3d 128 (3d Cir. 2018) ...................................................................7, 8, 14

*United States v. Dowdell*,
70 F.4th 134 (3d Cir. 2023) ............................................................................5

*United States v. Eleven Vehicles*,
200 F.3d 203 (3d Cir. 2000) ..........................................................................18

*Waldorf v. Shuta*,
142 F.3d 601 (3d Cir. 1998) ....................................................................20, 21

*Washington v. Phila. Cnty. Ct. of Common Pleas*,
89 F.3d 1031 (3d Cir. 1996) ..........................................................................26

*Wert v. Manorcare of Carlisle PA, LLC*,
124 A.3d 1248 (Pa. 2015) .......... 5

*Williams v. BASF Catalysts LLC*,
765 F.3d 306 (3d Cir. 2014) .......... 5

STATUTES

11 U.S.C. § 330 .......... 13, 22

RULES

Fed. R. App. P. 32(a)(5)–(6) .......... 29

Fed. R. App. P. 32(a)(7)(B)(ii) .......... 29

Fed. R. App. P. 32(f) .......... 29

Fed. R. Civ. P. 68 .......... 5, 7

# I. INTRODUCTION

The bankruptcy court cut $15,520 from four briefs. TMS does not say where it objected to the time spent on any of them, because it cannot; as the bankruptcy court put it, "TMS did not identify any specific time entries that were excessive." (Appx34 n.9.) The court also cut $3,050.25 from communication entries, all but $124.50 of it from time that was never billed or that TMS had stipulated was reasonable. TMS disputes none of this. It argues that none of it matters.

First, TMS says *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713 (3d Cir. 1989), has no bearing because the fee is contractual and Pennsylvania law governs. But the fee in *Bell* was itself calculated under a settlement agreement, and this Court applied the bar on sua sponte reductions anyway. The Pennsylvania law theory was never presented to the bankruptcy court, is forfeited, and would lead nowhere. Pennsylvania authority uses the lodestar. (§ II.A.)

Second, TMS says it objected, "at a high level," that the fees were "excessive." That is the generalized objection *Bell* holds insufficient. Pressed for specifics, TMS now offers only substitutes—exhibit titles, page counts, and Lewis's own defensive briefing—none of which told anyone what time was challenged. (§ II.B.)

Third, TMS praises the bankruptcy court's "thorough review of the invoices" while conceding, in footnotes, that the review misread two of them: 8.3

hours where the invoice shows 9.3, and a 6.8-hour discount that was really only 0.8 hours. With the numbers corrected, the cuts still left counsel only 0.29 to 0.79 hours per page, under half of the lowest comparator the District Court cited. (§ II.C.)

Fourth, TMS's full answer on the stipulation is a mere footnote asserting that it "withdrew" the stipulation by opposing the petition. A stipulation is not withdrawn by announcement; relief is the court's to grant, and TMS never asked. (§ II.D.)

Fifth, TMS asks this Court to affirm on the District Court's reasons or on "any ground supported by the record." But the decision under review is the *bankruptcy* court's, whose entire explanation for each briefing cut was one word: "excessive." TMS defends the cuts based on counsel's "experience" and a plea for proportionality. But TMS never argued "experience" below, and the bankruptcy court never applied proportionality. (§ II.E.)

## II. ARGUMENT

### A. THE BAR ON SUA SPONTE REDUCTIONS CONTROLS THIS AWARD.

#### *1.* Bell *itself enforced that bar where a settlement agreement left the fee for the court to fix.*

TMS argues that because the fee is "a matter of contract," "the fee-shifting provisions of RESPA and TILA have no bearing." (TMS Br. 14.) In *Bell*, "the award of fees [was] not being made pursuant to the fee-shifting provision of

ERISA . . . but instead pursuant to the parties' settlement agreement," which said only "that the fee assessed by the court should be 'reasonable.'" 884 F.2d at 719 n.5. This Court concluded that "in determining whether the fee is reasonable in this case, it makes sense to employ the same standards that we utilize when assessing the reasonableness of fee awards" made "pursuant to statute." *Id.* The Court then enforced the bar on sua sponte reductions it had announced in *Cunningham v. City of McKeesport*, 753 F.2d 262, 267 (3d Cir. 1985), *vacated*, 478 U.S. 1015 (1986), *reinstated on remand*, 807 F.2d 49 (3d Cir. 1986), and held that the district court "erred in declining to award [a] law clerk's lodestar," because the defendants "never challenged" that time. 884 F.2d at 722. The settlement in *Bell* is no different from the offer of judgment here: each committed the payor to a "reasonable" fee that the court would fix on application. (*Compare id.* at 719 n.5, *with* Appx103.)

Nothing blunts *Bell*'s reasoning in this case. *Bell* barred sua sponte reductions for two reasons: such a reduction "deprives the fee applicant of her entitlement . . . to offer evidence in support of the reasonableness of her request," and the power is unnecessary because fee litigation is adversarial. 884 F.2d at 719 (internal quotation marks omitted). Neither reason turns on whether the fee obligation is contractual or statutory.

This Court reaffirmed that principle this year in *Gelis v. BMW of North America, LLC*, 178 F.4th 810 (3d Cir. 2026): standards developed for statutory fees govern a contractual fee measured under federal law. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54 (2010), limits lodestar enhancements in statutory fee-shifting cases; *Gelis* asked whether those limits also apply where a fee is owed under a settlement agreement. They do. In *Gelis*'s words, "where federal law applies and fees are awarded under the lodestar method, fees awarded by contract, no less than fees awarded by statute, are subject to the strictures of *Perdue*." 178 F.4th at 824–25 (quoting *In re Home Depot Inc.*, 931 F.3d 1065, 1085 (11th Cir. 2019)).

2. *TMS's "matter of contract" authority goes to* entitlement*, not to* amount*—and both courts below calculated* amount *under federal law.*

TMS's lead authority on this issue is *Miller v. City of Portland*, 868 F.3d 846 (9th Cir. 2017). *Miller* goes only to entitlement. The settlement there answered *whether* to award fees, leaving the district court to calculate *how much* was owed. *Id.* at 852. The case says nothing about how to calculate the amount once entitlement is established.

At any rate, whether the fees are contractual or statutory makes no difference here. The bankruptcy court found entitlement on both grounds: "Here, as set forth below, there is a clear and unambiguous contract right *and* the underlying statutes provide for Plaintiff to recover attorney's fees." (Appx30 (emphasis added).) And

whatever supplied the *entitlement*, the court performed the *calculation* under *Hensley v. Eckerhart*, 461 U.S. 424 (1983), *Rode v. Dellarciprete*, 892 F.2d 1177 (3d Cir. 1990), and *Bell*. (Appx33; *see also* Appx11–15.) TMS relies on those cases here. (TMS Br. 16, 26–27.)

3. *TMS's Pennsylvania-law theory is forfeited, and it would change nothing anyway.*

TMS contends that state law governs "what constitutes 'reasonable' attorneys' fees" (TMS Br. 14), that the only question for this Court is whether the bankruptcy court "palpably abused its discretion" (TMS Br. 18), and that the court "expressly or implicitly" weighed the factors of *Arches Condominium Ass'n v. Robinson*, 131 A.3d 122 (Pa. Commw. Ct. 2015). (TMS Br. 27.)[1]

The bankruptcy court did not hear the state law argument. TMS's opposition cited no Pennsylvania authority; its Table of Authorities lists *only* federal cases, federal statutes, and Fed. R. Civ. P. 68. (Appx140.) An argument not raised below is ordinarily forfeited. *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 317 (3d Cir. 2014) (choice-of-law argument "waived"); *see United States v. Dowdell*, 70 F.4th 134, 142 (3d Cir. 2023) (comparing waiver and forfeiture). *Gelis* applied exactly

[1] TMS erred in citing *Wert v. Manorcare of Carlisle PA, LLC*, 124 A.3d 1248 (Pa. 2015), for TMS's state-law argument. (TMS Br. 17–18.) *Wert* is an arbitration decision, and the offer-of-judgment sentence that TMS attributes to *Wert* is not in that case. Instead, it is in *M3 USA Corp. v. Hart*, No. 20-5736, 2021 WL 2917374, at *5 n.64 (E.D. Pa. July 9, 2021).

that rule to a fee dispute, noting that "[e]ven absent an express choice-of-law provision, the parties forfeited any argument that state law applies by failing to object to the District Court's reliance on federal law." 178 F.4th at 819 n.2.

A forfeited argument is considered only in "truly exceptional circumstances," and this Court has been merely "*slightly* less reluctant" to reach one that presents a pure question of law. *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017) (internal quotation marks omitted) (emphasis added). *Bagot v. Ashcroft*, 398 F.3d 252 (3d Cir. 2005), was such a case: it involved "a pure question of law," required "[n]o additional fact-finding," and ignoring the newly raised argument would have "result[ed] in the substantial injustice of deporting an American citizen." *Id.* at 256. TMS's theory fails at the second of those elements. Whether Pennsylvania law governs might be a pure question of law; applying it is not. The *Arches* factors—including "the amount of work performed," "the difficulty of the problems involved," and the like—are "facts and factors" for the court that fixes the fee. *In re LaRocca's Trust Estate*, 246 A.2d 337, 339 (Pa. 1968), *quoted in Arches*, 131 A.3d at 131–32. The bankruptcy court never mentioned *Arches* or *LaRocca*, and analyzed none of the factors. TMS's assertion that the court did so "implicitly" (TMS Br. 27) is unsupported.

TMS has heard this before. When TMS first raised Pennsylvania law in the District Court, Lewis replied with *Barna* and *Bagot*. (Appx320–22.) Lewis's opening brief here again flagged the forfeiture. (Lewis Br. 14 n.7.) Yet TMS still presses the same theory without mentioning "forfeited" or "waived" anywhere in its brief. (*Compare* TMS Br. 17–18, *with* Appx282–83.)

The theory would fare no better on its merits. First, the offer was tendered "pursuant to Federal Rule of Civil Procedure 68," in a federal-question adversary proceeding, and it contemplated that any fee left unresolved would be fixed on "a petition with the Court" (Appx103)—a federal court, applying the same federal law it applies to every fee petition. Any doubt about which law the offer invokes cuts against TMS: an ambiguous offer is construed against its offeror, as the bankruptcy court itself recognized. (Appx29 (citing *M3 USA Corp.*, 2021 WL 2917374, at *5 (citing *Lima v. Newark Police Dep't*, 658 F.3d 324, 330 (3d Cir. 2011))).)

Second, the bankruptcy court did not apply *Arches*, nor any state authority. For the lodestar method and for the objector's specificity burden, it cited only federal cases: *Hensley*, *M3 USA Corp.*, *Bell*, and *United States ex rel. Palmer v. C&D Technologies, Inc.*, 897 F.3d 128 (3d Cir. 2018). (Appx32–33.)

Third, Pennsylvania law would reach the same conclusion. When a fee award rests on federal claims, Pennsylvania courts look to federal fee

jurisprudence. *Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 49–57 (Pa. 2011). And TMS's own authority, discussing Pennsylvania law when awarding a contractual fee, holds that "a lodestar analysis should be employed in determining the reasonableness." *In re Gordon-Brown*, 340 B.R. 751, 757–58, 755 & n.6 (Bankr. E.D. Pa. 2006) (cited at TMS Br. 18).

### B. TMS'S BRIEF DOES NOT IDENTIFY ANY OBJECTION THAT SUPPORTS THE CUTS.

Whether the fee could be cut beyond the objections TMS actually raised is a question about "the standards and procedures applied," and review is de novo. *Palmer*, 897 F.3d at 136. A discretionary ruling built on an error of law or on a departure from required procedure is, by definition, an abuse of discretion. *Koon v. United States*, 518 U.S. 81, 98–100 (1996); *In re S.S. Body Armor I, Inc.*, 961 F.3d 216, 225 (3d Cir. 2020).

TMS invokes clear-error deference (TMS Br. 14–15, 23), but that standard hurts TMS here. The critical factual finding entitled to that deference—and one TMS never challenged—is that TMS "did not identify any specific time entries that were excessive." (Appx34 n.9.) TMS also asserts that Lewis "does [not] identify any error in the Court's lodestar methodology" (TMS Br. 15). Not so. The claimed error is in the lodestar's hours component, which was reduced on no objection and without explanation.

*1. Nothing on TMS's list of "objections" addresses any brief.*

TMS identifies "wholly unreasonable," "clearly excessive," and eight separately numbered "specific objections" it says it made below: no fee was owed under TILA or RESPA; the fees were disproportionate; the Code of Professional Conduct was violated; counsel exercised no billing judgment; the claims belonged in a discovery dispute; discovery did not bear the claims out; Lewis should have taken earlier offers; and "other reasons." (TMS Br. 19–20.)

*Bell* asks a single question: whether the court acted on "objections actually raised by the adverse party." 884 F.2d at 721. A generalized grievance is insufficient: an objector "cannot merely allege in general terms that the time spent was excessive." *Id.* at 720. That rule disposes of TMS's "wholly unreasonable" and "clearly excessive." Each of those characterizations is the generic allegation that *Bell* forbids, naming no category of work and no ground. Of the remaining eight numbered "objections," seven fail for the opposite reason: the court did not use them to cut.

That leaves billing judgment, the one item on the list that the court referenced. But "lack of billing judgment" is not a distinct ground at all; it is the same excessiveness allegation, restated. Billing judgment refers to the applicant's own duty to "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. To assert that counsel exercised

no billing judgment is simply to assert that he billed excessive time. *Bell* does not require an objector to attack each entry, but it does require the objector to "generally identify the type of work being challenged" and to "specifically state the . . . grounds" for challenging that work. 884 F.2d at 720. TMS's assertion did neither: it identified no category of work and stated no defect in any. A court that treats "excessive" as authority to comb the invoices is acting sua sponte under another name. And the entries the court did cut in the name of billing judgment—the communication entries—were ones TMS had stipulated were reasonable. That stipulation is a bar of its own. *See infra* § II.D.

TMS's own description of its objections emphasizes the defect. It says the objections "were specific—at a high level, the objections asserted that Counsel for Lewis's time was excessive." (TMS Br. 15.) An objection that is "specific" only "at a high level" is the generalized objection *Bell* prohibits. And for the page citation to tell this Court where it "specifically objected to Lewis's claimed fees," TMS now simply identifies the entire argument section of its bankruptcy court brief. (TMS Br. 24, citing Appx144–61.)

In a footnote to its eight allegedly specific objections, TMS offers an excuse for their generality—why it "structured its Opposition" as it did (TMS Br. 20 n.6)—and the excuse misstates the record in three ways. First, it says "the parties understood" that the accepted offer's "plus fees" language was "accidental" (*id.*),

but no page it cites records any such understanding. Second, it says the bankruptcy court rejected that understanding as parol evidence (*id.*), but on the pages TMS cites the court recited the rules of interpretation and found the offer unambiguous (Appx29, Appx31). Third, the passage TMS invokes for the "accidental" language (Appx172 n.6) describes a *different and irrelevant offer*—TMS's unaccepted offer of April 2, 2020. As to the March 16, 2022 offer Lewis actually accepted (Appx103), the bankruptcy court found "no language limiting the attorney's fees." (Appx32 n.5.)[2]

As to the accepted offer, TMS acknowledged at the hearing that it contemplated fees. When asked what he meant by an offer of "$6,000, plus an additional amount for costs and reasonable attorney's fees," TMS's counsel answered: "Well, I think he's free to make a claim for it, and that's exactly what we're here on today." (Appx236.)

*2. The bankruptcy court's description of its review process describes a sua sponte review—one TMS invited.*

TMS claims that the bankruptcy court's statement that it "will limit its review of the time entries to that ground" means that the court confined itself to

[2] TMS knows it misstates the record. It made a virtually identical argument in the District Court, *compare* TMS Br. 20 n.6, *with* Appx296–97, and heard there how it erred (Appx316–18).

TMS's "excessiveness" objection. (TMS Br. 19, 23.) However, the opinion's full paragraph shows otherwise.

> Because TMS' argument as to the reasonableness of the fees is basically limited to generalized statements regarding excessive time spent, the Court will limit its review of the time entries to that ground. Without the benefit of being involved in the day-to-day litigation between the parties, it is difficult for the Court to determine if any of Mr. Sabatini's time was unnecessary or of no benefit to his client. However, based upon a review of the case docket, the Court's experience and a thorough review of the invoices submitted, several time entries appear to be excessive.

(Appx34–35.)

The court's characterization of TMS's argument as "basically limited to generalized statements regarding excessive time spent" (Appx34) is exactly the "general terms" allegation that *Bell* deems insufficient. 884 F.2d at 720. By first calling the objections generalized, then admitting it lacked personal knowledge of the work, and finally combing the invoices on its own initiative, the court described and performed a sua sponte review.

And TMS *told* the bankruptcy court that specificity was unnecessary. It asked the court to "decline to review Sabatini's time entries on a line by line basis." (Appx159.) At the hearing, the court told TMS that it was painting "with a broad brush" without getting "into the nitty gritty," and asked whether TMS was "expecting the Court to do that for [it]." (Appx268.) Counsel answered, "I am not,

Your Honor." (*Id.*) TMS then asked the bankruptcy court to do exactly what *Bell* forbids: "as a Bankruptcy Judge [you could] make a reasonable expectation of what should have been done to get this to a good resolution, and this is how much time it would have taken." (Appx269–70.) Lewis objected immediately: a court is "only allowed . . . to make reductions based on specific objections that they've raised," because "[t]his is about due process . . . . I have to have notice of [the objections]." (Appx270.) But the court then did what TMS invited.

TMS defends the court's approach as a "review [of] the case docket," resort to "the Court's experience," and a "[thorough review of] the invoices submitted." (TMS Br. 23.) That describes the independent scrutiny that this Court reserves for fee applications being paid by a bankruptcy estate under 11 U.S.C. § 330 and expressly *withholds* from adversarial fee-shifting disputes. *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 842 (3d Cir. 1994); Lewis Br. 27–29. TMS's brief does not cite *Busy Beaver* and offers no answer to it.

3. Bell*'s allowance for categorical objections cannot rescue an objection never made.*

TMS, following the District Court's lead, reads *Bell*'s allowance for *categorical* objections as a license for *generalized* ones. (TMS Br. 24; Appx13–14.) An objector "need not point to each individual excessive entry," but it still must "specify with particularity the reason for its challenge and the category (or

categories) of work being challenged." 884 F.2d at 721. TMS merely said that "the amount requested" was "wholly unreasonable." (Appx149.)

*Bell*'s facts show how far short TMS falls. The *Bell* defendants contended that an ERISA specialist "could not require more than 75 or 100 hours to understand both the facts of this case and the relevant law," and this Court found such an objection sufficient to put counsel's *research* time at issue. *Id.* But, "[a]lthough the defendants . . . alleged generally that [Plaintiff's counsel] spent too much time on this case in light of its simplicity and his expertise, . . . they never identified the drafting of the *complaints* as a problematic area," so the applicant "was never put on notice that she needed specifically to explain the amount of time spent on the *complaint*." *Id.* at 722 (emphasis added). The reduction of that time was reversed. *Id.* If an objection quantified in hours and grounded in expertise could not reach *Bell*'s complaint-drafting hours, then a naked cry here of "wholly unreasonable" is insufficiently specific to put briefing time at issue.

The decisions in which this Court has sustained reductions follow a specific sequence: a targeted objection first, discretion second. The objector in *Palmer* argued that "50 hours would be sufficient for Relator to prepare an adequate reply brief"; this Court upheld a cut to 38 hours—below even the objector's figure—because the objection had put the reply-brief time at issue, and once the topic was noticed, the amount was the court's to fix. 897 F.3d at 136–38. The defendant in

*Maldonado v. Houstoun*, 256 F.3d 181 (3d Cir. 2001), objected that the entire single-issue appeal "reasonably should have required no more than 100 hours," and its opposition proposed a complete alternative lodestar, calculated attorney by attorney. *Id.* at 183, 187–88. The "positive and affirmative function" TMS quotes (TMS Br. 26–27) consisted of testing the petition against that proposal and adopting it. *Id.* at 188. Here, TMS did not provide any similar objection.

*4. "Context" supplies no objection.*

Having no objection to invoke, TMS points to "context": Exhibit A2 was titled "Disputed Portion" (Appx122); briefing entries accounted for most of the hours at issue (Appx126–27, Appx274); and only "six pages of invoices" were involved. (TMS Br. 22–23.) None of these states a ground. The title on an exhibit does not tell the applicant what is supposedly wrong with its entries, the share of an invoice consumed by briefing does not transform a general objection into a specific one, and a short bill lightens the burden of drafting precise objections—it does not excuse it.

TMS's count of "six pages of invoices at issue" is itself a concession. For that count, TMS cites Fee Petition Exhibits A2 and B, along with Exhibit 15 introduced at the hearing. (TMS Br. 22.) Missing from that list is the seventeen-page Exhibit A1—the entries TMS stipulated were reasonable—where the ninety-eight communication entries appear. (Appx105–21; Appx80 ¶ 7; Lewis Br. 40 &

n.13.) So TMS agrees that the A1 invoice, which accounted for all but $124.50 of the court's $3,050.25 communications cut, was not at issue.

5. *TMS cannot point to Lewis's statements as a substitute for the objections that TMS never asserted itself.*

TMS argues that Lewis had "notice" because his fee-petition brief anticipated attacks on the briefing time, because his reply quoted the ninety-eight-entries passage, and because he "had the opportunity" to address the court at the hearing. (TMS Br. 22, 24–25.) But the notice *Bell* requires is notice of "objections actually raised *by the adverse party*," 884 F.2d at 721 (emphasis added), in the adverse party's "submissions," *id.* at 720. An applicant who preemptively briefs issues is not responding to objections "actually raised."

TMS's citations to the record prove Lewis's point, not TMS's. Lewis's fee-petition brief took up *some* of the complaints TMS had voiced during negotiation—never in any submission—and expressly held everything else in reserve "unless and until Defendant actually raises them in opposition." (Appx133 n.5.) TMS's opposition then raised none of them. A grievance voiced across a negotiating table and then omitted from the opposition is not an objection "actually raised"; it is an objection abandoned.

Lewis's reply said so and urged that TMS "should be considered to have forfeited those objections." (Appx177.) At the hearing—in the very passage TMS holds up as proof of notice (TMS Br. 25, citing Appx256)—Lewis told the court

that "they didn't touch on those issues in their brief. They have essentially forfeit those objections." (Appx256.) Lewis's statement that TMS had dropped the objections is not notice that they were live. It is proof that he understood them to be gone—and TMS, given the floor next, did not say otherwise.

*6. The fee-petition briefing never drew any objection at all.*

The $8,520 taken from the two fee-petition briefs stands on separate footing, because as to that time TMS cannot claim even a negotiation-stage complaint: the initial fee-petition brief was billed after the negotiations ended, and the reply-brief time was first introduced, in Exhibit 15, at the hearing. (Appx126–27; Appx274; Lewis Br. 20–21.) TMS had the bill for the first brief before filing its written opposition, but said nothing there. As to the second brief, TMS's counsel had read Exhibit 15 before the hearing, consented to its admission, and said nothing about it—even with rebuttal time after Lewis's counsel walked through it. (Appx204:5–6; Appx207:22–24; Appx262:15–267:9.) The only mention of that time came from the bench (Appx261:13–14), but an inquiry from the court is not an objection from the adverse party.

This Court has already decided that *Bell*'s rule "applies with equal force to post-judgment supplemental applications for 'fees for fee litigation,'" because "[o]nly with proper notice can the claimant know which request to defend as reasonable," and because "post-judgment fee litigation remains adversarial."

*United States v. Eleven Vehicles*, 200 F.3d 203, 212 (3d Cir. 2000). Under that rule, the $8,520 reduction fails at the threshold: there was never an objection to adjudicate.

C. TMS concedes the court misread two invoices; even after correcting for that misreading, the cuts are still severe.

TMS touts the bankruptcy court's "thorough review of the invoices." (TMS Br. 7, 16, 23, 26.) However, in footnotes, TMS concedes that the review misread them. By the court's count, counsel put "a combined 8.3 hours" into the fee-petition brief, but the invoice actually shows 9.3 hours. (TMS Br. 11 n.2; Appx126–27.) The court also asserted that counsel discounted the reply brief by 6.8 hours, but the invoice shows only a 0.8-hour discount. (TMS Br. 12 n.4; Appx274.) On both counts, TMS is right.[3] Lewis's opening brief drew its figures from the opinion and so repeated the court's numbers (Lewis Br. 19, 48 & n.16); Lewis corrects them here:

[3] However, the correction does not soften the court's reasoning. The court believed a 6.8-hour discount and a fifteen-hour cut would leave 8.3 hours for an eighteen-page brief—0.46 hours per page, the figure Lewis's opening brief reported. (Lewis Br. 48.) Because the actual discount was 0.8 hours, the cut in fact left 14.3 hours. (Appx274.) The *outcome* may be less severe than the court intended, but the *reasoning* is what is under review.

| Brief | Pages | Hours billed (per page) | Hours cut | Hours allowed (per page) |
|---|---|---|---|---|
| Motion-to-compel brief (Dkt. 66) | 16 | 18.9 (1.18) | 12 | 6.9 (0.43) |
| Motion-to-compel reply (Dkt. 77) | 12 | 11.5 (0.96) | 8 | 3.5 (0.29) |
| Fee-petition brief (Dkt 129, Appx128) | 10 | 9.3 (0.93) | 6 | 3.3 (0.33) |
| Fee-petition reply (Dkt 131, Appx164) | 18 | 29.3 (1.63) | 15 | 14.3 (0.79) |

(Appx123–24; Appx126–27; Appx274.) With the numbers corrected, the point Lewis drew from these invoices still holds (Lewis Br. 47–51): no brief was billed at as much as two hours per page, and after the cuts counsel was left with 0.29 to 0.79 hours per page—under half of even the lowest comparator the District Court cited. (Appx17 (1.7 hours per page in *Migliori v. Lehigh Cnty. Bd. of Elections*, No. 22-cv-397, 2025 WL 2493843, at *4 (E.D. Pa. May 19, 2025), *report and recommendation adopted*, No. 22-cv-397, 2025 WL 2493838 (E.D. Pa. July 31, 2025)).)

D. THE STIPULATION TOOK THE COMMUNICATION CUT OFF THE TABLE, AND TMS DEFENDS THAT CUT ON A NEW THEORY.

The premise of Lewis's stipulation argument is undisputed: TMS does not deny that the ninety-eight communication entries were stipulated. It refers to "the notion that TMS stipulated" to them and answers it by saying that "TMS withdrew any such stipulations upon the filing of the Fee Petition." (TMS Br. 21 n.7.) That

mere footnote is TMS's entire answer to an argument for reversal that Lewis developed at length. In this Court, "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).

Even if not waived (or forfeited), TMS's argument fails on the merits. A party may not unilaterally withdraw a stipulation; it must seek relief from the court. *Waldorf v. Shuta*, 142 F.3d 601, 616–18 (3d Cir. 1998); Lewis Br. 37–38. TMS never moved for relief and never attempted the required showing of manifest injustice.

The stipulation clause TMS relies on, ¶ 9, reserved a single argument—the all-or-nothing entitlement defense. (Appx80; Lewis Br. 33–35.) TMS made that argument, and lost. TMS has no answer to the opening brief's construction of ¶ 9's "notwithstanding" preamble, nor to the point that, on TMS's reading, ¶ 7 would dissolve at the moment its condition was met. (Lewis Br. 33–37.)

The closest TMS came to a motion to withdraw in bankruptcy court was another footnote, this one in its opposition to the fee petition, describing the stipulation as "subject to objections raised following the filing of [the] Petition." (TMS Br. 21 n.7, citing Appx149 n.4.) What a party later says about a stipulation is not the stipulation. The bankruptcy court seemed to agree: it ignored TMS's

footnote and mentioned the stipulation only to observe that certain fees and costs had been agreed to. (Appx26.)

Nor does the District Court's statement that the stipulation was "effectively withdrawn" (Appx16), which TMS also invokes (TMS Br. 21 n.7), add anything: it rested on ¶ 9 alone and never construed ¶ 7. (Lewis Br. 35–36.) TMS engages with none of the opening brief's analysis—¶ 7's text, *Waldorf*, and the judicial-admission cases all go unanswered. (Lewis Br. 30–38.)

TMS falls back on the assertion that "even if the stipulation were not withdrawn," the court "is not obliged to accept Lewis's demanded fees." (TMS Br. 21 n.7.) That characterization misstates what the stipulation resolved. The stipulation made no "demand" on the court; it established the paying party's concession that specified entries were reasonable. A court cannot reopen what the paying party has conceded: it "can never serve as an 'expert witness'" on the reasonableness of fees, *Bell*, 884 F.2d at 720, nor may it cast aside uncontested hours submissions for "reasons not raised by opposing counsel," *Cunningham*, 807 F.2d at 53. Under TMS's rule, every fee stipulation would be worthless: any concession could be unwound by the court after the applicant's side of the bargain—capped rates, every red-lined entry—had already been performed. (Appx79 ¶¶ 4, 6.)

TMS asserts that the reference to ninety-eight entries amounts to a "clear and specific" objection. (TMS Br. 21.) In context, the reference is a mere data point inside TMS's argument that Lewis should have accepted the April 2020 offer: "[a]s of April 2, 2020," counsel had "billed Lewis an incredible (and excessive), approximately $13,000.00 in fees, including 98 entries for .1 hours." (Appx158.) Lewis answered that argument at length (Appx169–73), and the bankruptcy court did not adopt it. (Appx34.)

As to the ninety-eight entries, Lewis's answer was the stipulation: on calculations TMS has never disputed, all but $124.50 of the cut fell on stipulated or never-billed time. (Appx176; Lewis Br. 39–40 & nn.12–13.) TMS never said what was wrong with any particular entry, and at the hearing conceded why: "I can't say for sure whether or not that actually happened, whether that particular call was appropriate or not." (Appx242:22–23.) Whatever else the reference to ninety-eight entries was, it was not an objection to entries that TMS had already stipulated were reasonable.

The bankruptcy court cut the entries anyway, reasoning by analogy to *In re Szymczak*, 246 B.R. 774 (Bankr. D.N.J. 2000), and its experience with counsel's billing in *In re Badyrka*, No. 5:20-03618-MJC, 2022 WL 4656034 (Bankr. M.D. Pa. Sept. 30, 2022). (Appx35.) Both *Szymczak* and *Badyrka* were Chapter 13 fee applications reviewed under 11 U.S.C. § 330, so no adversary bore the burden of

objecting. *Szymczak*, 246 B.R. at 776; *Badyrka*, 2022 WL 4656034, at *1; *Busy Beaver*, 19 F.3d at 841–44. Here TMS bore that burden and did not carry it. The court could not fill the gap with its own experience of counsel's billing in a different case.

### E. GROUNDS THE BANKRUPTCY COURT NEVER STATED CANNOT SUSTAIN THE REDUCTIONS.

#### 1. *The missing findings cannot be supplied by the District Court's rationales or by TMS's "any ground" request.*

To defend the briefing cuts, TMS supplies reasons the *bankruptcy* court never gave: (1) the *District* Court's observations that the motion-to-compel brief "largely consist[ed] of" the discovery requests and objections and that the reply devoted four pages to procedural history, and (2) TMS's own assertion that the record "independently supports" the cuts. (TMS Br. 28–29 & n.8, citing Appx18–19.) The decision under review is the bankruptcy court's, not the District Court's. *In re Tower Air, Inc.*, 397 F.3d 191, 195 (3d Cir. 2005). The word "excessive," standing alone, was the bankruptcy court's entire explanation for every briefing cut (Appx35–36)—and this Court "need[s] more reasoning than 'they are excessive.'" *Rode*, 892 F.2d at 1187. The duty to give "a concise but clear explanation" belongs to the court that imposes the reduction. *Hensley*, 461 U.S. at 437; *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 196 (3d Cir. 2000). The question is never

how much the court left; it is whether what it took was taken on an objection actually made, for reasons actually given.

The "affirm on any ground" doctrine does not help. TMS asks this Court to excuse the bankruptcy court's unexplained reductions and to *independently* conclude that the fees were excessive (TMS Br. 29 n.8); i.e., to make a factual finding. The cases it cites make Lewis's point. *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 143 (3d Cir. 2015), affirmed a Rule 12(b)(6) dismissal in part on an alternative *legal* ground, taking the pleaded facts as true. And *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 116–17 (3d Cir. 2020), declined to affirm on grounds the district court never decided—vacating instead. Neither case authorizes an appellate court to make the initial finding of excessiveness that *Hensley* and *Gunter* reserve to the fee-setting court. "[F]actfinding is the basic responsibility of district courts, rather than appellate courts." *Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982) (internal quotation marks omitted). On the question that decides this appeal, the record contains the bankruptcy court's own finding—unchallenged by TMS—that TMS "did not identify any specific time entries that were excessive." (Appx34 n.9.) What the record explicitly refutes cannot be a ground "supported by the record."

The District Court's content rationales were addressed in Lewis's opening brief. (Lewis Br. 49–51.) TMS repeats two of those rationales now, without

engaging Lewis's argument.[4] (TMS Br. 29.) TMS adds only its conclusion that the reduction is "eminently reasonable judged against *Maldonado*." *Id.*

*2. Neither* Maldonado*, nor experience, nor "disproportionality" justifies the cuts.*

*Maldonado*, TMS says, "does not set a bright line rule" for briefing time. (TMS Br. 28.) Lewis agrees; he called it "a yardstick, not a per se rule." (Lewis Br. 46.) Page length was the bankruptcy court's only stated measure—the fee-petition briefing time was "excessive for a ten-page brief." (Appx35.) By that metric, the court awarded far less time per page than in every other cited case, including the three cases the District Court selected itself. TMS offers no other cases, only counsel's "significant experience." (TMS Br. 28.) In *Bell*, "[e]xcessiveness of time spent in light of an applicant's expertise" qualified as a legitimate basis to reduce the fee, but only because the defendant had "raised with sufficient clarity the issue that the fee request was excessive in light of [the Applicant's] . . . experience." 884 F.2d at 721. Below, TMS never contended that counsel's experience with fee litigation rendered the fee-petition briefing excessive; that implication originated in the court's own footnote. (Appx35 n.11.) Experience is paid for through the hourly rate—a rate TMS stipulated (Appx79 ¶ 4)—and it already showed in the hours: every brief, before any cut, came in under

[4] What remains of the District Court's third content rationale—counsel's experience—is addressed in the next section.

two hours per page. The court never explained why an experienced lawyer should produce a filing-ready brief at 0.29 hours per page.

Proportionality is TMS's recurring theme: a $900 dispute, a $6,000 judgment, fees "more than ninety times the original amount in dispute." (TMS Br. 1, 16, 29.) The bankruptcy court made no proportionality reduction, and TMS took no cross-appeal. The Supreme Court and this Court have rejected fee-award proportionality limits. *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (plurality opinion); *Washington v. Phila. Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1042–43 (3d Cir. 1996). At $6,000, the judgment captured the maximum statutory damages available—triple what TMS had said was possible. (Appx131, 185, 194.) Recovery of a maximum statutory damage award represents "a high degree of success," *Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir. 1995), which is the "most critical factor in determining the reasonableness of a fee award," *id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)) (internal quotation marks omitted).

And as to the $900.00 TMS insists it "disclaim[ed]" in 2019 (TMS Br. 4), the bankruptcy court observed at the fee hearing in 2023 that "it seems like . . . you're still trying to collect those fees." (Appx241:11–12.) TMS's counsel denied it, on his client's information. (Appx240:2–241:17.) The denial was false, and TMS later admitted it in writing: the $900.00 was not waived until February 10,

2023. (Bankr. Dkt. 134; SAppx1–2.) That waiver was ten days *after* the fee hearing (Appx197), two weeks after TMS's continued collection of the $900.00 caused Lewis to file a second lawsuit (D. Ct. Doc. 14-1, Ex. A ¶¶ 30–31; SAppx8), and more than three years after the 2019 "disclaim[er]" that TMS now alleges. (TMS Br. 4.) TMS settled that second suit for $10,000 in potential punitive damages, plus fees. (D. Ct. Doc. 14-1, Ex. C ¶¶ 3.b, 5.e.ii; SAppx14, SAppx16; Appx320 n.4.) So TMS made this misrepresentation before, was sued over it, and paid to resolve it. It made the misrepresentation again to the District Court. (Appx281 ("[TMS] disclaimed any entitlement to the $900.00 . . . but [Lewis] persisted.").) Lewis corrected TMS. (Appx319–20.) TMS makes the misrepresentation again to this Court anyway.

## III. CONCLUSION

Three undisputed facts decide this appeal: TMS never objected to the briefing time, TMS stipulated that the communication entries were reasonable, and the bankruptcy court's entire explanation for the cuts was the word "excessive." That leaves only the remedy, and there too TMS is silent: if the reductions were improper, the presumption of reasonableness stands unrebutted, and nothing is left for decision below. (Lewis Br. 29–30.) Under *Bell*, a reduction made on a ground the objector never raised is error. 884 F.2d at 722. A reduction resting on inadequate findings is vacated. *Gunter*, 223 F.3d at 196. Lewis respectfully asks

this Court to reverse the judgment to the extent of the $18,570.25 reduction and to direct entry of an award of $81,678.68 in fees and $164.61 in costs—or, in the alternative, to vacate the reductions and remand with instructions consistent with this Court's opinion.

Respectfully submitted,

s/ Carlo Sabatini
Carlo Sabatini, PA 83831
Attorney for Plaintiff/Appellant

## IV. CERTIFICATIONS

### A. CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because it contains 6,494 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)–(6) because it has been prepared in a proportionally spaced and serifed typeface using Microsoft Word in 14-point Times New Roman.

s/ Carlo Sabatini
Carlo Sabatini

### B. CERTIFICATE OF SERVICE

On September 16, 2026, I caused the foregoing Reply Brief of Appellant to be filed through the Court's CM/ECF system, which will serve all counsel of record, including counsel for Appellee.

s/ Carlo Sabatini
Carlo Sabatini

### C. CERTIFICATE THAT BRIEFS ARE IDENTICAL

The text of the electronic version of this brief is identical to the text of the paper copies filed with the Court.

s/ Carlo Sabatini
Carlo Sabatini

D. CERTIFICATE THAT E-BRIEF HAS BEEN VIRUS CHECKED

A virus check was performed on the electronic version of this brief using Microsoft Defender Antivirus version 1.459.219.0, and no virus was detected.

s/ Carlo Sabatini
Carlo Sabatini